**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THINK FINANCE, LLC, *et al.*, | ) Case No. 17-33964 (HDH) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. 10** |

**GPLS SECURED PARTIES' OBJECTION**
**TO THE DEBTORS' CASH COLLATERAL MOTION**

The GPLS Secured Parties respectfully submit this objection to the relief requested by the above-captioned Debtors in their *Emergency Motion of the Debtors and Debtors in Possession for Entry of a Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Determining Adequate Protection, and (III) Granting Related Relief* [Docket No. 10] (the "Cash Collateral Motion").[2]

**Preliminary Statement**

1.     The Debtors have worked themselves into a tough spot.  On the one hand, they have represented to the Court—via an exhibit to their Cash Collateral Motion[3]—that they are cash-flow positive through the first seven weeks of these chapter 11 cases.  On the other hand, the Debtors

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

[2]     Capitalized terms used and not otherwise defined in this objection have the meaning given to them in the Cash Collateral Motion or in the *Interim Order Authorizing the Debtors to Use Cash Collateral, Granting Adequate Protection and Related Relief, and Scheduling a Final Hearing* [Docket No. 37] (the "Interim Order"), as applicable.

[3]     *See Notice of Filing Corrected Exhibit B to Emergency Motion of the Debtors and Debtors in Possession for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Determining Adequate Protection, and (III) Granting Related Relief* [Docket No. 17] (the "7-Week Forecast").

have represented to the Court—via their filings in the Adversary Proceeding[4]—that they desperately need access to money to fund their reorganization efforts and ongoing business operations. These representations can't be harmonized; one of them must be false.

2.     On information and belief, the GPLS Secured Parties believe the Debtors' 7-Week Forecast is not correct, and they expect that the Debtors will file a revised forecast prior to the November 20 hearing. The GPLS Secured Parties also expect that revised forecast to show a substantial decrease of cash over the projection period—and the GPLS Secured Parties believe the Debtors will not return to a cash-flow positive position (absent consolidation with their presumably profitable non-Debtor affiliates).

3.     If the GPLS Secured Parties are correct that the Debtors' businesses consume more cash than they generate, then the Debtors necessarily cannot satisfy their burden of proving that the GPLS Secured Parties are adequately protected. As such, the Debtors may not use cash collateral without the GPLS Secured Parties' consent.

4.     For these reasons, and those set forth below, the relief sought by the Cash Collateral Motion should be denied. Alternatively, the GPLS Secured Parties are prepared to consent to the Debtors' use of cash collateral in exchange for the Debtors' agreement (a) to withdraw the TRO Motion, (b) negotiate in good faith with the GPLS Secured Parties regarding a reasonable schedule for the Adversary Proceeding, and (c) negotiate in good faith with the GPLS Secured Parties and the Official Committee of Unsecured Creditors regarding a final order on the relief sought in the Cash Collateral Motion.

---

[4]     Specifically, the *Plaintiffs' Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause for Willful Violations of the Automatic Stay* [Adv. Proc. Docket No. 2] (the "TRO Motion").

**Background**

5.      In 2011, Think approached Victory Park with a proposal to invest in their business, as Think looked to shift its focus and begin offering services to tribal entities that were interested in entering the consumer lending business. Because that business carries certain business risks, Think and Victory Park entered into agreements to allocate those risks. Accordingly, Think agreed to absolutely and unconditionally guarantee Victory Park's loan in full and indemnify it from potential losses associated with that business. Think's guaranty and indemnity obligations, substantially insulating Victory Park from the risks associated with the business, materially induced Victory Park's decision to loan money to GPLS.

6.      Victory Park, in reliance on Think's contractual obligation to guaranty and indemnify Victory Park, agreed to provide capital, in the form of purchasing economic participation interest in the underlying loans originated by tribal lending entities, via its loan to GPLS. Neither Victory Park nor Think made consumer loans. Only the tribes made consumer loans, and then collected amounts repaid by the tribes' borrowers. A certain portion of the loan collections were then paid by the tribe to GPLS, on behalf of GPLS's economic participation interests in the underlying loans, less a percentage of collections that the tribe retained. GPLS would then pay to holders of Participation Shares a return based on a fixed rate of interest, and the remainder would be paid by GPLS to Think, all pursuant to the GSA and AAA.[5]

7.      The following is also relevant to consideration of the Cash Collateral Motion:

---

[5]   This remainder paid by GPLS to Think is comprised of two separate payments: (1) a fixed return on Think's investment by TF SPV into GPLS and (2) an Administrative Fee (which was paid after all other fees and expenses were paid by GPLS) pursuant to the AAA.

