Daniel P. Winikka (TX 00794873)
**Loewinsohn Flegle Deary Simon LLP**
12377 Merit Drive
Suite 900
Dallas, Texas 75251
Telephone: (214) 572-1700
Facsimile: (214) 572-1717

Michael S. Etkin (*Pro Hac Vice*)
Andrew Behlmann (*Pro Hac Vice*)
Nicole Fulfree
**Lowenstein Sandler LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2333

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **IN RE:** | § | Chapter 11 |
|  | § |  |
| **THINK FINANCE, LLC, et al.,[1]** | § | Case No. 17-33964 (HDH) |
|  | § |  |
| **Debtors.** | § | (Jointly Administered) |

**MOTION OF CONSUMER BORROWER PLAINTIFFS FOR ENTRY OF AN ORDER
(I) APPLYING BANKRUPTCY RULE 7023 TO THE CLASS CLAIM, AND
(II) CERTIFYING THE CLASS FOR PURPOSES OF THE CLASS CLAIM**

**THE MOVANTS HAVE REQUESTED THAT A HEARING ON THIS MATTER BE HELD
ON FEBRUARY 27, 2018 AT 9:00 A.M. (CT) AT THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF TEXAS, 1100 COMMERCE STREET,
14TH FLOOR, COURTROOM #3, DALLAS, TX 75242, AND ARE AWAITING
CONFIRMATION BY THE COURT OF THAT HEARING DATE AND TIME.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Decision Sciences, LLC (8949) (collectively, the "Debtor Defendants"), Think Finance SPV, LLC (4522), Financial U, LLC (1850), and TC Administrative Services, LLC (4558).

## TABLE OF CONTENTS

JURISDICTION AND VENUE ............................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 3

    A.    The Consumer Borrower Litigation .......................................................... 3

    B.    The Debtors and the Chapter 11 Cases ...................................................... 6

ARGUMENT ..................................................................................................................... 9

I.    THE COURT SHOULD APPLY RULE 7023 TO THE CLASS CLAIM ........................ 9

    A.    Sufficient Cause Exists for This Court to Exercise Its Discretion under Rule 9014 to Invoke Bankruptcy Rule 7023 and FRCP 23 ................................................... 11

        1.    Class Members Will Suffer Prejudice Without Class Treatment .......................................................................... 11

        2.    Invoking Rule 7023 Will Not Prejudice the Debtors or Other Creditors. ........................................................................ 13

        3.    Efficient Estate Administration ........................................... 14

        4.    Plaintiffs' Conduct in Chapter 11 Cases ............................. 15

        5.    Status of the Vermont Litigation ......................................... 16

II.    THE ELEMENTS OF CLASS CERTIFICATION ARE SATISFIED ............................. 18

    A.    The Class Should Be Certified Under FRCP 23(a) ................................. 18

        1.    The Class Is so Numerous that Joinder of All Members Is Impracticable. .................................................................... 18

        2.    There Are Questions of Law and Fact Common to the Class .................. 19

        3.    The Claims or Defenses of the Representative Parties are Typical of the Claims or Defenses of the Class. ........................................... 20

        4.    The Representative Parties Will Fairly and Adequately Protect the Interests of the Class. .................................................. 21

    B.    The Class Should Be Certified Under FRCP 23(b) ................................. 22

        1.    Questions Of Law Or Fact Common To Class Members Predominate Over Questions Affecting Only Individual Members. ........................................................................ 23

        2.    A Class Proof of Claim Is the Superior Method of Resolving the Claims of the Plain Green Borrower Class. ........................... 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591, 617, 117 S.Ct. 2231 L.Ed.2d 689 (1997)...........................................................3

Bertulli v. Indep. Ass'n of Cont'l Pilots,
    242 F.3d 290 (5th Cir. 2001) ...................................................................................................18

Boos v. AT&T, Inc.,
    252 F.R.D. 319 (W.D. Tex. 2008), modified (Sept. 17, 2008)..............................................23, 25

Dartley v. Ergobilt,
    No. 3:98-CV-1442-M, 2001 U.S. Dist. LEXIS 20631 (N.D. Tex. Dec. 3, 2001).......................21

Forbush v. J.C. Penney Co.,
    994 F.2d 1101 (5th Cir. 1993)..................................................................................................19

Gingras v. Rosette, et al.,
    Case No. 16-2019 (2d. Cir.)......................................................................................................5

Gingras v. Rosette, et al.,
    Case No. 5:15-cv-101 (D. Vt.)..................................................................................................1

Henry v. Cash Today, Inc.,
    199 F.R.D. 566 (S.D. Tex. 2000) ..............................................................................................19

In re Charter Co.,
    876 F.2d 866 (11th Cir. 1989) ..................................................................................................10

In re CommonPoint Mortg. Co.,
    283 B.R. 469 (Bankr. W.D. Mich. 2002) ...................................................................................17

In re Connaught Group, Ltd.,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013) ........................................................................................16

In re Craft,
    321 B.R. 189 (Bankr. N.D. Tex. 2005) ............................................................................. passim

In re Elec. Data Sys. Corp. Sec. Litig.,
    226 F.R.D. 559 (E.D. Tex. 2005), aff'd, 429 F.3d 125 (5th Cir. 2005) ................................23, 24

In re Enron Corp. Sec. Deriv. & ERISA Litig.,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ..........................................................................18, 19, 20, 23

In re Ephedra Prod. Liab. Litig.,
   329 B.R. 1 (S.D.N.Y. 2005) .......................................................................10, 11, 14

In re F-Squared Investment Mgmt., LLC,
   546 B.R. 538 (Bankr. D. Del. 2016) ........................................................................16

In re First Alliance Mortg. Co.,
   269 B.R. 428 (C.D. Cal. 2001) ................................................................................17

In re First Interregional Equity Corp.,
   227 B.R. 358 (Bankr. D.N.J. 1998)..........................................................................17

In re Great S. Life Ins. Co. Sales Pracs. Litig.,
   192 F.R.D. 212 (N.D. Tex. 2000)........................................................................20, 23

In re Kaiser Group Int'l, Inc.,
   278 B.R. 58 (Bankr. D. Del. 2002) ....................................................................16, 17

In re Lease Oil Antitrust Litig.,
   186 F.R.D. 403 (S.D. Tex. 1999)..............................................................................18

In re MF Glob. Inc.,
   512 B.R. 757 (Bankr. S.D.N.Y. 2014) ......................................................... 10, 16-17

In re Musicland Holding Corp.,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007) ................................................................14, 15

In re Rodriguez,
   432 B.R. 671 (Bankr. S.D. Tex. 2010), aff'd, 695 F.3d 360 (5th Cir. 2012) ...............23

In re Woodward & Lothrop Holdings, Inc.,
   205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) .............................................................14

In re Zenith Labs., Inc.
   104 B.R. 659, 663 (D.N.J. 1989) .............................................................................17

Lehocky v. Tidel Techs., Inc.,
   220 F.R.D. 491, 510 (S.D. Tex. 2004) .....................................................................24

Lightbourn v. Cnty. of El Paso,
   118 F.3d 421 (5th Cir. 1997)...............................................................................19, 20

Longden v. Sunderman
   123 F.R.D. 547, 556 (N.D. Tex. 1988) .....................................................................20

Mabary v. Hometown Bank, N.A.,
   No. 4:10-cv-3936, 2011 U.S. Dist. LEXIS 134437 (Nov. 21, 2011 S.D. Tex.)...............19, 20, 24

Matter of Am. Reserve Corp.,
  840 F.2d 487 (7th Cir. 1988) ...................................................................11

Mullen v. Treasure Chest Casino, LLC,
  186 F.3d 620 (5th Cir. 1999) ............................................................18, 19

O'Sullivan v. Countrywide Home Loans, Inc.,
  319 F.3d 732 (5th Cir. 2003) ...................................................................24

Stirman v. Exxon Corp.,
  280 F.3d 554 (5th Cir. 2002)............................................................20, 21

