| | |
|---|---|
| KELLETT & BARTHOLOW PLLC | Kristi C. Kelly* (pro hac vice) |
| Theodore O. Bartholow, III ("Thad") | Andrew J. Guzzo* (pro hac vice) |
| Texas Bar No. 24062602 | Casey S. Nash, Esq.,* (pro hac vice) |
| Karen L. Kellett | KELLY & CRANDALL, PLC |
| Texas Bar No. 11199520 | 3925 Chain Bridge Road, Suite 202 |
| 11300 N. Central Expy., Ste 301 | Fairfax, VA 22030 |
| Dallas, Texas 75243 | (703) 424-7572 |
| Phone: (214) 696-9000 | (703) 591-0167 Facsimile |
| Fax: (214) 696-9001 | Email: kkelly@kellyandcrandall.com |
| | Email: aguzzo@kellyandcrandall.com |
| *Counsel for Plaintiffs Patrick Inscho, Darlene Gibbs, Stephanie Edwards, Lula Williams, and Lawrence Mwethuku* | Email: casey@kellyandcrandall.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| THINK FINANCE, LLC, *et al.*, | : | Chapter 11 |
| | : | |
| | : | Case No. 17-33964 (HDH) |
| Debtors. | : | |
| | : | (Jointly Administered) |
| _____ | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE**
**DEBTORS' EXPERT HOWARD BEALES**

# TABLE OF CONTENTS

**I.  INTRODUCTION** .................................................................................................................. **2**

**II.  BACKGROUND** ................................................................................................................... **3**

**III.  LEGAL STANDARD** ........................................................................................................ **4**

**IV.  ARGUMENT** ....................................................................................................................... **5**

    **A.**  Beales' proffered testimony on the benefits of usurious loans should be excluded because it is irrelevant and contrary to law. ................................................................................... **5**

    **B.**  Beales' proffered testimony describing the Debtors' marketing materials and opining on the clarity of the materials to an average consumer will not assist the factfinder and is irrelevant. ............................................................................................................................... **7**

    **C.**  Beales' testimony should be excluded because he provides improper legal arguments under the guise of an expert. ................................................................................................. **8**

    **D.**  Beales' cost/benefit analysis is inconsistent with the legal theories advanced in this case, which are premised on the collection of unlawful debt. ..................................................... **10**

    **E.**  Beales' testimony is unreliable *ipse dixit* testimony, which is not based on any principles or methodologies. ............................................................................................................... **13**

**V.  CONCLUSION** .................................................................................................................. **15**

# **TABLE OF AUTHORITIES**

**CASES**

*Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997) .......................................................................... 10

*Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222 (N.D. Ala. 2000) *aff'd*, 284 F.3d 1237 (11th Cir. 2002) .......................................................................................................................... 6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ..................................................................... 11, 12

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) .................................................. 4, 5, 13

*ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807 (E.D. Va. 2011) ................................ 15

*Fisher v. Halliburton*, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ..................................... 5, 10

*French v. Allstate Indem. Co.*, 637 F.3d 571 (5th Cir. 2011)………………………………….. 5

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................................ 13

*In re Air Crash at New Orleans,* 795 F.2d 1230 (5th Cir. 1986) ................................................... 9

*In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) .............................................. 10

*In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759 (Bankr. E.D. Va. 2012) ................................... 4

*JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*, No. CV 08-04310, 2009 WL 8591607 (C.D. Cal. July 14, 2009) ........................................................................................................................ 8

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1997) ................................................................. 13

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005) ............... 6,7

*Martinez v. Rabbit Tanaka Corp.*, 2006 WL 5100536 (S.D. Fla. Jan. 6, 2006) ............................ 7

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) ....................................................... 13

*Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768 (9th Cir. 2002) ................................ 4

*Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776 (N.D. Tex. 2013) .................................. 5

*Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185 (4th Cir. 1990) .............................................. 8

*Rembrandt Soc. Media, LP v. Facebook, Inc.*, 2013 WL 6327852 (E.D. Va. Dec. 3, 2013) ....... 14

*Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992) ....................................................................... 10

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, No. 1-12-CV-00033-JRN, 2013 WL 12076934 (W.D. Tex. Nov. 8, 2013) .................................................................. 13

*Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007) ............................................................. 9,10

*United States v. Angleton*, 269 F. Supp. 2d 868 (S.D. Tex. 2003) ................................................. 8

*United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000) ................................................................ 4

*United States v. Philip Morris USA*, 316 F. Supp. 2d 19 (D.D.C. 2004) ......................................... 4

## STATUTES

18 U.S.C. § 1961 .............................................................................................................................. 3

18 U.S.C. § 1962 .............................................................................................................................. 3

VA. CODE ANN. § 6.2-1501 .............................................................................................................. 2

VA. CODE ANN. § 6.2-1541 .............................................................................................................. 3

VA. CODE ANN. § 6.2-303 ................................................................................................................ 2

VA. CODE ANN. § 6.2-305 ................................................................................................................ 3

## OTHER AUTHORITIES

Christopher L. Peterson, *"Warning: Predatory Lender"—A Proposal for Candid Predatory Small Loan Ordinances*, 69 WASH & LEE L. REV. 893 (2012) .......................................... 2

Federal Judicial Center, Reference Manual on Scientific Evidence (3d ed. 2011) ...................... 12

John W. Edmonds, *Virginia Law of Interest and Usury*, 10 U. RICH. L. REV. 77 (1975) ............. 2

Pope Francis, Address to National Anti-Usury Council (Feb. 3, 2018) ........................................ 2

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
DEBTORS' EXPERT HOWARD BEALES**

Plaintiffs, Patrick Inscho, Darlene Gibbs, Stephanie Edwards, Lula Williams, and Lawrence Mwethuku (collectively, "Plaintiffs"), on behalf of themselves and all individuals similarly situated, by counsel, submit this memorandum in support of their Motion to Exclude Debtors' Expert Howard Beales.

Debtors seek to improperly introduce the testimony of Howard Beales to offer testimony that is either wholly irrelevant or contrary to the law. In spite of Virginia's longstanding and clear policy against usurious loans, Debtors seek to introduce the testimony of Howard Beales "to address the importance of the market for small dollar loans such as the products offered by Great Plains and Plain Green for consumers, including the benefits that such products may offer to particular consumers." (Ex. 1, Beales Report ¶ 5). Beales advances three primary opinions: that the loans are beneficial to Virginia consumers irrespective of their illegality under Virginia law; that the marketing materials used by Plain Green and Great Plains are "straightforward"; and that a cost-benefit analysis must be conducted on an individual basis to determine damages.

These opinions must be rejected for five separate reasons: (1) the testimony on the benefits of usurious loans should be excluded because it is irrelevant and contrary to law; (2) the testimony related to the marketing materials and their clarity will not assist the factfinder and is irrelevant; (3) the testimony provides improper legal arguments under the guise of an expert; (4) testimony outlining a cost/benefit analysis must be excluded because it is inconsistent with the legal theories advanced in this case; and (5) the testimony is not based on any principles or methodology. For these reasons, as well as the other reasons discussed below, Beales' opinion should be excluded in its entirety.

## I. INTRODUCTION

As early as 1730, Virginia enacted its first usury law, which capped interest rates at 6 percent. John W. Edmonds, *Virginia Law of Interest and Usury*, 10 U. RICH. L. REV. 77 (1975) (citing 4 Hennings Stat. 194). Even in this modern era where "state-by-state lobbying campaigns" have persuaded state legislators to reverse "nearly three hundred years" of prohibitions against "double- or even single-digit interest rate caps," Virginia has remained committed to its *longstanding* view that its residents should be protected from high-interest loans. Christopher L. Peterson, *"Warning: Predatory Lender"—A Proposal for Candid Predatory Small Loan Ordinances*, 69 WASH & LEE L. REV. 893, 896 (2012) (providing historical context on usury laws).[1] Accordingly, Virginia's Consumer Finance Act prohibits a person from charging an annual percentage rate exceeding 12% without first obtaining a consumer finance license from the Commonwealth. VA. CODE ANN. §§ 6.2-1501(A), 6.2-303(A).

