IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THINK FINANCE, LLC, *et al.*, | Case No. 17-33964 (HDH) |
| | (Jointly Administered) |
| Debtors.[1] | |

CHAPTER 11 PLAN OF REORGANIZATION OF THINK FINANCE, LLC
AND ITS SUBSIDIARY DEBTORS AND DEBTORS IN POSSESSION

Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel to the Debtors and Debtors in Possession*

Dated: April 22, 2019

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (3098), Think Finance SPV, LLC (4522), Financial U, LLC (1850), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), TC Decision Sciences, LLC (8949), and TC Loan Service, LLC (3103).

# TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** .................................................. 1

**1.1.**    **Defined Terms** ............................................................................................ 1

**1.2**    **Rules of Interpretation** ........................................................................... 17

**1.3**    **Computation of Time** .............................................................................. 18

**1.4**    **Governing Law** ......................................................................................... 18

**1.5**    **Reference to Monetary Figures** ............................................................. 18

**1.6**    **Controlling Document** ............................................................................. 18

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ....................................... 18

**2.1**    **Administrative Claims** ............................................................................ 18

**2.2**    **Professional Claims** ................................................................................. 19

**2.3**    **Priority Tax Claims** ................................................................................. 20

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ....................................................................................................................... 20

**3.1**    **Classification of Claims and Interests** .................................................. 20

**3.2**    **Treatment of Classes of Claims and Equity Interests** ........................ 21

     **(a)**    **Class 1 — Priority Non-Tax Claims** ....................................... 21

     **(b)**    **Class 2 — Other Secured Claims** ............................................ 21

     **(c)**    **Class 3 — GPLS Claims** ............................................................ 22

     **(d)**    **Class 4 — General Unsecured Claims** ..................................... 22

     **(e)**    **Class 5 — Consumer Borrower Claims** .................................. 22

     **(f)**    **Class 6 – Pennsylvania Regulatory Claim** .............................. 23

     **(g)**    **Class 7 – CFPB Regulatory Claim** ........................................... 23

     **(h)**    **Class 8 – Equity Interests** ........................................................ 23

**3.3**    **Special Provision Governing Unimpaired Claims** ................................ 24

**3.4**    **Elimination of Vacant Classes** ............................................................... 24

**3.5**    **Voting Classes; Presumed Acceptance by Non-Voting Classes** ........... 24

**3.6**    **Nationwide Consumer Borrower Settlement Class** ............................. 24

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ........................ 26

**4.1**    **Substantive Consolidation** ...................................................................... 26

**4.2**    **Restructuring Transactions** .................................................................... 27

**4.3**    **Consumer Litigation Settlement** ............................................................ 27

**4.4**    **Corporate Action** ..................................................................................... 27

| | | |
|---|---|---|
| 4.5 | Dissolution of the Debtors | 28 |
| 4.6 | The Reorganized Debtor Assets | 28 |
| 4.7 | Funding and Administration of Reserve Accounts | 28 |
| (a) | The Administrative and Priority Claims Reserve | 29 |
| (b) | The General Unsecured Claims Cash Pool | 29 |
| (c) | The Substantial Contribution Fund | 29 |
| (d) | The Professional Fee Escrow | 29 |
| (e) | The Litigation Trust Initial Funding | 29 |
| 4.8 | Approval of Class Action Settlement | 30 |
| 4.9 | Consenting Defendants' Cash Contribution | 30 |
| 4.10 | Books and Records | 30 |
| 4.11 | Section 1145 Exemption | 32 |
| 4.12 | Exemption from Certain Taxes and Fees | 32 |
| 4.13 | Class Action Injunctive and Other Relief | 33 |
| 4.14 | Pennsylvania Settlement | 34 |
| 4.15 | CFPB Settlement | 35 |
| 4.16 | Subordination | 35 |
| 4.17 | Cancellation of Notes, Instruments, Certificates, and Other Documents | 35 |
| 4.18 | Effectuating Documents; Further Transactions | 35 |
| 4.19 | Incentive Plans and Employee and Retiree Benefits | 36 |
| ARTICLE V | | 36 |
| 5.1 | Establishment of the Litigation Trust | 36 |
| 5.2 | Transfer of Assets to the Litigation Trust | 36 |
| 5.3 | Litigation Trust Funding | 37 |
| 5.4 | Estate Causes of Action | 37 |
| 5.5 | Litigation Trust Distributions | 37 |
| 5.6 | Duration of Trust | 37 |
| 5.7 | Litigation Trust Oversight Board | 38 |
| 5.8 | Appointment of Litigation Trustee | 38 |
| 5.9 | Indemnification and Exculpation | 38 |
| 5.10 | Transfer of GPL, MobiLoans and PGL Property | 38 |
| ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 39 |
| 6.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 39 |

| | | |
|---|---|---|
| 6.2 | Insurance Policies | 39 |
| 6.3 | Cure of Defaults and Objections to Cure and Assumption | 40 |
| 6.4 | Contracts and Leases Entered Into After the Petition Date | 41 |
| 6.5 | Reservation of Rights | 41 |

**ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS** ..................... 41

| | | |
|---|---|---|
| 7.1 | Distributions on Account of Claims Allowed as of the Effective Date | 41 |
| (a) | Distributions to Holders of Allowed Claims Other than Members of the Nationwide Consumer Borrower Settlement Class | 41 |
| (b) | Distributions to Members of the Nationwide Consumer Borrower Settlement Class | 41 |
| 7.2 | Special Rules for Distributions to Holders of Disputed Claims | 42 |
| 7.3 | Delivery of Distributions | 42 |
| (a) | Record Date for Distributions to Holders of Claims | 42 |
| (b) | Distribution Process | 42 |
| (c) | Compliance Matters | 43 |
| (d) | Foreign Currency Exchange Rate | 43 |
| (e) | Fractional, Undeliverable, and Unclaimed Distributions | 43 |
| (f) | Surrender of Canceled Instruments | 45 |
| 7.4 | Claims Paid or Payable by Third Parties | 45 |
| (a) | Maximum Distribution | 45 |
| (b) | Claims Paid by Third Parties | 45 |
| (c) | Claims Payable by Insurance Carriers | 45 |
| (d) | Applicability of Insurance Policies | 46 |
| 7.5 | Setoffs | 46 |

**ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ...... 46

| | | |
|---|---|---|
| 8.1 | Disputed Claims Process | 46 |
| 8.2 | Prosecution of Objections to Claims | 47 |
| 8.3 | Estimation of Claims | 47 |
| 8.4 | Recoupment | 47 |
| 8.5 | No Interest | 48 |
| 8.6 | Disallowance of Claims | 48 |

**ARTICLE IX EFFECT OF CONFIRMATION OF THE PLAN** ........................ 48

| | | |
|---|---|---|
| 9.1 | Dissolution of the Creditors Committee | 48 |
| 9.2 | Discharge of Claims and Termination of Equity Interests | 48 |

3

**9.3    Releases by the Debtors** ..................................................................... **49**

**9.4    Releases by Members of the Nationwide Consumer Borrower Settlement Class 50**

**9.5    Releases by Releasing Parties.** ............................................................. **51**

**9.6    Exculpation** .......................................................................................... **52**

**9.7    Injunction** ............................................................................................ **52**

**9.8    Protection Against Discriminatory Treatment** ................................... **53**

**9.9    Release of Liens** ................................................................................... **53**

**9.10   Reimbursement or Contribution** ......................................................... **53**

**ARTICLE X CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ....................... **53**

**10.1   Conditions Precedent to the Effective Date.** ...................................... **53**

**10.2   Substantial Consummation** ................................................................. **54**

**10.3   Effect of Non-Occurrence of Conditions to Consummation** .............. **54**

**10.4   Vacatur of Confirmation Order** .......................................................... **55**

**ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .................................................................................................................. **55**

**11.1   Modification of Plan** ........................................................................... **55**

**11.2   Effect of Confirmation on Modifications** ........................................... **55**

**11.3   Revocation or Withdrawal of Plan** ..................................................... **55**

**ARTICLE XII RETENTION OF JURISDICTION** .......................................................... **56**

**ARTICLE XIII MISCELLANEOUS PROVISIONS** ....................................................... **57**

**13.1   Additional Documents** ......................................................................... **57**

**13.2   Payment of Statutory Fees** .................................................................. **58**

**13.3   Waiver of Federal Rule of Civil Procedure 62(a)** .............................. **58**

**13.4   Reservation of Rights; Binding Effect** ................................................ **58**

**13.5   No Admissibility** .................................................................................. **58**

**13.6   Closing of Chapter 11 Cases** ............................................................... **58**

**13.7   Service of Documents** .......................................................................... **59**

**13.8   Term of Injunctions or Stays** .............................................................. **59**

**13.9   Entire Agreement** ................................................................................ **59**

**13.10  Plan Supplement Exhibits** ................................................................... **60**

**13.11  Non-Severability** ................................................................................. **60**

4

## INTRODUCTION

Think Finance, LLC, and its subsidiary debtors and debtors in possession in the above-captioned chapter 11 cases jointly propose this Plan. The Debtors seek to consummate the Restructuring on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates substantive consolidation of the Debtors for the purposes of voting, allowance of claims, and distributions to holders of Allowed Claims. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring, and certain related matters.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1. Defined Terms

1.1.1. "*AAA*" means that certain Eleventh Amended and Restated Administrative Agency Agreements, dated as of July 7, 2016, by and between GPL Servicing Ltd. and TC Administrative Services, LLC, and any amendments thereto.

1.1.2. "*Administrative and Priority Claims Estimate*" means an estimated amount of Allowed Administrative Expense Claims and Priority Claims for the purposes of establishing the Administrative and Priority Claims Reserve.

1.1.3. "*Administrative and Priority Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Allowed Administrative and Priority Claims.

1.1.4. "*Administrative Expense Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than Substantial Contribution Claims.

1.1.5. "*Administrative Expense Claims Bar Date*" means the last date by which a request for payment of an Administrative Expense Claim may be filed, which date is thirty (30) days after the Effective Date.

1.1.6. "*Administrative Claims Objection Deadline*" means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of (a) one hundred twenty (120) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.

1.1.7. "*Affiliate*" means, with respect to any Person, any other Person that directly or indirectly, including through one or more intermediaries, controls, is controlled by or is under common control with, such first Person. For the purposes of this definition, "control" (including,

with correlative meanings, the terms "controlling," "controlled by" and "under common control with"), when used with respect to any Person, means the power to direct or cause the direction of the management or policies of such Person, directly or indirectly, whether through the ownership of voting securities, by Contract or otherwise.

1.1.8. "*Allowed*" means, as to a Claim, a Claim allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

1.1.9. "*Assumption Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption and assignment to the Reorganized Debtors as of the Effective Date under section 365 of the Bankruptcy Code.

1.1.10. "*Avoidance Actions*" means claims of the Estates arising under sections 544, 547 or 548 of the Bankruptcy Code and, solely to the extent related to the foregoing, section 550 of the Bankruptcy Code.

1.1.11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

1.1.12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Cases.

1.1.13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the local rules and judge-specific guidelines of the Bankruptcy Court.

1.1.14. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Proof of Claim Forms, (III) Approving the Form and Manner of Notice Thereof, and (IV) Providing Certain Supplemental Relief*, approved and entered by the Bankruptcy Court on November 21, 2017 [Doc. No. 137], as the same may be amended from time to time.

1.1.15. "*Business Day*" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

1.1.16. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

1.1.17. "*Cash Collateral Order*" means the *Order Authorizing the Debtors to Use Cash Collateral, Granting Adequate Protection and Related Relief* [Doc. No. 182] entered by the Bankruptcy Court on December 7, 2017.

1.1.18. "*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability,

damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.1.19. "*Certificate*" means any instrument evidencing a Claim.

1.1.20. "*CFPB*" means the Consumer Financial Protection Bureau.

1.1.21. "*CFPB Action*" means Consumer Financial Protection Bureau v. Think Finance, LLC et al, Case No. 4:17-cv-00127-BMM (D. Mont.)

1.1.22. "*CFPB Administrative Expense Claim*" means an Allowed Administrative Expense Claim in favor of the CFPB in the aggregate amount of $7.00.

1.1.23. "*CFPB Consent Order*" means the consent order attached to the Disclosure Statement as Exhibit D, resolving the CFPB Action.

