

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed August 26, 2019

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>THINK FINANCE, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-33964 (HDH)<br><br>(Jointly Administered) |

### ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG DEBTORS, ILLINOIS NATIONAL INSURANCE COMPANY AND MR. KENNETH REES

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to Rule 9019 of the Bankruptcy Rules, for entry of an order approving the Settlement Agreement, annexed hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

Exhibit 1 (the "Settlement Agreement"), entered into by the Debtors, Illinois National Insurance Company, and Mr. Kenneth Rees: the Court finds that: (a) it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the terms of the Settlement Agreement being (i) fair and equitable, (ii) the produce of the reasonable exercise of the Debtors' business judgment, and (iii) in the best interests of the Debtors and their estates; (e) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; (f) upon the record herein, and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**.

2. The Settlement Agreement is approved in its entirety, and the Debtors are authorized to perform their obligations thereunder.

3. The releases set forth in the Settlement Agreement are approved.

4. Performance of Illinois National Insurance Company's payment obligations under the Settlement Agreement will exhaust its policy limits under Policy No. 01-739-31-54 (the "Policy"), and Illinois National Insurance Company will have no remaining obligations under the Policy to Debtors (and their estates, successors, and assigns), or Mr. Kenneth Rees (and his successors and assigns), or any other Insured under the Policy.

5. Notwithstanding anything in the Bankruptcy Rules to the contrary, this Order shall become effective immediately upon its entry.

3

6. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###END OF ORDER###

Submitted by:

*/s/ Gregory G. Hesse*
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000
Email: ghesse@hunton.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Email: tpbrown@hunton.com
          jharbour@hunton.com

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT 1**

**Settlement Agreement**

## **SETTLEMENT AND MUTUAL RELEASE AGREEMENT**

This Settlement and Mutual Release Agreement (the "Agreement") is made by and among (i) Think Finance, Inc. n/k/a Think Finance, LLC, Think Finance SPV, LLC, TC Administrative Services, LLC, Tailwind Marketing, LLC, TC Loan Service LLC, TC Decision Sciences, LLC and Financial U, LLC (collectively, "Think Entities"), (ii) Kenneth Rees ("Rees"), and (iii) Illinois National Insurance Company ("Illinois National"). Think Entities, Rees, and Illinois National are sometimes hereinafter collectively referred to as the "Parties" and may be referenced singularly as a "Party."

## **RECITALS**

**WHEREAS,** on October 23, 2017 (the "Petition Date"), each of the Think Entities commenced its Chapter 11 bankruptcy case with the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), which cases are being jointly administered as *In re Think Finance, LLC*, Case No. 17-33964 (HDH) (the "Bankruptcy Case").

**WHEREAS,** prior to the Petition Date, Think Entities and Rees were insured under Directors, Officers and Private Company Liability Insurance Policy No. 01-739-31-54 (the replacement of Policy No. 01-436-32-96) (the "Policy"), whereby Think Finance, Inc. n/k/a Think Finance, LLC, and certain of its subsidiaries, directors, and officers requested indemnification in accordance with the terms and conditions of the Policy.

**WHEREAS,** the Policy provided a limit of liability of $5,000,000.00.

**WHEREAS,** Think Entities and Rees also were insured under the Excess Policy (the "Excess Policy") with AXIS Insurance Company ("AXIS"), Policy No. MSN773596/01/2013, that provides $5,000,000.00 in coverage in excess of the Policy (the "Excess Policy Limit").

**WHEREAS**, Think Entities and Rees submitted several claims and notices of circumstances (subsumed in Claim Nos. 5126193045US, 6586397182US, and 4065464501US) under the Policy for Loss (as defined in the Policy) arising out of lawsuits and adversary proceedings filed against them (the "Think Claims" and "Rees Claims," respectively) and potential claims against Rees ("Potential Claims"). The Think Claims, Rees Claims, and Potential Claims include, but are not limited to, claims and potential claims for Loss arising out of the following actions:

- *Commonwealth of Pennsylvania v. Think Finance, Inc.*, Case No. 2:14-cv-07139-JCJ in the Eastern District of Pennsylvania (the "Pennsylvania Action");
- *Gingras v. Rosette*, Case No. 1:15-cv-101 in the District of Vermont;
- *Gibbs v. Rees*, Case No. 3:17-cv-386 in the Eastern District of Virginia;
- *Banks v. Rees,* Case No. 8:17-cv-002201-AAS in the Middle District of Florida;
- *Brice v. Rees*, Case No. 3 :18-cv-01200 in the Northern District of California;
- *Granger v. Great Plains Lending, LLC*, Case No. 1:18-cv-00112 in the Middle District of North Carolina;
- *CFPB v. Think Finance, LLC f/k/a Think Finance, Inc.*, Case No. 4:17-cv-00127 in the District of Montana (the "CFPB Action");
- *Gibbs et al, Adversary Proceeding* No. 3:2017-bk-33964, Adversary Case No. 3:17-03117 in the Bankruptcy Court for the Northern District of Texas;
- *Banks et al, Adversary Proceeding* No. 3:2017-bk-33964, Adversary Case No. 3:17-03121 in the Bankruptcy Court for the Northern District of Texas;
- *Browne, Adversary Proceeding* No. 3:2017-bk-33964, Adversary Case No. 3:17-03120 in the Bankruptcy Court for the Northern District of Texas;
- Official Committee of Unsecured Creditors' Motion Pursuant to Bankruptcy Rule 2004 for an Order Directing the Production of Documents from, and Authorizing Examination of, KPMG LLP Relating to a 2014 Tax Opinion Prepared for the Debtors, Chapter 11 Case No. 17-33964 (HDH) in the United States Bankruptcy Court for the Northern District of Texas – Dallas Division; and
- Official Committee of Unsecured Creditors' Motion Pursuant to Bankruptcy Rule 2004 for an Order Directing the Production of Documents from, and Authorizing Examination of CBIZ, Inc., Relating to its Solvency Opinions and Valuations Prepared for the Debtors and Elevate Credit, Inc., Chapter 11 Case No. 17-33964 (HDH) in the United States Bankruptcy Court for the Northern District of Texas – Dallas Division.

**WHEREAS**, Illinois National denied coverage for all Think Claims, Rees Claims and Potential Claims, except it agreed as follows: (1) to indemnify Think Entities for 50% of the defense costs that they advanced on behalf of Rees in the Pennsylvania Action and, upon the

2

Petition Date, to continue indemnifying Rees directly for 50% of such defense costs while reserving its rights to deny coverage for any settlement or judgment in the Pennsylvania Action; and (2) to reimburse Think Entities for reasonable defense costs in the CFPB Action subject to a full reservation of rights.

**WHEREAS,** Think Entities and Rees have informed Illinois National that they believe its denial of coverage for Think Claims, Rees Claims and Potential Claims except those specified above is incorrect and, as a result, they have causes of action against Illinois National for breach of contract and breach of the implied covenant of good faith and fair dealing.

**WHEREAS,** on March 22, 2018, the Bankruptcy Court entered in the Bankruptcy Case its *Order Approving Motion of the Debtors and Debtors in Possession for Entry of an Order Modifying the Automatic Stay to Allow for Payment by the Insurer Under a Certain D&O Insurance Policy and Establishing Procedures Related to the Same* that, among other things, (i) grants relief from the automatic stay to the extent necessary to permit Illinois National to make payments to insureds under the Policy and (ii) approves procedures to govern the insureds' access to proceeds from the Policy (the "Access Procedures").

**WHEREAS,** following the Petition, Date and in accordance with the Access Procedures, and through June 20, 2019, (a) Think Entities have submitted invoices to Illinois National in the amount of $2,400,405.45 for indemnification of its defense costs in the CFPB Action (the "Think Invoices"); and (b) Rees has submitted invoices to Illinois National in the amount of $1,327,309.50 for indemnification of his defense costs in the Pennsylvania Action.

**WHEREAS,** Illinois National has paid $1,842,410.70 to indemnify Think Entities before the Petition Date and Rees after the Petition Date under the Policy for 50% of Rees' defense costs in the Pennsylvania Action.

3

**WHEREAS**, in accordance with the Access Procedures, Rees has objected to payment of the Think Invoices by Illinois National (the "Rees Objection") and Illinois National has not paid any amounts owed under the Think Invoices.