- In 2014, the Attorney General of the Commonwealth of Pennsylvania sued Think challenging the legality of the tribal lending program in Pennsylvania (the "Pennsylvania Action").[6]

- In April 2017, GPLS and Victory Park were added as defendants in the Pennsylvania Action.[7]

- In May 2017, a class action lawsuit was filed against Think and GPLS in Virginia (the "Virginia Class Action").[8]

- On August 2, 2017, the GPLS Secured Parties formally notified Think of the on-going events of default under the AAA.[9]

- On August 7, 2017 Think, and its affiliates, commenced an arbitration against the GPLS Secured Parties seeking essentially the same relief sought by this Cash Collateral Motion and the TRO Motion:  claims of tortious interference, breach of contract, conversion, and breach of fiduciary duty, and emergency injunctive relief requiring GPLS to pay all amounts to Think and its affiliates.[10]

- On August 21, 2017, without the knowledge or consent of the GPLS Secured Parties, Think entered into an Amended and Restated Revolving Loan Agreement, Promissory Note and Security Agreement with TF Investment Services, LLC, an entity created on April 20, 2017, whereby Think transferred between $9.35 million and $15 million in a loan.[11]

- On August 21, 2017, without the knowledge or consent of the GPLS Secured Parties, Think entered into a Revolving Loan Agreement, Promissory Note and Security Agreement with Cortex Holdings, LLC, Cortex Services, LLC, and Cortex Holdings, LLC (collectively, "Cortex"), an entity created on February 17, 2017, whereby Think transferred $6 million to Cortex in a loan.[12]

- In October 2017, a class action lawsuit was filed against Think and GPLS in Florida (the "Florida Class Action").

---

[6]   Briggs Declaration, Docket No. 12 at 21.

[7]   *Id.*

[8]   *Id.* at 22.

[9]   *Id.* at 16.

[10]   *Id.* at 18.

[11]   Briggs Declaration, Docket No. 12 at 8-9.

[12]   *Id.*

KE 50184041

8.     Put in the appropriate context, it is clear that the Debtors commenced these chapter 11 cases after diverting cash into affiliated entities that are engaged in similar businesses, with the goal of financing further investment in, and operation of, liability-free entities.

9.     Thus, as set forth in more detail in the GPLS Secured Parties' response to the Debtors' TRO Motion, filed contemporaneously herewith, the GPLS Secured Parties seek to preserve the status quo and prevent the Debtors' overreach.

10.     To the extent the Debtors, by their Cash Collateral Motion, seek to convert the assets of GPLS individually, and the GPLS Secured Parties collectively, into property of the estate without an adjudication on the merits of the issues presented in the Adversary Proceeding disputed breach of contract causes of action, GPLS and the GPLS Secured Parties object.

## Objection

### I.     The Debtors Have Not Proved—and Cannot Prove—That the GPLS Secured Parties Are Adequately Protected.

11.     A debtor cannot use cash collateral unless all parties with an interest in the collateral have consented or the court authorizes its use after notice and a hearing.[13] "If a debtor seeks authorization to use cash collateral from the bankruptcy court under § 363(c)(2)(B) [court authority] rather than under § 363(c)(2)(A) [secured creditor consent], the bankruptcy court 'shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection' for the secured creditors' interest."[14]

---

[13]    11 U.S.C. § 363(c)(2).

[14]    *In re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir. 1998); 11 U.S.C. § 363(e) ("at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used . . . with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."); *see also In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995) ("The purpose or intent of granting adequate protection payments are to maintain the status quo for that creditor and to protect the creditor form diminution or loss of the value of its collateral during the ongoing Chapter 11 case.").

5

12.  Adequate protection may be granted in the form of periodic cash payments, additional or replacement liens, or the "indubitable equivalent" of the creditors' interest.[15] "An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion, when the entity is stayed from enforcing its interest . . . ."[16] "The Code thus deliberately protects and preserves the interests of secured creditors in property in which they have a security interest, and accordingly takes the concept of adequate protection very seriously."[17] The Debtors have the burden of demonstrating that adequate protection has been provided. 11 U.S.C. § 363(p).

13.  By the Cash Collateral Motion, to satisfy their obligation to provide adequate protection, the Debtors propose to pay certain fees and expenses incurred by the GPLS Secured Parties.[18] But this won't cut the mustard, especially in light of what the GPLS Secured Parties expect the Debtors to present to the Court in terms of a revised cash-flow forecast.