Teva Pharm. USA, Inc. v. Abbott Labs.,
  252 F.R.D. 213 (D.Del. 2008) ....................................................................3

Unger v. Amedisys Inc.,
  401 F.3d 316 (5th Cir. 2005) ...................................................................22

Zeidman v. J. Ray McDermott & Co.,
  651 F.2d 1030, 1038 (5th Cir. 1981) .......................................................19

**RULES**

Fed. R. Bankr. P.  2019(b)(2)(C) ..................................................................17

Fed. R. Bankr. P.  3001(b)...........................................................................17

Fed. R. Bankr. P. 7023 ...................................................................... *passim*

Fed. R. Bankr. P.  9014 ........................................................9, 10, 11, 17, 25

Fed. R. Civ. P.  23(a).......................................................................... *passim*

Fed. R. Civ. P. 23(b).......................................................................... *passim*

**STATUTES**

15 U.S.C. § 1639k(1) ...................................................................................5

28 U.S.C. § 157............................................................................................1

28 U.S.C. § 1334..........................................................................................1

28 U.S.C. § 1408..........................................................................................1

28 U.S.C. § 1409..........................................................................................1

18 U.S.C. § 1962(c)........................................................................19, 20, 23

Jessica Gingras and Angela Given (together, "Plaintiffs"), plaintiffs in the putative class action Gingras v. Rosette, et al., Case No. 5:15-cv-101 (D. Vt.) (the "Vermont Litigation"), pending in the U.S. District Court for the District of Vermont (the "Vermont District Court"), for themselves and the putative class (the "Plain Green Borrower Class"[2] or "Class,") they seek to represent in the Vermont Litigation, hereby move (the "Motion") for entry of an order, pursuant to Federal Rule of Civil Procedure 23 ("FRCP 23"), made applicable herein by Rules 7023 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) directing that Bankruptcy Rule 7023 applies to the Class Claim (defined below) and (b) certifying the Class for purposes of the ultimate allowance of the Class Claim (defined below).[3]  In support of the Motion, Plaintiffs rely on the Declaration of Michael S. Etkin, Esq. (the "Etkin Decl.") submitted herewith and also respectfully state as follows:

## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT[4]

1.      Plaintiffs are the victims of an online payday lending scheme perpetrated by certain Debtors and others that takes advantage of financially struggling individuals by charging extortionate interest rates and engaging in other illegal lending practices, while attempting to insulate themselves from

---

[2] For purposes of the class proof of claim, "Plain Green Borrower Class" shall mean persons who took out a loan issued in the name of Plain Green.  Excluded from the Class are persons who, at the time they took out a loan issued in the name of Plain Green, were residents of the Commonwealth of Pennsylvania.  Plaintiffs reserve the right to modify this class definition, as appropriate, based on information that becomes known and/or events that may occur after the date of the filing of this Motion.

[3] Plaintiffs' request is confined to the relief that is available in these Chapter 11 Cases against the Debtor Defendants. Plaintiffs reserve all rights to seek certification of a broader class in the Vermont Litigation and any related matters (including matters that may be consolidated with the Vermont Litigation) against any and all non-Debtor defendants. Accordingly, the scope of relief sought herein, definition of the proposed class, basis upon which a class should be certified, and description of claims advanced against the Debtor Defendants in this bankruptcy proceeding should in no way be interpreted as an expression of Plaintiffs' position regarding class certification in the Vermont Litigation or in any other non-bankruptcy context.

[4] Capitalized terms used but not defined in this Preliminary Statement have the meanings given below.

liability through "rented" tribal immunity. The Vermont Litigation[5] arises out of a massive fraud by the Debtor Defendants and others—through the creation of a shell company, Plain Green, purportedly affiliated with a Native American tribe, to engage in a predatory consumer lending scheme that violates both state and federal law. According to the Debtors' estimates, there are approximately 1.3 million[6] victims (the "Consumer Borrowers") of the Debtor Defendants' overall payday lending scheme.

2.      By this Motion, Plaintiffs request that the Court exercise its discretion to apply Bankruptcy Rule 7023 and FRCP 23 to the Class Claim to be filed by Plaintiffs in advance of the Bar Date in these Chapter 11 Cases so that the Class may ultimately be certified for purposes of the Class Claim. Application of Rule 7023 for purposes of the Class Claim is the best and only true remedy for the significant shortcomings of the Debtors' notice program and the disproportionate harm that will befall disenfranchised Consumer Borrowers as more fully set forth below. The Consumer Borrowers comprise the largest creditor constituency in these cases, yet most do not even realize they have claims against the Debtor Defendants. Without adequate representation through the vehicle of a class proof of claim, these unwary and financially unsophisticated individuals will only be further victimized. This Motion is intended to provide these victims with a collective voice and a proper opportunity to seek redress through a process contemplated by the Bankruptcy Code where they are adequately represented by similarly situated Consumer Borrowers and counsel. The class vehicle provided by Bankruptcy Rule 7023 was designed for precisely these circumstances.

3.      Incredibly, although the Debtors have stated on the record in these Chapter 11 Cases that "*these consumer borrowers probably have no idea who Think Finance is because we weren't their lender*,"[7] the only entity referenced on the front of the Postcard Notice of the Bar Date sent out by the Debtors *is Think Finance*. And although the Debtors used shell companies purportedly affiliated with

---

[5] Citations to "VT Doc. No.___" refer to pleadings, orders, and other documents filed in the Vermont Litigation. The documents from the Vermont Litigation cited herein were filed as exhibits to the Declaration of Michael S. Etkin filed in support of the Stay Relief Motion. See Doc. No. 181-1.

[6] Bar Date Mot. Hr'g Tr. 11:10 Nov. 20, 2017. A copy of the relevant excerpts of the Bar Date Motion Hearing Transcript is attached to the Etkin Declaration as **Exhibit A.**

[7] Bar Date Mot. Hr'g Tr. at 11:2-3, Etkin Decl. Ex. A (emphasis added).

Native American tribes as a means to perpetrate their fraud, the Postcard Notice fails to reference any of the specific lenders that the Consumer Borrower might recognize, leaving it up to the financially strapped, commercially unsophisticated Consumer Borrowers to ascertain who "Think Finance" is and how or why they might hold claims against the Debtor Defendants. Thus, while the Debtors' notice program may have been intended to put postcards into Consumer Borrowers' mailboxes, mere receipt of the Postcard Notice is utterly meaningless when it fails to communicate sufficient information to inform recipients why they received it.

4.    The Supreme Court has described why our jurisprudence has embraced the class mechanism to vindicate the rights of small creditors who may not even know that they have claims:

> [T]he dominant purpose behind certifying Rule 23(b)(3) cases is to vindicate the rights of people who individually would be without the strength to bring their opponents into court; it overcomes the problem of small recoveries, which do not provide enough incentive for individual actions to be presented.[8]

5.    This fundamental purpose of the class mechanism is even more apparent here, where the Debtors have engaged in a predatory scheme targeting financially vulnerable people with emergency cash needs, advertising "Easy, Affordable Payments," while charging interest rates several times the legal limits. Absent class certification, even the tiny fraction of Consumer Borrowers who *might* file proofs of claim will likely not have the individual wherewithal or legal acumen to defend against the Debtors' inevitable objections to the merits of their claims. Denying class certification would effectively deny hundreds of thousands of victims any remedy and would allow the Debtors to effectively get away with their fraud, reaping the benefits of preying on disenfranchised individuals that lack the resources and knowledge to vindicate their rights individually through the claims process.