This case involves an illegal lending enterprise established and operated by Debtors to make high interest loans to Virginia consumers with annual percentage rates in excess of 440%—more than 35 times Virginia's 12% interest rate cap. *See* VA. CODE ANN. §§ 6.2-1541(A), 6.2-303. Plaintiffs are five consumer borrowers from Virginia that challenge Debtors' conduct, which violated Virginia's Consumer Finance Act and RICO, by collection or receipt of the proceeds from the illegal loans.

---

[1] Usury laws are not unique to Virginia or the United State of America. In fact, about "a dozen Biblical passages suggest that usurious lending, especially to the poor, is a grave sin." Peterson, *supra*, at 896, n.9. Echoing these sentiments, Pope Francis recently explained that "Usury is a serious sin: it kills life, tramples on the dignity of people, is a vehicle for corruption and hampers the common good. It also weakens the social and economic foundations of a country." Pope Francis, Address to National Anti-Usury Council (Feb. 3, 2018), *available at* https://zenit.org/articles/pope-francis-usury-humiliates-and-kills.

## II. BACKGROUND

Plaintiffs' claims against Debtors are premised on the theory that Debtors collected unlawful debts from Virginia consumers. Plaintiffs allege claims for violations of Virginia's Consumer Finance Act, RICO, and unjust enrichment. Each of Plaintiffs' theories of liability, and by extension theory of damages, is based on the collection or receipt of proceeds arising from unlawful debt. In particular, Virginia law provides that "any principal or interest *paid*" on a loan exceeding 12% "shall be recoverable by the person by or for whom payment was made." VA. CODE ANN. § 6.2-1541 (emphasis added). In addition, consumers are entitled to recover "twice the amount of interest paid during the two years preceding the date of the filing of the action." VA. CODE ANN. § 6.2-305. Accordingly, irrespective of the reason why each person took out the loan, the amount of recovery may be calculated using simple arithmetic, *i.e.*, the amount of principal or interest paid on the illegal loan.

Similarly, Plaintiffs' RICO claims against Debtors are premised on the predicate act of the "*collection* of unlawful debt." 18 U.S.C. § 1962 (emphasis added). An "unlawful debt" is defined to include a debt "which is *unenforceable under State* or Federal law in whole or in part as to principal or interest because of laws relating to usury," where "the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6) (emphasis added). Accordingly, because RICO prohibits the collection of debt "which is unenforceable" under state law "as to principal or interest because of laws relating to usury," any assessment of the level of damages for Plaintiffs' RICO claim may be calculated using simple arithmetic by calculating the "unlawful debt" collected by *the enterprise* from each consumer.[2]

---

[2] Each member of the RICO enterprise is jointly and severally liable for Plaintiffs' actual damages. *United States v. Philip Morris USA*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO

3

By extension, Plaintiffs' theory of liability for the unjust enrichment claim is similarly based on the *collection* of the void loans. Because Plaintiffs' Plain Green and Great Plains loans were void and unenforceable under Virginia law, Plaintiffs were not obligated to make any payment on them. As alleged in Plaintiffs' complaint in the adversary proceeding, "Plaintiffs conferred a benefit on Defendants when they repaid the void loans; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans." (Adversary Complaint ¶ 114, No. 17-03117, Dkt. 1). Thus, with regard to their unjust enrichment claim, Plaintiffs seek to recover "all amounts repaid on any loans with Plain Green and Great Plains." *(Id.* ¶ 115). Again, this amount can be calculated using simple arithmetic, without the need to resort to any expert testimony whatsoever.

### III. LEGAL STANDARD

Under Rule 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "[t]he court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 782 (N.D. Tex. 2013). To that end, when assessing a motion

---

offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations."); *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) (explaining that "[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole"); *United States v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000) (finding that "joint and several liability is not only consistent with the statutory scheme [of RICO] but in some cases will be necessary to achieve the aims of the legislation" because the "entire scheme would not have succeeded without the support of [the] enterprise"); *see also In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 805 (Bankr. E.D. Va. 2012) ("Joint and several liability may be imposed on two categories of defendants: true joint tortfeasors, defined as those who act in concert, and concurrent tortfeasors.").