1.1.24. "*CFPB Regulatory Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the CFPB Action.

1.1.25. "*CFPB Settlement*" means the settlement of the CFPB Regulatory Claim as provided in Article 4.15 of the Plan.

1.1.26. "*Chapter 11 Cases*" means the procedurally consolidated Chapter 11 Cases pending for the Debtors in the Bankruptcy Court.

1.1.27. "*Claim*" means an actual or alleged (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and calculated together with all applicable accrued interest, fees and commission due, owing or incurred from time to time or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. For the avoidance of doubt, this Plan's definition of "Claim" is no less broad than the definition of "claim" as defined in section 101(5) of the Bankruptcy Code.

1.1.28. "*Claims Agent*" means American Legal Claims Services, LLC, the duly appointed Claims, Noticing and Balloting Agent in these Bankruptcy Cases.

1.1.29. "*Claims Register*" means the official register of Claims against and Equity Interests in the Debtors maintained by the Claims Agent.

1.1.30. "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

1.1.31. "*Class Action Injunctive and Other Relief*" means the relief set forth in Article 4.13 of the Plan.

1.1.32. '*Class Administrator*" means the administrator for the Nationwide Consumer Borrower Settlement Class approved pursuant to the Preliminary Approval Order.

1.1.33. "*Class Notice*" means the form of notice to be disseminated pursuant to the Preliminary Approval Order to Nationwide Consumer Borrowers, which, among other things, will permit Nationwide Consumer Borrowers to opt out of or object to the Nationwide Consumer Borrower Settlement Class and/or the Settlement.

1.1.34. "*Committee*" means the Official Unsecured Creditors' Committee appointed in the Chapter 11 Cases pursuant to the *Amended Appointment of the Official Unsecured Creditors' Committee* [Docket No. 148].

1.1.35. "*Compensation Procedures*" means the procedures for the payment of Professional Fees approved by the Bankruptcy Court in the *Order Granting Motion of Debtors and Debtors and Debtors-in-Possession to Establish Procedures for the Interim Compensation and Reimbursement of Expenses for Professionals* [Doc. No. 207].

1.1.36. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.37. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

1.1.38. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

1.1.39. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.1.40. "*Consenting Defendants*" means, collectively, any defendants or potential defendants in the Pending Litigation who reach a settlement agreement acceptable to the Consenting Stakeholders.

1.1.41. "*Consenting Defendants' Cash Contribution*" means the funds to be transferred to the Litigation Trust by any Consenting Defendants on the Effective Date in an aggregate amount to be agreed upon by the Consenting Plaintiffs and the Consenting Defendants in accordance with each such Consenting Defendant's agreed-upon payment allocation of the Consenting Defendants' Cash Contribution.

1.1.42. "*Consenting Plaintiffs*" means the plaintiffs in the Pending Litigation.

1.1.43. "*Consenting Stakeholders*" means the Consenting Plaintiffs and the Committee.

1.1.44. "*Consumer Borrower Claims*" means any Claim of any of the Nationwide Consumer Borrowers who are members of, and do not opt out from, the Nationwide Consumer Borrower Settlement Class, against any Debtor or any Consenting Defendant, including any claims arising under, derived from, based on, or related to any Consumer Borrower Litigation.

1.1.45. "*Consumer Borrower Litigation*" means the list of cases under "Consumer Borrower Litigation" set forth on Exhibit C to the Disclosure Statement.

1.1.46. "*Cortex*" means Cortex Holdings, LLC.

1.1.47. "*Consumer Litigation Settlement*" means the settlement among the Settling Parties which is to be consummated through confirmation of this Plan.

1.1.48. "*Consummation*" means the occurrence of the Effective Date.

1.1.49. "*Contract*" means any written or oral contract, agreement, indenture, note, bond, loan, lease, sublease, mortgage, license, sublicense, obligation or other binding arrangement of any kind.

1.1.50. "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

1.1.51. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.1.52. "*Cure Notice*" means notices to be provided to non-debtor parties to Executory Contracts and Unexpired Leases identifying the Cure payments for Executory Contracts and Unexpired Leases that the Debtors propose to assume as part of the Plan.

1.1.53. "*Cure Objection Deadline*" means the deadline established by the Bankruptcy Court by which non-debtor parties to Executory Contracts and Unexpired Leases that the Debtors propose to assume as part of the Plan must object to (i) the Cure proposed by the Debtors and (ii) the proposed assumption of the Executory Contracts and Unexpired Leases.

1.1.54. "*Curry*" means Mark E. Curry.

1.1.55. "*Debtor*" means a debtor and debtor-in-possession in the Chapter 11 Cases.

1.1.56. "*Debtors*" means all debtors and debtors-in-possession in the Chapter 11 Cases.

1.1.57. "*Disclosure Statement*" means a disclosure statement, including any exhibits, appendices, related documents, ballots, and procedures related to the solicitation of votes to accept or reject the Plan, in each case, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, and that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

1.1.58. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

1.1.59. "*Disputed General Unsecured Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Disputed General Unsecured Claims.

1.1.60. "*Distribution*" means any initial or subsequent payment or transfer made under the Plan.

1.1.61. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates, on or after the Effective Date, upon which the Litigation Trustee or its designee shall make Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan.

1.1.62. "*Effective Date*" means the date on which the terms and conditions set forth in Article 10.1 of the Plan have occurred.

1.1.63. "*Elevate*" means Elevate Credit, Inc.

1.1.64. "*Eligible Tribal Loan*" means loans issued by Plain Green prior to June 1, 2016, Great Plains prior to May 6, 2017, or MobiLoans prior to May 6, 2017, in each case in which GPLS purchased a participation interest, provided, further, that each draw on loans issued by MobiLoans shall be treated as a separate Eligible Tribal Loan. In addition, this shall also mean loans to Pennsylvania Borrowers who obtained a consumer loan between February 1, 2009, and December 31, 2010, from First Bank of Delaware with respect to which loan certain of the Debtors provided services.

1.1.65. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.66. "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

1.1.67. "*Escrow Agent*" means the Bankruptcy Court approved agent for the Escrow Account.

1.1.68. "*Escrow Account*" means that certain escrow account at Metropolitan Commercial Bank in the name of David Baker, Managing Partner, CTP, at Aurora Management Partners established pursuant to the terms of the Agreed Order [APN 17-3016, Doc No. 22] entered by the Bankruptcy Court on October 31, 2017.

1.1.69. "*Escrow Funds*" means the funds held in the Escrow Account.

1.1.70. "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

1.1.71. "*Estate Causes of Action*" means all Claims and Causes of Action of the Debtors, to be more specifically identified in the Plan Supplement if requested by the Committee, including, without limitation, Avoidance Actions, any right of setoff, counterclaim or recoupment, and the right to object to Claims or Equity Interests (subject to the provisions of the Plan); provided, however, for the avoidance of doubt, Estate Causes of Action shall not include any Claims or Causes of Action against Released Parties or any of the obligations or assets included in the Reorganized Debtor Assets.

1.1.72. "*Exculpated Parties*" means collectively, (a) the Released Parties; (b) the Committee and its members; (c) American Legal Claims Services, LLC; and (d) the following professionals: (1) Alvarez & Marsal North America, LLC; (2) Hunton Andrews Kurth LLP; (3) Goodwin Procter LLP; (4) Eversheds Sutherland (US) LLP; (5) Browning Kaleczyz Berry & Hoven P.C.; (6) Schnader Harrison Segal & Lewis LLP; (7) Teneo Capital LLC; (8) Cole Schotz P.C.; (9) Kelly & Guzzo, P.L.C.; (10) Consumer Litigation Associates, P.C.; (11) Tycko & Zavareei, LLP; (12) Kellett & Bartholow, PLLC; (13) Lowenstein Sandler LLP; (14) Gravel & Shea PC; (15) Berman Tabacco; (16) Loewinsohn Flegle Deary Simon LLP; (17) Langer Grogan & Diver, P.C.; and (18) Law Offices of Judith W. Ross.

1.1.73. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.74. "*FF&E*" means all furniture, fixtures, equipment and interests therein, including without limitation, inventory, materials, supplies, writings, machinery, computers and accessories, servers, hardware, disk drives, office equipment, communications equipment, leased or owned vehicles, and other tangible personal property utilized in the Debtors' businesses. FF&E shall not include GPL, MobiLoans and PGL Property.

1.1.75. "*Final Fairness Approval Order*" means that Order granting final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and/or Fed. R. Bankr. P. 7023(e).

1.1.76. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

1.1.77. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to seek leave to appeal, appeal or seek certiorari has expired and no application for leave to appeal, appeal or petition for certiorari has been timely taken, or filed, or as to which any application for leave to appeal or appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been

denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

1.1.78. "*General Unsecured Claim*" means any Claim against a Debtor other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a GPLS Claim, a Consumer Borrower Claim, a Pennsylvania Regulatory Claim, a CFPB Regulatory Claim, a Substantial Contribution Claim, a Professional Claim or a Section 510(b) Claim.

1.1.79. "*General Unsecured Claims Cash Pool*" means a cash distribution pool in a fixed amount for distributions to holders of Allowed General Unsecured Claims.  On the Effective Date, the General Unsecured Claims Cash Pool shall be funded with cash in an amount at least equal to $3.0 million.

1.1.80. "*Ginsberg*" means Alan H. Ginsberg.

1.1.81. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.1.82. "*GPL, MobiLoans and PGL Property*" means the ownership interests and/or rights, if any, that belong to the Settling Tribal Lenders that would be transferred to the Litigation Trust pursuant to any separate settlement agreements between each of the Settling Tribal Lenders and one or more Consenting Plaintiffs, including without limitation any outstanding consumer borrower notes and any data regarding any Nationwide Consumer Borrower owned by a Settling Tribal Lender and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders, if any.

1.1.83. "*GPLS*" means GPL Servicing, Ltd.

1.1.84. "*GPLS Funds*" means the funds held by GPLS as such term is defined in the *Order Authorizing the Debtors to Use Cash Collateral, Granting Adequate Protection and Related Relief* [Doc. No. 182].

1.1.85. "*GPLS Claims*" means the disputed, unliquidated and contingent Claims asserted against the Debtors by the GPLS Parties, including any Claims arising under, derived from, based on, or related to any asserted right to payment under the GPLS Transaction Documents, or the proofs of claim filed by GPL Servicing, Ltd., GPL Servicing Agent, LLC, Victory Park Capital Advisors, LLC, or Victory Park Management, LLC.

1.1.86. "*GPLS Parties*" means, collectively, GPL Servicing, Ltd., GPL Servicing Agent, LLC, Victory Park Capital Advisors, LLC, and Victory Park Management, LLC.

1.1.87. "*GPLS Transaction Documents*" means the AAA, GSA, the Participation Agreements (as defined in the GSA) and each of the other agreements, documents, certificates, or other instruments delivered in connection with the transactions contemplated thereby.

1.1.88. "*Great Plains*" means Great Plains Lending, LLC.

1.1.89. "*Great Plains Reserve Amount*" means the amount due from Great Plains to GPLS as the "Reserve Amount," as such term is defined in that certain Participation Agreement, dated as of December 1, 2015, between Great Plains and GPLS.

1.1.90. "*GSA*" means that certain Fourth Amended and Restated Guaranty and Security Agreement, dated as of April 2, 2013 (as amended from time to time).

1.1.91. "*Haynes*" means L. Stephen Haynes.

1.1.92. "*Haynes Investments*" means Haynes Investments, LLC.

1.1.93. "*Haynes Note*" means that certain Promissory Note, dated as of June 18, 2015, as amended, issued by Haynes Investments, Inc. to Think Finance, Inc., and any payments received by or on behalf of the Debtors on such Promissory Note after the filing of the Plan.

1.1.94. "*Impaired*" means, with respect to any Class of Claims, a Claim that is not Unimpaired.

1.1.95. "*Initial Distribution Date*" means, the date of the initial Distribution to holders of Allowed Claims other than members of the Nationwide Consumer Borrower Settlement Class, which date, unless otherwise set forth in the Plan, shall not be more than ninety (90) days after the Effective Date.

1.1.96. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.97. "*Insurance Rights*" means all of the Debtors' rights under their insurance policies, including any directors' and officers' policies, and under applicable law against their insurance carriers and any proceeds of such policies that the insurance carriers pay to the Debtors on or after December 31, 2018.