**WHEREAS,** Think Entities and Rees have disagreed as to the priority and allocation of any remaining payment they may be entitled to under the Policy, but have resolved that disagreement subject to the terms of this Agreement.

**WHEREAS**, the remaining proceeds available under the Policy is $3,157,589.30 (the "Remaining Proceeds").

**WHEREAS,** Illinois National has decided to pay the Remaining Proceeds to Think Entities and Rees such that the limit of its Policy will be exhausted in exchange for a full release of its liability for the Think Claims, Rees Claim, Potential Claims or any other claims by Think Entities and Rees.

**WHEREAS**, Think Entities and Rees have agreed to an allocation of the Remaining Proceeds in full satisfaction of the Rees Objection.

**NOW, THEREFORE,** in consideration of the covenants contained herein and subject to approval of the Bankruptcy Court, the Parties agree as follows:

## CONSIDERATION AND MUTUAL RELEASES

1.  **Bankruptcy Court Approval.** Effective upon execution of this Agreement by all Parties, Think Entities shall timely file a motion with the Bankruptcy Court requesting entry of an order (the "Approval Order") approving this Agreement in the Bankruptcy Case, the form of which is subject to Rees' and Illinois National's approval, which may not be unreasonably withheld.

2. **Payment to Think Entities.** Within ten business days after the entry of the Approval Order by the Bankruptcy Court, Illinois National shall pay the sum of $2,383,080.30 ("Think Settlement Amount") to Think Entities by wiring the Think Settlement Amount to the account below (or by sending the Think Settlement Amount by check in accordance with instructions to be furnished by counsel for Think Entities):

| | |
|---|---|
| Bank Name: | Plains Capital Bank<br>Dallas, TX |
| Routing #: | 111322994 |
| Account Name: | Think Finance LLC Proceeds Aggregation Acct |
| Account Number: | 7186000267 |
| Contact Name: | Barney Briggs<br>817-546-2797 |

3. **Payment to Rees.** Within ten business days after the entry of the Approval Order by the Bankruptcy Court, Illinois National shall pay the sum in total of $774,509.00 ("Rees Settlement Amount") to Rees by wiring the Rees Settlement Amount to the accounts below (or by sending a check to Montgomery, McCracken, Walker & Rhoads, LLP and to Armstrong Teasdale LLP in the following respective amounts):

(a) $537,942.31 to

Citizen Bank
2030 Route 70 West
Cherry Hill, NJ 08002
Account Name: Montgomery, McCracken, Walker & Rhoads, LLP
ABA #036 076 150
Account #: 6238673951

(b) $236,566.69 to

Cass Commercial Bank
12412 Powerscourt Drive
Suite 175
St. Louis, MO 63131
Account # 40052036
ABA Routing #: 081000605
Account Name: Armstrong Teasdale LLP

7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105
Attn.: Anne Simek
(314) 621-5070

4. **Think Entities – Illinois National Release.** In consideration of and upon receipt of the Think Settlement Amount, Think Entities and their successors and assigns fully and forever release and discharge Illinois National and its officers, directors, representatives, agents, servants, employees, attorneys, and all parent, sister, related and affiliated corporations, subsidiaries, divisions, joint ventures, reinsurers, predecessors, successors, beneficiaries, and assigns, in their respective capacities as such, from any and all claims, defenses, demands, actions, and causes of action of any kind, whether known or unknown, arising out of or relating to: (1) the Think Claims, (2) the Rees Claims, (3) the Potential Claims; (4) the Policy, (5) any alleged acts, errors, omissions and/or inactions of Illinois National and/or its consultants and claim administrators in handling the Think Claims, the Rees Claims, or the Potential Claims, and (6) any and all potential claims arising out of the Think Claims, the Rees Claims, or the Potential Claims under any state or federal statute, regulation, or common law for unfair or improper claims handling practices, breach of an implied covenant of good faith and fair dealing, punitive damages, any type of extra-contractual claim, or "bad faith" claim; provided, however, that nothing in this release shall extend to disputes, claims, defenses and causes of action relating to the enforcement of this Agreement. Illinois National and Think Entities agree that payment of the Think Settlement Amount is made for Think Entities defense costs in the CFPB Action and payment of the Rees Settlement Amount is made for Rees' defense costs in the Pennsylvania Action, and that those payments, however characterized, exhaust the Policy's limits of liability.