14.  In fact, the GPLS Secured Parties anticipate the Debtors will show a substantial cash decline over the next 13 weeks. And, as the Debtors' CEO has said, "there [is] not going to be any continuing business inside of Think Finance, LLC" once the existing loan portfolio is serviced to maturity.[19] Taking these two facts together, the Debtors will ultimately run out of money. And thus, these chapter 11 estates face potential administrative insolvency, let alone the

---

[15]  11 U.S.C. § 361.

[16]  3-361 Collier on Bankruptcy ¶ 361.02 (2010).

[17]  *In re Blackwood Associates*, 153 F.3d at 68.

[18]  Cash Collateral Mot. ¶¶ 50–53.

[19]  Wong Deposition 41:17-31:8, ("The reasons behind the formation of these companies [Cortex, Jora and TF Investments] is because Think Finance, LLC, as a result of VPC's decision to no longer continue with their investment through GPLS of the tribal business meant that Think Finance was no longer -- LLC was no longer in business, and at some point with the departure of the investors, there was not going to be any continuing business inside of Think Finance, LLC. And so the board of directors believe that, you know, to protect the value to the shareholders and to protect the value of the company to shareholders, decided to proceed with the formation of these companies in order to generate revenues.")

6

Debtors' ability to satisfy the GPLS Secured Parties' potential secured claims.  Indeed, on this record, the Debtors may struggle to show "a reasonable prospect for a successful reorganization within a reasonable time."[20]

15.     In sum, without sufficient adequate protection, the GPLS Secured Parties should not be forced to accept the material risk of diminution of value present in these chapter 11 cases, and the Debtors' requested use of cash collateral must be denied.[21]

### Consensual Use of Cash Collateral

16.     The GPLS Secured Parties fully appreciate the impacts that would result from a denial of the relief requested in the Cash Collateral Motion.  Accordingly, the GPLS Secured Parties are willing to consent to the Debtors' continued use of cash collateral for an additional period of time—not to exceed one month—on the terms set forth in the Interim Order.  In exchange, the Debtors must agree to (a) withdraw the TRO Motion with prejudice, (b) negotiate with the GPLS Secured Parties regarding a reasonable schedule for the Adversary Proceeding, and (c) negotiate in good faith with the GPLS Secured Parties and the Official Committee of Unsecured Creditors regarding a final order in connection with the relief sought by the Cash Collateral Motion.

### Reservation of Rights

17.     The GPLS Secured Parties reserve the right to supplement and add to the legal arguments and factual assertions raised in this objection and to raise further and other objections

---

[20]   *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 570 (5th Cir. 1991).

[21]   *See In re Timber Products, Inc.*, 125 B.R. 433, 441 (Bankr. W.D. Pa. 1990) ("The $275,000.00, of which $215,000.00 would be available for inventory purchases, simply is inadequate to fund Debtors' start-up in the manner proposed in view of industry experience and does not offer adequate protection to PNB.  Ranallo's estimate, which we credit as modified in this opinion, was that within six to nine months Debtors would run out of cash and would be operating on a negative cash flow basis.  Without payment, the subordinated creditors will not be adequately protected.")

KE 50184041

or responses to the Cash Collateral Motion and any form of order presented by the Debtors prior to or at any interim or final hearing to approve the Cash Collateral Motion.  All rights and remedies are hereby expressly reserved.


[*Remainder of page intentionally left blank*]

WHEREFORE, for the reasons set forth herein, the GPLS Secured Parties respectfully request that the Court deny approval of the Cash Collateral Motion and grant the GPLS Secured Parties such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated:  November 15, 2017<br>Dallas, Texas | */s/ Travis A. McRoberts* |

S. Cass Weiland (TX 21081300)
Travis A. McRoberts (TX 24088040)
**SQUIRE PATTON BOGGS (US) LLP**
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Telephone:   (214) 758-1589
Facsimile:   (214) 758-1500
Email:        cass.weiland@squirepb.com
              travis.mcroberts@squirepb.com

- and -

Anna G. Rotman, P.C. (TX Bar No. 24046761)
Mark Holden (TX Bar No. 24092531)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas
Telephone:   (713) 836-3600
Facsimile:   (713) 836-3601
Email:        anna.rotman@kirkland.com
              mark.holden@kirkland.com

- and -

Ryan Blaine Bennett (admitted *pro hac vice*)
Justin R. Bernbrock (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:        ryan.bennett@kirkland.com
              justin.bernbrock@kirkland.com

*Counsel for the GPLS Secured Parties*

KE 50184041