## BACKGROUND

### A.    The Consumer Borrower Litigation

6.    The Vermont Litigation is a putative class action against: (a) the Debtor Defendants including Think Finance, Inc. (the predecessor to Debtor Think Finance, LLC, "Think Finance"); (b)

---

[8] Teva Pharm. USA, Inc. v. Abbott Labs., 252 F.R.D. 213, 224 (D.Del. 2008) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231 L.Ed.2d 689 (1997)).

certain officers and directors of one of the Debtors' sham "tribal lenders," Plain Green, LLC ("Plain Green"): Joel Rosette, Ted Whitford, and Tim McInerney (together, the "Tribal Defendants"); (c) former President, Chief Executive Officer, and Chairman of the Board of Think Finance, Kenneth E. Rees ("Rees" and together with the Tribal Defendants, the "Individual Defendants"); and (d) two Silicon Valley venture capital firms that provided funding for the payday lending scheme, Sequoia Capital Operations, LLC, and Technology Crossover Ventures (together with the Individual Defendants, the "Non-Debtor Defendants" and together with the Debtor Defendants, the "Defendants"), alleging violations of state and federal consumer lending and related laws.

7.      Plaintiffs allege that Plain Green was a RICO enterprise created when Rees's former business was shut down by federal regulators.  In a calculated effort to dodge state and federal lending regulations, Rees and his rebranded company, Think Finance, approached the Chippewa Cree Tribe of the Rocky Boy's Reservation (the "Tribe") with an offer to provide everything the Tribe needed to run a payday loan enterprise, in exchange for the Tribe allowing Rees and Think Finance use of its tribal immunity to stymie state and federal regulators.  In return, the Tribe would receive just 4.5% of the scheme's revenues. VT Doc. No. 18.

8.      Plaintiffs, recipients of unlawful payday loans, allege that Defendants made loans without a Vermont lending license and have charged and collected interest at annualized rates of up to 371%, among other illegal practices.  Although the Vermont Attorney General sent a cease-and-desist letter advising Plain Green to immediately cease making and collecting on all loans to Vermont borrowers, the company ignored the letter and continues to operate its lending business in blatant violation of state and federal law.  VT Doc No. 91 at 3.

9.      The original complaint in the Vermont Litigation was filed against certain Defendants on May 13, 2015.  On August 4, 2015, Plaintiffs amended the complaint (the "FAC") to include the Debtor Defendants and additional Non-Debtor Defendants.[9]  VT Doc. No. 18.  In the FAC, Plaintiffs, on behalf

---

[9] Plaintiffs, for themselves and on behalf of the Class and any members thereof, reserve all rights in connection with the Vermont Litigation including the right to name additional defendants as appropriate.  All other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Plaintiffs or the Class or any members thereof are or may be entitled under agreements, at law, in equity, or otherwise, are expressly reserved.

of themselves and all persons who obtained payday loans from and/or through the Defendants, allege, *inter alia*, as a result of the May 2016 Decision (defined below), violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965, ("RICO"), the Vermont Consumer Fraud Act ("VCFA"), and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1639k(1), as well as common law unjust enrichment claims.

10.     The Defendants filed motions to dismiss and to compel arbitration between September and October of 2015.  See VT Doc. Nos. 64-67, 76, 77.  On May 18, 2016, the Vermont District Court issued an opinion denying the motions to compel arbitration and granting in part and denying in part the motions to dismiss (the "May 2016 Decision"), finding that (i) the arbitration and delegation clauses in the loan agreements were unconscionable and unenforceable; (ii) tribal immunity did not bar an action against certain Tribal Defendants for declaratory and injunctive relief; and (iii) Plaintiffs sufficiently alleged facts to support their claims for violations of RICO, the VCFA, and the EFTA and their claim for unjust enrichment. VT Doc. No. 122.

11.     In June 2016, Defendants appealed the May 2016 Decision.  VT Doc. Nos. 130, 131, 133, 134, 140.  On August 22, 2016, the Vermont District Court stayed the Vermont Litigation pending the Second Circuit's decision on appeal.  VT Doc No. 173.  Defendants' appeals of the May 2016 Decision were consolidated and currently remain pending before the Second Circuit.  Gingras v. Rosette, *et al.,* Case No. 16-2019 (2d. Cir.) (the "Appeal").  Briefing in the Appeal is complete and the Second Circuit heard oral argument on May 12, 2017.

12.     The Pennsylvania Attorney General is also prosecuting a civil action against the Debtors and other defendants on behalf of Pennsylvania borrowers in the Eastern District of Pennsylvania (the "Pennsylvania Litigation").     In addition, following the May 2016 Decision, similar putative statewide class actions were filed on behalf of Virginia and Florida borrowers in the Eastern District of Virginia (the "Virginia Litigation"), the Middle District of Florida (the "Florida Litigation"), and this Court (the

"<u>Adversary Proceedings</u>") (together with the Vermont Litigation, the Pennsylvania Litigation, Florida

Litigation, and the Adversary Proceedings, the "<u>Consumer Borrower Litigation</u>").

**B.     The Debtors and the Chapter 11 Cases**

13.     On October 23, 2017 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").  According to the Debtors'

Chief Financial Officer, one purpose behind the Chapter 11 Cases is "to provide for a centralized forum

for the efficient and orderly resolution of the outstanding litigation."  <u>See</u> Declaration of Barney C.

Briggs [Doc. No. 12] (the "<u>First Day Decl.</u>") at 54; <u>see also</u> Bar Date Mot. ¶ 28 ("[a]n important part of

these Bankruptcy Cases will be providing a centralized forum for resolving the disputed claims asserted

in the various lawsuits and any other disputed claims involving the same or similar subject matter that

have not been filed . . . ."); Bar Date Mot. Hr'g Tr. at 10: 12-15 (Debtors' counsel asserted "it's

important that we put a process in place for all of the consumers who may in fact want to assert a claim

to come and assert a claim and to do it by the bar date . . . .").

14.     On December 7, 2017, Plaintiffs filed a motion seeking limited stay relief [Doc No. 181]

(the "<u>Stay Relief Motion</u>") to allow the Second Circuit to issue a ruling on the Appeal.  This Court held

a hearing on the Stay Relief Motion on January 18, 2018, and granted the Stay Relief Motion.  The

order granting the Stay Relief Motion was entered on January 26, 2018 [Doc. No. 272].

**1.     Debtors' Bar Date Order and Notice Program**

15.     On November 21, 2017, this Court entered an order [Doc. No. 137] (the "<u>Bar Date</u>

<u>Order</u>") granting the Debtors' motion [Doc. No. 69] (the "<u>Bar Date Motion</u>") to, among other things,

establish a claims bar date and notice procedures related thereto.  The Bar Date Order set March 1, 2018

at 4:00 p.m. (CT) (the "<u>Bar Date</u>") as the general bar date in these Chapter 11 Cases.

16.     As noted above, in the Bar Date Motion, the Debtors asserted that "[a]n important part

of these Bankruptcy Cases will be providing a centralized forum for resolving the disputed claims

asserted in the various lawsuits and any other disputed claims involving the same or similar subject

matter that have not been filed . . . ."  Bar Date Mot. ¶ 28.  Supposedly in furtherance of that goal, the

Debtors' notice program included a postcard notice (the "Postcard Notice") sent to, among others, "all

individuals that obtained a consumer loan between April 5, 2011 and May 6, 2017 from a sovereign

Native American Tribal lender that sold a loan participation interest in such loan to GPLS."  Bar Date

Motion ¶ 28.

17.    At the hearing on the Bar Date Motion (the "Bar Date Hearing"), counsel for the

Debtors touted the various features of the notice program, including an informational website referenced

on the Postcard Notice, a frequently asked questions portal, a link on the website through which

claimants are able to print a proof of claim form, and a call center for claimants to provide updated

address information.  See Bar Date Hr'g Tr. at 11-12.  Significantly, however, these features do not help

the Consumer Borrowers, most of whom have insufficient information about whether they may have a

claim against the Debtors in the first instance since they likely have no idea who the Debtors are, and

have no understanding of the Debtors' relationship to any tribal lender or the borrowers' loans.

18.    Indeed, Debtors' counsel stated at the Bar Date Hearing that "*these consumer borrowers*

*probably have no idea who Think Finance is because we weren't their lender*."[10]   Ostensibly to

remedy this fundamental problem, the Debtors purported to have created a "claim process that provides

some information, some reason for these folks to put two and two together as to how they might have a

claim from this entity called Think Finance."  Id. at 11:4-6.  This attempt, however, fell egregiously

short.  Indeed, financially and legally unsophisticated borrowers should not be forced to "put two and

two together" to know why they might have rights, much less to vindicate those rights.