4

to exclude expert testimony, the Supreme Court's seminal decision in *Daubert* teaches that the district court "decides these motions in its role as gatekeeper under Fed. R. Evid. 702." *Id.* "The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *Id.* at 783.

"Under Rule 702, a qualified expert may testify on matters requiring 'specialized knowledge' if such knowledge will help the factfinder understand the evidence or determine a fact in issue, subject to certain conditions." *French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (quoting FED. R. EVID. 702). "Whether an expert will assist the factfinder is a question the trial court has 'wide discretion' to decide." *Id.* (quoting *Mercado v. Austin Police Dep't*, 754 F.2d 1266, 1269 (5th Cir. 1985). "This is true 'particularly when the court sits as trier of fact, for [it] is then in the best position to know whether expert testimony would help [it] understand the case.'" *Id.* (quoting *Mercado*, 754 F.2d at 1269, alteration in original).

## IV.    ARGUMENT

**A.    Beales' proffered testimony on the benefits of usurious loans should be excluded because it is irrelevant and contrary to law.**

Beales' testimony on the benefits of usurious loans should be excluded because it is irrelevant and contrary to law. Debtors asked Beales' "to address the importance of the market for small dollar loans such as the products offered by Great Plains and Plain Green for consumers, including the benefits that such products may offer to particular consumers." (Beales Report ¶ 5). Beales opines that Great Plains and Plain Green offer a product that is valuable to consumers and superior to other available options such as traditional payday loans. (Beales Report ¶¶ 7-8). Yet such a conclusion, even if true, is irrelevant as Virginia's Consumer Finance Act clearly sets out the allowable interest rate. Beales's personal belief regarding the societal benefit of Debtors'

5

illegal activity is not relevant or helpful. The Court should exclude Beales' testimony opining on the benefits of the illegal loan products because such testimony is not admissible under Rule 702.

Alternatively, Beales' testimony should be excluded under Rule 402 and Rule 403 because the evidence is not relevant to any issue before the Court, and to the extent the Court finds it to be relevant, the miniscule probative value is substantially outweighed by the risk of confusing the issues and wasting time. The utility of the loans Plaintiffs challenge has no bearing whatsoever on any decision the Court has to make in this case. Plaintiffs bring a straightforward case challenging the legality of Debtors' entire business model, and the loans they made to Virginia consumers over the statutorily established interest rate. Whether one consumer or another genuinely needed the loan and/or may have clicked a box agreeing to the terms is irrelevant—Virginia's usury statute and RICO do not contain safe harbors which turn loans that are usurious and illegal to legal based on the needs, sophistication, or any other trait or characteristic of the consumer receiving the loan. The Court's analysis on the merits will focus on the question of whether the loans were illegal and little else, and the feelings, knowledge, circumstances, or ideals of any of the class members has no bearing on any portion of the merits. Beales' conclusions regarding the utility of the loans will not assist the Court in any way, making exclusion the appropriate result.

Additionally, Beales' opinion is contrary to law, as Virginia's legislature has already considered the pros and cons of such loans, and has outlawed them. Numerous courts have held that expert testimony that is contrary to the law is inadmissible. *See e.g.*, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1245 (N.D. Ala. 2000) *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (excluding expert analysis contradicting well-established law); *Martinez v. Rabbit Tanaka Corp.*, 2006 WL 5100536, at *14 (S.D. Fla. Jan. 6, 2006) (striking plaintiff's damages expert on the grounds that his method

6

"contravene[d] well established law in both Florida and the Eleventh Circuit. . . ."). "Expert opinions that are contrary to law are inadmissible" because "[t]hey cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact." *Loeffel Steel Prods., Inc.*, 387 F. Supp. 2d at 806.Accordingly, because Beales' testimony concerning the benefits of the high interest loans is contrary to Virginia law, it is not scientific, reliable, or helpful to the trier of fact, and it cannot be admitted under Rule 702.