1.1.98. "*Intellectual Property*" means without limitation all of the following: (i) all patents; (ii) all know-how, work product, trade secrets, inventions (whether patentable or otherwise), data, information, processes, techniques, procedures, compositions, devices, methods, formulas, protocols and information, whether patentable or not; (iii) all software, source code, object code, system diagrams and architecture, flow charts, algorithms and all other information technology; (iv) all works of authorship, copyrightable works, copyrights and applications, registrations and renewals; (v) all logos, trademarks, service marks, domain names, and all applications and registrations relating thereto; (vi) all other proprietary rights; (vii) all regulatory exclusivities, patent extensions, supplemental protection certificates or the like; and (viii) all copies and tangible embodiments of each and all of the foregoing utilized in the Debtors' businesses. Notwithstanding the above, Intellectual Property shall not include the GPL, MobiLoans and PGL Property.

1.1.99. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

9

1.1.100.  "*Intercompany Receivables*" means all amounts due to any of the Debtors from their non-Debtor affiliates including, without limitation, (i) service payments due from Cortex, (ii) amounts due on the Cortex Note and (iii) amounts due from TF Holdings.

1.1.101.  "*Jora*" means Jora Credit Holdings, LLC.

1.1.102.  "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, or regulation, in each case, that is validly adopted, promulgated, or issued by a governmental authority of competent jurisdiction.

1.1.103.  "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.104.  "*Litigation Trust*" means the trust established pursuant to Article V of this Plan.

1.1.105.  "*Litigation Trust Agreement*" means that certain Litigation Trust Agreement, which shall be included in the Plan Supplement, governing the duties and scope of authority of the Litigation Trustee.

1.1.106.  "*Litigation Trust Initial Funding*" means all remaining Cash in the Estates immediately after the funding of the Reserve Accounts and the payment of any other amounts required by the Plan, including pursuant to Article 4.6 of the Plan.

1.1.107.  "*Litigation Trust Oversight Board*" means the board charged with overseeing the Litigation Trust and such other responsibilities as set forth in the Litigation Trust Agreement.

1.1.108.  "*Litigation Trustee*" means the Honorable Russell F. Nelms, U.S. Bankruptcy Judge for the Northern District of Texas (ret.), and any successor trustee appointed pursuant to the Litigation Trust Agreement.

1.1.109.  "*Marlin Administrative Expense Claim*" means an Allowed Administrative Expense Claim of Marlin & Associates Holding LLC against the Debtors in the amount of $50,000.

1.1.110.  "*MobiLoans*" means MobiLoans, LLC.

1.1.111.  "*Mobiloans Note*" means that certain Subordinated Term Note, dated May 10, 2017, by MobiLoans in favor of GPLS with a face value of $6,795,000, and all directly related agreements, including that certain (a) Subordinated Loan Agreement, dated May 10, 2017, by and between MobiLoans and GPLS, (b) Security Agreement, dated May 10, 2017 by and between MobiLoans and GPLS, which provides for a subordinated security interest in substantially all of, but only, the assets of MobiLoans, (c) Administrative Services Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, (d). Intercreditor Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, and (e) Subordination Agreement, dated May 10, 2017, by and between GPLS and the Senior Lender to

10

such Subordination Agreement, and any payments received by or on behalf of GPLS on such MobiLoans Note after the filing of the Plan.

1.1.112. "*Nationwide Class Counsel*" means the consortium of the following firms representing the Nationwide Consumer Borrower Settlement Class: (i) Kelly & Guzzo, P.L.C.; (ii) Consumer Litigation Associates, P.C.; (iii) Lowenstein Sandler; and (iv) Tycko & Zavareei, LLP.

1.1.113. "*Nationwide Consumer Borrower*" means any Person, including their successors and assigns and Persons holding or exercising any relevant legal rights of such Person, who received an Eligible Tribal Loan. The term shall be synonymous with member, when referring to members of the Nationwide Consumer Borrower Settlement Class. For purposes of this Plan, each Nationwide Consumer Borrower shall be treated as a single member of the Nationwide Consumer Borrower Settlement Class but, for each Borrower who has not opted out, each Eligible Tribal Loan he or she received will be considered separately when making any distribution or providing any other benefit.

1.1.114. "*Nationwide Consumer Borrower Settlement Class*" means a class of Nationwide Consumer Borrowers certified for settlement purposes only, the makeup of which is set forth in the Preliminary Approval Order.

1.1.115. "*Nationwide Consumer Borrower Settlement Class Representatives*" means the representatives of the Nationwide Consumer Borrower Settlement Class appointed pursuant to the Preliminary Approval Order.

1.1.116. "*Non-Released Parties*" means the GPLS Parties, Elevate, Haynes, Haynes Investments, TCV, Sequoia, Rees, Stinson, Ginsberg, and any other Entity that is not defined herein as a Released Party.

1.1.117. "*Non-Released/Non-Exculpated Parties*" means the Non-Released Parties that are not Exculpated Parties.

1.1.118. "*Opt-Out Consumer Borrower Claim*" means any claim of a holder of a Consumer Borrower Claim who elects to opt out of the Nationwide Consumer Borrower Settlement Class.

1.1.119. "*Other Priority Claim*" means any unsecured claim entitled to priority in repayment pursuant to section 507 of the Bankruptcy Code that is not a Priority Tax Claim or Administrative Expense Claim.

1.1.120. "*Other Secured Claim*" means any Secured Claim other than a Secured Tax Claim or the Claims of the GPLS Parties.

1.1.121. "*Pennsylvania*" means the Commonwealth of Pennsylvania, which is the holder of the Pennsylvania Regulatory Claim, or its designees.

1.1.122. "*Pennsylvania Action*" means *Commonwealth of Pennsylvania v. Think Finance, Inc. et al.*, Case No. 2:14-cv-07139-JCJ (E.D. Pa.).

1.1.123. "*Pennsylvania AG*" means the Office of the Attorney General for the Commonwealth of Pennsylvania.

1.1.124. "*Pennsylvania AG Administrative Expense Claim*" means an Allowed Administrative Expense Claim of the Pennsylvania AG against the Debtors in the amount of $4,250,000.

1.1.125. "*Pennsylvania Borrowers*" means members of the Nationwide Consumer Borrower Settlement Class who resided in the Commonwealth of Pennsylvania at the time they obtained any Eligible Tribal Loans.

1.1.126. "*Pennsylvania Regulatory Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the Pennsylvania Action, including any and any Claims for contribution and indemnification.

1.1.127. "*Pennsylvania Settlement*" means the settlement of the Pennsylvania Regulatory Claim.

1.1.128. "*Person*" means any natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, trust or other legal entity or organization.

1.1.129. "*Petition Date*" means the date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

1.1.130. "*PII*" means personal identifiable information provided by consumer borrowers to Tribal Lenders or to the Debtors prior to the Effective Date.

1.1.131. "*Plain Green*" means Plain Green, LLC.

1.1.132. "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

1.1.133. "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtors no later than five (5) business days before the voting deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. The Plan Supplement includes, but is not limited to, the following: the Assumption Schedule and the Litigation Trust Agreement.

1.1.134. "*Preliminary Approval Order*" means the order entered by the Bankruptcy Court conditionally certifying the Nationwide Consumer Borrower Settlement Class for

settlement purposes and approving, among other things, the form and manner of notice to be served on members of the Nationwide Consumer Borrower Settlement Class.

1.1.135. "*Priority Non-Tax Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.136. "*Priority Tax Claim*" means any Claim against a Debtor that is entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Claim for penalties.

1.1.137. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

1.1.138. "*Professional*" means a Person employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

1.1.139. "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330 or 331 of the Bankruptcy Code.

1.1.140. "*Professional Fee Escrow*" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Estimate.

1.1.141. "*Professional Fee Estimate*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services prior to and as of the Effective Date, and any post-Effective Date fees and expenses, which good faith estimates Professionals shall deliver to the Debtors as set forth in Article 2.2 herein and, in turn, the Debtors will utilize for purposes of establishing the Professional Fee Escrow.

1.1.142. "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.1.143. "*Rees*" means Kenneth Rees.

1.1.144. "*Related Non-Debtor Parties*" means, collectively, with respect to an entity, other than a Released Debtor Party, such entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners,

principals, members, management companies, investment managers, fund advisers, employees, advisory board members, financial advisors, accountants, investment bankers, and consultants.

1.1.145.        "*Released Debtor Parties*" means, collectively: (a) each Debtor and Debtor-in-Possession; (b) current directors and officers of the Debtors as of or after the Petition Date, provided that if any director or officer is added after December 1, 2018, and before the Effective Date, such director or officer shall not be a Released Debtor Party until either (1) 21 days after the Committee has been notified of such addition if the Committee does not object by such 21st day or (2) the Bankruptcy Court enters an order on an objection by the Committee that provides that the person should be a Released Debtor Party; (c) the Reorganized Debtors; (d) TF Holdings; (e) Cortex; (f) Jora; (g) TF Investment Services, LLC; (h) each of the subsidiaries of any of the entities identified in (c) – (g); and (i) former directors and officers of the Debtors, in their capacities as such, other than Ken Rees, provided, however, that any such former director or officer of the Debtors shall not be released for purposes of imposing any liability on any shareholder solely in their capacity as a shareholder or former shareholder.

1.1.146.        "*Released Parties*" means, collectively, the Released Debtor Parties and the Released Non-Debtor Parties.

1.1.147.        "*Released Non-Debtor Parties*" means, collectively, and in each case in its capacity as such: (a) Great Plains Lending, LLC; (b) Plain Green Lending, LLC; (c) Curry solely in connection with any Causes of Action related to Great Plains Lending, LLC, (d) each other Consenting Defendant; (e) each Consenting Stakeholder and counsel for each Consenting Plaintiff; (f) each current and former Affiliate of each Entity in clauses (a) through (e) of this definition; and (g) each Related Non-Debtor Party of each Entity in clauses (a) through (e) of this definition; provided, however, that no specifically identified Non-Released Party shall constitute a Released Non-Debtor Party.

1.1.148.        "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Consenting Defendant; (b) each Consenting Stakeholder; and (c) all holders of Claims; provided, however, members of the Nationwide Consumer Borrower Settlement Class are not Releasing Parties.

1.1.149.        "*Releases*" means the releases and exculpation set forth in Article IX of this Plan.

1.1.150.        "*Reorganized Debtor*" means one or more newly formed entities wholly owned by TF Holdings that are to receive on the Effective Date the Reorganized Debtor Assets.

1.1.151.        "*Reorganized Debtor Assets*" means assets identified in Article 4.6 of this Plan.

1.1.152.        "*Reorganized Debtor Cash Distribution*" means $5 million *less* the amount of Cash on hand with the Debtors on the Effective Date *plus* (i) any payments received by or on behalf of GPLS on the MobiLoans Note after the filing of this Plan, (ii) any payments received by or on behalf of the Debtors on the Haynes Note after the filing of this Plan and (iii)

any proceeds of the Insurance Rights received by or on behalf of the Debtors after December 31, 2018.

1.1.153. "*Representative*" means, with respect to any Person, any successor, assign, predecessor, subsidiary, affiliate, current or former officer or director, to the extent serving in such capacity at any point during the Chapter 11 Cases, principal, partner, limited partner, general partner, member, manager, management company, investment manager, employee, agent, attorney, advisor, investment banker, financial advisor, restructuring advisor, consultant, accountant or other Professional of such entity or any of the foregoing.

1.1.154. "*Reserve Accounts*" means, collectively, the Administrative and Priority Claims Reserve; (ii) the General Unsecured Claims Cash Pool; (iii) the Substantial Contribution Fund; and (iv) the Professional Fee Escrow.

1.1.155. "*Restructuring*" means the restructuring and reorganization to be effectuated by the Plan.

1.1.156. "*Restructuring Transactions*" means the transactions specified in Article 4.2 of this Plan.

1.1.157. "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 501(b) of the Bankruptcy Code.

1.1.158. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.1.159. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.1.160. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa or any similar federal, state, or local law.