5. **Rees – Illinois National Release.** In consideration of and upon receipt of the Rees Settlement Amount, Rees and his successors and assigns fully and forever release and discharge

6

Illinois National and its officers, directors, representatives, agents, servants, employees, attorneys, and all parent, sister, related and affiliated corporations, subsidiaries, divisions, joint ventures, reinsurers, predecessors, successors, beneficiaries, and assigns, in their respective capacities as such, from any and all claims, defenses, demands, actions, and causes of action of any kind, whether known or unknown, arising out of or relating to: (1) the Think Claims, (2) the Rees Claims, (3) the Potential Claims under the Policy; (4) the Policy, (5) any alleged acts, errors, omissions and/or inactions of Illinois National and/or its consultants and claim administrators in handling the Think Claims, the Rees Claims, or the Potential Claims (under the Policy), and (6) any and all potential claims arising out of the Think Claims, the Rees Claims, or the Potential Claims (under the Policy) under any state or federal statute, regulation, or common law for unfair or improper claims handling practices, breach of an implied covenant of good faith and fair dealing, punitive damages, any type of extra-contractual claim, or "bad faith" claim; provided, however, that nothing in this release shall extend to disputes, claims, defenses and causes of action relating to the enforcement of this Agreement. Illinois National and Rees agree that payment of the Think Settlement Amount is made for Think Entities' defense costs in the CFPB Action and payment of the Rees Settlement Amount is made for Rees' defense costs in the Pennsylvania Action, and that those payments, however characterized, exhaust the Policy's limits of liability.

6. **Think Entities – Rees Mutual Release.** In consideration of the Think Settlement Amount and the Rees Settlement Amount and upon Illinois National's payments thereof, Think Entities and Rees mutually release each other, and any of their officers, directors, representatives, agents, servants, employees, attorneys, and all parent, sister, related and affiliated corporations, subsidiaries, divisions, joint ventures, predecessors, successors, beneficiaries, and assigns, in their

7

respective capacities as such, from any and all claims relating to their respective claims to payment under the Policy.

7. **Illinois National Release.** In consideration of the promises and releases contained in this Agreement and upon receipt of the Think Settlement Amount and the Rees Settlement Amount by Think Entities and Rees, respectively, Illinois National and its successors and assigns fully and forever release and discharge Think Entities and Rees and their officers, directors, representatives, agents, servants, employees, attorneys, and all parent, sister, related and affiliated corporations, subsidiaries, divisions, joint ventures, predecessors, successors, beneficiaries, and assigns, in their respective capacities as such, from any and all claims, defenses, demands, actions, and causes of action of any kind, whether known or unknown, arising out of or related to: (1) the Think Claims, (2) the Rees Claims, (3) or the Potential Claims under the Policy.

8. **Claims Against AXIS.** In consideration of and upon receipt of the Think Settlement Amount and the Rees Settlement Amount by Think Entities and Rees, respectively, Think Entities and Rees agree that, with respect to any payment to or recovery by Rees and/or Think Entities, or their respective successors or assigns, from AXIS within the Excess Policy Limit: (1) Rees, or his successors or assigns, shall be entitled to 80% of any such payment to or recovery by Rees or Think Entities or his or their successors or assigns up to a maximum of 80% of the Excess Policy Limit, and (2) Think Entities, or their successors or assigns, shall be entitled to 20% of any such payment to or recovery by Rees or Think Entities or his or their successors or assigns up to a maximum of 20% the Excess Policy Limit. In the event Rees and/or Think Entities obtain any payment or recovery from AXIS within the Excess Policy Limit before a final settlement with or judgment against AXIS that resolves all the Parties' claims, the Party obtaining such payment or recovery, within five (5) business days of receipt, shall pay to the other Party the

8

35669\12558779.1 4969815v1

percentage share of such payment or recovery to which that other Party is entitled under this paragraph. Any such payment to Think shall be in accordance with the wire instructions in Paragraph 2. Any such payment to Rees shall be in accordance with wiring instructions to be furnished. Think Entities and Rees reserve all rights with respect to any recovery against AXIS in excess of the Excess Policy Limit. Illinois National is not a party to the agreement made by virtue of this paragraph, nor can the agreement in this paragraph between Rees and Think Entities be enforced against Illinois National. Illinois National takes no position as to the allocation of recovery, if any, between Rees and Think Entities against AXIS.