19.    Notwithstanding the Debtors' admission that Consumer Borrowers "probably have no

idea who Think Finance is," the **only** entity referenced on the front of the Postcard Notice is Think

---

[10] Bar Date Mot. Hr'g Tr. at 11:2-3, Etkin Decl. Ex A (emphasis added).  Moreover, this contention is wholly inconsistent
with Plaintiffs' claims in the Vermont Litigation, which allege that Debtors' substantial control over the operations of
Plain Green (the nominal lender) made Debtors a lender-in-fact.

Finance.  Moreover, the only detail the Postcard Notice provides to explain its relevance to Consumer

Borrowers is located in the penultimate paragraph on the back of the Postcard Notice in size 8.5 font:

> You are receiving this notice because you may have obtained a consumer loan from a sovereign Native American Tribal lender between April 5, 2011 and May 6, 2017 . . . . Certain of the Debtors may have provided services to the lender and/or invested in an entity that may have purchased a participation interest in your loan. Certain parties have filed litigation asserting claims against one or more of the Debtors related to similar loans. The Debtors deny any liability and the fact that you are receiving this notice does not mean that you have a claim.

20.    Thus, even if, for whatever reason, Consumer Borrowers continue reading beyond the

front of a postcard that references an entity totally unfamiliar to them, the remainder of the Postcard

Notice fails to inform them of the rights at stake.  Although the Debtors proclaim the Postcard Notice

helps Consumer Borrowers put "two and two together," in reality, it provides nothing more than

piecemeal information buried in dense legalese that unnecessarily obfuscates, rather than clarifies, the

right to assert a claim.  For example, there is no identification of the entities that issued the loans, nor is

there any mention of the pending Consumer Borrower Litigation.   Instead, the Debtors vaguely

reference the lenders as "sovereign" Native American tribal lenders and state that "certain of the Debtors

**may** have . . . invested in an entity that **may** have purchased a participation interest in your loan,"

(emphasis added) and then add, "the fact that you are receiving this notice does not mean that you have

a claim."  The Postcard Notice says nothing about the nature of the Consumer Borrowers' potential

claims against the Debtor Defendants, and, in fact, discourages any thought that they have a claim.

21.    Moreover, the recording on the toll-free number referenced in the Postcard Notice and a

statement on the Debtors' website[11] assert that "[t]he Debtors themselves are not lenders or debt

collectors . . . . Receipt of a notice does not mean that you have a claim against any of the Debtors."

Through these misleading statements, the Debtors continue to exploit the Consumer Borrowers by using

the notice process to promote their own view of the merits of potential claims against them.  The

Debtors formed their business to prey upon Consumer Borrowers.  In drafting the form of notice

---

[11] Think Finance, LLC: Consumer Borrower Site, AMERICAN LEGAL CLAIMS SERVICES LLC, (Jan. 23, 2018, 6:50 p.m. (ET)), https://www.americanlegal.com/tfconsumerborrower.

purportedly intended to inform those same Consumer Borrowers of their right to assert claims against the Debtor Defendants, the Debtors' word choice and superfluous commentary on the merits of the Consumer Borrower claims raise serious concerns and clearly fail to fully inform those who were victimized by the Debtors' scheme in the first place.

**2.    Plaintiffs' Request for Appointment of an Official Committee of Consumer Borrowers**

22.    On December 20, 2017, Plaintiffs submitted a letter (the "<u>Dec. 20 Letter</u>") to the Office of the United States Trustee (the "<u>UST</u>") requesting the appointment of an official committee of consumer borrowers to ensure that the rights of the Consumer Borrowers, who stand in a unique position in these Chapter 11 Cases, are adequately represented.[12]  The Debtors and the Committee each submitted a response opposing Plaintiffs' request.  On January 8, 2018, the UST declined the Plaintiffs' request – yet another reason why it is crucial that the Consumer Borrowers be given a collective voice through the class mechanism.  Otherwise, the Debtors will be allowed to succeed in their efforts to prevent Consumer Borrowers from filing claims and protecting themselves.  As of January 18, 2018, according to the Debtors, only 1,730 of the 1.3 million Consumer Borrowers provided "notice" by the Debtors have filed proofs of claim.[13]  Assuming this trend continues, hundreds of thousands of Consumer Borrowers will be left out in the cold, a fundamentally unjust result, which would frustrate "the goal of facilitating creditor compensation." <u>See</u> ¶ 26, *infra*.

## ARGUMENT

## I.    THE COURT SHOULD APPLY RULE 7023 TO THE CLASS CLAIM.

23.    FRCP 23 sets out the requirements for class actions in federal courts.  Bankruptcy Rule 7023, in turn, makes FRCP 23 applicable to adversary proceedings and, by extension, contested matters.[14]  Thus, the requirements for class certification under Bankruptcy Rule 7023 are identical to the

---

[12] A copy of the Dec. 20 Letter is attached to the Etkin Declaration as **Exhibit B.**

[13] <u>See</u> Stay Relief Mot. Hr'g Tr. at 26:23-24 Jan. 18, 2018. A copy of the referenced portions of the Stay Relief Motion Hearing Transcript is attached to the Etkin Declaration as **Exhibit C.**

[14] Bankruptcy Rule 9014, which governs contested matters, makes numerous rules from Part VII of the Bankruptcy Rules, where Bankruptcy Rule 7023 is located, applicable in contested matters.  Although Bankruptcy Rule 7023 is not one of the

requirements for certification under FRCP 23.

24.     Plaintiffs seek certification of the Plain Green Borrower Class pursuant to Bankruptcy Rule 7023 and FRCP 23 solely for purposes of filing and the allowance of a class proof of claim (the "Class Claim").  Application of Bankruptcy Rule 7023 requires a two-step analysis.  First, the Court must determine whether to exercise its discretion under Bankruptcy Rule 9014 to invoke Bankruptcy Rule 7023.  Second, the Court must determine whether the elements of FRCP 23 are satisfied.  See In re Craft, 321 B.R. 189, 198 (Bankr. N.D. Tex. 2005); In re MF Glob. Inc., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014).  Plaintiffs submit that the Court should both invoke Bankruptcy Rule 7023 and certify the Plain Green Borrower Class solely for purposes of allowance of the Class Claim.

25.     Two threshold matters are relevant prior to reaching the Rule 7023 analysis.  First, a claim objection is not a prerequisite to the application of Bankruptcy Rule 7023.  A majority of courts have held that no claim objection is necessary in order to have a "contested matter" triggering the court's discretion under Rule 9014.  See In re Ephedra Prod. Liab. Litig., 329 B.R. 1, 6-7 (S.D.N.Y. 2005) (holding an objection to the class proofs of claim was not a necessary prerequisite to a motion for class certification, and class claimants could have requested class certification even before they filed their proofs of claim).  At least one bankruptcy court in this district has sided with the majority, ruling that a claim objection is not a prerequisite to the invocation of Rule 7023.  See Craft, 321 B.R. at 199.

26.     Second, it is indisputable that class proofs of claim are permissible.  Craft, 321 B.R. at 194 ("The court believes class proofs of claim are consistent with the [Bankruptcy] Code and the [Bankruptcy] Rules and concludes that class proofs of claim are a necessary device to ensure that the relief afforded by the Code is as complete as possible.").  A fundamental goal of the bankruptcy process is "facilitating creditor compensation."  In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989).  The concept of a class proof of claim furthers that goal.  Id. ("Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large

---

rules that Rule 9014 expressly incorporates in contested matters, the "court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply."  Fed. R. Bankr. P. 9014(c) (emphasis added).

easily filed claim.  Applying Rule 23 to filing procedures will bring all claims forward, as contemplated

by the Bankruptcy Code.").