> **B. Beales' proffered testimony describing the Debtors' marketing materials and opining on the clarity of the materials to an average consumer will not assist the factfinder and is irrelevant.**

Beales second opinion describes the Debtors' marketing materials as "straightforward" and draws the conclusion that "[c]onsumers have the information they need to make informed decisions about whether to take out a Plain Green or Great Plains loan." (Beales Report ¶¶ 9, 33-34). He reasons, "[t]he terms of the loans are clearly disclosed, and there are no allegations in the proof of claims or associated complaints of misrepresentations that might undermine these disclosures." (Beales Report ¶ 9). Such testimony has no relevance to any of the issues before this Court and is thus not admissible under Rule 402 and is excludable under Rule 403. Further, this testimony is beyond the scope of Beales' expertise as he does not claim to be an expert in English, advertising, marketing, and/or brand positioning.

Even if Beales' testimony was relevant, it is still inadmissible because any layperson—and certainly the Court—can read the marketing materials and determine whether they are clear to an average consumer. (Beales Report ¶¶ 9, 33-34). For example, Beales' report opines that the marketing materials of Plain Green and Great Plains are "straightforward" and describes the media materials. (Beales Report ¶¶ 33-34). He also opines that "[c]onsumers therefore have the information they need to make an informed decision about whether to take out a loan." (Beales Report ¶ 33). But expert testimony on this point is "unnecessary and unhelpful" as "[i]t falls within

7

the common sense of an average juror." *United States v. Angleton*, 269 F. Supp. 2d 868, 875 (S.D. Tex. 2003). Any lay person may read the materials and determine whether the materials are "straightforward." *See JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*, No. CV 08-04310, 2009 WL 8591607, at *7 (C.D. Cal. July 14, 2009) (concluding that jurors did not need to hear expert opinion comparing two companies' advertising materials in order to compare the companies' "tone and look"); *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) ("Although expert testimony is generally presumed helpful to the jury, we have held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors.") (citing *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) ("Where subject matter is within the knowledge or experience of lay people, expert testimony is superfluous.").

Regardless of the helpfulness of such testimony, it is inadmissible because it is not relevant to any issue. Plaintiffs do not claim that Plain Green and Great Plains made false claims *regarding the interest rates* charged, or any other terms, on their loans. Thus, it is unclear for what purpose Debtors seek to introduce Beales' testimony on the "straightforwardness" of the enterprise's marketing materials. In any event, Beales' testimony should be excluded because it is not admissible under Rule 702 or Rule 401. The Court may also exclude the testimony under Rule 403 because any minimal probative value is substantially outweighed by the risk of confusing the issues or wasting time.

### C. Beales' testimony should be excluded because he provides improper legal arguments under the guise of an expert.

Beales' expert report repeatedly offers legal opinion under the guise of expert opinion. For example, the report states, "[t]he terms of the loan are clearly disclosed, and there are no allegations in the proof of claims or associated complaint of misrepresentations that might undermine these

disclosures." (Beales Report ¶ 9). Thus, the report not only opines on the evidence, but it also evaluates the sufficiency of the pleadings.

Beales also opines as to what facts are relevant to the Court's evaluation and urges the Court to adopt a cost/benefit analysis of potential damages. The report reads like a legal brief encouraging the Court to adopt a certain legal standard in applying the law to the facts. For example, both paragraphs 11 and 44 provide the following:

> Because benefits and costs vary from person to person, whether any individual consumer benefitted or was harmed by a Plain Green or Great Plains loan depends of [*sic*] the facts and circumstances of that individual. Similarly, the extent to which the lenders were unjustly enriched (if at all) by any individual transaction depends on the facts and circumstances surrounding each transaction. Moreover, the fact that a consumer took out a loan implies that in the consumer's view at the time, the loan would provide net benefits. Evaluating whether that assessment was correct is necessarily specific to each individual.