1.1.161. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

1.1.162. "*Sequoia*" means Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, LP, Sequoia Capital IC, L.P., Sequoia Capital Entrepreneurs Annex Fund, L.P., Sequoia Capital Growth Fund III, L.P., Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, L.P., Sequoia Capital Growth Partners III L.P., SC IX.I Management, LLC, and SCGF III Management, LLC.

1.1.163. "*Settling Parties*" means the Debtors, the Consenting Stakeholders, and the Consenting Defendants.

15

1.1.164. "*Settling Tribal Lenders*" shall mean the Tribal Lenders who have entered into separate settlement agreements with one or more Consenting Plaintiffs.

1.1.165. "*Solicitation Agent*" means American Legal Claims Services LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

1.1.166. "*Stinson*" means Mike Stinson, Linda Stinson, and the Stinson 2009 Grantor Retained Annuity Trust.

1.1.167. "*Subject Consumers*" means those consumers who resided in one of the Subject States at the time of the formation of an installment loan agreement or a line of credit agreement.

1.1.168. "*Subject States*" means Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, and South Dakota.

1.1.169. "*Substantial Contribution Claims*" means the Pennsylvania AG Administrative Expense Claim, the CFPB Administrative Expense Claim, the VA/FL/CA Counsel Administrative Expense Claim, the VT/NC Counsel Administrative Expense Claim, and the Marlin Administrative Expense Claim.

1.1.170. "*Substantial Contribution Fund*" means cash in an amount needed to fund payment of Substantial Contribution Claims.

1.1.171. "*TCV*" means Technology Crossover Ventures, TCV V L.P., TCV Member Fund, L.P., and Technology Crossover Management V LLC.

1.1.172. "*TF Holdings*" means TF Holdings, Inc.

1.1.173. "*Tribal Lenders*" means Great Plains, Plain Green and MobiLoans.

1.1.174. "*Unclaimed Distribution*" means (i) in respect of any Distribution under the Plan on account of an Allowed Claim to a holder, other than a member of the Nationwide Consumer Borrower Settlement Class, that has not: (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (b) given notice to the Litigation Trustee of an intent to accept a particular Distribution; (c) responded to the Litigation Trustee's requests for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution and (ii) in respect of Distributions under the Plan to members of the Nationwide Consumer Borrower Settlement Class, any funds remaining in the Litigation Trust as a result of distribution checks remaining uncashed by members of the Nationwide Consumer Borrower Settlement Class 120 days after issuance thereof.

1.1.175. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.176. "*Unimpaired*" has the meaning set forth in section 1124 of the Bankruptcy Code.

1.1.177. "*VA/FL/CA Counsel Administrative Expense Claim*" means an Allowed Administrative Expense Claim of counsel for the putative class action representatives asserting Consumer Borrower Claims on behalf of putative classes of individuals in Virginia, Florida and California against the Debtors in the amount of $4,250,000.

1.1.178. "*Victory Park Adversary Proceeding Causes of Action*" means all Claims and Causes of Action of the Debtors that are the subject of the adversary proceeding *Think Finance, LLC, et al. v. Victory Park Capital Advisors, LLC, et al.*, Adv. Pro. No. 17-03106-hdh (Bankr. N.D. Tex.).

1.1.179. "*VT/NC Counsel Administrative Expense Claim*" means an Allowed Administrative Expense Claim of counsel for the putative class action representatives asserting Consumer Borrower Claims on behalf of a putative nationwide class of individuals against the Debtors in the amount of $4,250,000.

**1.2** **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with

the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**1.3**     <u>Computation of Time</u>

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

**1.4**     <u>Governing Law</u>

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles.

**1.5**     <u>Reference to Monetary Figures</u>

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**1.6**     <u>Controlling Document</u>

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

**2.1**     <u>Administrative Claims</u>

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, or the Litigation Trustee on or after the Effective Date, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the Administrative and Priority Claim Reserve equal to the amount of such Allowed Administrative Claim either: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such

Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Litigation Trustee, as applicable, in consultation with the Consenting Stakeholders; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All requests for allowance and payment of an Administrative Claim, other than Professional Claims and the Substantial Contribution Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtors or the Reorganized Debtors, as applicable, or the Litigation Trustee on or after the Effective Date, by no later than the Administrative Claims Bar Date. In the event that any party to an Administrative Claim on or before the Administrative Claims Objection Deadline, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

## 2.2     Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served in accordance with the Compensation Procedures approved by the Bankruptcy Court no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. Allowed Professional Claims for services rendered prior to the Effective Date shall be paid in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow, which shall be held in trust for the Professionals and funded with Cash equal to the Professional Fee Estimate on or before the Effective Date. Claims for any post-Effective Date services by Professionals shall be submitted to the Litigation Trustee and paid in the ordinary course, but in no event later than fourteen (14) days after their submission. Professionals shall deliver to the Debtors their estimates for purposes of computing the Professional Fee Estimate no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid fees and expenses of such Professional. Any funds remaining in the Professional Fee Escrow after all Professional Claims have been paid will be deposited into the Litigation Trust for use in accordance with this Plan.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. For the avoidance of doubt, the Reorganized Debtors and the Litigation Trustee may employ and pay any professionals in the ordinary course of business without any further notice to or action, order, or approval of the

Bankruptcy Court. Any professionals employed by the Litigation Trustee shall be paid from the funds in or generated by the Litigation Trust and not from the Professional Fee Escrow.

**2.3** **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive on the Effective Date payment in Cash from the Administrative and Priority Claim Reserve in an amount equal to the amount of such Allowed Priority Tax Claim or, as determined by the Debtors in consultation with the Consenting Stakeholders, regular installment payments from the Litigation Trustee of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash from the Administrative and Priority Claim Reserve in accordance with the terms of any agreement between the Debtors or the Litigation Trustee, as applicable, and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**3.1** **Classification of Claims and Interests**

This Plan constitutes one Plan proposed by consolidated Think Finance, LLC and each Claim filed or to be filed against any Debtor shall be deemed a single claim filed only against the consolidated Think Finance, LLC. Except for the Claims addressed in Article II, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or an Equity Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | GPLS Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

20

| 5 | Consumer Borrower Claims | Impaired | Entitled to Vote |
| 6 | Pennsylvania Regulatory Claim | Impaired | Entitled to Vote |
| 7 | CFPB Regulatory Claim | Impaired | Entitled to Vote |
| 8 | Equity Interests | Impaired | Entitled to Vote |

**3.2     Treatment of Classes of Claims and Equity Interests**

Except to the extent that the Debtors, or the Litigation Trustee on or after the Effective Date, and a holder of an Allowed Claim, as applicable, agree to a less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim.  Unless otherwise indicated, the holder of an Allowed Claim, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(a)     **Class 1 — Priority Non-Tax Claims**

(1)     *Classification*: Class 1 consists of any Priority Non-Tax Claims against any Debtor.

(2)     *Treatment*: Each holder of an Allowed Class 1 Claim shall receive Cash from the Administrative and Priority Claim Reserve in an amount equal to such Allowed Class 1 Claim.

(3)     *Voting*: Class 1 is Unimpaired.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)     **Class 2 — Other Secured Claims**

(1)     *Classification*: Class 2 consists of any Other Secured Claims against any Debtor.

(2)     *Treatment*: Each holder of an Allowed Class 2 Claim shall receive, as the Debtors determine in consultation with the Consenting Stakeholders:

A.     payment in full in Cash of its Allowed Class 2 Claim, including any accrued and unpaid interest, fees, and expenses as may be required to be paid;

B.     the collateral securing its Allowed Class 2 Claim; or

21

C.      such other treatment rendering its Allowed Class 2 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(3)     *Voting*: Class 2 is Unimpaired.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)     **Class 3 — GPLS Claims**

(1)     *Classification*: Class 3 consists of the GPLS Claims asserted against the Debtors.

(2)     *Treatment*: Each Holder of an Allowed Class 3 Claim shall receive such amount as agreed to by the Debtors, the GPLS Parties and the Committee, or as determined by an order of the Bankruptcy Court.

(3)     *Voting*: Class 3 is Impaired.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan, unless otherwise determined by an order of the Bankruptcy Court.

(d)     **Class 4 — General Unsecured Claims**

(1)     *Classification*: Class 4 consists of any General Unsecured Claims and any Opt-Out Consumer Borrower Claims against any Debtor.

(2)     *Treatment*:  Each holder of an Allowed Class 4 Claim shall receive a cash Distribution equal to its pro rata share of the General Unsecured Claims Cash Pool.

(3)     *Voting*: Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

(e)     **Class 5 — Consumer Borrower Claims**

(1)     *Classification*: Class 5 consists of a single class claim of the Nationwide Consumer Borrower Settlement Class.

(2)     *Treatment*:  The Consumer Borrower Settlement Class Claim shall be treated in accordance with the Section 3.6 of this Plan.

(3)     *Voting*: Class 5 is Impaired.  The Nationwide Consumer Borrower Settlement Class Representatives are entitled to submit a single vote to accept or reject the Plan on behalf of the Nationwide Consumer Borrower Settlement Class.

22

(f) **Class 6 – Pennsylvania Regulatory Claim**

  (1) *Classification*: Class 6 consists of a single claim of Pennsylvania.

  (2) *Treatment*: In full satisfaction of the Pennsylvania Regulatory Claim, the Pennsylvania AG shall be allowed a Claim in an unliquidated amount, temporarily for voting purposes in accordance with Bankruptcy Rule 3018(a), but shall not receive any Cash Distribution under the Plan on account of the Pennsylvania Regulatory Claim. All proofs of claim filed by the Pennsylvania AG shall be resolved and satisfied for all purposes pursuant to (i) the treatment for Pennsylvania Borrowers who are members of the Nationwide Consumer Borrower Settlement Class; (ii) the allowance of the Pennsylvania AG Administrative Expense Claim; and (iii) the Class Action Injunction and Other Relief concerning Pennsylvania.

  (3) *Voting*: Class 6 is Impaired. The Pennsylvania AG is entitled to vote to accept or reject the Plan.

(g) **Class 7 – CFPB Regulatory Claim**

  (1) *Classification*: Class 7 consists of a single claim of the CFPB.

  (2) *Treatment*: In full satisfaction of the CFPB Regulatory Claim, the CFPB shall be allowed a Claim in an unliquidated amount, temporarily for voting purposes in accordance with Bankruptcy Rule 3018(a), but shall not receive any Cash Distribution under the Plan on account of the CFPB Regulatory Claim. All proofs of claim filed by the CFPB shall be resolved and satisfied for all purposes pursuant to (i) the treatment for Subject Consumers who are members of the Nationwide Consumer Borrower Settlement Class; (ii) the allowance of the CFPB Administrative Expense Claim and (iii) the relief provided in the CFPB Consent Order.

  (3) *Voting*: Class 7 is Impaired. The CFPB is entitled to vote to accept or reject the Plan.

(h) **Class 8 – Equity Interests**

  (1) *Classification*: Class 8 consists of the Equity Interests.

  (2) *Treatment*: Holders of the Equity Interests shall have their Equity Interests cancelled on the Effective Date and shall receive all equity interests in the Reorganized Debtors.

  (3) *Voting*: Class 8 is Impaired. Holders of the Equity Interests are entitled to vote to accept or reject the Plan.

### 3.3 Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors, the Reorganized Debtors or the Litigation Trustee regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

### 3.4 Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 3.5 Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims in such Class.

### 3.6 Nationwide Consumer Borrower Settlement Class

The Nationwide Consumer Borrower Settlement Class shall be made up of all Nationwide Consumer Borrowers, *excluding* those Nationwide Consumer Borrowers who effectively opt out of the Nationwide Consumer Borrower Settlement Class. The Nationwide Consumer Borrower Settlement Class Claim shall be allowed in an unliquidated amount, provided that the amount allowed for distribution purposes shall be deemed to be greater than the amount ultimately available for Distributions to members of the Nationwide Consumer Borrower Settlement Class, including without limitation any amount available for such distributions based on recoveries on Estate Causes of Action by the Litigation Trustee, provided, further, that such allowed class claim shall include, without limitation, a liquidated allowed claim in the amount of Distributions that are actually made to members of the Nationwide Consumer Borrower Settlement Class. Distributions to members of the Nationwide Consumer Borrower Settlement Class shall be governed by the Plan and the Litigation Trust Agreement. Nationwide Class Counsel shall coordinate with counsel to the Pennsylvania AG in connection with any notices provided and distributions made to Pennsylvania Borrowers, which notices and distributions from the Litigation Trust shall be subject to approval by the Bankruptcy Court.