## **MISCELLANEOUS**

9. **No Assignment.** The Parties represent and warrant that there has not been any assignment, transfer, conveyance or other disposition of any rights, obligations, claims or liabilities released under the terms of this Agreement, including without limitation to the Think Claims, Rees Claim, Potential Claims or any other claims of Loss by Think Entities and Rees under the Policy.

10. **No Admission of Fault.** The Parties desire to compromise and settle all claims of any kind whatsoever which the Parties have or may have arising out of the Think Claims, the Rees Claims, the Potential Claims, or the Policy. It is further understood and agreed that nothing contained herein shall be construed as an admission of liability by any Party, all such liability being expressly denied.

11. **Representation of Capacity to Execute.** The undersigned represent that they are authorized to execute this Agreement, competent to execute this Agreement, have carefully read and fully understand the terms of this Agreement and agree to be bound by its terms.

35669\12558779.1 49698l5v1

12. **Attorneys' Fees, Costs, and Expenses.** Unless otherwise expressly set forth herein, each of the Parties shall bear its own attorneys' fees, costs, and expenses in connection with the matters set forth in this Agreement, including, but not limited to, the negotiations and preparation of this Agreement. However, if any Party institutes legal proceedings over the enforcement of this Agreement or any provision of it, the prevailing Party shall be entitled to recover from the losing Party its costs, including reasonable attorneys' fees, through any litigation and appeal.

13. **Amendments.** Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by the Parties (and approval in the Bankruptcy Case, if necessary).

14. **Agreement Voluntarily Entered into by Each of the Parties.** This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent to each other that they have read and fully understand each of this Agreement's provisions and have relied on the advice and representations of competent legal counsel of their own choosing. Each Party to this Agreement adopts this Agreement as the product of a group drafting effort and agrees that it shall not be construed more favorably for or against any Party to this Agreement.

15. **Entire and Integrated Agreement.** This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, between the Parties except as set forth in this Agreement. This Agreement supersedes and completely replaces any and all other agreements, whether written, oral, or otherwise with respect to the compromise and

settlement of the claims described herein, and the exhaustion of the Policy. The terms of this Agreement are contractual and not mere recitals.

16. **Execution in Counterparts.** This Agreement may be signed in multiple counterparts, and the separate signature pages executed by the Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

17. **Choice of Law.** It is understood and agreed that this Agreement shall be governed by, construed and enforced in accordance with, and subject to, the laws of the State of Texas.

18. **Headings and Numbering.** Any paragraph, article, and/or section headings or paragraph numbers used in this Agreement are for convenience only and shall not affect the construction of the Agreement.

19. **Severability.** If any of the provisions of this Agreement, or the application thereof, shall, for any reason or to any extent, be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, pending approval in the Bankruptcy Case, as of the date indicated on the signatures shown below:

By: AIG Claims, Inc. on behalf of Illinois National Insurance Company

Name _____

Title  Vice President, FI Lending Group

Date  July 22, 2019

By: Kenneth Rees 

Title _____

Date  7/22/19

By: Think Finance, Inc. n/k/a Think Finance, LLC, Think Finance SPV, LLC, TC Administrative Services, LLC, Tailwind Marketing, LLC, TC Loan Service LLC, TC Decision Sciences, LLC, and Financial U, LLC

Name _____

Title _____

Date _____

12

IN WITNESS WHEREOF, the Parties have executed this Agreement, pending approval in the Bankruptcy Case, as of the date indicated on the signatures shown below:

By: AIG Claims, Inc. on behalf of Illinois National Insurance Company

Name
Title
Date

By: Kenneth Rees

Title
Date

By: Think Finance, Inc. n/k/a Think Finance, LLC, Think Finance SPV, LLC, TC Administrative Services, LLC, Tailwind Marketing, LLC, TC Loan Service LLC, TC Decision Sciences, LLC, and Financial U, LLC

Name: [signature]
Title: Thomas D. Gruber, Secretary & General Counsel
Date: 7/22/19

12