**A.      Sufficient Cause Exists for This Court to Exercise Its Discretion under Rule 9014 to Invoke Bankruptcy Rule 7023 and FRCP 23**

27.      The decision to invoke Bankruptcy Rule 7023 pursuant to Bankruptcy Rule 9014(c) is

discretionary.  Craft, 321 B.R. at 198 ("Rule 9014 delegates wide discretion to the bankruptcy judge in

considering certification of class proofs of claim pursuant to Rule 7023") (citations and quotations

omitted).  Courts in this District have held that where, as here, a FRCP 23 determination has not yet

been made in another court, the appropriate bases for the exercise of discretion under Rule 9014 may

properly include (i) prejudice to the debtor or its other creditors, (ii) prejudice to putative class members,

(iii) efficient estate administration, (iv) the putative class representatives' conduct in the bankruptcy

case, and (v) the status of proceedings in other courts.  Id. at 199; Ephedra, 329 B.R. at 5.  Each of these

factors weighs in favor of applying Bankruptcy Rule 7023.

**1.      Class Members Will Suffer Prejudice Without Class Treatment**

28.      Class members will be prejudiced if the Court does not invoke Rule 7023 because a

significant number of Consumer Borrowers, in the Debtors' own words, "probably have no idea who

Think Finance is" since the Debtor Defendants' payday loan scheme operated through a front entity.

These concerns are heightened in light of the UST's denial of the Plaintiffs' request for the appointment

of a Consumer Borrowers' committee.  If, as Plaintiffs suspect, and as the current trend indicates, only a

miniscule number of the 1.3 million Consumer Borrowers file individual proofs of claim, the claims of

hundreds of thousands of defrauded victims unaware of their rights will be ignored and forgotten.  See

Matter of Am. Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988) (noting that particularly where

individuals may not identify claims as those they are entitled to pursue, "the effort needed to decide

whether to pursue an identified claim means that for many small claims, it is class actions or

nothing"). Without a representative voice speaking on their behalf, even those Consumer Borrowers

who do file proofs of claim will be prejudiced when the Debtors or the Official Committee of

Unsecured Creditors (the "Committee")—whose non-Consumer Borrower constituents stand to be paid in full if the pool of Consumer Borrower claims is sufficiently curtailed—inevitably object to their claims, forcing those of limited means and legal acumen to expend time, effort, and money defending the merits of their relatively small individual claims before a Court hundreds, if not thousands of miles away.

29.    Notably, the claims of Consumer Borrowers comprise a substantial amount of the total claims against the Debtors.  See Debtors' Stay Relief Opp'n ¶ 41 ("Indeed, there may be a substantial number of claims filed by Consumer Borrowers in these Bankruptcy Cases"); see also Bar Date Mot. Hr'g Tr. 11:9-10 (Debtors' counsel estimates there are approximately 1.3 million Consumer Borrowers). As noted in the prospectus filed in connection with the initial public offering of Think Finance's predecessor, "[o]ur management team has overseen the origination of more than $3.0 billion in credit to 1.4 million consumers. . . ."[15]  In comparison, the aggregate unsecured claims of creditors other than Consumer Borrowers appear to total just $7.8 million.  See Debtors' Schedules of Assets and Liabilities [Doc. Nos. 16, 165]. On an individual basis, however, Consumer Borrowers' claims are simply too small to provide an economic incentive for Consumer Borrowers to retain their own counsel to protect their interests in a jurisdiction far away from their homes.  As a result, denying class certification would leave most of the Debtors' victims unrepresented and without a remedy.

30.    Additionally, the Postcard Notice was fundamentally deficient because although the Debtors knew the Consumer Borrowers could not identify Think Finance, they proceeded to send a Postcard Notice in which Think Finance was the only entity named, and all reference to the names of the shell entities from which the Consumer Borrowers obtained payday loans was omitted. Thus, while the notice program may have been calculated so Consumer Borrowers would *receive* the Postcard Notice, mere receipt is meaningless where the notice itself utterly fails to communicate sufficient information to inform recipients why they received it and the nature of their potential claims.

---

[15] Elevate Credit, Inc. Registration Statement Amendment No. 3 at 2 (FORM S-1) (June 3, 2016) (the "Elevate Prospectus"). A copy of the Elevate Prospectus is attached to the Etkin Declaration as **Exhibit D.**

31.     The idea that any Consumer Borrower's failure to file a claim must be a deliberate choice made by a well-informed individual is preposterous. This assumes that each Consumer Borrower would read the Postcard Notice, take time to independently research who "Think Finance" is and how it might relate to them, review and understand the Bar Date Order, calculate the value of their claim based on applicable law, and then ***deliberately choose not to submit*** a claim.  Denying Consumer Borrowers the chance to receive compensation from the Debtors through a court approved representative would be the ultimate injustice under the circumstances of these Chapter 11 Cases.

32.     Accordingly, application of Rule 7023 and certification of the Class will cure the defects in the Debtors' notice program, preserve the rights of all Consumer Borrowers, and prevent significant prejudice to innocent, financially and legally unsophisticated creditors who have already suffered financial losses at the hands of the Debtor Defendants.

## 2.     Invoking Rule 7023 Will Not Prejudice the Debtors or Other Creditors

33.     Applying Bankruptcy Rule 7023 to permit class treatment of the Class Claim, "a necessary device to ensure that the relief afforded by the Code is as complete as possible[,]" see Craft, 321 B.R. at 194, will not prejudice the Debtors or any other creditors.  Rather, class treatment will prevent the Debtors, the Committee, and other parties in interest from having to review several thousand individual proofs of claim filed by even a miniscule fraction of eligible Consumer Borrowers,[16] and will prevent the burden on the Court of reviewing and conducting hearings on the claim objections the Debtors and/or the Committee inevitably will file with respect to each such claim.  Certification of a Class would streamline that otherwise unwieldly process and obviate the need to litigate objections to thousands of individual claims and waste estate and judicial resources.

34.     In the Bar Date Motion, the Debtors stated that "an important part of these Bankruptcy Cases will be providing a centralized forum for resolving" Consumer Borrowers' claims against them. See Bar Date Mot. ¶ 28.  At the Bar Date Hearing, the Debtors reaffirmed the importance of providing a

---

[16] See Stay Relief Mot. Hr'g Tr. at 26:23-24, Etkin Decl. Ex. C.  (Debtors' counsel notes receipt of 1,730 claims, which translates to a 0.13 percent return rate on the 1.3 million notices sent).

centralized process for the assertion of all Consumer Borrowers' claims, in stating "it's important that we put a process in place for all of the consumers who may in fact want to assert a claim to come and assert a claim and to do it by the bar date . . . ." Bar Date Mot. Hr'g Tr. at 10: 12-15.  Given the fact that most Consumer Borrowers will not even know whether they have a claim, let alone whether they "want to assert a claim," invoking Rule 7023 and certifying the Class is the optimal mechanism (and perhaps the only logistically feasible way) to satisfy the Debtors' stated goal of providing a centralized and clear path to ensure all Consumer Borrowers' claims are asserted and resolved.

### 3. Efficient Estate Administration

35.     The use of a class proof of claim in these Chapter 11 Cases is more efficient than the filing of individual claims and will assist Debtors and this Court in streamlining the claims resolution process.  When considering the extension of FRCP 23 to a bankruptcy case, a "pervasive theme is avoiding undue delay in the administration of the case" and preventing a class proof of claim from "'gum[ming] up the works.'"  Ephedra, 329 B.R. at 5, quoting In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997).   A motion for class certification need not be filed immediately upon the chapter 11 filing so long as it is filed early enough in the proceedings to avoid improperly affecting the chapter 11 process. Ephedra, 329 B.R. at 4-5.