(Beales Report ¶¶ 11, 44). Much of Beales' testimony regarding the benefits of Plain Green and Great Plains' products to consumers appears to be in furtherance of this "cost/benefit" approach for which Beales advocates. By extension, Beales opines that, according to his analysis, the Court may only determine "harm" on an individual basis, while also suggesting that there is likely no harm to any consumer based on a consumer's choice to take out the loan in the first place. In other words, Beales essentially advocates Debtors' position regarding predominance under the guise of expert testimony.

Courts frequently exclude expert testimony that mirrors legal argument. *See, e.g.*, *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007) ("It would be unfair to Defendant for the Court to award Plaintiff's legal arguments the elevated stamp of 'expert.'"); *In re Air Crash at New Orleans,* 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1067 (D. Minn. 2007); *Fisher*, 2009 WL 5216949, at *5.

9

"[E]xperts cannot assert what law governs an issue or what the applicable law means because that is a function of the court." *Fisher*, 2009 WL 5216949, at *2 (citing *Askanase*, 130 F.3d at 673). "Moreover, an expert may not offer opinions that simply reiterate what 'the lawyer can offer in argument.'" *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). "Expert testimony is an improper mechanism for offering legal arguments to the court because it would be unfair to one party for the court to award the opposing party's legal arguments the elevated stamp of expert." *Id.* (alterations omitted) (quoting *Sparton Corp.*, 77 Fed. Cl. at 1).

In *Fisher*, a government contracts expert submitted an affidavit concerning the meaning of terms in a government contract. The Fifth Circuit explained that such expert testimony is admissible to assist the court in understanding terms of specialized trade usage. *Id.* at 4-5. However, upon reviewing the affidavit, the court concluded that instead of providing such specialized knowledge, the report instead attempted to instruct the court on how to interpret the contract. *Id.* at 5. Because the affidavit made "multiple legal arguments and conclusions in the guise of expert testimony," the court found it proper to exclude the affidavit in its entirety. *Id.*

Similarly, here, Beales does not attempt to help the Court understand the evidence before it. Instead, he advocates for a particular approach to be used for the assessment of damages and all but concludes that the issue of predominance cannot be met based on his opinion that "harm" must be assessed on an individual basis. That is legal argument, not expert testimony. *Id.* The Court should exclude Beales' legal opinion testimony, which would be better addressed by Debtors in their briefing and argument to the Court.

**D.     Beales' cost/benefit analysis is inconsistent with the legal theories advanced in this case, which are premised on the collection of unlawful debt.**

Plaintiffs' general theory of liability and damages in this case is simple: Plain Green and Great Plains made loans using an interest rate more than 35 times Virginia's 12% interest rate cap;

10

Debtors either received money or collected on those unlawful loans in violation of applicable law; and thus, Plaintiffs are entitled to recover amounts paid on the illegal loans. *See* VA. CODE ANN. § 6.2-1541(B) (establishing that "any principal or interest paid on the [usurious] loan shall be recoverable by the person by of for whom payment was made"). Although the amount recoverable will vary depending on the amount each consumer paid, damages are easily calculable using simple arithmetic. Accordingly, it will not be necessary for Plaintiffs to submit an expert to calculate damages using a complex, multi-factor analysis that takes into account behavioral economics and attributes of the market. Nonetheless, Debtors submit Beales to testify regarding a complex regression analysis that will calculate "harm" based on multiple factors—none of which are relevant to the legal theories advanced by Plaintiffs.

Beales' testimony on this point is inadmissible for the simple reason that it is not relevant. Beales' expert report is puzzling in that it lays out a complicated analysis for calculating "harm" that has not been presented by Plaintiffs and then proceeds to opine that his own analysis is not feasible in a class action setting. In other words, instead of addressing a relevant issue, Beales' testimony attempts to create one.