Distributions to members of the Nationwide Consumer Borrower Settlement Class shall be allocated as follows:

o Tier 1: the following states: Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin. Tier 1 shall receive 70% of the Litigation Trust Proceeds (the "Tier 1

Allocation"), in addition to injunctive and other relief in the form of the Class Action Injunctive and Other Relief; and

      o    <u>Tier 2</u>: the following states: Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming. Tier 2 shall receive <u>30%</u> of the Litigation Trust Proceeds (the "<u>Tier 2 Allocation</u>"), in addition to injunctive and other relief in the form of the Class Action Injunctive and Other Relief.

      o    <u>Tier 3</u>: states other than Tier 1 states and Tier 2 states. Tier 3 shall not receive any of the Litigation Trust Proceeds, but shall benefit from the Class Action Injunctive and Other Relief, and shall include the states of Nevada and Utah.

Each member of the Nationwide Consumer Borrower Settlement Class in a Tier 1 state shall receive a pro-rata distribution of the Tier 1 Allocation calculated based on the total amount paid by such Class member on Eligible Tribal Loans as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Parties and/or the Settling Tribal Lenders, *provided* that the Pennsylvania Borrowers also may receive a portion of the other amounts paid to the Pennsylvania AG as part of the Settlement (the "<u>Pennsylvania Borrower Additional Amounts</u>").

Each member of the Nationwide Consumer Borrower Settlement Class in a Tier 2 state shall receive a pro-rata distribution of the Tier 2 Allocation calculated based upon the total amount of interest paid by such Class member on Eligible Tribal Loans, as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Parties and/or the Settling Tribal Lenders, over the usury limit in such state applicable to unsecured installment loans issued by lenders subject to such state's laws in a similar dollar amount as the Eligible Tribal Loans.

Members of the Nationwide Consumer Borrower Settlement Class in a Tier 3 state shall not receive any monetary distribution.

Notwithstanding anything in this Plan or the Confirmation Order, Distributions from the Litigation Trust to individual members of the Nationwide Consumer Borrower Settlement Class shall not exceed the amount each of those consumers paid in excess of principal on his or her Eligible Tribal Loans.

The aggregate amount of all allocations for Pennsylvania Borrowers shall be paid to the Pennsylvania AG. Subject to supervision of the Bankruptcy Court and so long as consistent with all orders of the Bankruptcy Court, the Pennsylvania AG may act as the paying agent for all allocations for Pennsylvania Borrowers and for all Pennsylvania Borrower Additional Amounts, and the Pennsylvania AG may determine, in the Pennsylvania AG's sole discretion, all matters relating to (a) the timing of distributions to Pennsylvania Borrowers and (b) the distribution of the Pennsylvania Borrower Additional Amounts.

No other claims of any members of the Nationwide Consumer Borrower Settlement Class shall be allowed for distribution purposes. Noting in this Plan shall limit any rights of the Litigation Trustee pursuant to 11 U.S.C. § 502(c). The allowance for distribution purposes of the Nationwide Consumer Borrower Settlement Class Claim is not intended to and shall not limit or adversely impact, nor enhance or favorably impact, in any way whatsoever Causes of Action of members or potential members of the Nationwide Consumer Borrower Settlement Class against Non-Released/Non-Exculpated Parties.

As set forth more fully in the Litigation Trust Agreement and/or Preliminary Approval Order, the Nationwide Consumer Borrower Settlement Class shall be represented by the following firms:

- Kelly & Guzzo, P.L.C.;
- Consumer Litigation Associates, P.C;
- Lowenstein Sandler; and
- Tycko & Zavareei, LLP

The following firms shall serve on an advisory committee:

- Kellett & Bartholow, PLLC;
- Berman Tabacco; and
- Gravel & Shea PC

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### 4.1    Substantive Consolidation

This Plan contemplates, and is predicated upon, the entry of an order, which may be the Confirmation Order, substantively consolidating the Estates and the Chapter 11 Cases for administrative convenience and for purposes of implementing this Plan. Accordingly, on the Effective Date: (i) all Intercompany Claims and Equity Interests held by, between and among the Debtors shall be deemed eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of Think Finance, LLC, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of Think Finance, LLC, and (iv) each Claim filed or to be filed against any Debtor shall be deemed filed only against the consolidated Think Finance, LLC, and shall be deemed a single Claim against and a single obligation of the consolidated Think Finance, LLC. On the Effective Date, in accordance with the terms of the Plan, all Claims based upon co-obligations or guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be merged into a single obligation of Think Finance, LLC, and otherwise shall be released and of no further force and effect.

Substantive consolidation shall not, and shall not be deemed to, prejudice any of (i) the Estate Causes of Action, which shall survive for the benefit of the Debtors and their Estates and,

upon the Effective Date, for the benefit of the Litigation Trust and its beneficiaries; or (ii) the available defenses to the Estate Causes of Action.

## 4.2     Restructuring Transactions

On the Effective Date, the Debtors shall implement the Restructuring Transactions. The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents for the dissolution of the Debtors and the creation of the Reorganized Debtors; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, interest, or right consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; (d) creation of the Litigation Trust; and (e) all other actions that the Debtors determine to be necessary or appropriate and consistent with the Plan and Confirmation Order, including making filings or recordings that may be required by applicable law in connection with the Plan.

## 4.3     Consumer Litigation Settlement

The Plan is intended to implement the Consumer Litigation Settlement described in this Plan and the Disclosure Statement. Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan and the Consumer Litigation Settlement shall constitute a good-faith compromise and settlement of all Claims and Equity Interests. In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors reserve all of their rights with respect to any and all disputes resolved and settled under the Plan and Consumer Litigation Settlement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements embodied in the Plan and the Consumer Litigation Settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and the Confirmation Order, including, without limitation, the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and the Confirmation Order.

## 4.4     Corporate Action

Upon the Effective Date, the Debtors shall be authorized to implement the Restructuring Transactions, including to transfer the Reorganized Debtors' Assets to the Reorganized Debtors, without any requirement of further action by the members, officers, or managers of the Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions. On or (as

27

applicable) before the Effective Date, the appropriate officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors, including any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article 4.4 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 4.5   Dissolution of the Debtors

As soon as reasonably practicable following the Effective Date or such later date as may be necessary to facilitate execution, submission and court approval of the CFPB Consent Order, the Debtors or Reorganized Debtors, as applicable, shall file a notice of dissolution of the Debtors with the Bankruptcy Court, upon which filing the Debtors shall be deemed dissolved for all purposes in accordance with applicable state and local law without any further action, plan of dissolution, notice or application with any state or local division required on the part of the Debtors or the Debtors' officers, managers or members, and all remaining officers, managers, or managing members, shall be dismissed without any further action required on the part of any such Debtor, the officers of such Debtor, or the members of such Debtor, provided that foregoing shall not restrict the Reorganized Debtors from entering into agreements for the continued employment of employees of the Debtors.

### 4.6   The Reorganized Debtor Assets

On the Effective Date, or as soon as reasonably practicable thereafter, the following property of the Estate shall be transferred to and/or vest in the Reorganized Debtors: (i) the Reorganized Debtor Cash Distribution, which shall be paid to the Reorganized Debtors by the Escrow Agent on the Effective Date, or as soon as reasonably practicable thereafter; (ii) the MobiLoans Note; (iii) the Haynes Note; (iv) the Intercompany Receivables; (v) the Intellectual Property, FF&E, and employee-related assets (including business and employee contracts, leases and related matters, etc.), including assumed Executory Contracts (including employee contracts and leases), *provided that* the Reorganized Debtors shall be solely responsible for payment of any Cure to be paid in connection with any assumed Executory Contracts and leases; and (vi) the Insurance Rights.

### 4.7   Funding and Administration of Reserve Accounts

On the Effective Date, all remaining Escrow Funds and any remaining GPLS Funds shall vest in the Estate and shall be transferred to the Litigation Trust and shall be utilized, among other purposes set forth in the Plan, to fund the Reserve Accounts in accordance with this Article 4.7 of the Plan. All Cash remaining in the Estates immediately after funding the Reserve Accounts and the payment of any other amounts required by this Plan, including the Reorganized Debtor Cash Distribution pursuant to Article 4.6 of the Plan, shall vest in, and be transferred to, the Litigation Trust.

(a)     The Administrative and Priority Claims Reserve

On the Effective Date, the Administrative and Priority Claims Reserve shall be established and funded in the amount of the aggregate Administrative and Priority Claims Estimate.  Subject to the terms of the Plan, the Litigation Trustee shall pay each Allowed Administrative Claim as provided for in Article 2.1 of this Plan.  In the event that excess Cash remains in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative and Priority Claims, or at such time as the Cash in the Administrative and Priority Claims Reserve exceeds the Face Amount of the unpaid Administrative and Priority Claims, such Cash shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(b)     The General Unsecured Claims Cash Pool

On the Effective Date, or as soon as reasonably practicable thereafter, the General Unsecured Claims Cash Pool shall be established and funded.  Subject to the terms of the Plan, the Litigation Trustee or its designee shall distribute the Cash in the General Unsecured Claims Cash Pool *pro rata* to holders of Allowed Class 4 Claims.  The Litigation Trustee shall establish, fund and administer the Disputed General Unsecured Claims Reserve in accordance this Plan from the Cash deposited into the General Unsecured Claims Cash Pool.  In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(c)     The Substantial Contribution Fund

On the Effective Date, or as soon as reasonably practicable thereafter, the Substantial Contribution Fund shall be established and funded in the amount of $12,550,007.00.  Subject to the terms of the Plan, the Litigation Trustee shall distribute the Cash in the Substantial Contribution Fund to holders of the Substantial Contribution Claims.

(d)     The Professional Fee Escrow

On or before the Effective Date, the Professional Fee Escrow shall be established and funded by the Debtors in Cash in the amount of the aggregate Professional Fee Estimate.  Each Professional Claim shall be paid from the Professional Fee Escrow as provided for in Article 2.2 of this Plan.  In the event that excess Cash remains in the Professional Fee Escrow after payment of all Allowed Professional Fee Claims, such Cash shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(e)     The Litigation Trust Initial Funding

On the Effective Date, or as soon as reasonably practicable thereafter, after the establishment and funding of the Reserve Accounts and payment of any other amounts required by the Plan, including payment of the Reorganized Debtor Cash Distribution pursuant to Article

4.6 of the Plan, the Litigation Trust Initial Funding shall be deposited into an account owned and controlled by the Litigation Trustee.

**4.8**     **Approval of Class Action Settlement**

The Plan incorporates and implements the terms and conditions of the Litigation Trust Agreement and constitutes and shall be deemed to be a motion for final approval of the Nationwide Consumer Borrower Settlement Class by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) for purposes of voting on and receiving distributions under the Plan. Upon confirmation of the Plan, (i) each member of the Nationwide Consumer Borrower Settlement Class shall be entitled to receive Distributions in accordance with the Litigation Trust Agreement and/or Preliminary Approval Order and (ii) all proofs of claim asserting Consumer Borrower Claims other than the single claim of the Nationwide Consumer Borrower Settlement Class, other than those timely filed Allowed Opt-Out Consumer Borrower Claims, shall be disallowed and/or expunged; provided, however, that the allowance of the class proof of claim on these terms shall not inure to the benefit of any one individual holder of a Consumer Borrower Claim. The Plan shall constitute a motion (i) pursuant to section 502 of the Bankruptcy Code to allow for distribution purposes the class proofs of claim filed by the Nationwide Consumer Borrower Class Representatives and (ii) pursuant to Rule 3007 of the Bankruptcy Rules, to disallow and expunge all other Consumer Borrower Claims (other than Allowed Opt-Out Consumer Borrower Claims), including those filed as putative class claims on behalf of Consumer Borrowers of any state.

**4.9**     **Consenting Defendants' Cash Contribution**

On the Effective Date, or as soon as reasonably practicable thereafter, each Consenting Defendant shall pay to the Litigation Trust an amount in Cash equal to its respective share of the Consenting Defendants' Cash Contribution. For the avoidance of doubt, the Consenting Defendants' Cash Contributions shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans or (ii) a concession by the Consumer Borrowers that the alleged wrongdoing or illegality did not occur.