36.     Here, this Motion is being filed in advance of the Bar Date. Moreover, the Debtors are well aware of the nature of the Consumer Borrower claims and the class-wide assertion of those claims.[17]  Thus, this case is distinguishable from In re Musicland Holding Corp., 362 B.R. 644, 656 (Bankr. S.D.N.Y. 2007), where the court found that granting the motion at that juncture would substantially disrupt the administration of the estate.  In Musicland, when the certification motion was filed, creditors had already voted and a confirmation hearing had begun.  Id.   That is far from the case here, where the Bar Date is approximately a month away.  The landscape of these bankruptcy cases continues to change, and unlike the facts in Musicland, confirmation here is not imminent.  In fact, no

---

[17] See Stay Relief Mot. Hr'g Tr. at 16:13-16, Etkin Decl. Ex. C.  (Debtors' counsel notes Vermont Litigation is a "purported nationwide class action litigation against the Debtors").

plan of reorganization has been filed and the Debtors have recently sought to extend exclusivity through June. <u>See</u> Doc. No. 259. Additionally, since the Debtors have been well aware of the Vermont Litigation for years, certification of the Class for purposes of the Class Claim will have minimal, if any impact, on the administration of the estate as distinct from the circumstances facing the <u>Musicland</u> Court.

37.     To the contrary, certifying the class so that all Consumer Borrowers' claims may be addressed at once and through a single class proof of claim is more efficient and cost-effective for all involved. Given the hundreds of thousands of members of the Plain Green Borrower Class, the administration of individual claims will require exponentially more time and effort than the administration of one Class Claim. Consequently, rather than delaying the debtors' reorganization, the application of Rule 7023 to the Class Claim will streamline the process, reduce estate costs, and provide for a more certain pathway to recovery for the Debtors' largest group of creditors.

### 4.     Plaintiffs' Conduct in Chapter 11 Cases

38.     In <u>Craft</u>, the court found that the putative class representatives had waited too long to seek invocation of Rule 7023 where (1) they did not seek to invoke Rule 7023 until the debtor moved to strike their proofs of claim; (2) the hearing thereon was scheduled approximately seventeen months after the petition date; and (3) the court had already set a stringent schedule for trying claim objections that was to begin within seven weeks of the hearing. 321 B.R. at 199. In this case, the Plaintiffs have monitored and been active in the Chapter 11 Cases. The Plaintiffs filed this Motion in preparation for their filing of timely proofs of claim in their individual capacity and a class proof of claim on behalf of themselves and the Plain Green Borrower Class and its members for damages resulting from violations of state and federal law by the Debtor Defendants in connection with the Consumer Borrowers' loans.

39.     Further, Plaintiffs submitted the Dec. 20 Letter to the UST requesting the appointment of an official borrowers' committee. In connection with these efforts, Plaintiffs engaged in various discussions with counsel for other Consumer Borrowers. Plaintiffs also filed the Stay Relief Motion

seeking to allow the Second Circuit to issue a ruling on the pending appeals from the Vermont District Court's May 2016 Decision, which was granted. Thus, since Plaintiffs have taken an active role in these Chapter 11 Cases, and the landscape of these bankruptcy cases continues to change at this early stage, it cannot be said that the Plaintiffs have waited too long to seek invocation of Rule 7023.

### 5.    Status of the Vermont Litigation

40.    In deciding whether to apply Bankruptcy Rule 7023, courts consider the status of the litigation and particularly, "whether the class was certified pre-petition[.]" MF Global, 512 B.R. at 763. However, the lack of prepetition certification is not dispositive where, as here, obtaining class certification pre-petition was not feasible due to the procedural posture of the Vermont Litigation.

41.    At its initial stages, the Vermont Litigation was proceeding apace and had not yet reached the class certification stage as of the Petition Date. Cf. id. (noting that where the claims of a class arose in tandem with the conduct that led to the debtor's SIPA liquidation, "the issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date"); In re Connaught Group, Ltd., 491 B.R. 88, 98-100 (Bankr. S.D.N.Y. 2013) (same).

42.    As noted above, the FAC in the Vermont Litigation was filed on August 4, 2015. After briefing and argument on Defendants' motions to dismiss and compel arbitration, the Vermont District Court issued the May 2016 Decision, which the Defendants appealed to the Second Circuit. At the time of the filing of these Chapter 11 Cases in October 2017, the Appeal – and a stay pending the disposition of the appeal – was already in place, preventing Plaintiffs from seeking class certification in the Vermont District Court. Given this procedural history and status, the fact that a class was not certified prepetition is of little moment with respect to the Rule 7023 analysis.

43.    Indeed, numerous courts have applied Bankruptcy Rule 7023 where proposed classes had not been certified prepetition. See, e.g., In re F-Squared Investment Mgmt., LLC, 546 B.R. 538, 547 (Bankr. D. Del. 2016) (denying objection to class claim and citing Kaiser, Connaught, and MF

Global); In re First Interregional Equity Corp., 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (class treatment appropriate though class action was not filed and class was not certified pre-petition); In re CommonPoint Mortg. Co., 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002) (certifying class that had not been certified prepetition under FRCP 23 but class representative timely filed proofs of claim and nine months later sought class treatment); In re First Alliance Mortg. Co., 269 B.R. 428, 442-43, 447-48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Bankruptcy Rule 7023 even though class had not previously been certified and motion for class treatment was filed after objection).

44.      In In re Kaiser Group Int'l, Inc., 278 B.R. 58 (Bankr. D. Del. 2002)    , the court rejected the notion that filing a class claim on behalf of an uncertified class is categorically impermissible, holding that "[Bankruptcy] Rule 3001(b) does not prohibit the filing of class claims by a putative class representative.  To hold otherwise 'would effectively prohibit the use of class actions in bankruptcy altogether' unless the class action had proceeded to a stage where a class representative had been appointed pre-petition." 278 B.R. at 62-63 (citing In re Zenith Labs., Inc., 104 B.R. 659, 663 (D.N.J. 1989)).  The court added that "[w]e do not believe that the timing of the bankruptcy filing should be determinative of whether a class proof of claim should be permitted." 278 B.R. at 62-63.  Similarly, the Chaparral Energy court recently exercised its discretion to apply Bankruptcy Rule 7023 even though the class action at issue had been pending for almost five years before the bankruptcy cases were filed without a class being certified, noting that "the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances." Chaparral, 571 B.R. at 646-47.[18]

45.      Accordingly, for the reasons stated above, the Plaintiffs respectfully submit that this Court should exercise its discretion under Rule 9014 to invoke Rule 7023 in these Chapter 11 Cases so as to certify the Class.

---

[18] It bears noting that the Bankruptcy Rules further recognize the status of a class action plaintiff in Bankruptcy Rule 2019(b)(2)(C), which exempts a class action representative from the 2019 filing requirements.

## II.      THE ELEMENTS OF CLASS CERTIFICATION ARE SATISFIED.

46.      Once Bankruptcy Rule 7023 has been deemed applicable, "the court must determine whether under Rule 7023, a class should be certified and whether the putative representatives are appropriate to act as fiduciaries for their class." Craft, 321 B.R. at 198.   FRCP 23(a) provides the prerequisites for maintaining a class action, while FRCP 23(b) sets forth the additional requirements for maintenance of a class action.  "Rule 23 is a remedial rule which should be construed liberally to permit class actions," particularly in cases involving allegations of fraudulent conduct, "where the class action device can prove effective in deterring illegal activity." In re Enron Corp. Sec. Deriv. & ERISA Litig., 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006).   In ruling on a motion for class certification, the court should not delve into the merits of plaintiffs' claims or the defenses to the lawsuit.  Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 297 n.29 (5th Cir. 2001) ("We do not consider the merits of a case when reviewing class certification."); In re Lease Oil Antitrust Litig., 186 F.R.D. 403, 419 (S.D. Tex. 1999) ("In evaluating a motion for class certification . . . the court does not have the authority to conduct a preliminary inquiry into the merits of the case, and hence the substantive allegations contained in the complaint are accepted as true.").

### A.      The Class Should Be Certified Under FRCP 23(a)

47.      FRCP 23(a), which lists the prerequisites for maintaining a class action, provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." See FRCP 23(a).  For the reasons discussed below, the Plain Green Borrower Class and its representatives satisfy each of these prerequisites.