Indeed, Plaintiffs would not be permitted to submit an expert calculating damages in like manner because such testimony would necessarily be both irrelevant and unreliable because Beales' cost/benefit analysis is unmoored to Plaintiffs' theories of liability. The Supreme Court has observed that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory" advanced in the case. *Comcast Corp.*, 569 U.S. at 35. Here, Beales' notion of "harm" bears no relationship to Plaintiffs' theories of liability— which is based on the collection or receiving of payments on the unlawful debts. Instead of

11

discussing the potential harm from the collection of the unlawful debts, Beales' expert report focuses on the benefits of the availability of the loans irrespective of their illegality.

The incongruity of Beales' analysis with Plaintiffs' theories of liability is demonstrated by his measuring of "harm" based on facts occurring *before* the injury. "The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." *Comcast Corp*., 569 U.S. at 38 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)). Here, the harmful event is the collection or receiving of payments on the unlawful debt. Thus, any damages must flow from the collection or receiving of payments. However, Beales' report focuses completely on events occurring prior to any payment being made.

Indeed, Beales advocates for the following factors to weigh in the calculation of "harm": consumers' perception of benefits associated with taking out the illegal loans; consumers' motives of taking out the loans; consumers' creditworthiness prior to taking out the loans; and the availability of alternative sources of credit. (Beales Report ¶¶ 39-43). However, all of these factors relate to events or considerations occurring prior to the collection or receiving of payments on the void loans. Nor are any of them elements of Plaintiffs' causes of action. Beales even goes so far as to conclude that "whether any individual consumer benefitted or was harmed **by a Plain Green or Great Plains loan** depends of [*sic*] the facts and circumstances of that individual." (Beales Report ¶ 44). Thus, the report expressly indicates that it views the issue of damages to be whether **the loan** had an overall negative or positive impact on consumers' lives. However, such considerations have no bearing on the amount Virginia consumers paid or Debtors received on the illegal loans.

12

It would be absurd for a factfinder to consider the benefits a plaintiff experienced from a product's defect prior to the occurrence of an injury and resulting damages because of that defect. The fact that the defect reaped benefits before it caused injury would not be used to diminish a plaintiff's damages. Similarly here, it is illogical to take into account consumer benefits from the illegal loans prior to the incurring of the injury—the collection of the unlawful debt.

Accordingly, Beales' testimony concerning his proffered cost-benefit analysis should be excluded as it is not admissible under Rule 702 and Rule 401, and is independently inadmissible under Rule 403 because any minimal probative value is substantially outweighed by the risk of confusing the issues or wasting time.

**E. Beales' testimony is unreliable *ipse dixit* testimony, which is not based on any principles or methodologies.**

Beales' testimony should be excluded because it is nothing more than conclusory, *ipse dixit* testimony prohibited by the Federal Rules of Civil Evidence and the teachings of the Supreme Court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997)). As the Fifth Circuit observed, the district court acts as a "gatekeeper" and "must determine that the hard science evidence proffered is not only relevant but also reliable as based on a sound application of the methodology of the expert's discipline." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 281 (5th Cir. 1998). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, No. 1-12-CV-00033-JRN, 2013 WL 12076934, at *2 (W.D. Tex. Nov. 8, 2013) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594 (1993)). In other words, expert testimony must be sufficiently supported by principles and methodology—not the mere *ipse dixit*

of the expert. "An expert's subjective beliefs, his speculation, and his hunches are not admissible expert testimony." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 2013 WL 6327852 (E.D. Va. Dec. 3, 2013) *leave to appeal denied*, 561 F. App'x 909 (Fed. Cir. 2014).