**4.10**     **Books and Records**

The Reorganized Debtors shall receive possession of and the right to use and maintain the original of all of Debtors' books and records. For the avoidance of doubt, the Litigation Trustee shall have full reasonable access to all such books and records for the purpose of investigating and pursuing the Estate Causes of Action, and the Litigation Trustee shall be deemed to share with the Reorganized Debtors in any attorney-client privilege, work product doctrine, or other privilege or immunity attaching to any such books and records necessary for investigating and pursuing the Estate Causes of Action, provided, however, that such sharing does not waive any such privilege or immunity.

On the Effective Date, or as soon as reasonably practicable thereafter, (i) the Litigation Trustee shall receive a copy of the Debtors' books and records held by any litigation vendor, at

the expense of the Litigation Trust, in a form and manner whereby it is commercially and technologically reasonable to obtain such copy; and (ii) if it becomes necessary for the Reorganized Debtors to incur significant internal or external costs in connection with providing access to the Debtors' books and records to the Litigation Trustee, then the Reorganized Debtors and the Litigation Trustee shall enter into a reasonable shared services agreement governing the reimbursement of such costs. If the Reorganized Debtors and the Litigation Trustee do not reach an agreement on the terms of such shared services agreement, then either the Reorganized Debtors or the Litigation Trustee may seek an order from the Bankruptcy Court establishing reasonable terms for such shared services. If the Litigation Trustee reasonably determines that the expense of such access and use of such books and records is greater than the expense of fully duplicating them, then the Litigation Trustee may elect to obtain a copy at the expense of the Litigation Trust.

For the avoidance of doubt, the Litigation Trustee shall not be permitted to waive any privilege with respect to the Debtors' books and records, or disclose to any third-parties any confidential PII, or any trade secrets or other confidential business information related to (a) shareholders except in connection with pursuing an Estate Cause of Action, (b) financial information, statements, or records of the Debtors except in connection with pursuing an Estate Cause of Action, (c) typical confidential employee information, (d) risk analysis products and methods (such as models, data and know how), (e) marketing services, strategies and methodologies, and (f) the technology platforms, systems, products and all other Intellectual Property, including without limitation software development and programs and related documentation, except for the fact of the occurrence of any transfer of such technology prior to the Petition Date related to an Estate Cause of Action, contained in such books and records without the consent of the Reorganized Debtors or in accordance with the following procedure: (i) the Litigation Trustee shall provide written notice to the Reorganized Debtors of the Litigation Trustee's intent to waive privilege and/or disclose information, which notice shall, among other things, identify the information at issue and the proposed use of such information; (ii) the Reorganized Debtors shall have five (5) business days after such notice is received to notify the Litigation Trustee that the Reorganized Debtors object to such disclosure or waiver; (iii) if the Reorganized Debtors timely object in writing, then the Reorganized Debtors and the Litigation Trustee shall meet and confer about such information and proposed use during the three (3) business days that follow the Reorganized Debtors' notification of the Litigation Trustee of the objection; (iv) if the parties do not reach an agreement, the Reorganized Debtors shall have until five (5) business days after the meet and confer concludes to file a pleading with the Bankruptcy Court seeking an order restricting such privilege waiver or disclosure; and (v) until such pleading is resolved by agreement of the Reorganized Debtors and the Litigation Trustee or order of the Bankruptcy Court, the Litigation Trustee shall not waive such privilege or disclose such information. In ruling on such a pleading, the Bankruptcy Court may consider and weigh governing law as to privilege, confidentiality, and/or trade secrets, as well as the possible or intended use of such information and the interests of the Reorganized Debtors concerning such disclosure or waiver.

As of and after the Effective Date, to the extent the Reorganized Debtors receive a valid subpoena requesting documents produced by the Debtors in the Pending Litigation or in the

Bankruptcy Case, the Reorganized Debtors shall agree that such previously produced documents shall be deemed produced under such valid subpoena as long as there is a valid protective order in place in the applicable litigation that provides equivalent protections to the Reorganized Debtors, including without limitation notice to the Reorganized Debtors, as those provided to the Debtors under the applicable protective order in the Pending Litigation or the Bankruptcy Case.

Notwithstanding anything else in the Plan with respect to the GPL, MobiLoans and PGL Property, the Reorganized Debtors may retain the original of any data regarding any consumer borrowers owned by the Settling Tribal Lenders and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders, provided that the mutually acceptable shared services agreement with the Litigation Trustee shall address the Litigation Trustee's access to such data.

**4.11    Section 1145 Exemption**

The offer, issuance, and distribution of any Equity Interests in the Reorganized Debtors, any other Successor Entity or newly-formed entity shall be exempt (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code), pursuant to section 1145 of the Bankruptcy Code, without further act or action, from registration under (i) the Securities Act, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities. Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the issuer of such securities and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

To the extent beneficial interests in the Litigation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the exemption provisions of section 1145 of the Bankruptcy Code shall apply to such beneficial interests.

**4.12    Exemption from Certain Taxes and Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax,

conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.13**    **Class Action Injunctive and Other Relief**

As of the Effective Date, although the Debtors deny that they committed any wrongdoing and the Debtors deny that they own or were lenders on any of the Eligible Tribal Loans, as part of the agreement to resolve the disputes among the Settling Parties pursuant to this Plan, the following injunctive and other relief shall take effect:

- while denying that they committed any wrongdoing and denying that they own or were lenders on any of the Eligible Tribal Loans, to the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors shall consent to the unpaid principal, interest and fees of the Eligible Tribal Loans to members of the Nationwide Consumer Borrower Settlement Class being voided and adjusted to a zero balance. To the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors consent to the notification of members of the Nationwide Consumer Borrower Settlement Class affected by the foregoing sentence that their Eligible Tribal Loans have been voided and adjusted to a zero balance (any costs of notification shall be funded from the Litigation Trust, and such notice may be made in the initial notice made to the Nationwide Consumer Borrower Settlement Class by a description as to the effect of any final approval);

- while denying that they committed any wrongdoing, denying that they own or were lenders on any of the Eligible Tribal Loans, and denying that they were a furnisher to any consumer reporting agencies for any Eligible Tribal Loans, as long as Nationwide Class Counsel has provided the Debtors with acceptable evidence that the Settling Tribal Lenders agree to the deletion of such tradelines, the Debtors shall not object to a motion filed by the Consenting Plaintiffs for the entry of an Order requiring the deletion of all tradelines for any Eligible Tribal Loan from all consumer reporting agencies, except for Eligible Tribal Loans associated with a Tribal Lender that has not agreed to this removal;

- to the extent of their current knowledge, and solely for the purpose of effectuating the Class Action Injunctive and Other Relief, the Debtors, or if the Debtors have not provided such information prior to the Effective Date then the Litigation Trustee, shall provide on a confidential basis to Kelly Guzzo, P.L.C. and Consumer Litigation Associates, P.C. a list of all Eligible Tribal Loans that have been sold or transferred to any third party, and the list will

identify the loan numbers, the Tribal Lenders, the dates of sale, and the identity of such third parties, provided that any PII contained in such information shall be subject to the PII Prohibited Use/Protective Order Provisions;

- upon the vesting of the Reorganized Debtor Assets in the Reorganized Debtors and the creation and vesting of assets in the Litigation Trust in accordance with this Plan, the Debtors shall no longer conduct business;

- the Reorganized Debtors (i) shall not use the PII provided by members of the Nationwide Consumer Borrower Settlement Class to the Tribal Lenders or to the Debtors (a) to market to such members or (b) to assess the value of marketing to such members; and (ii) except as expressly contemplated by the Plan, shall not sell or transfer to any other Entity the PII provided by members of the Nationwide Consumer Borrower Settlement Class to the Tribal Lenders or to the Debtors for such Entity to use the PII to market to such members; and

For the avoidance of doubt, (i) the Class Action Injunctive and Other Relief shall not constitute or be deemed any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans and (ii) nothing in this Plan, including, without limitation, the releases granted by the Nationwide Consumer Borrower Settlement Class, shall be contingent upon the Tribal Lenders' agreement to all, or any portion of, the Class Action Injunctive and Other Relief, except that the express contingencies identified above concerning Tribal Lenders' consent or agreement must occur prior to the Debtors (a) agreeing to Eligible Tribal Loans being voided and adjusted to a zero balance, and related notices or (b) consenting to the deletion of certain tradelines.

**4.14    Pennsylvania Settlement**

On, or as soon as reasonably practicable after, the Effective Date, the Pennsylvania AG shall seek and obtain all orders necessary to settle, with the entry of a Rule 54(b) separate final judgment, all claims in the Pennsylvania Litigation against the Debtors. The Debtors and the Pennsylvania AG agree that one of such orders shall include injunction language that is substantively the same as the Class Action Injunctive and Other Relief or as otherwise agreed by the Pennsylvania AG and the Debtors, provided that such injunction language shall only address conduct concerning Pennsylvania residents and shall not address conduct concerning residents of other states or commonwealths.

For the avoidance of doubt, the Pennsylvania AG Settlement shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans, or (ii) a concession by the Pennsylvania AG that the alleged wrongdoing or illegality did not occur.

It is understood and acknowledged by the Settling Parties that subject to the court in the Pennsylvania Litigation staying the Pennsylvania Litigation against the Debtors and the Consenting Defendants, the Pennsylvania AG may continue the Pennsylvania Litigation against the remaining defendants (the GPLS Parties, Kenneth Rees and National Credit Adjusters, LLC) without limitation and that any judgment, proceeds from such judgment, or settlement with such remaining defendants are the sole property of the Pennsylvania AG for distribution pursuant to further orders of the court in the Pennsylvania Litigation.

**4.15    CFPB Settlement**

Within 60 days after the Effective Date, or at such other time as mutually agreed upon prior to the Effective Date by the Debtors and the CFPB, the CFPB and the Debtors will each provide final approval for filing of a joint motion with the Montana court presiding over the CFPB Litigation seeking entry of a consent order in the form attached to the Disclosure Statement as Exhibit D (the "CFPB Consent Order"). The CFPB shall then file the joint motion and CFPB Consent Order and shall seek and obtain all other orders necessary to settle the CFPB Litigation and to dismiss the CFPB Litigation in accordance with the Plan and the CFPB Consent Order.  For the avoidance of doubt, the CFPB Settlement is made in compromise of disputed claims. The CFPB Settlement does not constitute the withdrawal of the Debtors' denials and defenses in the CFPB Litigation or an admission by the Debtors of any facts or liability or wrongdoing, including, but not limited to, any liability or wrongdoing with respect to any allegations that were or could have been raised in the CFPB Litigation.  The CFPB Settlement also does not constitute an admission by the CFPB that any claim is not well-founded, and nothing in this Plan should be construed as, or deemed to constitute, approval, sanction, or authorization by the CFPB of any of the Debtors' actions or business practices.

**4.16    Subordination**

The allowance, classification, and treatment of all Claims and Equity Interests under the Plan shall conform to and be consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Equity Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtors or the Litigation Trustee on or after the Effective Date reserve the right to seek to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**4.17    Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, Certificates, and other documents evidencing Claims against the Debtors shall be canceled and the obligations of the Debtors or the Reorganized Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive Distributions under the Plan and (b) allowing and preserving the rights of the Litigation Trustee, as applicable, to make Distributions on account of Allowed Claims as provided herein.

**4.18    Effectuating Documents; Further Transactions**

On and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to

35

effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**4.19** **Incentive Plans and Employee and Retiree Benefits**

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order and, without limiting the authority provided under the Debtors' respective articles of organization, bylaws and other formation and constituent documents, the Reorganized Debtors shall be authorized to: (a) amend, adopt, assume and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits (except with respect to any employee whose employment agreement is rejected on or prior to the Effective Date), retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

## ARTICLE V

## THE LITIGATION TRUST

**5.1** **Establishment of the Litigation Trust**

The Litigation Trust shall be established and shall become effective on the Effective Date. The Litigation Trust shall be governed and administered in accordance with this Plan and the Litigation Trust Agreement.