#### 1.      The Class Is so Numerous that Joinder of All Members Is Impracticable

48.      The numerosity requirement is satisfied when a potential class is so numerous that joinder of all members is impracticable.  Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th

Cir. 1999). Because a reasonable estimate of the number of purported members satisfies the numerosity requirement, a precise number is not required for certification. *Id.* (accepting a range of class members to satisfy numerosity); Henry v. Cash Today, Inc., 199 F.R.D. 566, 569 (S.D. Tex. 2000) ("Plaintiffs are permitted to reasonably approximate the size of the class to satisfy their burden."); Enron, 529 F. Supp. 2d at 672 (numerosity only requires "'some evidence or a reasonable estimate of the number of purported class members'") (quoting Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981)).

49.     Here, the Plain Green Borrower Class consists of all persons who took out a loan issued in the name of Plain Green (with certain exceptions provided in the class definition on p. 1 n.2). There can be no doubt that the numerosity requirement is satisfied here. While the precise number of Plain Green Borrower Class members is unknown to Plaintiffs at this time, it is believed to be in the hundreds of thousands. Indeed, Debtors contend that they provided notice to 1.3 million consumer borrowers in this bankruptcy proceeding, (see Bar Date Mot. Hr'g Tr. 11:10), including individuals who took out loans issued in the name of Plain Green and two other purported tribal affiliated lenders to whom Debtors claim to have provided "services," see First Day Decl. ¶4. Thus, the Plain Green Borrower Class clearly satisfies the numerosity requirement.

### 2.     There Are Questions of Law and Fact Common to the Class

50.     Under FRCP 23(a)(2), there must exist questions of law or fact that are common to the Class. The commonality test under Rule 23(a)(2) is "not demanding." Mabary v. Hometown Bank, N.A., No. 4:10-cv-3936, 2011 U.S. Dist. LEXIS 134437, at *5 (Nov. 21, 2011 S.D. Tex.). Commonality may be satisfied with a single common question of law or fact. See id.; see also Lightbourn v. Cnty. of El Paso, 118 F.3d 421, 426 (5th Cir. 1997); Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993). Here, there are multiple questions of law and fact that are common to the Class.

51.     Among the questions of law and fact common to the Class are, as alleged in the operative complaint in the Vermont Litigation: (a) whether the Debtor Defendants participated in the collection of unlawful debt in violation of RICO, 18 U.S.C. § 1962(c); (ii) whether the Debtor

Defendants engaged in a pattern of racketeering, 18 U.S.C. § 1962(c); (iii) whether the Debtor

Defendants engaged in a scheme to avoid the application of state interest rate limits; and (iv) injuries

sustained by the members of the Class and the appropriate measure of damages.    Thus, the

commonality requirement is satisfied here.

> **3.    The Claims or Defenses of the Representative Parties are Typical of the Claims or Defenses of the Class**

52.    FRCP 23(a)(3) requires class representatives to present claims that are typical of the

class.  The test for typicality, like the test for commonality, is "not demanding."  Mabary, 2011 U.S. Dist.

LEXIS 134437, at *6; Lightbourn, 118 F.3d at 426; Enron, 529 F. Supp. 2d at 673.  Typicality "focuses

on the similarity between the named plaintiffs' legal and remedial theories and the theories of those

whom they purport to represent."  Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002).  Thus,

"[t]he proper inquiry is whether other members of the class have the same or similar injury, whether the

action is based on conduct not special or unique to the named plaintiffs, and whether other class members

have been injured by the same course of conduct.  Longden v. Sunderman, 123 F.R.D. 547, 556 (N.D.

Tex. 1988) (citation omitted).  "If the claims arise from a similar course of conduct and share the same

legal theory, factual differences will not defeat typicality."  In re Great S. Life Ins. Co. Sales Pracs. Litig.,

192 F.R.D. 212, 216 (N.D. Tex. 2000).

53.    Here, Plaintiffs' claims are typical of the claims of the other members of the Plain Green

Borrower Class because both the Plaintiffs' and the Class members' claims arise from the same conduct

of the Debtor Defendants.  See Enron, 529 F. Supp. 2d at 674 (finding typicality requirement met in a

federal securities action based on allegations of material misrepresentations and a course of conduct to

defraud investors and artificially inflate the price of publicly traded securities which purportedly induced

lead plaintiffs and the putative class to purchase securities).  Indeed, like all other Class members,

Plaintiffs: (i) took out loans issued in the name of Plain Green; (ii) were charged interest rates at least

two times the applicable legal limits in their respective states; and (iii) were damaged thereby.  See id.

(finding typicality where plaintiffs' claims arise from the same alleged fraudulent course of conduct);
see also Stirman, 280 F.3d at 562 (finding typicality requirement met when similar to all class members,
proposed lead Plaintiff "purchased [the defendant company's] securities during the Class Period and
allegedly suffered damages as a result of Defendants' alleged conduct").  As such, Plaintiffs are typical
class representatives.

4.       **The Representative Parties Will Fairly and Adequately Protect the Interests of the Class**

54.      "To satisfy the adequacy requirement of class certification, Plaintiffs must [show] that
the representative[s] will vigorously prosecute the interests of the class through qualified counsel."
Dartley v. Ergobilt, No. 3:98-CV-1442-M, 2001 U.S. Dist. LEXIS 20631, at *5 (N.D. Tex. Dec. 3,
2001) (quotations omitted).      Thus, FRCP 23's adequacy requirement "encompasses class
representatives, their counsel, and the relationship between the two." Stirman, 280 F.3d at 563. Here,
the Plaintiffs, Berman Tabacco and Gravel & Shea, P.C. ("Class Counsel"), and Lowenstein Sandler
LLP and Loewinsohn Flegle Deary Simon LLP ("Bankruptcy Counsel") more than satisfy the FRCP 23
adequacy requirements.

55.      Plaintiffs submit that there is a substantial basis for finding that Plaintiffs, along with
Class Counsel and Bankruptcy Counsel, will adequately protect the interests of the Class.  Plaintiffs
have been committed to representing the interests of Plain Green borrowers for nearly three years.  On
May 13, 2015, Plaintiffs filed an initial class action complaint in the Vermont Litigation against certain
Individual Defendants affiliated with the Tribe in connection with Plaintiffs' Plain Green loans.  On
August 4, 2015, Plaintiffs amended their complaint in the Vermont Litigation to assert class action
claims against additional defendants, including the Debtor Defendants and have vigorously represented
the interests of the Class, including in connection with Defendants' Appeal of the May 2016 Decision.
The Vermont Litigation was the first consumer borrower class action brought against the Debtor
Defendants in connection with their role in the Plain Green payday lending scheme.  Plaintiffs have
demonstrated their commitment to protecting the interests of the Class and will continue to do so.

56.     Plaintiffs have also demonstrated their adequacy through the selection of Class Counsel and Bankruptcy Counsel.  Bankruptcy Counsel has vast experience in the representation of class action plaintiffs in the context of complex chapter 11 bankruptcy proceedings.  Class Counsel also has considerable experience in the representation of plaintiffs in complex class action litigation.  Berman Tabacco is a nationally recognized class action firm that has recovered billions of dollars for class members and is eminently qualified to prosecute the Class Claim. Gravel & Shea, P.C. has also both prosecuted and defended class actions in Vermont state and federal courts.  Mr. Byrne of Gravel & Shea, P.C. has also spent the last decade asserting claims against sovereign entities to force them to comply with the law.  His experience with *Ex Parte* Young actions gives him an excellent understanding of the theoretical basis for sovereignty and its limits on issues that bear on Plaintiffs' claims.  Plaintiffs fully understand their obligations to the Class, and are willing and able to undertake these to ensure the vigorous prosecution of the Class Claim, and in turn, cohesive representation in this Chapter 11 Case.