Beales' testimony is not based on sufficient facts or data, nor is it the product of reliable principles and methods—both of which are required to qualify a witness's testimony under Rule of Evidence 702. While Beales may have background knowledge on the market for small-dollar loans, his opinions regarding the benefit of Plain Green and Great Plains loans to consumers are conclusory and unsupported. For example, with no citation he opines that, "[i]n general, consumers will only borrow money if, in their own view, the benefits of borrowing exceed the cost of the loan." (Beales Report ¶ 39). He also speculates about the reasons a consumer may take out a loan and the extent of the need for the loan. For example, he states, "[c]overing unexpected medical emergency expenses, for example, may be more important to the consumer than covering an unexpected leak in the roof." (Beales Report ¶ 40). He also opines, "the fact that a consumer took out a loan implies that in the consumer's view at the time the loan would provide net benefits. Evaluating whether that assessment was correct is necessarily specific to each individual." (Beales Report ¶¶ 11, 44). Indeed, the entire discussion regarding the proffered cost-benefit analysis similarly speculates about the varying benefits of a Plain Green or Great Plains loan. (Beales Report ¶¶ 10-11, 39-44). Even assuming any of Beales' suppositions are accurate, they are nothing more than statements that nearly anyone with even rudimentary knowledge of borrowing of funds or credit could similarly make. And as these statements are not based on any methodology or principles that the Court may evaluate, they are not expert evidence.

By extension, his concluding opinion is the epitome of *ipse dixit* testimony: "Because benefits and costs vary from person to person, whether any individual consumer benefitted or was

14

harmed by a Plain Green or Great Plains loan depends on the facts and circumstances of that individual." (Beales Report ¶¶ 11, 44). This is "the quintessential *ipse dixit*. It is so because I, the expert, say it is so. I need not offer an explanation for why it is so. It is precisely that kind of opinion that *Daubert*, *Kumho*, and *Joiner* require the district courts to exclude." *ePlus, Inc.*, 764 F. Supp. 2d at 815.

Accordingly, Beales' testimony concerning his proffered cost-benefit analysis, including his conclusions that damages cannot be assessed on a class-wide basis, should be excluded as it is not admissible under Rule 702.

## V. CONCLUSION

For the foregoing reasons, the Court should exclude Beales' testimony in its entirety.

Respectfully submitted,

| | |
|---|---|
| __/s/ Theodore O. Bartholow____ | Leonard A. Bennett, (pro hac vice) |
| KELLETT & BARTHOLOW PLLC | Elizabeth W. Hanes, Esq., (pro hac vice) |
| Theodore O. Bartholow, III ("Thad") | Consumer Litigation Associates, P.C. |
| Texas Bar No. 24062602 | 763 J. Clyde Morris Blvd., Ste. 1-A |
| Karen L. Kellett | Newport News, VA  23601 |
| Texas Bar No. 11199520 | Telephone: (757) 930-3660 |
| 11300 N. Central Expy., Ste 301 | Facsimile: (757) 930-3662 |
| Dallas, Texas 75243 | Email:  lenbennett@clalegal.com |
| Phone: (214) 696-9000 | Email: elizabeth@clalegal.com |
| Fax: (214) 696-9001 | |
| | |
| Kristi C. Kelly, (pro hac vice) | TYCKO & ZAVAREEI LLP |
| Andrew J. Guzzo,  (pro hac vice) | Anna C. Haac (pro hac vice) |
| Casey S. Nash, (pro hac vice) | Andrew J. Silver (pro hac vice) |
| KELLY & CRANDALL, PLC | 1828 L Street, N.W., Suite 1000 |
| 3925 Chain Bridge Road, Suite 202 | Washington, DC 20036 |
| Fairfax, VA 22030 | Phone: 202-973-0900 |
| (703) 424-7572 | Fax: 202-973-0950 |
| (703) 591-0167 Facsimile | Email: ahaac@tzlegal.com |
| Email: kkelly@kellyandcrandall.com | Email: asilver@tzlegal.com |
| Email: casey@kellyandcrandall.com | |

15

*Counsel for Plaintiffs Patrick Inscho, Darlene Gibbs, Stephanie Edwards, Lula Williams, and Lawrence Mwethuku*

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

     __/s/ Theodore O. Bartholow_____
     KELLETT & BARTHOLOW PLLC
     Theodore O. Bartholow, III ("Thad")
     Texas Bar No. 24062602
     11300 N. Central Expy., Ste 301
     Dallas, Texas 75243
     Phone: (214) 696-9000
     Fax: (214) 696-9001
     *Counsel for Plaintiffs Patrick Inscho, Darlene Gibbs, Stephanie Edwards, Lula Williams, and Lawrence Mwethuku*