**5.2** **Transfer of Assets to the Litigation Trust**

On the Effective Date, any and all assets and property of the Estates not transferred to the Reorganized Debtors pursuant to Article 4.6 of the Plan or otherwise addressed in this Plan shall be transferred to the Litigation Trust and administered by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement, including, but not limited to, the Estate Causes of Action, the Victory Park Adversary Proceeding Causes of Action, refunds, deposits, remnant assets, the General Unsecured Claims Cash Pool, any remaining funds in the Professional Fee Escrow following the payment of all Allowed Professional Claims and the Debtors' interests in GPLS.

On or before the Effective Date, GPLS shall assign all interest in and rights to the Great Plains Reserve Amount to the Estates, minus $1,000,000.00 to be held back to facilitate the wind-down of Great Plains and attorneys' fees approved by the court pursuant to the settlement

36

reached in Gibbs v. Great Plains, et al.  On the Effective Date, the Estates' interest in the Great Plains Reserve shall be transferred to and vest in the Litigation Trust for administration by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement.

## 5.3    Litigation Trust Funding

On the Effective Date, or on such other date as is set forth in the Litigation Trust Agreement, the Litigation Trust shall be established and receive the Litigation Trust Initial Funding.  Additionally, any net proceeds of the Estate Causes of Action received subsequent to the Effective Date shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.  For the avoidance of doubt, funding of the Litigation Trust shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans or (ii) a concession by Consumer Borrowers that the alleged wrongdoing or illegality did not occur.

## 5.4    Estate Causes of Action

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Estate Causes of Action shall be transferred by the Debtors (and deemed transferred) to the Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, and rights and interests, without the need for any Entity to take any further action or obtain any approval and the Litigation Trust shall be authorized as the representative of the Estates to pursue the Estate Causes of Action.  In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Causes of Action, and the Litigation Trustee's right to commence, prosecute, or settle any such Estate Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.

## 5.5    Litigation Trust Distributions

The Litigation Trustee shall liquidate the Estate Causes of Action and distribute any proceeds therefrom in accordance with this Plan and the Litigation Trust Agreement.  The Litigation Trustee also shall administer the Unsecured Claims Cash Pool and make distributions to Allowed General Unsecured Claims in accordance with this Plan.

## 5.6    Duration of Trust

The Litigation Trust shall have an initial term of five (5) years; provided, however, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court, upon a finding that an extension of the term of the Litigation Trust is necessary to accomplish the purpose of the Litigation Trust, the Litigation Trustee shall be authorized to extend the Litigation Trust for six (6) months or longer provided that such extension is approved by the Bankruptcy Court within (6) months of the beginning of the extended term. The Litigation Trust may be terminated earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing all of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code or (b) the Litigation Trustee has administered all of the Estate Causes of Action and performed all

other duties required by this Plan and the Litigation Trust Agreement. As soon as practicable after the liquidation or abandonment of all Estate Causes of Action, the Litigation Trustee shall seek entry of a Final Order closing the remaining Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

**5.7    Litigation Trust Oversight Board**

On the Effective Date, the Litigation Trust Oversight Board shall be appointed. The Litigation Trust Oversight Board shall include representatives of each of the Consenting Plaintiffs other than the CFPB. The members of the Litigation Trust Oversight Board shall not receive any additional compensation on account of serving in such capacity. The Litigation Trust Oversight Board shall have the duties set out in the Litigation Trust Agreement and this Plan including, without limitation, the right to seek a replacement for the Litigation Trustee on or after the Effective Date in accordance with the Litigation Trustee's retention agreement and the terms of the Litigation Trust Agreement.

**5.8    Appointment of Litigation Trustee**

The Litigation Trustee shall serve as the trustee for the Litigation Trust. The appointment of the Litigation Trustee shall be effective as of the Effective Date. Following the Effective Date and in the event of the resignation or removal, liquidation, dissolution, death, or incapacity of the Litigation Trustee, the Litigation Trust Oversight Board shall appoint a replacement Litigation Trustee and who, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Litigation Trustee. The Litigation Trustee shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Litigation Trust Agreement. The Litigation Trustee shall have the powers and duties set forth in this Plan and in the Litigation Trust Agreement.

**5.9    Indemnification and Exculpation**

The Litigation Trustee, and the Litigation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Litigation Trust, except those acts arising out of its own willful misconduct or gross negligence, and shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Litigation Trust, except for any actions or inactions involving willful misconduct or gross negligence. Any indemnification or reimbursement claim of the Litigation Trustee, or any other party entitled to indemnification or reimbursement under this subsection) shall be satisfied from the Litigation Trust.

**5.10    Transfer of GPL, MobiLoans and PGL Property**

The Reorganized Debtors shall reasonably cooperate, if needed, in efforts by the Settling Tribal Lenders to cause the GPL, MobiLoans and PGL Property to be transferred to the Litigation Trust in accordance with separate settlement agreements that may be reached with the Settling Tribal Lenders; provided, however, nothing herein shall require the Reorganized Debtors to incur expenses to so cooperate without provision being made for reasonable

reimbursement, including actual internal and external costs, for such cooperation to be paid to the Reorganized Debtors from the Litigation Trust.

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1** <u>**Assumption and Rejection of Executory Contracts and Unexpired Leases**</u>

Unless an Executory Contract or Unexpired Lease (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of all such Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

If a Claim arises from the rejection of any Executory Contract or Unexpired Lease pursuant to this Plan, such Claim shall be barred and unenforceable against the Debtors, Reorganized Debtors, the Litigation Trust, or their property unless a proof of claim asserting such Claim is filed with the Bankruptcy Court or the Solicitation Agent and served upon the Debtors within thirty (30) days after the Effective Date. Unless otherwise ordered by the Bankruptcy Court, any such rejection damages Claims shall be treated as General Unsecured Claims under the Plan.

**6.2** <u>**Insurance Policies**</u>

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtor if necessary to continue the insurance policies in full force) all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto. Entry of the Confirmation Order shall constitute the Bankruptcy Court's

approval of the Debtor's foregoing assumption (and assignment, if necessary) of each of the insurance policies. For the avoidance of doubt, nothing in this provision shall impair the Debtors' right to the proceeds of the Insurance Rights.

**6.3     Cure of Defaults and Objections to Cure and Assumption**

The Reorganized Debtors shall be solely responsible for paying Cures, if any, on the Effective Date, as soon as practicable thereafter, or such other date that the Debtors or Reorganized Debtors, as applicable, and the counterparty agree. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid to a counterparty must be served on counsel to the Debtors on or before the Cure Objection Deadline. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court by the Cure Objection Deadline. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is a dispute regarding Cure, the ability of the Reorganized Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption and assignment, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption and assignment, or as may be agreed upon by the Debtors, or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and the payment of any Cures shall result in the full release and satisfaction of Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed and assigned Executory Contract or Unexpired Lease at any time prior to the Effective Date. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed and assigned in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

**6.4** **Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed and assigned by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

**6.5** **Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to determine whether to assume, assign or reject the related contract or lease, if applicable.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1** **Distributions on Account of Claims Allowed as of the Effective Date**

(a) **Distributions to Holders of Allowed Claims Other than Members of the Nationwide Consumer Borrower Settlement Class**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Litigation Trustee on or after the Effective Date, as the case may be, and the Holder of the applicable Claim or Equity Interest, on the Initial Distribution Date, the Litigation Trustee shall make Distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the rights of the Litigation Trustee, as applicable, to object to Claims; *provided*, *however*, that (1) the Reorganized Debtors shall be responsible for payment of any Cure in accordance with Article 6.3, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article 2.3. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors or the Litigation Trustee, as applicable, and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or, at the Litigation Trustee's election, through regular installment payments of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code.

(b) **Distributions to Members of the Nationwide Consumer Borrower Settlement Class**

The Class Administrator shall make Distributions to members of the Nationwide Consumer Borrower Settlement Class in accordance with the Plan and Litigation Trust Agreement. The Debtors shall not prosecute settle, sell, transfer, assign, waive or release any of

41

the Estate Causes of Action, all of which are preserved for and will be transferred to the Litigation Trust, provided, however, that this limitation does not apply to (i) the prosecution of Estate Causes of Action against the GPLS Parties or (ii) the settlement of Estate Causes of Action against the GPLS Parties to the extent such settlement is otherwise consistent with this Plan and the Committee and Nationwide Class Counsel support such settlement.

To the extent not provided by the Debtors prior to the Effective Date, the Litigation Trustee shall provide on a confidential basis sufficient information to the Class Administrator, and any subsequently appointed class administrator for the Nationwide Consumer Borrower Settlement Class, to make an initial Distribution and any subsequent Distributions to the members of the Nationwide Consumer Borrower Settlement Class in accordance with the Plan and Litigation Trust Agreement.

**7.2     Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim.

**7.3     Delivery of Distributions**

(a)     **Record Date for Distributions to Holders of Claims**

On the Confirmation Date, the Claims Register shall be closed and the Debtors and the Litigation Trustee on and after the Effective Date shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Confirmation Date.  Notwithstanding the foregoing, if a Claim is transferred and the Claims Agent has been notified in writing of such transfer no later than 10 days before the Effective Date, the Litigation Trustee shall make Distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.  The Debtors or the Litigation Trustee on and after the Effective Date may, but shall have no obligation to, recognize transfers occurring after 10 days before the Effective Date.

(b)     **Distribution Process**

Except as otherwise provided herein, Distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to beneficial holders of record as of the Confirmation Date: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Claims Agent has been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Claims Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  The

Debtors, the Litigation Trustee, the Reorganized Debtors, and the Claims Agent shall not incur any liability whatsoever on account of any Distributions under the Plan.

(c) **Compliance Matters**

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Litigation Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, to the extent applicable.

(d) **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition on the Petition Date, for all purposes under the Plan, including voting, allowance and distribution.

(e) **Fractional, Undeliverable, and Unclaimed Distributions**

    (1) *Fractional Distributions*. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

    (2) *Undeliverable Distributions*.

        A. If any Distribution to a holder of an Allowed Claim other than a member of the Nationwide Consumer Borrower Settlement Class is returned as undeliverable, no further Distributions shall be made to such holder unless and until such holder provides notification to the Litigation Trustee or its designee of the then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such holder on the next Distribution Date. Undeliverable Distributions shall remain in the possession of the Litigation Trustee or its designee until such time as a Distribution becomes deliverable, or such Distribution reverts to the Litigation Trust or is canceled pursuant

43

to Article 7.3(e)(3), and shall not be supplemented with any interest, dividends, or other accruals of any kind.

B.  The Class Administrator shall attempt to distribute all available funds that are distributable to members of the Nationwide Consumer Borrower Settlement Class pursuant to the Plan and Litigation Trust Agreement to class members that can be located. Any Unclaimed Distributions to such members shall be distributed as follows: (a) the first $5 million of Unclaimed Distributions shall be paid to the Pennsylvania AG for further distribution to Pennsylvania members who cashed their initial distribution checks and (b) the remaining Unclaimed Distributions shall be paid pursuant to the Tier 1 Allocation and Tier 2 Allocation to all other members who cashed their initial distribution checks. At the discretion of the Litigation Trustee and the Litigation Trust Oversight Board, one additional distribution to members (including Pennsylvania members and other members) may be attempted if reasonably practicable to do so. Thereafter any Unclaimed Distributions remaining unclaimed 120 days after the foregoing final re-distribution of Unclaimed Distributions shall be paid 50% to the Pennsylvania AG for further distribution to members in Pennsylvania and 50% to the CFPB Civil Penalty Fund. The $5 million paid to the Pennsylvania AG in the first redistribution shall be credited against distributions otherwise to be made by the Litigation Trustee to Pennsylvania Borrowers through the Pennsylvania AG from proceeds of future settlements or judgments obtained against Non-Released/Non-Exculpated Parties.

(3)  *Reversion*.  Solely in respect of Distributions to holders of Allowed Claims other than members of the Nationwide Consumer Borrower Settlement Class, any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. Subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall contribute all such Unclaimed Distributions to a charity selected by the Litigation Trustee. The Claim of any holder of a Claim or its successors with respect to such Unclaimed Distributions shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the Distribution that is an Unclaimed Distribution, to the contrary.