57.     Accordingly, based on their demonstrated commitment and ability to oversee the class action in a cohesive and coordinated fashion, Plaintiffs respectfully request that this Court find that the elements for class certification under Rule 7023 and FRCP 23(a) are satisfied, and that Plaintiffs and Class Counsel are appropriate fiduciaries for the Plain Green Borrower Class.

**B.     The Class Should Be Certified Under FRCP 23(b)**

58.     Having satisfied FRCP 23(a), the Plaintiffs seek to certify the Class for purposes of the Class Claim under FRCP 23(b)(3).  FRCP 23(b) provides, in pertinent part, that a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Unger v. Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005).  These requirements are satisfied here.

**1.  Questions of Law Or Fact Common To Class Members Predominate Over Questions Affecting Only Individual Members**

59.     Under Rule 23(b)(3), issues subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.  Great S. Life, 192 F.R.D. at 216.  Typically, where a "common nucleus of operative facts exists, the predominance factor is met."  Enron, 529 F. Supp. 2d at 678.

60.     Here, the Plain Green Borrower Class seeks damages on behalf of all persons who took out loans issued in the name of Plain Green, a front created by the Debtor Defendants and others.  The damages suffered by Plaintiffs and members of the Class arise from and were caused by the same nucleus of operative facts concerning the statutory violations and misconduct of the Debtor Defendants.  Consequently, issues subject to generalized proof against the Debtor Defendants are: (a) whether the Debtor Defendants participated in the collection of unlawful debt in violation of RICO, 18 U.S.C. § 1962(c) as alleged in the FAC; (ii) whether the Debtor Defendants engaged in a pattern of racketeering, 18 U.S.C. § 1962(c); (iii) whether the Debtor Defendants engaged in a scheme to avoid the application of state interest rate limits; and (iv) injuries sustained by the members of the Class and the appropriate measure of damages.

61.     Each of the issues listed above arises from the same nucleus of operative facts and is subject to generalized proof applicable to the Plain Green Borrower Class as a whole.  Accordingly, Plaintiffs submit that the predominance factor has been satisfied.  See Enron, 529 F. Supp. 2d 677-78.

**2.  A Class Proof of Claim Is the Superior Method of Resolving the Claims of the Plain Green Borrower Class**

62.     Courts in the Fifth Circuit recognize the efficacy of the class action device for redressing injury to large groups of individuals harmed by a common set of operative facts.  See, e.g., Boos v. AT&T, Inc., 252 F.R.D. 319, 326 (W.D. Tex. 2008), modified (Sept. 17, 2008); In re Elec. Data Sys. Corp. Sec. Litig., 226 F.R.D. 559, 570-71 (E.D. Tex. 2005), aff'd, 429 F.3d 125 (5th Cir. 2005); In re Rodriguez, 432 B.R. 671, 701 (Bankr. S.D. Tex. 2010), aff'd, 695 F.3d 360 (5th Cir. 2012), and aff'd, 695 F.3d 360 (5th Cir. 2012). A class action is the superior method of resolving a claim if

class certification would be an efficient means of adjudicating the claim. See O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 737 (5th Cir. 2003). The matters pertinent to the superiority factor under FRCP 23(b)(3) include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, a class proof of claim is superior to other available methods for the fair and efficient adjudication of the controversy and the case law regarding the superiority of a class action is equally applicable here given the incorporation of Rule 23(b)(3) into Bankruptcy Rule 7023.

63.    The first factor weighs in favor of a class action here. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. "[O]ne of the 'very core' purposes of the class action is to 'overcome the problem that small recoveries do not provide the incentive for any individuals to bring solo action prosecuting his or her rights." Mabary, 2011 U.S. Dist. LEXIS 134437, at *9 (citation omitted). Here, in fact, notwithstanding that Debtors have touted their effort to provide notice of the claims process to 1.3 million Consumer Borrowers, including members of the proposed Class, as of January 18, 2018, only a small fraction of those individuals – barely more than one tenth of one percent – have come forward on an individual basis to submit a proof of claim.[19] Moreover, "[a]s long as the named plaintiffs seek to maximize the recovery for the class, little else matters." Lehocky v. Tidel Techs., Inc., 220 F.R.D. 491, 510 (S.D. Tex. 2004). That is, indeed, the case here, where "this is a sophisticated action involving extensive discovery that would be impractical for any one individual to control." Elec. Data, 226 F.R.D. at 570-71. The second factor also weighs in favor of class

---

[19] See Stay Relief Mot. Hr'g Tr. at 26: 23-24, Etkin Decl. Ex. C. (Debtors' counsel notes receipt of 1,730 claims, which translates to a 0.13 percent return rate on the 1.3 million notices sent).

certification, as there are currently few individual proofs of claim filed as compared to the number of potential members of the Plain Green Borrower Class.

64.    Finally, the third and fourth factors favor class certification because concentrating claims of the Plain Green Borrower Class through a collective process is desirable to promote consistent adjudications and efficiency as well as limit overall cost of litigating potentially thousands of individual claims.  Plaintiffs are unaware of any difficulty that would be encountered in the management of the Class Claim process that would preclude its maintenance on a class-wide basis. To the contrary, the issues presented would be repeated countless times over if proofs of claim were brought individually, and each Class member were required to file and litigate a separate claim.  Further, there can be no question that a list of Class members is readily available to Debtors, as evidenced by the 1.3 million notices that the Debtors disseminated to consumer borrowers in connection with the Bar Date.  Thus, notice to members of the Class could easily be achieved.  Therefore, a class action is superior here because it is "an efficient means of adjudicating the claim." See Boos, 252 F.R.D. at 326.  Any other method of claims resolution would lead to inefficient and costly administration, and a significant risk of conflicting judgments, not to mention the disenfranchising of hundreds of thousands of Class members who for reasons that were unavoidable did not or could not file an individual proof of claim.  See ¶ 28 supra.

65.    Thus, Plaintiffs respectfully request that this Court find the elements for class certification under Rule 7023 are satisfied, and that the Plaintiffs are appropriate fiduciaries for the Plain Green Borrower Class.

## **CONCLUSION**

66.    For all of the foregoing reasons, Plaintiffs respectfully request that an order, substantially in the form submitted herewith, be entered (i) finding that Bankruptcy Rule 7023 is applicable under Bankruptcy Rule 9014, (ii) certifying the Plain Green Borrower Class under Bankruptcy Rule 7023 and FRCP 23 for purposes of the assertion and allowance of the Class Claim; (iii) appointing Plaintiffs as the class representatives and appointing its selection as Class Counsel and Bankruptcy Counsel; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: January 31, 2018                    Respectfully Submitted,


                                            /s/ *Daniel P. Winikka*
                                            Daniel P. Winikka
                                            **Loewinsohn Flegle Deary Simon LLP**
                                            12377 Merit Drive
                                            Suite 900
                                            Dallas, Texas 75251
                                            Telephone: (214) 572-1700
                                            Facsimile: (214) 572-1717
                                            danw@lfdslaw.com

                                            Michael S. Etkin
                                            Andrew Behlmann
                                            Nicole Fulfree
                                            **Lowenstein Sandler LLP**
                                            One Lowenstein Drive
                                            Roseland, New Jersey 07068
                                            Telephone: (973) 597-2500
                                            Facsimile: (973) 597-2333
                                            metkin@lowenstein.com
                                            abehlmann@lowenstein.com
                                            nfulfree@lowenstein.com

                                            *Bankruptcy Counsel to Plaintiffs*

                                            -and-

                                            Matthew B. Byrne
                                            **Gravel & Shea PC**
                                            76 St. Paul Street, 7th Floor, P.O. Box 639
                                            Burlington, VT 05402-0369
                                            Telephone: (802) 658-0220

                                            Kathleen Donovan-Maher
                                            Steven Buttacavoli
                                            Steven L. Groopman
                                            **Berman Tabacco**
                                            One Liberty Square
                                            Boston, MA  02109
                                            Telephone: (617) 542-8300

                                            *Class Counsel to Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, that on this 31st day of January, 2018, he caused to be served a true and correct copy of this Notice, by electronically filing it with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Daniel P. Winikka*