(4)  *De Minimis Distributions*.  Except in the case of members of the Nationwide Consumer Borrower Settlement Class, the Litigation Trustee shall not be required to, but may in his sole and absolute discretion, make Distributions of Cash in an amount less than $10 to any holder of an

44

Allowed Claim. Any Allowed Claims affected by Article 7.3(e)(4) shall be discharged and forever barred from assertion against the Debtors, the Reorganized Debtors, the Litigation Trust and their respective property or Estates.

(f) **Surrender of Canceled Instruments**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate. Such Certificate shall be canceled solely with respect to the Debtors and the Reorganized Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

## 7.4 Claims Paid or Payable by Third Parties

(a) **Maximum Distribution**

An Allowed Claim that receives (i) Distributions in the Allowed amount of such Claim or (ii) Distributions that combined with Distributions or other consideration provided on the Allowed Claim equal the Allowed amount of such Claim shall, in each case be deemed satisfied in full as to such Allowed Claim, and in no event shall an Allowed Claim receive Distributions in excess of the Allowed amount of such Claim.

(b) **Claims Paid by Third Parties**

The Debtors or the Litigation Trustee on or after the Effective Date, in their sole discretion, may request that a holder of an Allowed Claim certify in writing and provide evidence reasonably acceptable to the Debtors or the Litigation Trustee, as applicable, to confirm whether: (i) the holder of such Claim has received payment in full on account of such Claim from a party that is not a Debtor; or (ii) such holder has been notified by or on behalf of a third party of any future Distributions or payment anticipated or estimated to be made on account of such Claim from such third party.

If (i) the Debtors or Litigation Trustee on or after the Effective Date determine, based on the foregoing, that an Allowed Claim has been satisfied in full in accordance with Article 7.4(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Claim, or (ii) a holder of an Allowed Claim does not comply with this Article, then unless the Bankruptcy Court orders otherwise, the Litigation Trustee shall not be required to make Distributions on account of such Allowed Claim, *provided* that nothing herein shall preclude a holder of an Allowed Claim from challenging such determination in the Bankruptcy Court.

(c) **Claims Payable by Insurance Carriers**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or

more of the Debtors' insurers agrees to satisfy in full a Claim, such Claim shall be disallowed and expunged to the extent of any agreed upon satisfaction in accordance with this Article after notice to such Holder of an Allowed Claim and an opportunity for a hearing.

(d)  **Applicability of Insurance Policies**

Except as otherwise provided herein, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any rights of any Entity, including insurers, under any policies of insurance.

## 7.5    Setoffs

Except as otherwise expressly provided for herein, the Debtors, the Reorganized Debtors or the Litigation Trustee on or after the Effective Date, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtors or Litigation Trustee on or after the Effective Date, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Litigation Trustee of any such Claims, rights, and Causes of Action that they may possess against such holder.  In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors, the Reorganized Debtors or the Litigation Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

## 8.1    Disputed Claims Process

Except as otherwise provided herein, if an Entity files a Proof of Claim and the Debtors, or the Litigation Trustee on or after the Effective Date, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VIII.  Except as otherwise provided herein, all Proofs of Claim not filed in accordance with the requirements set forth in the

46

Bar Date Order shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Litigation Trust or their respective property or estates without the need for any objection by the Debtors or the Litigation Trustee, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

**8.2    Prosecution of Objections to Claims**

After consultation with counsel to the Committee, with the agreement of the Committee the Debtors shall file and/or prosecute objections to General Unsecured Claims, as appropriate, prior to the Effective Date.  On and after the Effective Date, the Litigation Trustee shall have the sole authority and power on behalf of the Estates to file objections to General Unsecured Claims and settle any remaining disputed General Unsecured Claims in accordance with the terms of the Plan.  Any objections to Claims shall be served and filed on or before the 180th day after the Effective Date or by such later date as ordered by the Bankruptcy Court.  All Claims not objected to by the end of such 180-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Litigation Trustee shall have and retain any and all rights and defenses a Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Estate Causes of Action.

**8.3    Estimation of Claims**

The Debtors or the Litigation Trustee on and after the Effective Date, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether the Debtors, the Litigation Trustee or any other Person has previously objected to such Claim.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim and any appeal thereof.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement in the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

**8.4    Recoupment**

In no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtors or the Litigation Trustee, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

47

**8.5**     **No Interest**

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**8.6**     **Disallowance of Claims**

All Claims of any Entity from which property is sought by the Litigation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Litigation Trustee alleges is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Litigation Trustee, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION OF THE PLAN

**9.1**     **Dissolution of the Creditors Committee**

The Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. On the Effective Date, the Creditors Committee shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases and this Plan and its implementation, and the retention or employment of the Creditors Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Claims and represent the Creditors Committee in connection with such Professional Claims.

**9.2**     **Discharge of Claims and Termination of Equity Interests**

**The Reorganized Debtors shall receive the benefit of any and all discharges under the Plan. On and after the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Reorganized Debtors may operate their business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.**

As discussed in detail in the Disclosure Statement and otherwise provided herein, pursuant to Section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies related to the contractual, legal and equitable rights that a holder of a Claim or Equity Interest may have in respect of such Claim or Equity Interest. All Distributions made to holders of Allowed Claims in any Class are intended to, and shall be, final.

Except as otherwise provided for herein and effective as of the Effective Date pursuant to section 1141(d) of the Bankruptcy Code: (a) the rights afforded in the Plan and the treatment of all Claims, Equity Interests, and Causes of Action that arose before the Effective Date shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Equity Interests, whether known or unknown, notwithstanding whether any such holders has filed a Proof of Claim or Equity Interest or has failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, regardless of whether a Proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, the Litigation Trustee, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

All Equity Interests shall be cancelled, disallowed, released, and extinguished as of the Effective Date, or as of such later date to facilitate execution of the consent order that has been agreed upon between the Debtors and the CFPB, and will be of no further force or effect; *provided, however*, that TF Holdings shall be the direct or indirect parent of the Reorganized Debtors.

9.3     <u>Releases by the Debtors</u>

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Equity Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses, business practices or

operations, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided**, **however**, nothing herein shall be deemed to release any of the Estate Causes of Action being transferred to the Litigation Trust or any of the obligations or assets included in the Reorganized Debtor Assets.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.3, which includes by reference each of the related provisions and definitions contained in the Plan, *and further*, shall constitute the Bankruptcy Court's finding that this Article 9.3 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Debtors' Estates, and the Litigation Trustee asserting any claim or Cause of Action released pursuant to this Article 9.3.

**9.4     Releases by Members of the Nationwide Consumer Borrower Settlement Class**

As of the Effective Date, each member of the Nationwide Consumer Borrower Settlement Class is deemed to have released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (a) the Claims, alleged facts and Causes of Action asserted or that could have been asserted against any of the Released Parties in any Cause of Action prior to the Effective Date, including the Pending Litigation, and (b) any current or newly asserted Claim or Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.4, which includes by reference each of the related provisions and definitions contained in the Plan, *and further*, shall constitute the Bankruptcy Court's finding that this Article 9.4 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released in this Article 9.4; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Persons from asserting any Claim or Cause of Action released pursuant to this Article 9.4.

9.5     <u>Releases by Releasing Parties</u>.

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' business activities or operations prior to the Effective Date, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, (a) the Claims, alleged facts and Causes of Action asserted or that could have been asserted against any of the Released Parties in the Pending Litigation or any other Cause of Action prior to the Effective Date, and (b) any current or newly asserted claim or Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Notwithstanding anything to the contrary in the foregoing or stated anywhere else herein, the CFPB does not release any Claims or Causes of Action against Cortex or Jora except for Claims and Causes of Action arising from or in connection with the Debtors' activities alleged in the amended complaint in the CFPB litigation in which Cortex also participated.

**9.6**     **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Consumer Litigation Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**9.7**     **Injunction**

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to Article 9.4 or Article 9.5, discharged pursuant to Article 9.2, or are subject to exculpation pursuant to Article 9.6 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

**9.8**      <u>Protection Against Discriminatory Treatment</u>

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Person with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor acquired the Reorganized Debtor Assets from a Debtor that sought relief under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**9.9**      <u>Release of Liens</u>

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the respective Reorganized Debtors and their successors and assigns.

**9.10**      <u>Reimbursement or Contribution</u>

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(c)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**ARTICLE X**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**10.1**      <u>Conditions Precedent to the Effective Date</u>

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived by the Debtors with the agreement of Nationwide Class Counsel:

(a)      the Preliminary Approval Order, the Disclosure Statement Approval Order, Final Fairness Approval Order, and the Confirmation Order shall have been entered by the Bankruptcy Court;

53

(b)     the Confirmation Order and Final Fairness Approval Order shall become Final Orders;

(c)     all authorizations, consents, regulatory approvals, rulings or documents (if any) that are necessary for the Plan's effectiveness shall have been obtained;

(d)     the Nationwide Consumer Borrower Settlement Class shall have been fully and finally certified and all collateral orders necessary to effectuate the class settlement shall have been entered;

(e)     during the time period beginning January 1, 2019, through the Effective Date, Cortex shall have paid the Debtors service fees in the aggregate amount substantially equal to the total service fees incurred for the time period beginning January 1, 2019, through the Effective Date;

(f)     all payments and transfers of assets from the Debtors' estates, and all other payments, required under the Plan to be made before the Effective Date shall have been made in accordance with the terms of the Plan; and

(g)     with respect to all documents, applications, and agreements necessary to implement the Plan: (1) all conditions precedent to such documents, applications, and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents, applications, and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units, regulators, or commissions in accordance with applicable laws; and (3) such documents, applications, and agreements shall have been effected or executed.

**10.2     Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**10.3     Effect of Non-Occurrence of Conditions to Consummation**

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Equity Interests, or any claims held by the Debtors; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**10.4**    **Vacatur of Confirmation Order**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE XI**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**11.1**    **Modification of Plan**

Effective as of the date hereof: (a) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**11.2**    **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**11.3**    **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

# ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of an Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b) decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c) resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) any dispute regarding whether a contract or lease is or was executory or expired; and (d) any dispute regarding rejection damages claims.

(d) ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(e) adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f) enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g) enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h) grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) any adversary proceedings related to the Chapter 11 Cases pending before the Bankruptcy Court; (b) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the holder of a Claim or an Equity Interest for amounts not timely repaid pursuant to Article 7.4(a); (c) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (d) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (e) related to section 1141 of the Bankruptcy Code;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)     issue any order in aid of implementation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

(p)     enforce all orders previously entered by the Bankruptcy Court; and

(q)     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1   Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Reorganized Debtors or the Litigation Trustee, as applicable, and all holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

57

### 13.2     Payment of Statutory Fees

Subject to Article 4.1, all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.  For the avoidance of doubt, the Reorganized Debtors shall not be liable for any such statutory fees.

### 13.3     Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### 13.4     Reservation of Rights; Binding Effect

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date.

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Litigation Trustee and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### 13.5     No Admissibility

Neither the Consumer Litigation Settlement, the Disclosure Statement, the Plan, the Confirmation Order, nor any related documents shall be admissible or otherwise used or referenced or serve as an admission of fact in any litigation or adversary proceeding concerning the solvency of the Debtors or the liability of any third parties or entities.

### 13.6     Closing of Chapter 11 Cases

The Litigation Trustee shall, as promptly as practicable after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required to obtain closures of the Chapter 11 Cases under Bankruptcy Rule 3022, any applicable local rules, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### 13.7 Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors or the Litigation Trustee, as applicable, shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **TF Holdings, Inc.**<br>7701 Las Colinas Ridge, Suite 650<br>Irving, TX 75063<br>Attn:   Thomas D. Graber |
| **Counsel to Debtors** | **Hunton Andrews Kurth LLP**<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>Attn.:  Tyler P. Brown<br>          Jason W. Harbour |
| **Litigation Trustee** | The Honorable Russell F. Nelms<br>[] |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Northern District of Texas**<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, TX 25242<br>Attn: Lisa L. Lambert |

### 13.8 Term of Injunctions or Stays

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect during the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan, the Confirmation Order shall remain in full force and effect in accordance with their terms.**

### 13.9 Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

59

**13.10**  **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.americanlegal.com/TF  or  the  Bankruptcy  Court's  website  at www.txnb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**13.11**  **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

*[Remainder of page intentionally left blank.]*

*/s/ Gregory G. Hesse*
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone:  (214) 979-3000
Email: ghesse@HuntonAK.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Counsel to the Debtors and Debtors in Possession*