

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 5, 2019**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**THINK FINANCE, LLC,** *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 17-33964 (HDH)**<br><br>**(Jointly Administered)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER CONFIRMING THE SECOND MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THINK FINANCE, LLC AND ITS SUBSIDIARY <u>DEBTORS AND DEBTORS IN POSSESSION</u>

## I.    RECITALS

A.      On October 23, 2017 (the "Petition Date"), the debtors and debtors-in-possession

(collectively, the "Debtors") in the above-captioned cases, commenced their chapter 11 cases (the

"Chapter 11 Cases") in good faith by filing their respective voluntary petitions for relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

"Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court").

B.      The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 27, 2017, the Court entered an order authorizing joint administration of the Chapter 11 Cases [Doc. No. 34].  On November 2, 2017, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases.  No trustee or examiner has been appointed.

C.      On July 1, 2019, the Court entered its *Order Authorizing Debtors to Enter Into Term Sheet* [Doc. No. 1440].

D.      After due notice and a hearing held on September 24, 2019, the Court entered its *Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections (A) to Confirmation of the Plan, and (B) to Proposed Cure Amounts; and (IV) Granting Related Relief* [Doc. No. 1524] (the "Disclosure Statement Order") that, among other things, (i) approved the *Disclosure Statement Accompanying Second Modified First Amended Joint Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1523-3] (the "Disclosure Statement") as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor of the relevant voting

Classes under the *Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1523-1] (as it may be amended, modified or otherwise supplemented from time to time, the "Plan")[2] to make an informed judgment whether to vote to accept or reject the Plan; (ii) established October 30, 2019, as 5:00 p.m. (prevailing Eastern Time) as the deadline to vote to accept or reject the Plan (the "Voting Deadline") unless extended by the Debtors; (iii) established October 30, 2019, at 5:00 p.m. (prevailing Central Time) as the deadline to file and serve objections to the Plan; and (iv) scheduled a hearing to consider confirmation of the Plan for November 6, 2019, at 9:00 a.m. (prevailing Central Time) (the "Initial Confirmation Hearing").    Thereafter the Debtors commenced their solicitation of votes to accept or reject the Plan.

E.    The manner in which votes were solicited in respect of the Plan is described in the Affidavits of Service, dated October 3, 2019, and October 11, 2019 [Doc. Nos. 1527, 1535] (together, the "Solicitation Affidavit"), prepared by American Legal Claims Services, LLC, as the Solicitation Agent.  Specifically, the Solicitation Affidavit provides that the Disclosure Statement and Plan, together with the additional solicitation materials approved by the Court in the Disclosure Statement Order, were transmitted to each Creditor entitled to vote to accept or reject the Plan (the "Solicitation Packages").

F.    On October 24, 2019, the Debtors filed the *Notice of Filing of Plan Supplement Related to the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1587] (the "First Plan Supplement"), containing: (i) the Assumption Schedule; and (ii) a draft of the Litigation Trust Agreement subject to continuing negotiations between the parties, along with a redline of the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

Litigation Trust Agreement. Additionally, the First Plan Supplement indicated that the Debtors had not yet received a copy of the Pennsylvania AG-GPLS Secured Parties Stipulation, and that the Debtors would file that document upon receipt.

G. On November 4, 2019, the Debtors filed the *Declaration of Jeffrey L. Pirrung Certifying Votes on and Tabulation of Ballots Accepting and Rejecting the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession.* [Doc. No. 1614] (the "Pirrung Declaration"), which summarizes the certified results from the Plan solicitation process.

H. On (i) October 15, 2019, the *Declaration of Joshua Rievman in Partial Support of the First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1540] was filed; (ii) on October 15, 2019, the *Declaration of Saverio P. Mirarchi in Support of Confirmation* [Doc. No. 1541] was filed; (iii) on October 15, 2019, the *Declaration of Kristi C. Kelly in Further Support of the Plan of Confirmation* [Doc. No. 1546] was filed; and (iv) on October 18, 2019, the *Declaration of Michael S. Etkin in Support of Confirmation of Debtors' Second Modified First Amended Joint Chapter 11 Plan* [Doc. No. 1555] was filed (collectively, the "Substantial Contribution Claim Declarations").

I. On October 30, 2019, the following objections to confirmation of the Plan were filed: (i) *Limited Objection of CoreCard Software, Inc. to Confirmation of the Debtors' Plan* [Doc. No. 1596] (the "CoreCard Objection"), filed by CoreCard Software, Inc.; (ii) *Limited Objection of Elevate Credit, Inc. to Amended Joint Plan of Reorganization* [Doc. No. 1597] (the "Elevate Objection"), filed by Elevate Credit, Inc.; (iii) *Objection of Kenneth Rees to the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1598] (the "Rees Objection"), filed by Kenneth

Rees; (iv) *Objection to Confirmation of the Debtors' Second Modified First Amended Chapter 11 Plan of Reorganization* [Doc. No. 1599] (the "TCV Objection"), filed by TCV Member Fund, L.P., TCV V, L.P., and John Drew; and (v) the *United States Trustee's Objection to Second Modified First Amended Chapter 11 Plan of Reorganization* [Doc. No. 1601] (the "U.S. Trustee Objection", and collectively with the foregoing objections, the "Confirmation Objections").

J.      On November 5, 2019: (i) the Debtors filed the *Memorandum of Law in Support of Confirmation of the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1616] (the "Confirmation Brief"); (ii) the GPLS Secured Parties filed the *GPLS Secured Parties' Statement in Support of Confirmation of the Debtors' Plan and Reply to Objections* [Doc. No. 1615] (the "GPLS Confirmation Statement"); and (iii) the Committee filed the *Statement of the Official Committee of Unsecured Creditors in Support of Confirmation of the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1617] (the "Committee Confirmation Statement").

K.      The Court continued the hearing to consider confirmation of the Plan from November 6, 2019, to November 25, 2019, at 9:00 a.m. (prevailing Central Time) (the "Confirmation Hearing").

L.      On November 14, 2019, the *Vermont Class Claimants' Limited Response to the United States Trustee's Objection to the Second Modified First Amended Chapter 11 Plan of Reorganization* [Doc. No. 1629] (the "VT/NC Confirmation Statement") was filed with the Court.

M.      On November 19, 2019, the *Virginia, California, and Florida Class Plaintiffs' Notice of Joinder to Response of Vermont Class Claimants to the United States Trustee's Objection*

5

*to Second Modified First Amended Chapter 11 Plan of Reorganization* [Doc. No. 1637] (the "VA Confirmation Statement") was filed with the Court.

N.     On November 22, 2019, the *Commonwealth of Pennylvania's Joinder in Vermont Class Claimants' Limited Response to the United States Trustee's Objection to Second Modified First Amended Chapter 11 Plan of Reorganization* [Doc. No. 1653] (the "PA AG Confirmation Statement") was filed with the Court.

O.     On November 22, 2019, the Debtors filed the *Notice of Filing of Second Plan Supplement Related to the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1649] (the "Second Plan Supplement" and together with the First Plan Supplement, the "Plan Supplements"), containing: (i) an updated Litigation Trust Agreement; (ii) the Pennsylvania AG-GPLS Secured Parties Stipulation; and (iii) disclosures pursuant to section 1129(a)(5) of the Bankruptcy Code.

P.     On November 22, 2019, the Debtors filed the *Declaration of Thomas D. Graber in Support of Confirmation of the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1648] (the "Confirmation Declaration").

Q.     On November 25, 2019, the Court held the Confirmation Hearing

R.     **NOW, THEREFORE**, the Court having reviewed and considered the Disclosure Statement, the Plan, the Plan Supplements, the Confirmation Declaration, the Solicitation Affidavit, and the Pirrung Declaration; and the Court having heard statements of counsel in support of confirmation of the Plan at the Confirmation Hearing; and upon the record, including evidence introduced and testimony proffered or otherwise provided at the Confirmation Hearing; and the Court having considered Confirmation Objections and any responses or replies to such objections,

including the Confirmation Brief, the GPLS Confirmation Statement, the Committee Confirmation Statement, the VT/NC Confirmation Statement, the VA Confirmation Statement, the PA AG Confirmation Statement, and the Substantial Contribution Claim Declarations; and the Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Cases; and it appearing to the Court that the legal and factual bases set forth in the Confirmation Brief and all other pleadings filed in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and order:

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.     Jurisdiction, Venue and Other Matters[3]

1.     Incorporation of the Recitals.  Each of the foregoing Recitals shall be, and hereby is, incorporated herein as a Finding of Fact.

2.     Exclusive Jurisdiction; Venue; Core Proceeding.  The Court has subject matter jurisdiction over this proceeding and the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code, and thus, whether the Plan should be confirmed.

---

[3] Headings to sections and paragraphs in this Confirmation Order are inserted for convenience of reference only and are not intended to affect the interpretation of this Confirmation Order.

3. **Objections Overruled**. Any resolution of an objection to confirmation of the Plan explained on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections to confirmation and joinders therein, statements in opposition, and reservations of rights, including without limitation the Confirmation Objections, are hereby overruled on the merits for the reasons set forth on the record at the Confirmation Hearing.

4. **Burden of Proof**. In accordance with section 1121(a) of the Bankruptcy Code, the Debtors, as proponents of the Plan, have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

5. **Transmittal of Solicitation Packages**. The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the Bankruptcy Court, and the Disclosure Statement Order as evidenced by the Solicitation Affidavit. Such transmittal and service of the Solicitation Packages was adequate and sufficient.

6. **Notice of the Confirmation Hearing and Voting Deadline**. As evidenced by the Solicitation Affidavit, notice of the Confirmation Hearing and the Voting Deadline was appropriately mailed to holders of Claims against the Debtors, holders of Equity Interests in the Debtors and other parties in interest. Accordingly, adequate and sufficient notice of the Confirmation Hearing and the Voting Deadline was given in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice was, is, or shall be required.

7. **Votes on the Plan**. Votes for acceptance or rejection of the Plan were solicited in good faith, and such solicitation complied with sections 1125 and 1126 of the Bankruptcy Code,

8

Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and the Disclosure Statement Order. As evidenced by the Pirrung Declaration, ballots were tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

8. <u>Plan Supplements</u>. The Debtors caused the Plan Supplements to be filed with the Court in compliance with the terms of the Plan. The documents included in the Plan Supplements were provided in good faith. The filing and notice of the Plan Supplements was good and proper and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

**B.**     **<u>Compliance with the Applicable Provisions of the Bankruptcy Code</u>**

9. <u>The Plan's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. As set forth below, the Plan complies with all, and is not inconsistent with, the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a. <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Claims and Priority Claims, which need not be classified, the Plan designates seven Classes of Claims and one Class of Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to the other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and legal reasons exist for separately classifying the various categories of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among holders

of Claims or Equity Interests. Thus, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b. <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Classes 1 and 2 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan specifies that each of Classes 3, 4, 5, 6, 7, and 8 are Impaired under the Plan and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. <u>Equal Treatment within Classes (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in a particular Class, as the case may be, unless the holder of a particular Claim or Equity Interest in such Class has agreed to less favorable treatment of its Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and Plan Supplements provide adequate and proper means for implementation of the Plan, including, without limitation, Article IV (Provisions for Implementation of the Plan), Article V (The Litigation Trust), Article VII (Provisions Governing Distributions), Article VIII (Procedures for Resolving Disputed Claims), and Article XII (Retention of Jurisdiction). Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

f. <u>Prohibition on Issuance of Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. The organizational documents of the Reorganized Debtors include a provision prohibiting the issuance of non-voting equity securities to the extent required by

section 1123(a)(6) of the Bankruptcy Code. Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

g. <u>The Plan's Provisions Regarding Directors, Managers and Officers are Consistent with the Interests of Creditors and Interest Holders and Public Policy (11 U.S.C. § 1123(a)(7))</u>. Members or directors, as applicable, of the Reorganized Debtors shall be determined according to such entities' existing organizational documents. The officers of the Reorganized Debtors as of the Effective Date shall be the officers disclosed in the Plan Supplements. In light of the foregoing, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

h. <u>Future Income (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code is not applicable to the Plan because none of the Debtors are individuals.

10. <u>The Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, (a) the Debtors are proper debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code, (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and (c) as stated above, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

11.     <u>The Debtors' Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Clerk of the Court satisfies Bankruptcy Rule 3016(b).

12.     <u>The Debtors' Compliance with Bankruptcy Rule 3017</u>.  The Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure Statement Order.  The transmittal and service of the Solicitation Packages was (i) in compliance with the Disclosure Statement Order and (ii) sufficient under the Bankruptcy Rules, the Bankruptcy Code, and the facts and circumstances of the Chapter 11 Cases.

13.     <u>The Debtors' Compliance with Bankruptcy Rule 3018</u>.  The solicitation of votes to accept or reject the Plan from holders of Claims and Equity Interests in Classes entitled to vote to accept or reject the Plan as of the Record Date (as defined in the Disclosure Statement Order) satisfies Bankruptcy Rule 3018.  Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and  the Disclosure Statement Order.

14.     <u>The Debtors Proposed the Plan in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of reorganizing the Debtors' assets and liabilities consistent in all material respects with the Term Sheet.  The Plan (including all documents necessary to effectuate the Plan, including but not limited to those comprising the Plan Supplements) is the result of extensive arm's-length

negotiations among the Debtors, the Consenting Plaintiffs, the GPLS Secured Parties, the Committee, and various other non-Debtor parties. The Plan achieves two of the primary objectives underlying a chapter 11 bankruptcy—the resolution of disputed claims and distribution of value to creditors. Therefore, the Debtors have proposed the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

15. <u>Bankruptcy Court Approval of Certain Payments as Reasonable (11 U.S.C. § 1129(a)(4))</u>. The Plan complies with section 1129(a)(4) of the Bankruptcy Code because any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, including but not limited to the Pennsylvania AG Administrative Claim, the VA/FL/CA Counsel Administrative Expense Claim and the VT/NC Counsel Administrative Expense Claim, has been approved by the Court or is subject to the approval of the Court as reasonable.

16. <u>Disclosure of All Necessary Information Regarding Directors, Managers and Officers is Consistent with the Interests of Creditors and Interest Holders and Public Policy (11 U.S.C. § 1129(a)(5))</u>. The Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code. The Second Plan Supplement discloses the identities and affiliations of the proposed officers of the Reorganized Debtors, to the extent that information is known. The appointment of the officers identified in the Second Plan Supplement is consistent with the best interests of the holders of Claims against, and Equity Interests in, the Debtors and with public policy.

17. <u>Government Regulatory Control over Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code does not apply because the Plan does not provide for any changes in rates over which a governmental regulatory commission has jurisdiction.

18. <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis contained in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or proffered, (ii) utilize reasonable and appropriate methodologies and assumptions, (iii) have not been successfully challenged or controverted by other evidence or objection, and (iv) establish that each holder of a Claim or Equity Interest in an Impaired Class either (x) has voted to accept the Plan (as evidenced by the Pirrung Declaration) or (y) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would have received if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

19. <u>Acceptance or Rejection of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. As set forth in the Pirrung Declaration, the percentage of holders of Claims and Equity Interests in Impaired Classes entitled to vote on the Plan that voted to accept or reject the Plan is as follows:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) | Percentage Rejecting (Dollar Amount) | Percentage Rejecting (Number of Claims) |
| Class 3 – GPLS Claims | 100% (N/A) | 100% (4) | 0% (N/A) | 0% (0) |
| Class 4 – General Unsecured Claims | 97% ($6,676,480.66) | 87.5% (14) | 3% ($189,646.01) | 12.5% (2) |

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) | Percentage Rejecting (Dollar Amount) | Percentage Rejecting (Number of Claims) |
| Class 5 – Consumer Borrower Claims | 100% (N/A) | 100% (1) | 0% (N/A) | 0% (0) |
| Class 6 – Pennsylvania Regulatory Claim | 100% (N/A) | 100% (1) | 0% (N/A) | 0% (0) |
| Class 7 – CFPB Regulatory Claim | 100% (N/A) | 100% (1) | 0% (N/A) | 0% (0) |
| Class 8 – Equity Interests | 100% (N/A) | 100% (1) | 0% (N/A) | 0% (0) |

Accordingly, Classes 3, 4, 5, 6, 7, and 8 have all accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code. Classes 1 and 2, which are Unimpaired, are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Thus, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

20. Treatment of Claims Entitled to Priority (11 U.S.C. § 1129(a)(9)). The Plan complies with section 1129(a)(9) of the Bankruptcy Code because it provides for treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims entitled to priority pursuant to section 507 of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

21. Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). As set forth in the Pirrung Declaration, Classes 3, 4, 5, 6, 7, and 8 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Classes 3, 4, 5, 6, and 7, therefore, qualify as impaired

accepting Classes and, without considering Class 8 (Equity Interests), satisfy the requirements of section 1129(a)(10) of the Bankruptcy Code.

22. <u>Feasibility of the Plan (11 U.S.C. § 1129(a)(11))</u>. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code because the Debtors will have sufficient funds and other financial wherewithal on the Effective Date to allow the Debtors to substantially consummate the Plan. The Debtors have sufficient monies and assets available and existing on the Effective Date to implement the Plan and make all distributions contemplated under the Plan. Further, the transfer of the Reorganized Debtors Assets pursuant to the Plan is sufficient to fund the anticipated operation of the Reorganized Debtors. The evidence proffered or adduced at the Confirmation Hearing in support of feasibility of the Plan (i) is reasonable, persuasive, credible, and accurate, and (ii) has not been challenged or controverted by any other evidence. Confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors. Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

23. <u>Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))</u>. In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.2 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Litigation Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first. As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied. For the avoidance of doubt, the U.S. Trustee Objection concerning this issue is overruled, and the Reorganized Debtors shall not be liable for any such statutory fees.

24. <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 4.20 of the Plan provides that the Reorganized Debtors will continue to pay retiree benefits (as that term is defined in section

1114 of the Bankruptcy Code), if any, from and after the Effective Date. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

25. <u>Post-petition Domestic Support Obligations and Disposable Income (11 U.S.C. § 1129(a)(14) and (15))</u>. Sections 1129(a)(14) and (15) of the Bankruptcy Code impose certain requirements on individual chapter 11 debtors. As the Debtors are corporate entities, sections 1129(a)(14) and (15) of the Bankruptcy Code are not implicated by the Plan.

26. <u>Transfers of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16))</u>. Section 1129(a)(16) of the Bankruptcy Code imposes certain requirements on corporations or trusts that are not a moneyed, business or commercial corporation. As none of the Debtors is a corporation that is not a moneyed, business, or commercial corporation, section 1129(a)(16) of the Bankruptcy Code is not implicated by the Plan.

27. <u>Satisfaction of Confirmation Requirements</u>. For all of the above reasons, the Plan satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

28. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. Other than the Plan (including the previous versions thereof), no other plan has been filed in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

29. <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933 (the "<u>Securities Act</u>"), and no Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) has requested that the Court deny confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

30.     <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based upon the record before the

Court, the Debtors and their agents, officers, directors, managers, employees, counsel and advisors

have solicited votes on the Plan in good faith and in compliance with the applicable provisions of

the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the releases and exculpatory and injunctive provisions set forth in Article

IX of the Plan.

**C.     <u>Other Findings</u>**

31.     <u>Releases, Exculpation, and Injunction</u>.  The releases, exculpations, and injunction

provisions set forth in Article IX of the Plan constitute good faith compromises and settlements of

the matters covered thereby.  Each of the release, exculpation, and injunction provisions set forth

in Article IX of the Plan:  (a) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (b) is

an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy

Code; (c) is an integral element of the resolution of the Chapter 11 Cases, and the reorganization

of the Debtors, in accordance with the Plan and the failure to effect such provision would seriously

impair the Debtors' ability to confirm the Plan; (d) confers material benefits on, and is in the best

interests, of the Debtors, the Debtors' Estates, and holders of Claims and Equity Interests; (e) is,

*inter alia*, supported by extensive consideration; (f) is important to the overall objectives of the

Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases

with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other

applicable sections of the Bankruptcy Code.  The record of the Confirmation Hearing and the

Chapter 11 Cases is sufficient to support the release, exculpation, and injunction provisions

contained in Article IX of the Plan.

18

32. <u>Consensual Third Party Releases</u>. The releases described in Section 9.5 of the Plan are consensual third party releases and constitute an integral component of the Plan (the "<u>Consensual Third Party Releases</u>"). The Consensual Third Party Releases provide that parties may affirmatively opt out of the Consensual Third Party Release by voting to reject the Plan, or returning a ballot that otherwise opts out of the Consensual Third Party Releases. The ballots that were sent to holders of Claims in Class 4 clearly and explicitly stated that holders of such Claims who voted to accept the Plan would be deemed to have consented to the Consensual Third Party Releases, and directed holders of such Claims to Section 9.5 of the Plan for further information about the release provisions. Thus, holders of Claims in Class 4 were given due and adequate notice that voting to accept the Plan constituted consenting to the Consensual Third Party Releases. The holders of Claims in Class 4 who voted to accept the Plan have manifested their consent to, and are contractually bound by, the Consensual Third Party Releases, including, without limitation, releases of claims against non-debtors to the extent set forth in Section 9.5 of the Plan. Further, the Released Parties compensated the holders of Claims in Class 4 for these Consensual Third Party Releases with adequate consideration, including, without limitation by providing substantial contributions to the Chapter 11 Cases and the Debtors' restructuring. Without such substantial contributions, a successful restructuring and confirmation of the Plan would not be possible. The substantial contributions by the Released Parties have thus ultimately resulted in the Debtors being able to submit the Plan, which provides for efficient and timely distributions to be made to creditors. Additionally, the Consensual Third Party Releases constitute: (i) a good-faith settlement and compromise of the Claims and Non-Estate Causes of Action released by the Consensual Third Party Releases; (ii) are in the best interests of the Debtors and their Estates; (iii) are fair, equitable, and reasonable; (iv) are given and made after due notice and opportunity for

hearing; (v) are narrowly tailored; and (vi) are a bar to any Claim or Non-Estate Causes of Action released by the Consensual Third Party Releases against any of the Released Parties. Notwithstanding anything else in the Plan or Confirmation Order, the holder of an Opt-Out Consumer Borrower Claim shall be deemed to have opted out of the Consensual Third Party Releases.

33.     _Exculpation_.    The exculpation provisions set forth in Section 9.6 of the Plan, as modified as indicated below, are essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Section 9.6 of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.  Section 9.6 of the Plan is hereby modified to state as follows, which is deemed to be incorporated into the Plan annexed hereto as **Exhibit A**:

**9.6     Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim, Cause of Action or Non-Estate Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related transactions, the Term Sheet, the Consumer Litigation Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. In accordance with 11 U.S.C. § 1125(e), the Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Nothing in the Plan and related documents shall impair the rights, remedies, or defenses held by the holder of an Opt-Out General Unsecured**

**Claim, the Non-Released Parties, Sequoia Capital IC, LP, or Sequoia Capital IX, LP in (i) Pending Litigation, (ii) Consumer Borrower Litigation, or (iii) any other pending or future litigation filed by or on behalf of a Nationwide Consumer Borrower(s) or any other consumer plaintiff alleging damages or other remedies in connection with, relating to, or arising out of the Debtors' prepetition business operations. Any dispute regarding the scope or application of the exculpation in § 9.6 shall be brought before the Bankruptcy Court or such other court as the Bankruptcy Court may direct.**

34. <u>Injunction</u>. The injunction provisions set forth in Section 9.7 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Consensual Third Party Releases, and the exculpation provisions in Article IX of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes. Any dispute regarding the scope or application of the releases in Sections 9.3, 9.4, or 9.5 of the Plan shall be brought before the Bankruptcy Court or such court as the Bankruptcy Court may direct.

35. <u>Substantial Contribution Claims</u>. The Substantial Contribution Claims defined in Sections 1.1.105, 1.1.122, 1.1.175 and 1.1.177 are an integral component of the Plan and the Term Sheet embodied in the Plan and constitute a material part of the good faith compromises and settlement of the matters covered thereby. The Substantial Contribution Claims are: (a) within the jurisdiction of the Court under 28 U.S.C. § 1334; (b) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) an integral element of the resolution of the Chapter 11 Cases, and the reorganization of the Debtors, in accordance with the Plan and the failure to effect such provisions would seriously impair the Debtors' ability to confirm the Plan; (d) materially beneficial to and are in the best interests of the Debtors, the Debtors' Estates, and holders of Claims and Equity Interests; (e) *inter alia*, supported by extensive consideration; (f) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g)

consistent with the Bankruptcy Code. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the allowance of the Substantial Contribution Claims.

36. <u>Executory Contracts and Unexpired Leases</u>. The Debtors have exercised reasonable business judgment in determining to assume and assign to the Reorganized Debtors the executory contracts and unexpired leases as set forth on the Assumption Schedule and to reject any other executory contracts and unexpired leases pursuant to Article VI of the Plan. Pursuant to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Unexpired Lease (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. This Confirmation Order constitutes an order of the Court approving the rejection of all such Executory Contracts and Unexpired Leases. The Reorganized Debtors are solely responsible for paying Cures, if any, on the Effective Date, as soon as practicable thereafter, or such other date that the Debtors or Reorganized Debtors, as applicable, and the counterparty agree. The Plan and such assumptions and assignments, therefore, satisfy the requirements of section 365 of the Bankruptcy Code.

37. <u>Vesting of Assets in the Reorganized Debtors</u>. Pursuant to section 4.6 of the Plan, on the Effective Date, the following Reorganized Debtor Assets shall be transferred to and/or vest in the Reorganized Debtors, and the Reorganized Debtors shall be the sole party(ies) with standing

to prosecute claims related thereto: (i) the Reorganized Debtor Cash Distribution; (ii) the MobiLoans Note; (iii) the Haynes Note; (iv) the Intercompany Receivables; (v) all Intellectual Property of the Debtors, FF&E, and employees (including business and employee contracts, leases and related matters, etc.), including assumed Executory Contracts (including employee contracts and leases), *provided that* the Reorganized Debtors shall be solely responsible for payment of any Cure to be paid in connection with any assumed Executory Contracts and leases; and (vi) the Insurance Rights. From and after the Effective Date, the Reorganized Debtors may take any action consistent with the Plan and the Term Sheet, including but not limited to section 4.13 of the Plan, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided in the Plan. Such transactions are appropriate and are in the best interests of the Debtors and their Estates.

38.     <u>Transfer of Assets to the Litigation Trust</u>. On the Effective Date, any and all assets and property of the Estates not transferred to the Reorganized Debtors pursuant to Article 4.6 of the Plan or otherwise addressed in the Plan shall be transferred to the Litigation Trust and administered by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement.

39.     <u>Implementation of the Plan</u>. Pursuant to section 1142(b) of the Bankruptcy Code, no action of any of the Debtors' members, officers, or managers will be required (a) to authorize

the Debtors (or any of their officers, employees or agents acting on their behalf) to effectuate and carry out the Plan or any order of the Court relating thereto, (b) to consummate the transactions contemplated by the Plan or this Confirmation Order, or (c) to take any other action contemplated by the Plan or this Confirmation Order as may be necessary and appropriate to fully effectuate the intent and purposes hereof and thereof, and all such actions hereby are or will be deemed to have been taken or done with like effect as if they have been duly authorized or approved by unanimous actions of the members, officers, or managers, as appropriate.

<h3 style="text-align:center">III.   <u>ORDER</u></h3>

**A.**     <u>**Confirmation of the Plan**</u>

1.     <u>Approval and Confirmation of the Plan</u>. The Plan, which is annexed hereto as **<u>Exhibit A</u>**, shall be, and hereby is, **APPROVED** and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code

2.     The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall control and take precedence. The provisions of this Confirmation Order are integrated with each other and are non-severable and are mutually dependent.

3.     The Plan and this Confirmation Order will be effective and binding on all parties in interest in the Chapter 11 Cases.

4.     The failure to include or refer to any particular article, section, or provision of the Plan, Plan Supplements, or any related document or exhibit does not impair the effectiveness of

that article, section, or provision; it being the intent of the Court that the Plan, Plan Supplements, and any related document or exhibit are all approved in their entirety.

5.       The Debtors and all other appropriate parties shall be, and hereby are, authorized and directed to: (a) take all actions necessary or appropriate to enter into, implement and consummate the Plan and any other contracts, instruments, releases, and other agreements created in connection with the Plan or referred to therein, all of which Plan documents and such other contracts, instruments, releases, and other agreements shall be, and hereby are, approved; (b) to take such other steps to perform such other acts as may be necessary to implement and effectuate the Plan and such other contracts, instruments, releases, and other agreements; and (c) to execute and deliver any instrument and perform any other act that is necessary for the consummation of the Plan and such other contracts, instruments, releases, and other agreements, in accordance with section 1142(b) of the Bankruptcy Code, without further application to, or order of the Court, or further action by the respective members, officers, or managers, as appropriate, and with the effect that such actions have been taken by unanimous action of such members, officers, or managers, as appropriate.

6.       <u>Objections</u>.  To the extent the Confirmation Objections and any other objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated by the Debtors on the record at the Confirmation Hearing, all such objections (including any joinder or reservation of rights therein) are hereby overruled on the merits.

7.       <u>Findings of Facts and Conclusions of Law</u>.  This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil

Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact shall constitute findings of fact even if stated as conclusions of law, and all conclusions of law shall constitute conclusions of law even if stated as findings of fact. To the extent any findings of fact or conclusions of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, they are adopted as such.

8. <u>Notice and Solicitation of Votes</u>. Through service of the Confirmation Hearing Notice (as defined in the Disclosure Statement Order), as evidenced by the Solicitation Affidavit, holders of Claims and Equity Interests in the Debtors and all other parties in interest received adequate and sufficient notice of the Voting Deadline (as defined in the Disclosure Statement Order), the Objection Deadline (as defined in the Disclosure Statement Order), and the Confirmation Hearing. The Debtors solicitation of votes through the Solicitation Agent, as described in the Pirrung Declaration, was appropriate and done in good faith. Accordingly, the Debtors have complied with the applicable notice and solicitation provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

9. <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtors, the Reorganized Debtors, the Litigation Trustee, any Entity acquiring or receiving property or a Distribution under the Plan, and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any Debtors.

10.    <u>Implementation</u>.  On and after the Effective Date, the Debtors, the Reorganized Debtors, and the Litigation Trustee are authorized to (i) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements to consummate the transactions contemplated pursuant to, and as provided for in, the Plan; (ii) make any and all transfers contemplated pursuant to, and as provided for in, the Plan; and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan

11.    <u>Effectiveness of Plan Provisions</u>.  Each term and provision of the Plan, as approved by this Confirmation Order, is binding, valid, and enforceable pursuant to its terms.

12.    <u>Execution by Third Parties</u>.  Each and every federal, state and local governmental agency or department shall be, and hereby is, directed to accept, and lessors and holders of liens are directed to execute, any and all documents, instruments or amendments necessary and appropriate to consummate the transactions contemplated by the Plan, including without limitation, documents, instruments or amendments for recording in county and state offices in order to effectuate the Plan.

13.    <u>General Settlement of Claims and Interests</u>.  Except as otherwise provided in the Plan or this Confirmation Order, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, Consumer Litigation Settlement, Pennsylvania AG Settlement, CFPB Settlement, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all controversies, Claims, and interests resolved pursuant to the Plan.

14.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Litigation Trustee for each quarter (including any fraction thereof) until the Chapter

11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first. For the avoidance of doubt, the Reorganized Debtors shall not be liable for any such statutory fees.

15. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any other documents, instruments or agreements contained therein, and any amendments or modifications of any of the foregoing.

16. <u>Release of Liens</u>. Except as otherwise provided in this Confirmation Order, the Plan, the Term Sheet, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, any Lien, mortgage, deed of trust, pledge, or other security interest securing any Secured Claim shall be deemed fully released, settled, and compromised and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such holder and to take such actions as may be requested by the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable, to evidence the release of such Lien, including, without limitation, the execution, delivery, filing, or recording of such releases as may be requested by the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable. The filing of this Confirmation Order with any federal, state, provincial or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims, and other interests described above. Any Entity holding such Liens, Claims, or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly

execute and deliver such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable.

17. _Restructuring Transactions_. On or after the Effective Date, the Debtors, the Reorganized Debtors, and the Litigation Trustee may engage or take such actions as may be necessary or appropriate to effect the Restructuring Transactions. The Debtors, the Reorganized Debtors, and the Litigation Trustee, as applicable, are hereby authorized to execute and deliver such contracts, instruments, certificates, agreements and documents to make such filings under applicable law and to take such other actions as any appropriate officer may determine to be necessary, appropriate or desirable to effectuate the Restructuring Transactions. Each appropriate member, officer, or manager of each Debtor or Reorganized Debtor is authorized to execute, deliver, file and have recorded any of the aforementioned documents and to take such other actions on behalf of such Debtor or Reorganized Debtor as such person may determine to be required, appropriate or desirable under applicable law in connection with the Restructuring Transactions, and the appropriate members, officers, or managers of each Debtor or Reorganized Debtor are authorized to certify or attest to any of the foregoing actions. The execution and delivery or filing of any of the aforementioned documents, or the taking of any such action shall be deemed conclusive evidence of the authority of such person to so act. Each federal, state, provincial and local governmental agency or department is authorized and directed to accept the filing of any of the aforementioned documents. This Confirmation Order is declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental authority or department without any further orders, certificates or other supporting documents.

18.     Exemption from Securities Laws.  The offering, issuance, and distribution of any Equity Interests in the Reorganized Debtors, any other successor entity or newly-formed entity is exempt from the provisions of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, or distribution of a security by reason of section 1145(a) of the Bankruptcy Code.

19.     Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, the Reorganized Debtors, or the Litigation Trust; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; and/or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

**B.      The Release, Injunction, Exculpation, and Related Provisions**

20.     The Debtor Release.  The Debtor Release set forth in Section 9.3 of the Plan is hereby approved.

21.     The Releases by Members of the Nationwide Consumer Borrower Settlement Class.  The releases by each member of the Nationwide Consumer Borrower Settlement Class set forth in Section 9.4 of the Plan are hereby approved.

22. <u>The Consensual Third Party Releases</u>. The Consensual Third Party Releases set forth in Section 9.5 of the Plan are hereby approved.

23. No Claim, Cause of Action, or Non-Estate Cause of Action against any of the GPLS Secured Parties shall be transferred to the Litigation Trust, the Reorganized Debtors, or to any other party. For the avoidance of doubt, the provided however language at the end of the first paragraph of Section 9.3 of the Plan shall not modify the foregoing sentence.

24. <u>Exculpation</u>. The exculpation provisions set forth in Section 9.6 of the Plan are hereby approved.

25. <u>The Injunction</u>. The injunction provisions set forth in Section 9.7 of the Plan are hereby approved. The injunction provisions in Section 9.7 of the Plan are necessary to implement the Plan and to preserve and enforce, among other things, Sections 9.3, 9.4, 9.5, and 9.6 of the Plan.

**C.    Effects of Plan Confirmation**

26. <u>Substantial Contribution Claims</u>. The Substantial Contribution Claims defined in Sections 1.1.105, 1.1.122, 1.1.175 and 1.1.177 of the Plan are hereby approved.

27. <u>Administrative Expense Claims Bar Date</u>. All requests for payment of Administrative Expense Claims, other than Professional Claims, Substantial Contribution Claims, and Claims for fees pursuant to 28 U.S.C. § 1930, must be filed with the Bankruptcy Court and served on counsel for the Debtors or the Reorganized Debtors, as applicable, or the Litigation Trustee on or after the Effective Date, by no later than **<u>thirty (30) days after the Effective Date</u>**. Any Person or Entity that is required to file and serve a request for payment of an Administrative Expense Claim and fails to timely file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative

Expense Claim or participating in distributions under the Plan on account thereof. The Debtors or the Reorganized Debtors, as applicable, the Litigation Trustee after the Effective Date, and any other party with standing shall have the right to object to any Administrative Expense Claim by filing and serving on the appropriate parties, including the claimant, an objection to such an Administrative Expense Claim on or before the Administrative Claims Objection Deadline. Unless the Debtors or the Reorganized Debtors, as applicable, the Litigation Trustee after the Effective Date, or another party with standing objects to an Administrative Expense Claim on or before **one hundred twenty (120) calendar days after the Effective Date** (unless extended by Order of the Bankruptcy Court) such an Administrative Expense Claim shall be deemed an Allowed Administrative Expense Claim in the amount requested.

28.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. The Debtors are authorized to assume and assign to the Reorganized Debtors the Executory Contracts and Unexpired Leases pursuant to Section 6.1 of the Plan, and such Executory Contracts and Unexpired Leases shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Debtors are authorized to reject each Executory Contract and Unexpired Lease not otherwise assumed pursuant to Section 6.1 of the Plan, and such Executory Contracts and Unexpired Leases shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. Pursuant to Section 6.3 of the Plan, the Reorganized Debtors shall be solely responsible for paying Cures, if any, on the Effective Date, or as soon as practicable thereafter, or such other date that the Reorganized Debtors and the counterparty agree.

29.     <u>Rejection Damages Claims Bar Date</u>. Pursuant to Section 6.1 of the Plan and this Confirmation Order, if the rejection of any Executory Contract or Unexpired Lease by any of the Debtors as part of the Plan results in a rejection damages Claim by the other party or parties to

such Executory Contract or Unexpired Lease, such a rejection damages Claim shall be barred and unenforceable against the Debtors, Reorganized Debtors, the Litigation Trust, or their property unless a proof of claim asserting such rejection damages Claim is filed with the Bankruptcy Court or the Solicitation Agent and served upon the Debtors within **thirty (30) days after the Effective Date**.  Unless otherwise ordered by the Bankruptcy Court, any such rejection damages Claims shall be treated and solely recoverable as General Unsecured Claims under the Plan.

30.     <u>Insurance Policies</u>.  Pursuant to Section 6.2 of the Plan, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the insurance policies in full force) all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption (and assignment, if necessary) of each of the insurance policies.  Nothing in this Confirmation Order shall constitute or be deemed to impair the Debtors' rights to the proceeds of the Insurance Rights.

31.     <u>Plan Classification Controlling</u>.  The classification of Claims and Equity Interests in the Debtors for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims, if any, set forth on the ballots returned by holders of Claims in Class 4 in connection with voting on the Plan:  (i) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event, shall be deemed to modify or otherwise affect the actual amount or classification of such Claims under the Plan for distribution purposes; and (iii) shall not be binding on the Debtors or the Litigation Trustee, as applicable.

32.     <u>Setoffs</u>.  The Debtors, the Reorganized Debtors, or the Litigation Trustee on or after the Effective Date, as applicable, may, to the extent permitted under applicable law, setoff against

33

any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtors or the Litigation Trustee on or after the Effective Date, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Litigation Trustee of any such Claims, rights, and Causes of Action that they may possess against such holder.

33.     Notice of Entry of the Confirmation Order.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtors shall be, and hereby are, directed to file and serve a notice of entry of this Confirmation Order in substantially the form annexed hereto as **Exhibit B** (the "Confirmation Notice") on all holders of Claims and Equity Interests as of the Record Date (as defined in the Disclosure Statement Order), all Persons and Entities listed on the Debtors' consolidated creditors matrix, the U.S. Trustee and all parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases within fourteen days after entry of the Confirmation Order.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

34.     Notice of Effective Date.  The Debtors shall be, and hereby are, directed to file and serve a notice of the occurrence of Effective Date in substantially the form annexed hereto as **Exhibit C** (the "Notice of Effective Date") on all holders of Claims and Equity Interests as of the Record Date (as defined in the Disclosure Statement Order), all Persons and Entities listed on the

Debtors' consolidated creditors matrix, the U.S. Trustee and all parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases within five business days after the occurrence of the Effective Date. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The Notice of Effective Date shall also serve as the notice setting forth the Administrative Expense Claims Bar Date. Such notice of the Administrative Expense Claims Bar Date is adequate under the particular circumstances and no other or further notice is necessary.

**D.    Resolution of Claims**

35.    Except as expressly provided for in the Plan or ordered by the Bankruptcy Court prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or by the Bankruptcy Code or the Bankruptcy Court has entered a Final Order allowing such Claim. Any Claim that is not an Allowed Claim shall be determined, resolved or adjudicated in accordance with the terms of the Plan.

**E.    Resolution of Confirmation Objections**

36.    Resolution of the CoreCard Objection [Doc. No. 1596]. The Court hereby approves the assumption of the Software License and Maintenance Agreement (the "CoreCard Agreement") by and between CoreCard Software, Inc. ("CoreCard") and Debtor TC Loan Service, LLC, and assignment of the CoreCard Agreement to one of the Reorganized Debtors ("Licensee") as of the Effective Date. The Cure Amount is set at $0.00. Unless otherwise hereafter agreed upon in writing by CoreCard and Licensee, the CoreCard Agreement shall terminate as of December 31, 2019. Within five (5) business days of the occurrence of the Effective Date, the Committee shall cause the dismissal with prejudice of all claim by the estate or the Committee against CoreCard, including without prejudice, Adversary No. 19-03164 (the "CoreCard Preference Action") in this

35

Case. CoreCard shall not be required to file any pleadings or otherwise appear in the CoreCard Preference Action prior to its dismissal with prejudice.

37. <u>Resolution of the Elevate Objection [Doc. No. 1597]</u>. In addition to the changes to Section 1.1.147 set forth below and the changes to Section 9.6 set forth above, the Plan is hereby modified to include the following paragraph as a new final paragraph in Section 5.4 of the Plan, which is deemed to be incorporated into the Plan annexed hereto as **<u>Exhibit A</u>**:

> To the extent the Litigation Trustee recovers from a defendant and such defendant then obtains an Allowed Claim in the Chapter 11 Cases under section 502 of the Bankruptcy Code (a "<u>502(h) Claim</u>"), the Litigation Trustee shall provide the holder of the 502(h) Claim with the actual distribution percentage for Class 4 in writing, and the holder of the 502(h) Claim shall multiply the amount recovered by the Litigation Trustee by the distribution percentage provided, and the resulting amount shall be deducted from any recovery of the Litigation Trustee and retained by (or, as the case may be, returned to) the defendant, and such resulting amount shall satisfy the 502(h) Claim in full.

38. <u>Resolution of the TCV Objection [Doc. No. 1599]</u>. In addition to the changes to Section 9.6 set forth above, Section 1.1.147 of the Plan is hereby modified to state as follows, which is deemed to be incorporated into the Plan annexed hereto as **<u>Exhibit A</u>**:

> 1.1.147. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each GPLS Secured Party; (b) each Consenting Defendant; (c) each Consenting Stakeholder; and (d) all holders of Claims who (i) returned a ballot and (ii) did not opt out of the releases in Section 9.5 of the Plan; <u>provided</u>, <u>however</u>, that the following Entities are not Releasing Parties: the members of the Nationwide

Consumer Borrower Settlement Class, the Entities specifically named in the definition of Non-Released Parties, Sequoia Capital IC, LP, Sequoia Capital IX, LP, and Elevate Credit, Inc., and its subsidiaries.

**F.** **Miscellaneous**

39. <u>Substantive Consolidation</u>. For the reasons set forth on the record at the Confirmation Hearing, the evidence introduced and testimony proffered or otherwise provided at the Confirmation Hearing established just cause for the substantive consolidation of the Estates and the Chapter 11 Cases as set forth in Section 4.1 of the Plan.

40. <u>Dissolution of the Committee</u>. On the Effective Date, pursuant to Section 9.1 of the Plan, the Committee shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases and the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Claims and represent the Committee in connection with such Professional Claims.

41. <u>Finality of Confirmation Order</u>. This Confirmation Order is intended to be a Final Order and the period in which a notice of appeal must be filed shall commence upon the entry of this Confirmation Order on the docket of the Chapter 11 Cases.

42. <u>Validity of Actions</u>. If any provisions of this Confirmation Order are reversed, modified, vacated, or otherwise altered, such reversal, modification, vacatur, or alteration shall not impact the validity of any actions or obligations taken or incurred under or in connection with the Plan prior to the receipt of such an order, unless such actions or obligations are duly stayed pending appeal.

43. <u>Substantial Consummation</u>. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article X of the Plan. The substantial consummation of the Plan, within the meaning of section 1101 of the Bankruptcy Code, is deemed to occur on the Effective Date.

44. <u>Effectiveness of Confirmation Order</u>. This Confirmation Order shall be effective upon the date of its entry, and the requirement that this Confirmation Order be stayed for a period of fourteen (14) days under Bankruptcy Rule 3020(e) shall not apply.

45. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and any amendments or modifications thereto, duly made in accordance with the terms hereof, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

46. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, without limitation, the releases set forth in Article IX of the Plan, pursuant to Article XII of the Plan.

###END OF ORDER###

Submitted by:


*/s/ Gregory G. Hesse*
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000

38

Email: ghesse@HuntonAK.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Email: tpbrown@HuntonAK.com
         jharbour@ HuntonAK.com

*Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**
**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In re:

**THINK FINANCE, LLC,** *et al.*,

**Debtors.**[1]

**Chapter 11**

**Case No. 17-33964 (HDH)**

**(Jointly Administered)**

---

## SECOND MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THINK FINANCE, LLC AND ITS SUBSIDIARY DEBTORS AND DEBTORS IN POSSESSION

---

Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel to the Debtors and Debtors in Possession*

Dated: September 26, 2019

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (3098), Think Finance SPV, LLC (4522), Financial U, LLC (1850), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), TC Decision Sciences, LLC (8949), and TC Loan Service, LLC (3103).

# TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** .................................................. 1

    **1.1.**    **Defined Terms** ............................................................................................. 1

    **1.2**    **Rules of Interpretation** ............................................................................ 18

    **1.3**    **Computation of Time** ............................................................................... 19

    **1.4**    **Governing Law** ........................................................................................ 19

    **1.5**    **Reference to Monetary Figures** .............................................................. 19

    **1.6**    **Controlling Document** ............................................................................. 19

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ........................................... 19

    **2.1**    **Administrative Claims** ............................................................................ 19

    **2.2**    **Professional Claims** ................................................................................ 20

    **2.3**    **Priority Tax Claims** ................................................................................. 21

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ................................................................................................................. 22

    **3.1**    **Classification of Claims and Interests** ................................................... 22

    **3.2**    **Treatment of Classes of Claims and Equity Interests** .......................... 22

    **3.3**    **Special Provision Governing Unimpaired Claims** ................................ 25

    **3.4**    **Elimination of Vacant Classes** ............................................................... 25

    **3.5**    **Voting Classes; Presumed Acceptance by Non-Voting Classes** ............ 26

    **3.6**    **Nationwide Consumer Borrower Settlement Class** ............................... 26

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ......................... 28

    **4.1**    **Substantive Consolidation** ...................................................................... 28

    **4.2**    **Restructuring Transactions** .................................................................... 28

    **4.3**    **Consumer Litigation Settlement** ............................................................ 29

    **4.4**    **Corporate Action** .................................................................................... 29

    **4.5**    **Dissolution of the Debtors** ...................................................................... 30

    **4.6**    **The Reorganized Debtor Assets** ............................................................. 30

    **4.7**    **Funding and Administration of Reserve Accounts** ............................... 30

    **4.8**    **Approval of Class Action Settlement** ..................................................... 31

    **4.9**    **Consenting Defendants' Cash Contribution** .......................................... 32

    **4.10**    **Books and Records** .................................................................................. 32

    **4.11**    **Section 1145 Exemption** .......................................................................... 34

    **4.12**    **Exemption from Certain Taxes and Fees** ............................................... 34

| | | |
|---|---|---|
| 4.13 | Class Action Injunctive and Other Relief | 35 |
| 4.14 | Pennsylvania AG Settlement | 37 |
| 4.15 | CFPB Settlement | 37 |
| 4.16 | GPLS Secured Parties' Settlement Contribution | 38 |
| 4.17 | Subordination | 38 |
| 4.18 | Cancellation of Notes, Instruments, Certificates, and Other Documents | 39 |
| 4.19 | Effectuating Documents; Further Transactions | 39 |
| 4.20 | Incentive Plans and Employee and Retiree Benefits | 39 |
| ARTICLE V | | 40 |
| 5.1 | Establishment of the Litigation Trust | 40 |
| 5.2 | Transfer of Assets to the Litigation Trust | 40 |
| 5.3 | Litigation Trust Funding | 40 |
| 5.4 | Causes of Action | 40 |
| 5.5 | Litigation Trust Distributions | 42 |
| 5.6 | Litigation Trust Agreement | 42 |
| 5.7 | Indemnification and Exculpation | 44 |
| 5.8 | Transfer of Tribal Property | 44 |
| ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 44 |
| 6.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 44 |
| 6.2 | Insurance Policies | 45 |
| 6.3 | Cure of Defaults and Objections to Cure and Assumption | 45 |
| 6.4 | Contracts and Leases Entered Into After the Petition Date | 46 |
| 6.5 | Reservation of Rights | 46 |
| ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS | | 47 |
| 7.1 | Distributions on Account of Claims Allowed as of the Effective Date | 47 |
| 7.2 | Special Rules for Distributions to Holders of Disputed Claims | 47 |
| 7.3 | Delivery of Distributions | 48 |
| 7.4 | Claims Paid or Payable by Third Parties | 50 |
| 7.5 | Setoffs | 51 |
| ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS | | 52 |
| 8.1 | Disputed Claims Process | 52 |
| 8.2 | Prosecution of Objections to Claims | 52 |
| 8.3 | Estimation of Claims | 53 |

2

| | | |
|---|---|---|
| 8.4 | Recoupment | 53 |
| 8.5 | No Interest | 53 |
| 8.6 | Disallowance of Claims | 53 |
| **ARTICLE IX EFFECT OF CONFIRMATION OF THE PLAN** | | **54** |
| 9.1 | Dissolution of the Committee | 54 |
| 9.2 | Discharge of Claims and Termination of Equity Interests | 54 |
| 9.3 | Releases by the Debtors | 55 |
| 9.4 | Releases by Members of the Nationwide Consumer Borrower Settlement Class | 56 |
| 9.5 | Releases by Releasing Parties. | 56 |
| 9.6 | Exculpation | 57 |
| 9.7 | Injunction | 58 |
| 9.8 | Protection Against Discriminatory Treatment | 58 |
| 9.9 | Release of Liens | 58 |
| 9.10 | Reimbursement or Contribution | 59 |
| 9.11 | Releases | 59 |
| **ARTICLE X CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** | | **59** |
| 10.1 | Conditions Precedent to the Effective Date | 59 |
| 10.2 | Substantial Consummation | 61 |
| 10.3 | Effect of Non-Occurrence of Conditions to Consummation | 61 |
| 10.4 | Vacatur of Confirmation Order | 61 |
| **ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** | | **61** |
| 11.1 | Modification of Plan | 61 |
| 11.2 | Effect of Confirmation on Modifications | 62 |
| 11.3 | Revocation or Withdrawal of Plan | 62 |
| **ARTICLE XII RETENTION OF JURISDICTION** | | **62** |
| **ARTICLE XIII MISCELLANEOUS PROVISIONS** | | **64** |
| 13.1 | Additional Documents | 64 |
| 13.2 | Payment of Statutory Fees | 64 |
| 13.3 | Waiver of Federal Rule of Civil Procedure 62(a) | 64 |
| 13.4 | Reservation of Rights; Binding Effect | 64 |
| 13.5 | No Admission | 65 |
| 13.6 | Closing of Chapter 11 Cases | 65 |
| 13.7 | Service of Documents | 65 |

Case 17-33964-hdh11 Doc 1523 Filed 09/25/19 Entered 09/25/19 11:08:00 Page 6 of 73

13.8    Term of Injunctions or Stays........................................................................................ 66

13.9    Entire Agreement ........................................................................................................... 66

13.10   Plan Supplement Exhibits............................................................................................. 66

13.11   Non-Severability ........................................................................................................... 66

# INTRODUCTION

Think Finance, LLC, and its subsidiary debtors and debtors in possession in the above-captioned chapter 11 cases jointly propose this Plan. The Debtors seek to consummate the Restructuring on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates substantive consolidation of the Debtors for the purposes of voting, allowance of claims, and distributions to holders of Allowed Claims. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring, and certain related matters. As indicated in the Disclosure Statement, the Debtors and the Committee support the Plan and recommend that all holders of impaired Claims that are entitled to vote accept the Plan.

# ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1. Defined Terms

1.1.1. "*AAA*" means that certain Eleventh Amended and Restated Administrative Agency Agreements, dated as of July 7, 2016, by and between GPL Servicing Ltd. and TC Administrative Services, LLC, and any amendments thereto.

1.1.2. "*Administrative and Priority Claims Estimate*" means an estimated amount of Allowed Administrative Expense Claims and Priority Claims for the purposes of establishing the Administrative and Priority Claims Reserve.

1.1.3. "*Administrative and Priority Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Allowed Administrative and Priority Claims.

1.1.4. "*Administrative Expense Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than Substantial Contribution Claims.

1.1.5. "*Administrative Expense Claims Bar Date*" means the last date by which a request for payment of an Administrative Expense Claim may be filed, which date is thirty (30) days after the Effective Date.

1.1.6. "*Administrative Claims Objection Deadline*" means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of (a) one hundred twenty (120) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.

1.1.7. "*Affiliate*" means, with respect to any Person, any other Person that directly or indirectly, including through one or more intermediaries, controls, is controlled by or is under

common control with, such first Person. For the purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by" and "under common control with"), when used with respect to any Person, means the power to direct or cause the direction of the management or policies of such Person, directly or indirectly, whether through the ownership of voting securities, by Contract or otherwise.

1.1.8. "*Allowed*" means, as to a Claim, a Claim allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

1.1.9. "*Assumption Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption and assignment to the Reorganized Debtors as of the Effective Date under section 365 of the Bankruptcy Code.

1.1.10. "*Avoidance Actions*" means claims of the Estates arising under sections 544, 547 or 548 of the Bankruptcy Code and, solely to the extent related to the foregoing, section 550 of the Bankruptcy Code.

1.1.11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

1.1.12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Cases.

1.1.13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the local rules and judge-specific guidelines of the Bankruptcy Court.

1.1.14. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Proof of Claim Forms, (III) Approving the Form and Manner of Notice Thereof, and (IV) Providing Certain Supplemental Relief*, approved and entered by the Bankruptcy Court on November 21, 2017 [Doc. No. 137], as the same may be amended from time to time.

1.1.15. "*Business Day*" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized or required to close under the Laws of, or are in fact generally closed in, the state of New York.

1.1.16. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

1.1.17. "*Cash Collateral Order*" means the *Order Authorizing the Debtors to Use Cash Collateral, Granting Adequate Protection and Related Relief* [Doc. No. 182] entered by the Bankruptcy Court on December 7, 2017.

1.1.18. "*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability,

damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever that are property of the Debtors' estates under 11 U.S.C. § 541, whether known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, assertable directly or derivatively, in contract or in tort, in law or in equity, arising under the statutes or administration regulations of any jurisdiction, or pursuant to any other theory of law. Such causes of action shall include, by example only and without limitation, (i) avoidance actions, (ii) actions under 11 U.S.C. §§ 544, 545, 547, 548, 550 and/or 553 and any state law equivalents, (iii) commercial tort claims, (iv) any right of setoff, counterclaim or recoupment, and (v) the right to object to Claims or Equity Interests (subject to the provisions of the Plan). These include, among others, (a) actions against entities which spun off from the Debtors between 2012 and the Petition Date totaling, the Committee asserts, in excess of $245.0 million, and (b) actions against all current and former shareholders and/or members of the Debtors totaling, the Committee asserts, in excess of $59.0 million. Notwithstanding anything else in the Term Sheet, the Disclosure Statement, the Plan or the Confirmation Order, Cause(s) of Action transferred to the Litigation Trust shall not include any Claims or Causes of Action against Released Parties or any of the obligations or assets included in the Reorganized Debtor Assets.

1.1.19. "*Certificate*" means any instrument evidencing a Claim.

1.1.20. "*CFPB*" means the Consumer Financial Protection Bureau.

1.1.21. "*CFPB Administrative Expense Claim*" means an Allowed Administrative Expense Claim in favor of the CFPB in the aggregate amount of $7.00.

1.1.22. "*CFPB Consent Order*" means the consent order attached to the Disclosure Statement as Exhibit D, resolving the CFPB Litigation.

1.1.23. "*CFPB Litigation*" means Consumer Financial Protection Bureau v. Think Finance, LLC et al, Case No. 4:17-cv-00127-BMM (D. Mont.).

1.1.24. "*CFPB Regulatory Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the CFPB Litigation.

1.1.25. "*CFPB Settlement*" means the settlement of the CFPB Regulatory Claim as provided in Article 4.15 of the Plan.

1.1.26. "*Chapter 11 Cases*" means the jointly administered Chapter 11 Cases pending for the Debtors in the Bankruptcy Court.

1.1.27. "*Claim*" means an actual or alleged (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and calculated together with all applicable accrued interest, fees and commission due, owing or incurred from time to time or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,

contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. For the avoidance of doubt, this Plan's definition of "Claim" is no less broad than the definition of "claim" as defined in section 101(5) of the Bankruptcy Code.

1.1.28. "*Claims Agent*" means American Legal Claims Services, LLC, the duly appointed Claims, Noticing and Balloting Agent in these Bankruptcy Cases.

1.1.29. "*Claims Register*" means the official register of Claims against and Equity Interests in the Debtors maintained by the Claims Agent.

1.1.30. "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

1.1.31. "*Class Action Injunctive and Other Relief*" means the relief set forth in Article 4.13 of the Plan.

1.1.32. '*Class Administrator*" means the administrator for the Nationwide Consumer Borrower Settlement Class appointed pursuant to the Preliminary Approval Order.

1.1.33. "*Class Notice*" means the form of notice to be disseminated pursuant to the Preliminary Approval Order to Nationwide Consumer Borrowers, which, among other things, will permit Nationwide Consumer Borrowers to opt out of or object to the Nationwide Consumer Borrower Settlement Class and/or the Settlement.

1.1.34. "*Committee*" means the Official Unsecured Creditors' Committee appointed in the Chapter 11 Cases pursuant to the *Amended Appointment of the Official Unsecured Creditors' Committee* [Docket No. 148].

1.1.35. "*Compensation Procedures*" means the procedures for the payment of Professional Fees approved by the Bankruptcy Court in the *Order Granting Motion of Debtors and Debtors and Debtors-in-Possession to Establish Procedures for the Interim Compensation and Reimbursement of Expenses for Professionals* [Doc. No. 207].

1.1.36. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.37. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

1.1.38. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

1.1.39. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.1.40. "*Consenting Defendants*" means, collectively, the GPLS Secured Parties and any other defendants (whether currently or hereafter named) or potential defendants in the Pending

Litigation who reach or have reached a settlement agreement acceptable to the Consenting Stakeholders and have agreed to be parties to the Term Sheet.

1.1.41. "*Consenting Defendants' Cash Contribution*" means the funds, if any, to be paid to the Litigation Trust by any Consenting Defendants (other than the GPLS Secured Parties) on the Effective Date in amounts to be agreed upon by the Consenting Plaintiffs and each Consenting Defendant in accordance with each such Consenting Defendant's agreed-upon payment allocation of the Consenting Defendants' Cash Contribution.

1.1.42. "*Consenting Plaintiffs*" means the plaintiffs in the Pending Litigation.

1.1.43. "*Consenting Stakeholders*" means the Consenting Plaintiffs, the Committee, the GPLS Secured Parties, and all Consenting Defendants.

1.1.44. "*Consumer Borrower Claims*" means any Claim of any of the Nationwide Consumer Borrowers who are members of, and do not opt out from, the Nationwide Consumer Borrower Settlement Class, against any Debtor or any Consenting Defendant, including any claims arising under, derived from, based on, or related to any Consumer Borrower Litigation.

1.1.45. "*Consumer Borrower Litigation*" means the list of cases under "Consumer Borrower Litigation" set forth on Exhibit C to the Disclosure Statement.

1.1.46. "*Cortex*" means Cortex Holdings, LLC.

1.1.47. "*Consumer Litigation Settlement*" means the settlement among the Settling Parties which is to be consummated through confirmation of this Plan.

1.1.48. "*Consummation*" means the occurrence of the Effective Date.

1.1.49. "*Contract*" means any written or oral contract, agreement, indenture, note, bond, loan, lease, sublease, mortgage, license, sublicense, obligation or other binding arrangement of any kind.

1.1.50. "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

1.1.51. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.1.52. "*Cure Notice*" means notices to be provided to non-debtor parties to Executory Contracts and Unexpired Leases identifying the Cure payments for Executory Contracts and Unexpired Leases that the Debtors propose to assume as part of the Plan.

1.1.53. "*Cure Objection Deadline*" means the deadline established by the Bankruptcy Court by which non-debtor parties to Executory Contracts and Unexpired Leases that the Debtors propose to assume as part of the Plan must object to (i) the Cure proposed by the Debtors and (ii) the proposed assumption of the Executory Contracts and Unexpired Leases.

1.1.54. "*Debtor*" means a debtor and debtor-in-possession in the Chapter 11 Cases.

1.1.55. "*Debtors*" means all debtors and debtors-in-possession in the Chapter 11 Cases.

1.1.56. "*Definitive Documents*" means the documents governing the Restructuring Transaction, which include (a) the Term Sheet; (b) the Plan (and all exhibits); (c) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (d) the Disclosure Statement and pleadings in support of the Disclosure Statement; (e) the Plan Solicitation Materials; (f) any order of the Bankruptcy Court approving the Disclosure Statement and the other Plan Solicitation Materials; and (g) the Plan Supplement.

1.1.57. "*Disclosure Statement*" means a disclosure statement, including any exhibits, appendices, related documents, ballots, and procedures related to the solicitation of votes to accept or reject the Plan, in each case, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, and that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

1.1.58. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

1.1.59. "*Disputed General Unsecured Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Disputed General Unsecured Claims.

1.1.60. "*Distribution*" means any initial or subsequent payment or transfer made under the Plan.

1.1.61. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates, on or after the Effective Date, upon which the Litigation Trustee or its designee shall make Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan.

1.1.62. "*Effective Date*" means the date on which the terms and conditions set forth in Article 10.1 of the Plan have occurred.

1.1.63. "*Eligible Tribal Loan*" means loans issued by Plain Green prior to June 1, 2016, Great Plains prior to May 6, 2017, or MobiLoans prior to May 6, 2017, in each case in which GPLS purchased a participation interest, provided, further, that each draw on loans issued by MobiLoans shall be treated as a separate Eligible Tribal Loan. In addition, this shall also mean loans to Pennsylvania Borrowers who obtained a consumer loan between February 1, 2009, and December 31, 2010, from First Bank of Delaware with respect to which loan certain of the Debtors provided services.

1.1.64. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code, and for the avoidance of doubt is understood and intended by the parties to include, without limitation, any federally recognized Indian Tribe.

1.1.65. "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

1.1.66. "*Escrow Agent*" means the Bankruptcy Court approved agent for the Escrow Account.

1.1.67. "*Escrow Account*" means that certain escrow account at Metropolitan Commercial Bank in the name of David Baker, Managing Partner, CTP, at Aurora Management Partners established pursuant to the terms of the Agreed Order [APN 17-3016, Doc No. 22] entered by the Bankruptcy Court on October 31, 2017.

1.1.68. "*Escrow Funds*" means the funds held in the Escrow Account.

1.1.69. "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

1.1.70. "*Exculpated Parties*" means collectively, (a) the Released Parties; (b) the Committee and its members; (c) American Legal Claims Services, LLC; (d) for the avoidance of doubt, each of the GPLS Secured Parties; and (e) the following professionals: (1) Alvarez & Marsal North America, LLC; (2) Hunton Andrews Kurth LLP; (3) Goodwin Procter LLP; (4) Eversheds Sutherland (US) LLP; (5) Browning Kaleczyc Berry & Hoven P.C.; (6) Schnader Harrison Segal & Lewis LLP; (7) Teneo Capital LLC; (8) Cole Schotz P.C.; (9) Kelly & Guzzo, P.L.C.; (10) Consumer Litigation Associates, P.C.; (11) Tycko & Zavareei, LLP; (12) Kellett & Bartholow, PLLC; (13) Lowenstein Sandler LLP; (14) Gravel & Shea PC; (15) Berman Tabacco; (16) Loewinsohn Flegle Deary Simon LLP; (17) Langer Grogan & Diver, P.C.; and (18) Ross & Smith, PC; (19) FTI Consulting, Inc.; (20) Kirkland & Ellis LLP; (21) Squire Patton Boggs (US) LLP; (22) Katten Muchin Rosenman LLP; (23) Ballard Spahr LLP; (24) Primmer Piper Eggleston & Cramer PC; (25) Bush Ross, P.A.; (26) McGuireWoods LLP; (27) Thomson Reuters Corp.; (28) Lighthouse eDiscovery, Inc.; (29) Goldberg Kohn Ltd.; (30) Kaplan Leaman & Wolfe Court Reporters; (31) Gerson Lehrman Group, Inc.; (32) Legalpeople LLC; (33) Smith Moore Leatherwood LLP; (34) Fox Rothschild LLP; (35) TransPerfect; (36) RANE Corp.; (37) Potter Anderson Corroon LLP; (38) Jackson Walker LLP; and (39) Huseby, Inc.

1.1.71. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.72. "*FF&E*" means all furniture, fixtures, equipment and interests therein, including without limitation, inventory, materials, supplies, writings, machinery, computers and

accessories, servers, hardware, disk drives, office equipment, communications equipment, leased or owned vehicles, and other tangible personal property utilized in the Debtors' businesses. FF&E shall not include GPL, MobiLoans and PGL Property.

1.1.73. "*Final Fairness Approval Order*" means that Order granting final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and/or Fed. R. Bankr. P. 7023(e).

1.1.74. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

1.1.75. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to seek leave to appeal, appeal or seek certiorari has expired and no application for leave to appeal, appeal or petition for certiorari has been timely taken, or filed, or as to which any application for leave to appeal or appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

1.1.76. "*General Unsecured Claim*" means any Claim against a Debtor other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a GPLS Claim, a Consumer Borrower Claim, a Pennsylvania Regulatory Claim, a CFPB Regulatory Claim, a Substantial Contribution Claim, a Professional Claim or a Section 510(b) Claim.

1.1.77. "*General Unsecured Claims Cash Pool*" means a cash distribution pool in a fixed amount for distributions to holders of Allowed General Unsecured Claims.  On the Effective Date, the General Unsecured Claims Cash Pool shall be funded with cash in an amount at least equal to $3.0 million.

1.1.78. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.1.79. "*GPLS*" means GPL Servicing, Ltd.

1.1.80. "*GPLS Claims*" means the disputed, unliquidated and contingent Claims asserted against the Debtors by the GPLS Secured Parties, including any Claims arising under, derived from, based on, or related to any asserted right to payment under the GPLS Transaction Documents, or the proofs of claim filed by GPL Servicing, Ltd., GPL Servicing Agent, LLC, Victory Park Capital Advisors, LLC, or Victory Park Management, LLC.

1.1.81. "*GPLS Holdback Account*" means, collectively and as the context requires, the three prior GPLS accounts at Citibank N.A. that held, and the GPLS account at Canadian Imperial Bank of Commerce that holds, the "GPLS Holdback," as that term is defined in the *Order Granting Preliminary Injunction* [A.P. No. 17-3106, Doc. No. 73].

1.1.82. "*GPLS Insurance Carriers*" means Endurance American Specialty Insurance Company (Policy Number FIP100101226400), XL Specialty Insurance Company (Policy Number ELU147084-16) Zurich (Policy Number EOC 0160733-00), and Arch Insurance Company (Policy Number AAX 9300313-00).

1.1.83. "*GPLS Secured Parties*" means, collectively, (a) GPL Servicing, Ltd., (b) GPL Servicing Agent, LLC, (c) Victory Park Capital Advisors, LLC, (d) Victory Park Management, LLC, (e) the GPLS Insurance Carriers (solely with respect to the Releases), and (f) for each of the foregoing (a)–(e), their respective current, former, and future Related Non-Debtor Parties, including, without limitation, for avoidance of doubt, Scott Zemnick, Tom Welch, and Jeffrey Schneider. The use of the term "Secured" in the term "GPLS Secured Parties" is not an admission by any party that the "GPLS Secured Parties" in fact hold a secured claim.

1.1.84. "*GPLS Transaction Documents*" means the AAA, GSA, the Participation Agreements (as defined in the GSA) and each of the other agreements, documents, certificates, or other instruments delivered in connection with the transactions contemplated thereby.

1.1.85. "*Great Plains*" means Great Plains Lending, LLC.

1.1.86. "*Great Plains Reserve Amount*" means the amount due from Great Plains to GPLS as the "Reserve Amount," as such term is defined in that certain Participation Agreement, dated as of December 1, 2015, between Great Plains and GPLS.

1.1.87. "*GSA*" means that certain Fourth Amended and Restated Guaranty and Security Agreement, dated as of April 2, 2013 (as amended from time to time).

1.1.88. "*Haynes Note*" means that certain Promissory Note, dated as of June 18, 2015, as amended, issued by Haynes Investments, Inc. to Think Finance, Inc., and any payments received by or on behalf of the Debtors on such Promissory Note between the execution of the Term Sheet and the Effective Date.

1.1.89. "*Impaired*" means, with respect to any Class of Claims, a Claim that is not Unimpaired.

1.1.90. "*Initial Distribution Date*" means, the date of the initial Distribution to holders of Allowed Claims other than members of the Nationwide Consumer Borrower Settlement Class, which date, unless otherwise set forth in the Plan, shall not be more than ninety (90) days after the Effective Date.

1.1.91. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.92. "*Insurance Rights*" means all of the Debtors' rights under their insurance policies, including any directors' and officers' policies, and under applicable law against their insurance carriers concerning such insurance policies, and any proceeds of such policies received by the Debtors as an insured after December 31, 2018.

1.1.93. "*Intellectual Property*" means without limitation all of the following: (i) all patents; (ii) all know-how, work product, trade secrets, inventions (whether patentable or

otherwise), data, information, processes, techniques, procedures, compositions, devices, methods, formulas, protocols and information, whether patentable or not; (iii) all software, source code, object code, system diagrams and architecture, flow charts, algorithms and all other information technology; (iv) all works of authorship, copyrightable works, copyrights and applications, registrations and renewals; (v) all logos, trademarks, service marks, domain names, and all applications and registrations relating thereto; (vi) all other proprietary rights; (vii) all regulatory exclusivities, patent extensions, supplemental protection certificates or the like; and (viii) all copies and tangible embodiments of each and all of the foregoing utilized in the Debtors' businesses. Notwithstanding the above, Intellectual Property shall not include the Tribal Property.

1.1.94. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

1.1.95. "*Intercompany Receivables*" means all amounts due to any of the Debtors from their non-Debtor affiliates including, without limitation, (i) Cortex service payments, (ii) the Cortex note and (iii) TF Holdings debt; provided, for the avoidance of doubt, that Cortex service payments received by the Debtors prior to the Effective Date would be treated like other general cash of the debtors pursuant to the Plan, as contemplated by the Term Sheet.

1.1.96. "*Jora*" means Jora Credit Holdings, LLC.

1.1.97. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, or regulation, in each case, that is validly adopted, promulgated, or issued by a governmental authority of competent jurisdiction.

1.1.98. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.99. "*Litigation Trust*" means the trust established pursuant to Article V of this Plan to, among other things, hold the Litigation Trust Assets, prosecute Causes of Action, object to Claims and make distributions pursuant to the Plan and Litigation Trust Agreement.

1.1.100.      "*Litigation Trust Agreement*" means that certain Litigation Trust Agreement, which shall be included in the Plan Supplement, governing the duties and scope of authority of the Litigation Trustee.

1.1.101.      "*Litigation Trust Assets*" means the assets and property held in trust by the Litigation Trustee for the benefit of the holders of Allowed Consumer Borrower Claims pursuant to the Litigation Trust Agreement.

1.1.102.      "*Litigation Trust Initial Funding*" means all remaining Cash in the Estates immediately after the funding of the Reserve Accounts and the payment of any other amounts required by the Plan, including pursuant to Article 4.6 of the Plan.

1.1.103.      "*Litigation Trust Oversight Board*" or "*LTOB*" means the board charged with overseeing the Litigation Trust pursuant to and as set forth in the Litigation Trust Agreement.

10

1.1.104.     "*Litigation Trustee*" means the Honorable Russell F. Nelms, U.S. Bankruptcy Judge for the Northern District of Texas (ret.), and any successor trustee appointed pursuant to the Litigation Trust Agreement.

1.1.105.     "*Marlin Administrative Expense Claim*" means an Allowed Administrative Expense Claim of Marlin & Associates Holding LLC against the Debtors in the amount of $50,000.

1.1.106.     "*MobiLoans*" means MobiLoans, LLC.

1.1.107.     "*Mobiloans Note*" means that certain Subordinated Term Note, dated May 10, 2017, by MobiLoans in favor of GPLS with a face value of $6,795,000, and all directly related agreements, including that certain (a) Subordinated Loan Agreement, dated May 10, 2017, by and between MobiLoans and GPLS, (b) Security Agreement, dated May 10, 2017 by and between MobiLoans and GPLS, which provides for a subordinated security interest in substantially all of, but only, the assets of MobiLoans, (c) Administrative Services Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, (d) Intercreditor Agreement, dated May 10, 2017, by and between GPLS and AHG Fund Investors, LLC, and (e) Subordination Agreement, dated May 10, 2017, by and between GPLS and the Senior Lender to such Subordination Agreement, and any payments received by or on behalf of GPLS on such MobiLoans Note between the execution of the Term Sheet and the Effective Date.

1.1.108.     "*Nationwide Class Counsel*" means the consortium of the following firms representing the Nationwide Consumer Borrower Settlement Class:  (i) Kelly & Guzzo, P.L.C.; (ii) Consumer Litigation Associates, P.C.; (iii) Lowenstein Sandler; and (iv) Tycko & Zavareei, LLP.

1.1.109.     "*Nationwide Consumer Borrower*" means any Person, including their successors and assigns and Persons holding or exercising any relevant legal rights of such Person, who received an Eligible Tribal Loan.  The term shall be synonymous with member, when referring to members of the Nationwide Consumer Borrower Settlement Class.  For purposes of this Plan, each Nationwide Consumer Borrower shall be treated as a single member of the Nationwide Consumer Borrower Settlement Class but, for each Borrower who has not opted out, each Eligible Tribal Loan he or she received will be considered separately when making any distribution or providing any other benefit.

1.1.110.     "*Nationwide Consumer Borrower Settlement Class*" means a class of Nationwide Consumer Borrowers certified for settlement purposes only, the makeup of which is set forth in the Preliminary Approval Order.

1.1.111.     "*Nationwide Consumer Borrower Settlement Class Representatives*" means the representatives of the Nationwide Consumer Borrower Settlement Class appointed pursuant to the Preliminary Approval Order.

1.1.112.     "*Non-Estate Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of

any kind or character whatsoever that are not property of the Debtors' estates under 11 U.S.C. § 541, whether known, unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.1.113. "*Non-Released Parties*" means Elevate Credit, Inc., Kenneth Rees, Stephen Haynes, Haynes Investments, LLC, Sovereign Business Solutions, LLC, Mike Stinson, Linda Stinson (except to the extent released in her capacity as a former director or officer), The Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, LTD, Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, LP, Sequoia Capital Growth Fund III, LP, Sequoia Entrepreneurs Annex Fund, LP, Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, LP, Sequoia Capital Growth Partners III, LP, Startup Capital Ventures, LP, Stephen J. Shaper (except to the extent released in his capacity as a former director or officer), John Drew (except to the extent released in his capacity as a former director or officer), TCV, LP, TCV Member Fund, LP, Technology Crossover Ventures, TCV V L.P., Technology Crossover Management V, LLC, Alan H. Ginsberg, and any other Entity that is not defined herein as a Released Party. **Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other Plan Document, no Non-Released Party shall be a Released Party at any time or for any reason.**

1.1.114. "*Non-Released/Non-Exculpated Parties*" means the Non-Released Parties that are not Exculpated Parties. **Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other Plan Document, no Causes of Action or Non-Estate Causes of Action held by any Entity against any Non-Released/Non-Exculpated Party shall be released, waived, enjoined, or otherwise adversely impacted by any release, injunction, exculpation, or other provision of the Plan, the Confirmation Order, or any other Plan Document. For the avoidance of doubt, all of the Debtors' Causes of Action against the Non-Released/Non-Exculpated Parties constitute Causes of Action.**

1.1.115. "*Opt-Out Consumer Borrower Claim*" means any claim of a holder of a Consumer Borrower Claim who timely and properly elects to opt out of the Nationwide Consumer Borrower Settlement Class.

1.1.116. "*Opt-Out General Unsecured Claim*" means any claim of a holder of a General Unsecured Claim (other than the CFPB, Pennsylvania AG and National Consumer Borrower Settlement Class) that timely and properly elects to opt out of the Third Party Release by voting to reject the Plan, or returning a ballot that otherwise opts out of the Third Party Release.

1.1.117. "*Other Priority Claim*" means any unsecured claim entitled to priority in repayment pursuant to section 507 of the Bankruptcy Code that is not a Priority Tax Claim or Administrative Expense Claim.

1.1.118. "*Other Secured Claim*" means any Secured Claim other than a Secured Tax Claim or the Claims of the GPLS Secured Parties.

1.1.119.     "*Pending Litigation*" means the "Pending Litigation" identified in Annex A to the Term Sheet.

1.1.120.     "*Pennsylvania*" means the Commonwealth of Pennsylvania.

1.1.121.     "*Pennsylvania AG*" means the Office of the Attorney General for the Commonwealth of Pennsylvania, which is the designated holder of the Claims of Pennsylvania.

1.1.122.     "*Pennsylvania AG Administrative Expense Claim*" means an Allowed Administrative Expense Claim of the Pennsylvania AG against the Debtors in the amount of $4,250,000.

1.1.123.     "*Pennsylvania Borrowers*" means members of the Nationwide Consumer Borrower Settlement Class who resided in the Commonwealth of Pennsylvania at the time they obtained any Eligible Tribal Loans.

1.1.124.     "*Pennsylvania Litigation*" means *Commonwealth of Pennsylvania v. Think Finance, Inc. et al.*, Case No. 2:14-cv-07139-JCJ (E.D. Pa.).

1.1.125.     "*Pennsylvania Regulatory Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the Pennsylvania Litigation, including any and any Claims for contribution and indemnification.

1.1.126.     "*Pennsylvania AG Settlement*" means the settlement of the Pennsylvania Regulatory Claim and other Claims as set forth in the Term Sheet.

1.1.127.     "*Pennsylvania AG-GPLS Secured Parties Stipulation*" means a stipulation of settlement in the Pennsylvania Litigation with the GPLS Secured Parties, which stipulation shall be set forth in the Plan Supplement and shall be mutually acceptable to the GPLS Secured Parties and the Pennsylvania AG.

1.1.128.     "*Person*" means any natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, trust or other legal entity or organization.

1.1.129.     "*Petition Date*" means October 23, 2017, the date on which each of the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

1.1.130.     "*PII*" means personal identifiable information provided by consumer borrowers to Tribal Lenders or to the Debtors prior to the Effective Date.

1.1.131.     "*Plain Green*" means Plain Green, LLC.

1.1.132.     "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

1.1.133.  "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtors no later than five (5) Business Days before the voting deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. The Plan Supplement includes, but is not limited to, the following: the Assumption Schedule, the Litigation Trust Agreement, and the Pennsylvania AG-GPLS Secured Parties Stipulation.

1.1.134.  "*Preliminary Approval Order*" means the order entered by the Bankruptcy Court conditionally certifying the Nationwide Consumer Borrower Settlement Class for settlement purposes and approving, among other things, the form and manner of notice to be served on members of the Nationwide Consumer Borrower Settlement Class.

1.1.135.  "*Priority Non-Tax Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.136.  "*Priority Tax Claim*" means any Claim against a Debtor that is entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Claim for penalties.

1.1.137.  "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

1.1.138.  "*Professional*" means a Person employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

1.1.139.  "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330 or 331 of the Bankruptcy Code.

1.1.140.  "*Professional Fee Escrow*" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Estimate.

1.1.141.  "*Professional Fee Estimate*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services prior to and as of the Effective Date, and any post-Effective Date fees and expenses, which good faith estimates Professionals shall deliver to the Debtors as set forth in Article 2.2 herein and, in turn, the Debtors will utilize for purposes of establishing the Professional Fee Escrow.

1.1.142.  "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.1.143.    "*Related Non-Debtor Parties*" means, collectively, with respect to an entity (as defined in section 101(15) of the Bankruptcy Code and understood and intended to include a federally recognized Indian Tribe), other than a Released Debtor Party, such entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, successors, assigns, parents, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, investment managers, fund advisers, employees, advisory board members, financial advisors, accountants, investment bankers, and consultants.

1.1.144.    "*Released Debtor Parties*" means, collectively: (a) each Debtor and Debtor-in-Possession; (b) current directors and officers of the Debtors as of or after the Petition Date, provided that if any director or officer is added after December 1, 2018, and before the Effective Date, such director or officer shall not be a Released Debtor Party until either (1) 21 days after the Committee has been notified of such addition if the Committee does not object by such 21st day or (2) the Bankruptcy Court enters an order on an objection by the Committee that provides that the person should be a Released Debtor Party; (c) the Reorganized Debtors; (d) TF Holdings; (e) Cortex; (f) Jora; (g) TF Investment Services, LLC; (h) each of the subsidiaries of any of the entities identified in (c) – (g); and (i) former directors and officers of the Debtors, in their capacities as such, other than Ken Rees, provided, however, that (i) any such former director or officer of the Debtors shall not be released for purposes of imposing any liability on any shareholder/member solely in their capacity as a shareholder/member or former shareholder/member; and (ii) the releases for the Released Debtor Parties shall not release the Estates' claims and Causes of Action against TF Holdings, Inc. concerning tax refunds and/or NOLs, or against any non-Debtor transferee of such tax refunds to the extent of such transfer.

1.1.145.    "*Released Non-Debtor Parties*" means, collectively, and in each case in its capacity as such: (a) each GPLS Secured Party; (b) Great Plains Lending, LLC; (c) Plain Green Lending, LLC; (d) MobiLoans, LLC; (e) Mark E. Curry, Sentinel Resources, LLC, Red Stone Inc. (as successor-in-interest to MacFarlane Group), and SOL Partners, each solely in connection with each Person's involvement with Great Plains Lending, LLC, and loans issued in the name of Great Plain's Lending, LLC (f) each other Consenting Defendant; (g) each Consenting Stakeholder and counsel for each Consenting Plaintiff; and (h) each Related Non-Debtor Party of each Entity in clauses (a) through (g) of this definition; provided, however, that no specifically identified Non-Released Party shall constitute a Released Non-Debtor Party.

1.1.146.    "*Released Parties*" means, collectively, the Released Debtor Parties and the Released Non-Debtor Parties.  The release of any Released Party shall not impact in any way the imputation of such Released Party's conduct to any other entity that is not a Released Party.

1.1.147.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each GPLS Secured Party; (b) each Consenting Defendant; (c) each Consenting Stakeholder; and (d) all holders of Claims other than the Opt-Out General Unsecured Claims; provided, however, members of the Nationwide Consumer Borrower Settlement Class are not Releasing Parties.

1.1.148.    "*Releases*" means the releases and exculpation set forth in Article IX of this Plan.

1.1.149.    "*Reorganized Debtor*" means one or more newly formed entities wholly owned by TF Holdings that are to receive on the Effective Date the Reorganized Debtor Assets.

1.1.150.    "*Reorganized Debtor Assets*" means assets identified in Article 4.6 of this Plan.

1.1.151.    "*Reorganized Debtor Cash Distribution*" means $5 million in cash.

1.1.152.    "*Reserve Accounts*" means, collectively, (i) the Administrative and Priority Claims Reserve; (ii) the General Unsecured Claims Cash Pool; (iii) the Substantial Contribution Fund; and (iv) the Professional Fee Escrow.

1.1.153.    "*Restructuring*" means the restructuring and reorganization to be effectuated by the Plan.

1.1.154.    "*Restructuring Transactions*" means the transactions specified in the Term Sheet, the Plan, and the other Definitive Documents.

1.1.155.    "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 501(b) of the Bankruptcy Code.

1.1.156.    "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.1.157.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.1.158.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa or any similar federal, state, or local law.

1.1.159.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

1.1.160.    "*Settling Parties*" means the Debtors and the Consenting Stakeholders.

1.1.161.    "*Settling Tribal Lenders*" shall mean the Tribal Lenders who have entered into separate settlement agreements with one or more Consenting Plaintiffs.

1.1.162.    "*Solicitation Agent*" means American Legal Claims Services LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

1.1.163.    "*Subject Consumers*" means those consumers who resided in one of the Subject States at the time of the formation of an installment loan agreement or a line of credit agreement.

1.1.164.    "*Subject States*" means Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, and South Dakota.

1.1.165.    "*Substantial Contribution Claims*" means the Pennsylvania AG Administrative Expense Claim, the CFPB Administrative Expense Claim, the VA/FL/CA Counsel Administrative Expense Claim, the VT/NC Counsel Administrative Expense Claim, and the Marlin Administrative Expense Claim.

1.1.166.    "*Substantial Contribution Fund*" means cash in an amount needed to fund payment of Substantial Contribution Claims.

1.1.167.    "*Term Sheet*" means the Global Settlement and Restructuring Term Sheet, dated as of June 6, 2019 (including the attachments thereto).  On June 7, 2019, the Debtors filed the *Notice of Filing of Supplemental Exhibit B to Motion of the Debtors and Debtors-in-Possession for Authorization to Enter into Term Sheet Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019* [Doc. No. 1405], which contained a fully executed version of the Term Sheet.

1.1.168.    "*TF Holdings*" means TF Holdings, Inc.

1.1.169.    "*Third-Party Release*" means the release granted by holders of General Unsecured Claims, other than holders of Opt-Out General Unsecured Claims, pursuant to Article 9.5 of this Plan to the Released Non-Debtor Parties and the Released Debtor Parties that are not Debtors.

1.1.170.    "*Tribal Lenders*" means Great Plains, Plain Green and MobiLoans.

1.1.171.    "*Tribal Property*" means the ownership interests and/or rights that belong to the Settling Tribal Lenders that would be transferred to the Liquidation Trust pursuant to separate settlement agreements with the Settling Tribal Lenders, including without limitation any outstanding consumer borrower notes and any data regarding any Nationwide Consumer Borrower owned by a Settling Tribal Lender and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders.

1.1.172.    "*Unclaimed Distribution*" means (i) in respect of any Distribution under the Plan on account of an Allowed Claim to a holder, other than a member of the Nationwide Consumer Borrower Settlement Class, that has not: (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (b) given notice to the Litigation Trustee of an intent to accept a particular Distribution; (c) responded to the Litigation Trustee's requests for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution and (ii) in respect of Distributions under the Plan to members of the Nationwide Consumer Borrower Settlement Class, any funds remaining in the

Litigation Trust as a result of distribution checks remaining uncashed by members of the Nationwide Consumer Borrower Settlement Class 120 days after issuance thereof.

1.1.173. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.174. "*Unimpaired*" has the meaning set forth in section 1124 of the Bankruptcy Code.

1.1.175. "*VA/FL/CA Counsel Administrative Expense Claim*" means an Allowed Administrative Expense Claim of counsel for the putative class action representatives asserting Consumer Borrower Claims on behalf of putative classes of individuals in Virginia, Florida and California against the Debtors in the amount of $4,250,000.

1.1.176. "*VPC Adversary Proceeding Causes of Action*" means all Claims and Causes of Action of the Debtors that are the subject of the adversary proceeding *Think Finance, LLC, et al. v. Victory Park Capital Advisors, LLC, et al.*, Adv. Pro. No. 17-03106-hdh (Bankr. N.D. Tex.).

1.1.177. "*VT/NC Counsel Administrative Expense Claim*" means an Allowed Administrative Expense Claim of counsel for the putative class action representatives asserting Consumer Borrower Claims on behalf of a putative nationwide class of individuals against the Debtors in the amount of $4,250,000.

## 1.2     **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the

like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 1.3     Computation of Time

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

### 1.4     Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles.

### 1.5     Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### 1.6     Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

### 2.1   Administrative Claims

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, or the Litigation Trustee on or after the Effective Date, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the

Administrative and Priority Claim Reserve equal to the amount of such Allowed Administrative Claim either: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Litigation Trustee, as applicable, in consultation with the Consenting Stakeholders; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All requests for allowance and payment of an Administrative Claim, other than Professional Claims and the Substantial Contribution Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtors or the Reorganized Debtors, as applicable, or the Litigation Trustee on or after the Effective Date, by no later than the Administrative Claims Bar Date. In the event that any party to an Administrative Claim on or before the Administrative Claims Objection Deadline, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

### 2.2 Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served in accordance with the Compensation Procedures approved by the Bankruptcy Court no later than **45 days after the Effective Date**. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. Allowed Professional Claims for services rendered prior to the Effective Date shall be paid in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow, which shall be held in trust for the Professionals and funded with Cash equal to the Professional Fee Estimate on or before the Effective Date. Claims for any post-Effective Date services by Professionals shall be submitted to the Litigation Trustee and paid in the ordinary course, but **in no event later than fourteen (14) days after their submission**. Professionals shall deliver to the Debtors their estimates for purposes of computing the Professional Fee Estimate **no later than five (5) Business Days prior to the anticipated Effective Date**. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid fees and expenses of such Professional. Any funds remaining in the Professional Fee Escrow after all Professional Claims have been paid will be deposited into the Litigation Trust for use in accordance with this Plan.

Notwithstanding the foregoing, after May 1, 2019, the Debtors shall not pay (i) the Committee's Professionals more than a total of $1.4 million;[2] or (ii) the Debtors' Professionals more than a total of $1.4 million; provided, however, that such caps do not apply to fees and expenses incurred in connection with work performed on unexpected extraordinary matters unrelated to obtaining approval of the Term Sheet, confirmation of the Plan, or related ordinary matters concerning concluding these Chapter 11 Cases. Provided that the Effective Date occurs, no Settling Party shall object to any fees or expenses paid, in accordance with the interim compensation procedures approved by the Bankruptcy Court, prior to May 1, 2019, to the Professionals identified in (i) or (ii) above. The foregoing limitation shall not apply to any Professionals retained pursuant to the *Order (I) Approving Procedures for the Retention and Compensation of Ordinary Course Professionals, Including, but not Limited to, Expert Witnesses and (II) Authorizing Payment of a Prepetition Claim of a Certain Critical Ordinary Course Professional* [Doc. No. 318].

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. For the avoidance of doubt, the Reorganized Debtors and the Litigation Trustee may employ and pay any professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Any professionals employed by (i) the Reorganized Debtors shall be paid from funds in or generated by the Reorganized Debtors, and (ii) the Litigation Trustee shall be paid from the funds in or generated by the Litigation Trust; and not from the Professional Fee Escrow.

### 2.3    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive on the Effective Date payment in Cash from the Administrative and Priority Claim Reserve in an amount equal to the amount of such Allowed Priority Tax Claim or, as determined by the Debtors in consultation with the Committee, regular installment payments from the Litigation Trustee of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash from the Administrative and Priority Claim Reserve in accordance with the terms of any agreement between the Debtors or the Litigation Trustee, as applicable, and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business. The Debtors are not aware of any Priority Tax Claims that in the aggregate total in excess of $100. Notwithstanding the foregoing, the Plan shall be deemed to be an objection to any penalty asserted as a Priority Tax Claim arising with respect to or in connection with any Allowed Priority Tax Claims.

---

[2] The Committee represents that in the unlikely event the fees and expenses for the Committee's professionals exceed the $1.4 million cap, such fees and expenses above the cap shall be paid by the Litigation Trust. The Committee further represents that as of the date of this Plan, the Committee does not believe that the fees and expenses for the Committee's professionals will exceed the $1.4 million cap.

# ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

### 3.1    Classification of Claims and Interests

This Plan constitutes one Plan proposed by consolidated Think Finance, LLC and each Claim filed or to be filed against any Debtor shall be deemed a single claim filed only against the consolidated Think Finance, LLC.  Except for the Claims addressed in Article II, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or an Equity Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | GPLS Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Consumer Borrower Claims | Impaired | Entitled to Vote |
| 6 | Pennsylvania Regulatory Claim | Impaired | Entitled to Vote |
| 7 | CFPB Regulatory Claim | Impaired | Entitled to Vote |
| 8 | Equity Interests | Impaired | Entitled to Vote |

### 3.2    Treatment of Classes of Claims and Equity Interests

Except to the extent that the Debtors, or the Litigation Trustee on or after the Effective Date, and a holder of an Allowed Claim, as applicable, agree to a less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim.  Unless otherwise indicated, the holder of an Allowed Claim, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(a)     **Class 1 — Priority Non-Tax Claims**

    (1)    *Classification*: Class 1 consists of any Priority Non-Tax Claims against any Debtor.

    (2)    *Treatment*: Each holder of an Allowed Class 1 Claim shall receive Cash from the Administrative and Priority Claim Reserve in an amount equal to such Allowed Class 1 Claim.

    (3)    *Voting*: Class 1 is Unimpaired.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)     **Class 2 — Other Secured Claims**

    (1)    *Classification*: Class 2 consists of any Other Secured Claims against any Debtor.

    (2)    *Treatment*: Each holder of an Allowed Class 2 Claim shall receive, as the Debtors determine in consultation with the Consenting Stakeholders:

        A.    payment in full in Cash of its Allowed Class 2 Claim, including any accrued and unpaid interest, fees, and expenses as may be required to be paid;

        B.    the collateral securing its Allowed Class 2 Claim; or

        C.    such other treatment rendering its Allowed Class 2 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (3)    *Voting*: Class 2 is Unimpaired.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)     **Class 3 — GPLS Claims**

    (1)    *Classification*: Class 3 consists of the GPLS Claims asserted against the Debtors.

    (2)    *Treatment*: Each Class 3 Claim shall be allowed and treated in accordance with the applicable provisions of the Term Sheet and Plan in full and final satisfaction of such Claim.  For the avoidance of doubt, holders of Allowed Class 3 Claims shall not receive any Distribution under the Plan or retain any lien or interest in the assets of the Estates.

23

(3)  *Voting*: Class 3 is Impaired.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

(d)  **Class 4 — General Unsecured Claims**

(1)  *Classification*: Class 4 consists of any General Unsecured Claims and any Opt-Out Consumer Borrower Claims against any Debtor.

(2)  *Treatment*:  Each holder of an Allowed Class 4 Claim shall receive a cash Distribution equal to its pro rata share of the General Unsecured Claims Cash Pool.

(3)  *Voting*: Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

(e)  **Class 5 — Consumer Borrower Claims**

(1)  *Classification*: Class 5 consists of a single class claim of the Nationwide Consumer Borrower Settlement Class.

(2)  *Treatment*:  The Consumer Borrower Settlement Class Claim shall be treated in accordance with the Section 3.6 of this Plan.

(3)  *Voting*: Class 5 is Impaired.  The Nationwide Consumer Borrower Settlement Class Representatives are entitled to submit a single vote to accept or reject the Plan on behalf of the Nationwide Consumer Borrower Settlement Class.

(f)  **Class 6 – Pennsylvania Regulatory Claim**

(1)  *Classification*: Class 6 consists of a single claim of Pennsylvania.

(2)  *Treatment*:  In full satisfaction of the Pennsylvania Regulatory Claim, the Pennsylvania AG shall be allowed an unsecured Claim in the amount of $200 million, temporarily for voting purposes in accordance with Bankruptcy Rule 3018(a).  A single claim of the Pennsylvania AG shall be an allowed unsecured claim solely for distribution purposes under the Plan, provided that such allowed claim and all proofs of claim filed by the Pennsylvania AG shall be resolved and satisfied for all purposes pursuant to: (i) the treatment of the Pennsylvania Borrowers as members of the Nationwide Consumer Borrower Settlement Class (Tier 1 treatment); (ii) the Class Action Injunction and Other Relief sections of the Plan concerning Pennsylvania; and (iii) the Pennsylvania Borrower Additional Amount; (iv) any additional funds the Pennsylvania AG is entitled to as Unclaimed Distributions; and (v) the treatment of the Pennsylvania AG Administrative Expense Claim.  The Pennsylvania AG shall further receive $2.0 million from the Escrow Account.

(3) *Voting*: Class 6 is Impaired. The Pennsylvania AG is entitled to vote to accept or reject the Plan.

(g) **Class 7 – CFPB Regulatory Claim**

(1) *Classification*: Class 7 consists of a single claim of the CFPB.

(2) *Treatment*: In full satisfaction of the CFPB Regulatory Claim, the CFPB shall be allowed a Claim for voting purposes only in accordance with Bankruptcy Rule 3018(a), but shall not receive any Cash Distribution under the Plan on account of the CFPB Regulatory Claim. All proofs of claim filed by the CFPB shall be resolved and satisfied for all purposes pursuant to (i) the treatment of the members of the Nationwide Consumer Borrower Settlement Class; (ii) the allowance of the CFPB Administrative Expense Claim and (iii) the relief provided in the CFPB Consent Order.

(3) *Voting*: Class 7 is Impaired. The CFPB is entitled to vote to accept or reject the Plan.

(h) **Class 8 – Equity Interests**

(1) *Classification*: Class 8 consists solely of Equity Interests in Think Finance, LLC, which are held by TF Holdings.

(2) *Treatment*: TF Holdings shall have its Equity Interests in Think Finance, LLC cancelled on the Effective Date and shall receive all equity interests in the Reorganized Debtors, which shall receive the Reorganized Debtor Assets.

(3) *Voting*: Class 8 is Impaired. TF Holdings is entitled to vote to accept or reject the Plan.

**3.3    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors, the Reorganized Debtors or the Litigation Trustee regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**3.4    Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims in such Class.

### 3.6     Nationwide Consumer Borrower Settlement Class

The Nationwide Consumer Borrower Settlement Class shall be made up of all Nationwide Consumer Borrowers, *excluding* those Nationwide Consumer Borrowers who effectively opt out of the Nationwide Consumer Borrower Settlement Class. The Nationwide Consumer Borrower Settlement Class Claim shall be allowed as an unsecured claim in the amount of $1.13 billion solely for purposes of voting and distribution under the Plan. The Debtors dispute liability on the foregoing claim, and this allowance shall not be an agreement by the Debtors or Reorganized Debtors to the allowance of such claim for any other purpose. Nothing in the Term Sheet, the Settlement, the Plan, or the Confirmation Order shall constitute an admission or agreement by the Debtors concerning the solvency or insolvency of the Debtors. No other claims of any members of the Nationwide Consumer Borrower Settlement Class shall be allowed for distribution purposes. Distributions to members of the Nationwide Consumer Borrower Settlement Class shall be governed by the Plan and the Litigation Trust Agreement. Nationwide Class Counsel shall coordinate with counsel to the Pennsylvania AG in connection with any notices provided and distributions made to Pennsylvania Borrowers, which notices and distributions from the Litigation Trust shall be subject to approval by the Bankruptcy Court.

Distributions to members of the Nationwide Consumer Borrower Settlement Class shall be allocated as follows:

o     Tier 1: the following states: Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin. Tier 1 shall receive 70% of the Litigation Trust Proceeds (the "Tier 1 Allocation"), in addition to injunctive and other relief in the form of the Class Action Injunctive and Other Relief; and

o     Tier 2: the following states: Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming. Tier 2 shall receive 30% of the Litigation Trust Proceeds (the "Tier 2 Allocation"), in addition to injunctive and other relief in the form of the Class Action Injunctive and Other Relief.

o     Tier 3: states other than Tier 1 states and Tier 2 states. Tier 3 shall not receive any of the Litigation Trust Proceeds, but shall benefit from the Class Action Injunctive and Other Relief, and shall include the states of Nevada and Utah.

Each member of the Nationwide Consumer Borrower Settlement Class in a Tier 1 state shall receive a pro-rata distribution of the Tier 1 Allocation calculated based on the total amount

paid by such Class member on Eligible Tribal Loans (in interest, as to Great Plains or Plain Green installment loans, and charges, as to MobiLoans lines of credit) as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Secured Parties (with respect to the GPLS Secured Parties, only to the extent any books or records are actually in the possession, custody or control of the GPLS Secured Parties) and/or the Settling Tribal Lenders. Additionally, the Pennsylvania Borrowers also may receive a portion of the other amounts paid to the Pennsylvania AG as part of the Settlement, or from any recoveries in the Pennsylvania Litigation against Non-Consenting Defendants (the "Pennsylvania Borrower Additional Amounts"), less any allocations therefrom made by the Pennsylvania AG, at his sole discretion, to civil penalties or from reimbursement of expenses related to the Pennsylvania Litigation.

Each member of the Nationwide Consumer Borrower Settlement Class in a Tier 2 state shall receive a pro-rata distribution of the Tier 2 Allocation calculated based upon the total amount of interest, as to Great Plains or Plain Green instalment loans, and of charges, as to MobiLoans lines of credit, paid by such Class member on Eligible Tribal Loans, as reflected on the applicable Tribal Lender's books and records available to the Debtors, the GPLS Secured Parties (with respect to the GPLS Secured Parties, only to the extent any books or records are actually in the possession, custody or control of the GPLS Secured Parties) and/or the Settling Tribal Lenders, over the usury limit in such state applicable to unsecured installment loans issued by lenders subject to such state's laws in a similar dollar amount as the Eligible Tribal Loans.

Members of the Nationwide Consumer Borrower Settlement Class in a Tier 3 state shall not receive any monetary distribution.

Notwithstanding anything in this Plan or the Confirmation Order, Distributions from the Litigation Trust to individual members of the Nationwide Consumer Borrower Settlement Class shall not exceed the amount each of those consumers paid in excess of principal on his or her Eligible Tribal Loans.

The aggregate amount of all allocations for Pennsylvania Borrowers shall be paid to the Pennsylvania AG. The Pennsylvania AG may determine, in his sole discretion, all matters relating to the timing of distributions to Pennsylvania Borrowers.

As set forth more fully in the Litigation Trust Agreement and/or Preliminary Approval Order, the Nationwide Consumer Borrower Settlement Class shall be represented by the following firms:

- Kelly & Guzzo, P.L.C.;
- Consumer Litigation Associates, P.C;
- Lowenstein Sandler; and
- Tycko & Zavareei, LLP

The following firms shall serve on an advisory committee:

- Kellett & Bartholow, PLLC;
- Berman Tabacco; and

- Gravel & Shea PC

Pursuant to the Consumer Litigation Settlement, if approved by the Court in the Final Fairness Approval Order, the Nationwide Consumer Borrower Settlement Class Representatives shall receive the requested service awards in the amount of $7,500 as representatives of the Nationwide Consumer Borrower Settlement Class pursuant to the terms of the Litigation Trust Agreement.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### 4.1  Substantive Consolidation

This Plan contemplates, and is predicated upon, the entry of an order, which may be the Confirmation Order, substantively consolidating the Estates and the Chapter 11 Cases for administrative convenience and for purposes of implementing this Plan, voting, assessing whether the standards for Confirmation have been met, calculating and making Distributions under the Plan and filing post-Confirmation reports and paying quarterly fees to the Office of the United States Trustee.  Accordingly, on the Effective Date: (i) all Intercompany Claims and Equity Interests held by, between and among the Debtors shall be deemed eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of Think Finance, LLC, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of Think Finance, LLC, and (iv) each Claim filed or to be filed against any Debtor shall be deemed filed only against the consolidated Think Finance, LLC, and shall be deemed a single Claim against and a single obligation of the consolidated Think Finance, LLC.  On the Effective Date, in accordance with the terms of the Plan, all Claims based upon co-obligations or guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be merged into a single obligation of Think Finance, LLC, and otherwise shall be released and of no further force and effect.

This substantive consolidation shall not otherwise affect (a) the legal and corporate structures of the Debtors; (b) the vesting of assets in the Litigation Trust; (c) the right to Distributions from any insurance policies or proceeds of such policies; or (d) the rights of the Litigation Trustee to contest setoff or recoupment rights alleged by creditors on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable law.  In addition, substantive consolidation shall not, and shall not be deemed to, prejudice any of (i) the Causes of Action, which shall survive for the benefit of the Debtors and their Estates and, upon the Effective Date, for the benefit of the Litigation Trust and its beneficiaries; or (ii) the available defenses to the Causes of Action.

### 4.2  Restructuring Transactions

On the Effective Date, the Debtors shall implement the Restructuring Transactions.  The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents for the dissolution of the Debtors and the creation

28

of the Reorganized Debtors; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, interest, or right consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; (d) creation of the Litigation Trust; and (e) all other actions that the Debtors determine to be necessary or appropriate and consistent with the Plan and Confirmation Order, including making filings or recordings that may be required by applicable law in connection with the Plan.

### 4.3    Consumer Litigation Settlement

The Plan is intended to implement the Consumer Litigation Settlement described in this Plan and the Disclosure Statement. Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan and the Consumer Litigation Settlement shall constitute a good-faith compromise and settlement of all Claims and Equity Interests and the VPC Adversary Proceeding Causes of Action. In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors reserve all of their rights with respect to any and all disputes resolved and settled under the Plan and Consumer Litigation Settlement and none of the Releases contemplated by the Term Sheet or the Plan shall be effective. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements embodied in the Plan and the Consumer Litigation Settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and the Confirmation Order, including, without limitation, the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and the Confirmation Order.

### 4.4    Corporate Action

Upon the Effective Date, the Debtors shall be authorized to implement the Restructuring Transactions, including to transfer the Reorganized Debtors' Assets to the Reorganized Debtors, without any requirement of further action by the members, officers, or managers of the Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors, including any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article 4.4 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 4.5     Dissolution of the Debtors

As soon as reasonably practicable following the Effective Date or such later date as may be necessary to facilitate execution, submission and court approval of the CFPB Consent Order, the Debtors or Reorganized Debtors, as applicable, shall file a notice of dissolution of the Debtors with the Bankruptcy Court, upon which filing the Debtors shall be deemed dissolved for all purposes in accordance with applicable state and local law without any further action, plan of dissolution, notice or application with any state or local division required on the part of the Debtors or the Debtors' officers, managers or members, and all remaining officers, managers, or managing members, shall be dismissed without any further action required on the part of any such Debtor, the officers of such Debtor, or the members of such Debtor, provided that foregoing shall not restrict the Reorganized Debtors from entering into agreements for the continued employment of employees of the Debtors.

### 4.6     The Reorganized Debtor Assets

On the Effective Date, the following Reorganized Debtor Assets shall be transferred to and/or vest in the Reorganized Debtors, and the Reorganized Debtors shall be the sole party(ies) with standing to prosecute claims related thereto: (i) the Reorganized Debtor Cash Distribution; (ii) the MobiLoans Note; (iii) the Haynes Note; (iv) the Intercompany Receivables; (v) all Intellectual Property of the Debtors, FF&E, and employees (including business and employee contracts, leases and related matters, etc.), including assumed Executory Contracts (including employee contracts and leases), *provided that* the Reorganized Debtors shall be solely responsible for payment of any Cure to be paid in connection with any assumed Executory Contracts and leases; and (vi) the Insurance Rights.

### 4.7     Funding and Administration of Reserve Accounts

On the Effective Date, the GPLS Secured Parties shall cause all cash in the GPLS Holdback Account to be transferred to the Escrow Account. On the Effective Date, after the transfer from the Escrow Account of $2 million to the Pennsylvania AG pursuant to Article 4.14 of the Plan, all remaining Escrow Funds shall be transferred to and shall vest in the Estate and shall be utilized, among other purposes set forth in the Plan, to fund the Reserve Accounts in accordance with this Article 4.7 of the Plan. All Cash remaining in the Estates immediately after funding the Reserve Accounts and the payment of any other amounts required by this Plan, including the Reorganized Debtor Cash Distribution pursuant to Article 4.6 of the Plan, shall vest in, and be transferred to, the Litigation Trust.

(a)     The Administrative and Priority Claims Reserve

On the Effective Date, the Administrative and Priority Claims Reserve shall be established and funded in the amount of the aggregate Administrative and Priority Claims Estimate. Subject to the terms of the Plan, the Litigation Trustee shall pay each Allowed Administrative Claim as provided for in Article 2.1 of this Plan. In the event that excess Cash remains in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative and Priority Claims, or at such time as the Cash in the Administrative and Priority Claims Reserve exceeds the Face Amount of the unpaid Administrative and Priority

Claims, such Cash shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(b)     The General Unsecured Claims Cash Pool

On the Effective Date, or as soon as reasonably practicable thereafter, the General Unsecured Claims Cash Pool shall be established and funded. Subject to the terms of the Plan, the Litigation Trustee or its designee shall distribute the Cash in the General Unsecured Claims Cash Pool *pro rata* to holders of Allowed Class 4 Claims. The Litigation Trustee shall establish, fund and administer the Disputed General Unsecured Claims Reserve in accordance this Plan from the Cash deposited into the General Unsecured Claims Cash Pool. In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(c)     The Substantial Contribution Fund

On the Effective Date, or as soon as reasonably practicable thereafter, the Substantial Contribution Fund shall be funded and disbursed in the amount of $12,800,007.00 to the holders of the Allowed Substantial Contribution Claims.

(d)     The Professional Fee Escrow

On or before the Effective Date, the Professional Fee Escrow shall be established and funded by the Debtors in Cash in the amount of the aggregate Professional Fee Estimate. Each Professional Claim shall be paid from the Professional Fee Escrow as provided for in Article 2.2 of this Plan. In the event that excess Cash remains in the Professional Fee Escrow after payment of all Allowed Professional Fee Claims, such Cash shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(e)     The Litigation Trust Initial Funding

On the Effective Date, or as soon as reasonably practicable thereafter, after the establishment and funding of the Reserve Accounts and payment of any other amounts required by the Plan, including payment of the Reorganized Debtor Cash Distribution pursuant to Article 4.6 of the Plan, the Litigation Trust Initial Funding shall be deposited into an account owned and controlled by the Litigation Trustee and held in trust for the holders of Allowed Consumer Borrower Claims.

**4.8**     **Approval of Class Action Settlement**

The Plan incorporates and implements the terms and conditions of the Litigation Trust Agreement and constitutes and shall be deemed to be a motion for final approval of the Nationwide Consumer Borrower Settlement Class by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) for purposes of voting on and receiving distributions under the Plan. The Preliminary Approval Order along with the order approving the Disclosure Statement shall authorize voting by Class 5 on a class-wide basis. The Final Fairness Approval Order shall

authorize the class settlement and ratify the vote. Upon confirmation of the Plan, (i) each member of the Nationwide Consumer Borrower Settlement Class shall be entitled to receive Distributions in accordance with this Plan, the Litigation Trust Agreement and/or Preliminary Approval Order and (ii) all proofs of claim asserting Consumer Borrower Claims other than the single claim of the Nationwide Consumer Borrower Settlement Class, other than those timely filed Allowed Opt-Out Consumer Borrower Claims, shall be disallowed and/or expunged; provided, however, that the allowance of the class proof of claim on these terms shall not inure to the benefit of any one individual holder of a Consumer Borrower Claim. The Plan shall constitute a motion (i) pursuant to section 502 of the Bankruptcy Code to allow for distribution purposes the single claim of the Nationwide Consumer Borrower Settlement Class and (ii) pursuant to Rule 3007 of the Bankruptcy Rules, to disallow and expunge all other Consumer Borrower Claims (other than Allowed Opt-Out Consumer Borrower Claims), including those filed as putative class claims on behalf of Consumer Borrowers of any state.

**4.9    Consenting Defendants' Cash Contribution**

On the Effective Date, or as soon as reasonably practicable thereafter, each Consenting Defendant (other than the GPLS Secured Parties) shall pay to the Litigation Trust an amount in Cash equal to its respective share of the Consenting Defendants' Cash Contribution, if any. For the avoidance of doubt, the Consenting Defendants' Cash Contributions shall not constitute or be deemed (i) any admission of wrongdoing, liability, fact, or illegality or any alleged capacity of the Debtors or the Consenting Defendants as lenders on any of the Eligible Tribal Loans, each of which are expressly denied by the Debtors and Consenting Defendants or (ii) a concession by the Consumer Borrowers that the alleged wrongdoing or illegality did not occur.

**4.10    Books and Records**

The Reorganized Debtors shall receive possession of and the right to use and maintain the original of all of Debtors' books and records, whether hard copy or electronically stored information (the "Books and Records"). The Reorganized Debtors shall provide reasonable advance notice with reasonable specificity to the Litigation Trustee prior to destroying any Books and Records and provide the Litigation Trustee with the opportunity, at the Litigation Trust's expense, to review, and obtain, such Books and Records prior to such destruction. The Litigation Trustee shall have the unilateral right to destroy Books and Records received from the Debtors or Reorganized Debtors. For the avoidance of doubt, the Litigation Trustee and his professionals in their capacities as such shall have full reasonable access to all such Books and Records for the purpose of investigating and pursuing the Causes of Action, and the Litigation Trustee shall be deemed to share with the Reorganized Debtors in any attorney-client privilege, work product doctrine, or other privilege or immunity attaching to any such Books and Records necessary for investigating and pursuing the Causes of Action, or obtaining any right to payment, *provided, however,* that such sharing does not waive any such privilege or immunity.

On the Effective Date, or as soon as reasonably practicable thereafter, (i) the Litigation Trustee shall receive a copy of the Debtors' Books and Records held by any litigation vendor, at the expense of the Litigation Trust, in a form and manner whereby it is commercially and technologically reasonable to obtain such copy; and (ii) if it becomes necessary for the Reorganized Debtors to incur significant internal or external costs in connection with providing

access to the Debtors' Books and Records to the Litigation Trustee, then the Reorganized Debtors and the Litigation Trustee shall enter into a reasonable shared services agreement governing the reimbursement of such costs. If the Reorganized Debtors and the Litigation Trustee do not reach an agreement on the terms of such shared services agreement, then either the Reorganized Debtors or the Litigation Trustee may seek an order from the Bankruptcy Court establishing reasonable terms for such shared services. If the Litigation Trustee reasonably determines that the expense of such access and use of such books and records is greater than the expense of fully duplicating them, then the Litigation Trustee may elect to obtain a copy at the expense of the Litigation Trust.

The term "Confidential Business Information" shall mean confidential PII, or any trade secrets or other confidential business information related to (a) shareholders except in connection with pursuing a Cause of Action, (b) financial information, statements, or records of the Debtors except in connection with pursuing a Cause of Action, (c) typical confidential employee information, (d) risk analysis products and methods (such as models, data and know how), (e) marketing services, strategies and methodologies, and (f) the technology platforms, systems, products and all other Intellectual Property, including without limitation software development and programs and related documentation contained in the Books and Records.

The Litigation Trustee shall not be permitted to disclose to any third-parties any Confidential Business Information without the consent of the Reorganized Debtors, and the Reorganized Debtors and the Litigation Trustee shall not be permitted to waive any privilege with respect to the Books and Records without the consent of the Litigation Trustee or the Reorganized Debtors, as applicable, in each case except in accordance with the following procedure: (i) the Litigation Trustee or the Reorganized Debtors, as applicable (the "Disclosing Party") shall provide written notice to the Reorganized Debtors or the Litigation Trustee, as applicable (the "Responding Party") of the Disclosing Party's intent to waive privilege and/or disclose privileged information or Confidential Business Information, which notice shall, among other things, identify the information at issue and the proposed use of such information; (ii) the Responding Party shall have three (3) business days after such notice is received to notify the Disclosing Party that the Responding Party objects to such disclosure or waiver; (iii) if the Responding Party timely objects in writing, then the Responding Party and Disclosing Party shall meet and confer about such information and proposed use during the two (2) business days that follow the Responding Party's notification of the Disclosing Party of the objection; (iv) if the parties do not reach an agreement, the Responding Party shall have until two (2) business days after the meet and confer concludes to file a pleading with the Bankruptcy Court seeking an order restricting such privilege waiver or disclosure (a "Motion to Restrict"); and (v) until such Motion to Restrict, or if the time for filing the Motion to Restrict has not yet run, then the applicable written notice, is resolved by agreement of the Responding Party and the Disclosing Party or order of the Bankruptcy Court, the Disclosing Party shall not waive such privilege or disclose such information, unless disclosing such information is unanticipated and necessary pursuant to Court order or Court or statutory deadline, and in such instances the Disclosing Party shall file such information under seal; and (vi) in ruling on a Motion to Restrict, the Bankruptcy Court may consider and weigh governing law as to privilege, confidentiality, and/or trade secrets, as well as the possible or intended use of such information and the interests of the Disclosing Party and the Responding Party concerning such disclosure or waiver. For the

avoidance of doubt, this provision means that neither the Reorganized Debtors nor the Litigation Trustee have the right to unilaterally disclose to third parties or preclude the disclosure to third parties of privileged information on the basis that the Reorganized Debtors and the Litigation Trustee share such privilege.

As of and after the Effective Date, to the extent the Reorganized Debtors receive a subpoena requesting documents produced by the Debtors in the Pending Litigation or in the Bankruptcy Case, the Reorganized Debtors shall agree that such previously produced documents shall be deemed produced under such subpoena as long as there is a protective order in place in the applicable litigation that provides equivalent protections to the Reorganized Debtors, including without limitation notice to the Reorganized Debtors, as those provided to the Debtors under the applicable protective order in the Pending Litigation or the Bankruptcy Case.

Notwithstanding anything else in the Plan with respect to the Tribal Property, the Reorganized Debtors may retain the original of any data regarding any consumer borrowers owned by the Settling Tribal Lenders and maintained or otherwise held by the Debtors for or on behalf of the Settling Tribal Lenders, provided that the mutually acceptable shared services agreement with the Litigation Trustee shall address the Litigation Trustee's access to such data.

## 4.11   Section 1145 Exemption

The offer, issuance, and distribution of any Equity Interests in the Reorganized Debtors, any other Successor Entity or newly-formed entity shall be exempt (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code), pursuant to section 1145 of the Bankruptcy Code, without further act or action, from registration under (i) the Securities Act, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities. Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the issuer of such securities and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

To the extent beneficial interests in the Litigation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the exemption provisions of section 1145 of the Bankruptcy Code shall apply to such beneficial interests.

## 4.12   Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other

means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.13    Class Action Injunctive and Other Relief**

As of the Effective Date, although the Debtors deny that they committed any wrongdoing and the Debtors deny that they own or were lenders on any of the Eligible Tribal Loans, as part of the agreement to resolve the disputes among the Settling Parties pursuant to this Plan, the following injunctive and other relief shall take effect:

•       while denying that they committed any wrongdoing and denying that they own or were lenders on any of the Eligible Tribal Loans, to the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors shall consent to the unpaid principal, interest and fees of the Eligible Tribal Loans to members of the Nationwide Consumer Borrower Settlement Class being voided and adjusted to a zero balance. To the greatest extent permitted under applicable law, upon the agreement of the relevant Tribal Lenders or other owners of the loans, the Debtors consent to the notification of members of the Nationwide Consumer Borrower Settlement Class affected by the foregoing sentence that their Eligible Tribal Loans have been voided and adjusted to a zero balance (any costs of notification shall be funded from the Litigation Trust, and such notice may be made in the initial notice made to the Nationwide Consumer Borrower Settlement Class by a description as to the effect of any final approval);

•       while denying that they committed any wrongdoing, denying that they own or were lenders on any of the Eligible Tribal Loans, and denying that they were a furnisher to any consumer reporting agencies for any Eligible Tribal Loans, as long as Nationwide Class Counsel has provided the Debtors with acceptable evidence that the Settling Tribal Lenders agree to the deletion of such tradelines, the Debtors shall not object to a motion filed by the Consenting Plaintiffs for the entry of an Order requiring the deletion of all tradelines for any Eligible Tribal Loan from all consumer reporting agencies, except for Eligible Tribal Loans associated with a Tribal Lender that has not agreed to this removal;

- to the extent of their current knowledge, and solely for the purpose of effectuating the Class Action Injunctive and Other Relief, the Debtors, or if the Debtors have not provided such information prior to the Effective Date then the Litigation Trustee, shall provide on a confidential basis to Kelly Guzzo, P.L.C. and Consumer Litigation Associates, P.C. a list of all Eligible Tribal Loans that have been sold or transferred to any third party, and the list will identify the loan numbers, the Tribal Lenders, the dates of sale, and the identity of such third parties, provided that any PII contained in such information shall be subject to the PII Prohibited Use/Protective Order Provisions;

- upon the vesting of the Reorganized Debtor Assets in the Reorganized Debtors and the creation and vesting of assets in the Litigation Trust in accordance with this Plan, the Debtors shall no longer conduct business, and upon the later of the later of the Effective Date, the entry of the order(s) resolving the CFPB Litigation, and the completion of their duties under the Term Sheet and Bankruptcy Court orders, the Debtors shall be dissolved;

- the Reorganized Debtors (i) shall not use the PII provided by members of the Nationwide Consumer Borrower Settlement Class to the Tribal Lenders or to the Debtors (a) to market to such members or (b) to assess the value of marketing to such members; and (ii) except as expressly contemplated by the Plan, shall not sell or transfer to any other Entity the PII provided by members of the Nationwide Consumer Borrower Settlement Class to the Tribal Lenders or to the Debtors for such Entity to use the PII to market to such members; and

- Pennsylvania is receiving Class Action Injunctive and Other Relief as set forth in section 4.14 of the Plan.

For the avoidance of doubt, (i) the Class Action Injunctive and Other Relief shall not constitute or be deemed any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans and (ii) nothing in this Plan, including, without limitation, the releases granted by the Nationwide Consumer Borrower Settlement Class, shall be contingent upon the Tribal Lenders' agreement to all, or any portion of, the Class Action Injunctive and Other Relief, except that the express contingencies identified above concerning Tribal Lenders' consent or agreement must occur prior to the Debtors (a) agreeing to Eligible Tribal Loans being voided and adjusted to a zero balance, and related notices or (b) consenting to the deletion of certain tradelines.

### 4.14 Pennsylvania AG Settlement

On, or as soon as reasonably practicable after, the Effective Date, the Escrow Agent shall transfer $2 million from the Escrow Account to the Pennsylvania AG in partial resolution of certain claims brought in the Pennsylvania Litigation against certain Released Non-Debtor Parties. On, or as soon as reasonably practicable after, the Effective Date, the Pennsylvania AG shall seek and obtain all orders necessary to settle, with the entry of a Rule 54(b) separate final judgment, all claims in the Pennsylvania Litigation against the Debtors. The Debtors and the Pennsylvania AG agree that one of such orders shall include injunction language that is substantively the same as the Class Action Injunctive and Other Relief or as otherwise agreed by the Pennsylvania AG and the Debtors, provided that such injunction language shall only address conduct concerning Pennsylvania residents and shall not address conduct concerning residents of other states or commonwealths.

On, or as soon as reasonably practicable after the Effective Date, the Pennsylvania AG and the GPLS Secured Parties shall enter into the Pennsylvania AG-GPLS Secured Parties Stipulation.

For the avoidance of doubt, the Pennsylvania AG Settlement shall not constitute or be deemed (i) any admission of wrongdoing, liability, fact, fault, assertion or illegality or any alleged capacity of the Debtors or the GPLS Secured Parties as lenders on any of the Eligible Tribal Loans, each of which is expressly denied in its entirety by the Debtors and the GPLS Secured Parties, or (ii) a concession by the Pennsylvania AG that the alleged wrongdoing or illegality did not occur.

It is understood and acknowledged by the Settling Parties that subject to the court in the Pennsylvania Litigation staying the Pennsylvania Litigation against the Debtors and the Consenting Defendants (including the GPLS Secured Parties), the Pennsylvania AG may continue the Pennsylvania Litigation against the remaining defendants (Kenneth Rees and National Credit Adjusters, LLC) without limitation and that any judgment, proceeds from such judgment, or settlement with such remaining defendants are the sole property of the Pennsylvania AG for distribution pursuant to further orders of the court in the Pennsylvania Litigation.

### 4.15 CFPB Settlement

Within 60 days after the Effective Date, or at such other time as mutually agreed upon prior to the Effective Date by the Debtors and the CFPB, the CFPB shall submit a consent order, which shall be in the form attached to the Disclosure Statement as Exhibit D (the "CFPB Consent Order"), to the Montana court and shall seek and obtain all orders necessary to settle the CFPB Litigation in accordance with the Plan and the CFPB Consent Order. The Debtors and the Reorganized Debtors, as applicable, will consent to the entry of and comply with the terms of the consent order that has been agreed upon between the Debtors and the CFPB to settle the CFPB Litigation. For the avoidance of doubt, the CFPB Settlement is made in compromise of disputed claims. The CFPB Settlement does not constitute the withdrawal of the Debtors' denials and defenses in the CFPB Litigation or an admission by the Debtors of any facts or liability or wrongdoing, including, but not limited to, any liability or wrongdoing with respect to any allegations that were or could have been raised in the CFPB Litigation. The CFPB Settlement also does not constitute an admission by the CFPB that any claim is not well-founded,

and nothing in this Plan should be construed as, or deemed to constitute, approval, sanction, or authorization by the CFPB of any of the Debtors' actions or business practices.

**4.16    GPLS Secured Parties' Settlement Contribution**

On and as of the Effective Date, as consideration for the Releases and the other treatment in the Plan, the GPLS Secured Parties shall (i) waive and release all liens, claims, or other rights to any funds, accounts or other assets of GPLS or the Debtors, and the Estates, including, without limitation, the remaining funds in the Escrow Account and the GPLS Holdback Account, and such waiver and release shall operate as full and final satisfaction, compromise, settlement, release, and discharge of all GPLS Claims, including but not limited to any claims, liens or interests in the Escrow Account and funds or other assets held by GPLS, the Debtors, their Estates, or the Reorganized Debtors; (ii) cause the release of all funds in the GPLS Holdback Account, which shall not be less than $7.5 million, to the Escrow Account; (iii) consent to the release of all remaining funds in the Escrow Account as provided in the Plan; (iv) cause GPLS to assign the MobiLoans Note and related agreements to the Reorganized Debtors; (v) release all interest in and rights to the Great Plains Reserve to Great Plains, which will be distributed in accordance with the terms of the settlement reached in *Gibbs v. Great Plains, et al.*; and (vi) waive any and all claims and the collection of any further amounts owed based on participation interests owned by GPLS in Eligible Tribal Loans.

The GPLS Secured Parties represent and warrant that no amounts have been paid to their legal and professional advisors from the GPLS Holdback Account on or after May 1, 2019.  All legal fees and costs incurred by the GPLS Secured Parties in connection with the Chapter 11 Cases unpaid as of, or incurred on or after, May 1, 2019, shall be the sole obligation of the GPLS Secured Parties and shall not be paid from or charged against the Debtors, the Estates, the Reorganized Debtors, the Escrow Account, or the Litigation Trust.  For the avoidance of doubt, all payments made prior to May 1, 2019, by the GPLS Secured Parties to their legal and professional advisors pursuant to the Cash Collateral Order are allowed and shall not be subject to challenge or disgorgement.

For the avoidance of doubt, (i) the consideration provided by the GPLS Secured Parties for the Releases shall not constitute or be deemed an admission of any wrongdoing, liability, fact, fault, assertion or illegality or any alleged capacity of the GPLS Secured Parties as lenders on any of the Eligible Tribal Loans, each of which is expressly denied by the GPLS Secured Parties; and (ii) the GPLS Secured Parties shall not receive a Release until the occurrence of the applicable transfer(s) from the GPLS Holdback Account to the Escrow Account as set forth in the Plan and the Term Sheet.

**4.17    Subordination**

The allowance, classification, and treatment of all Claims and Equity Interests under the Plan shall conform to and be consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Equity Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtors or the Litigation Trustee on or after the Effective Date

reserve the right to seek to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 4.18 Cancellation of Notes, Instruments, Certificates, and Other Documents

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, Certificates, and other documents evidencing Claims against the Debtors shall be canceled and the obligations of the Debtors or the Reorganized Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive Distributions under the Plan and (b) allowing and preserving the rights of the Litigation Trustee, as applicable, to make Distributions on account of Allowed Claims as provided herein.

### 4.19 Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### 4.20 Incentive Plans and Employee and Retiree Benefits

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order and, without limiting the authority provided under the Debtors' respective articles of organization, bylaws and other formation and constituent documents, the Reorganized Debtors shall be authorized to: (a) amend, adopt, assume and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any bonus plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits (except with respect to any employee whose employment agreement is rejected on or prior to the Effective Date), retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. For the avoidance of doubt, the pre-petition claims of the employees of the Debtors employed as of the Petition Date were paid pursuant to the *Order (I) Authorizing Order (I) Authorizing Debtors to Pay Prepetition Wages, Salaries and Benefits; (II) Authorizing Debtors to Continue Employee Benefit Programs in the Ordinary Course of Business; (III) Authorizing Current and Former Employees to Proceed With Workers Compensation Claims; and (IV) Directing Applicable Financial Institutions to Honor and Process Related Checks and Transfers* [Doc. No. 38]. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of

the Bankruptcy Code), if any, shall continue to be paid by the Reorganized Debtors in accordance with applicable law.

# ARTICLE V

# THE LITIGATION TRUST

### 5.1    Establishment of the Litigation Trust

The Litigation Trust shall be established and shall become effective on the Effective Date. The Litigation Trust shall be governed and administered in accordance with this Plan and the Litigation Trust Agreement.

### 5.2    Transfer of Assets to the Litigation Trust

On the Effective Date, any and all assets and property of the Estates not transferred to the Reorganized Debtors pursuant to Article 4.6 of the Plan or otherwise addressed in this Plan shall be transferred to the Litigation Trust and administered by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement, including, but not limited to, the Causes of Action, refunds, deposits, remnant assets, the General Unsecured Claims Cash Pool, any remaining funds in the Professional Fee Escrow following the payment of all Allowed Professional Claims and the Debtors' interests in GPLS.

On or before the Effective Date, the GPLS Secured Parties shall release all interest in and rights to the Great Plains Reserve Amount to Great Plains, which amount will be distributed in accordance with the terms of the settlement reached in Gibbs v. Great Plains, et al.

### 5.3    Litigation Trust Funding

On the Effective Date, or on such other date as is set forth in the Litigation Trust Agreement, the Litigation Trust shall be established and receive the Litigation Trust Initial Funding. Additionally, any net proceeds of the Causes of Action received subsequent to the Effective Date shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement. For the avoidance of doubt, funding of the Litigation Trust shall not constitute or be deemed (i) any admission of wrongdoing or illegality or any alleged capacity of the Debtors as lenders on any of the Eligible Tribal Loans or (ii) a concession by Consumer Borrowers that the alleged wrongdoing or illegality did not occur.

### 5.4    Causes of Action

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Causes of Action and proceeds therefrom shall be transferred and assigned by the Debtors and their Estates (and deemed transferred) to the Litigation Trust, except those otherwise released, waived or discharged in the Plan, free and clear of all Claims, Liens, charges, encumbrances, and rights and interests, without the need for any Entity to take any further action or obtain any approval and the Litigation Trust shall be authorized as the representative of the Estates to pursue the Causes of Action. In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee shall have the exclusive right to commence and pursue, as appropriate, in his sole discretion and

without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Causes of Action, and the Litigation Trustee's right to commence, prosecute, or settle any such Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date. Unless a Cause of Action against any Entity is expressly waived, relinquished, released, discharged, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Cause of Action, which shall be transferred by the Debtors to the Litigation Trust pursuant to the Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order or any other Final Order (including the Confirmation Order). In addition, the Litigation Trustee reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Except for a Cause of Action against any Entity that is expressly waived, relinquished, released, discharged, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Committee has requested that this Plan state that Causes of Action include, but are not limited to:

- Intentional or constructive fraudulent conveyances under section 544(b) of the Bankruptcy Code and applicable law, and section 548 of the Bankruptcy Code.
- Preference payments under section 547 of the Bankruptcy Code.
- Breach of contract or breach of the implied covenant of good faith and fair dealing.
- Breach of fiduciary duty.
- Common law and statutory conspiracy.
- Claims for civil remedies against racketeer influenced and corrupt organizations under chapter 96 of title 18 of the United States Code
- Claims for overpayments, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, and civil conspiracy, whether under federal law or the laws of any state.
- Equitable subordination, including under section 510(c) of the Bankruptcy Code.
- Aiding and abetting any act or omission of any Entity.
- Objections to fees, interest, or other charges paid by the Debtors.

The failure to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Litigation Trustee will not pursue any and all available Causes of Action against them. An initial list of the Causes of Action provided by the Committee is annexed to the Disclosure Statement as **Exhibit E** and may be supplemented in the Plan Supplement. While the list provides notice to certain Persons and Entities of the existence of Causes of Action against them, it is not intended to limit the Causes of Action the Litigation Trustee may prosecute as others may be discovered after the Litigation Trustee receives copies of the Books and Records.

As set forth in the definition of the term "Causes of Action" herein, notwithstanding anything else in the Term Sheet, the Disclosure Statement, herein, or the Confirmation Order, Cause(s) of Action transferred to the Litigation Trust shall not include any Claims or Causes of Action against Released Parties or any of the obligations or assets included in the Reorganized Debtor Assets. Further, pursuant to Section 4.6 hereof, on the Effective Date, the Reorganized Debtor Assets shall be transferred to and/or vest in the Reorganized Debtors, and the Reorganized Debtors shall be the sole party(ies) with standing to prosecute claims related thereto.

## 5.5 **Litigation Trust Distributions**

The Litigation Trustee shall liquidate the Causes of Action and distribute any proceeds therefrom in accordance with this Plan and the Litigation Trust Agreement. The Litigation Trustee also shall administer the Unsecured Claims Cash Pool and make distributions to Allowed General Unsecured Claims in accordance with this Plan.

## 5.6 **Litigation Trust Agreement**

A copy of the Litigation Trust Agreement shall be filed, no later than five (5) business days before the deadline for voting on the Plan, as part of the Plan Supplement. The Committee represents that the Litigation Trust Agreement shall include, without limitation, the following terms:

(a) Duration of Trust

The Litigation Trust shall have an initial term of five (5) years from the Effective Date. Notwithstanding the foregoing, the LTOB may extend such term for an additional finite term provided that the Litigation Trust does not become subject to the Securities Exchange Act of 1934, as amended (as now in effect or hereafter amended) and provided further that the Bankruptcy Court approves an extension based upon a finding that an extension is necessary for the Litigation Trust to resolve all Claims, reduce all applicable Litigation Trust Assets to Cash and liquidate. The Litigation Trustee shall at all times endeavor to liquidate the Litigation Trust Assets expeditiously, and in no event shall the Litigation Trustee unduly prolong the duration of the Litigation Trust. Unless the Chapter 11 Cases have previously been dismissed, upon termination of the Litigation Trust, the Litigation Trustee shall advise the Bankruptcy Court in writing of its termination. Notwithstanding the foregoing, after the termination of the Litigation Trust, the Litigation Trustee shall have the authority to exercise all the powers, authorities and discretions herein conferred solely for the purpose of winding up the affairs of the Litigation Trust. The Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee; provided, however, subject to the requirements in the Disclosure Statement, in the Plan, and of applicable law, that at the Litigation Trustee's discretion, all of such records and documents may be destroyed at any time after two (2) years from the date of an order of the Bankruptcy Court terminating the Litigation Trust. As soon as practicable after the liquidation or abandonment of all Causes of Action, the Litigation Trustee shall seek entry of a Final Order closing the remaining Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

(b)      Litigation Trust Oversight Board

On the Effective Date, the LTOB shall be established.  The members of the LTOB shall disclose to the Litigation Trustee and all other members of the LTOB whether any Claim or Interest that is held by them personally, by any relative or by any entity with which they are employed or affiliated, has been sold, transferred or otherwise assigned, disposed of or satisfied by any entity other than the Litigation Trust.  The members of the LTOB shall serve without compensation, but shall be entitled to reimbursement of reasonable expenses. The LTOB shall be comprised of the representative counsel to each of the Pennsylvania AG, Counsel to the VA, CA and FL borrower classes, and counsel to the VT and NC borrower classes, each of which must represent a beneficiary of the Litigation Trust.  In the case of an inability or unwillingness of any member of the LTOB to serve subsequent to his or her original appointment and acceptance, such member shall be replaced by designation of the remaining members of the LTOB and the Litigation Trustee.  If any position on the LTOB remains vacant for more than thirty (30) days, such vacancy may be filled within fifteen (15) days thereafter by the designation of the Litigation Trustee without the requirement of a vote by the other members of the LTOB.  Each replacement member of the LTOB must be a beneficiary of the Litigation Trust.  The LTOB will continue to fully function even while a position on the LTOB remains vacant.

(c)      Appointment, Compensation, and Powers of Litigation Trustee

The Litigation Trustee shall serve as the trustee for the Litigation Trust.  The appointment of the Litigation Trustee shall be effective as of the Effective Date.  Following the Effective Date, in the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency or removal of the Litigation Trustee, the members of the LTOB shall, by majority vote, designate a successor Litigation Trustee.  Such appointment shall specify the date when such appointment shall be effective.  Every successor Litigation Trustee appointed shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Litigation Trustee an instrument accepting the appointment and shall additionally file with the Bankruptcy Court an affidavit demonstrating that such Person is a "disinterested person," as defined by Section 101(14) of the Bankruptcy Code, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Litigation Trustee.  The Litigation Trustee shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Litigation Trust Agreement.  The Litigation Trustee shall have the powers and duties set forth in this Plan and in the Litigation Trust Agreement.  The Litigation Trustee may retain professionals to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and the Litigation Trust Agreement, including, without limitation, the prosecution of the Causes of Action, to administer, dispute, object to or compromise or otherwise resolve all Claims against the Debtors and to make Distributions to holders of Allowed Claims.  The Litigation Trustee may retain Cole Schotz P.C. and/or such other law firm(s) as the Litigation Trustee determines necessary to liquidate the Litigation Trust Assets and to perform such other functions as may be appropriate to carry out the primary purposes of the Litigation Trust.  The Litigation Trustee may commit the Litigation Trust to and shall pay such law firm(s) the reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred, which expenses may

43

include, without limitation, the fees and expenses of Persons retained by such counsel to perform any such services, including, without limitation, expert witnesses and consultants.  The Litigation Trustee may also engage such law firm(s) on a contingent fee basis or hybrid hourly fee / contingency basis, as permitted by applicable law.   The Litigation Trustee may retain such accountants, experts, advisors, consultants, investigators, appraisers, auctioneers, claims and disbursing agents or other professionals as are advisable to carry out the purposes of the Litigation Trust.

### 5.7     Indemnification and Exculpation

The Litigation Trustee, and the Litigation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Litigation Trust, except those acts arising out of its own willful misconduct or gross negligence, and shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Litigation Trust, except for any actions or inactions involving willful misconduct or gross negligence.   Any indemnification or reimbursement claim of the Litigation Trustee, or any other party entitled to indemnification or reimbursement under this subsection) shall be satisfied from the Litigation Trust.

### 5.8     Transfer of Tribal Property

The Reorganized Debtors shall reasonably cooperate, if needed, in efforts by the Settling Tribal Lenders to cause the Tribal Property to be transferred to the Litigation Trust in accordance with separate settlement agreements that may be reached with the Settling Tribal Lenders; provided, however, nothing herein shall require the Reorganized Debtors to incur expenses to so cooperate without provision being made for reimbursement of reasonable and actual internal and external costs, for such cooperation to be paid to the Reorganized Debtors from the Litigation Trust.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1     Assumption and Rejection of Executory Contracts and Unexpired Leases

The following shall be the treatment of Executory Contracts and Unexpired Leases:

Unless an Executory Contract or Unexpired Lease (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of all such Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

If a Claim arises from the rejection of any Executory Contract or Unexpired Lease pursuant to this Plan, such Claim shall be barred and unenforceable against the Debtors, Reorganized Debtors, the Litigation Trust, or their property unless a proof of claim asserting such Claim is filed with the Bankruptcy Court or the Solicitation Agent and served upon the Debtors within thirty (30) days after the Effective Date. Unless otherwise ordered by the Bankruptcy Court, any such rejection damages Claims shall be treated as General Unsecured Claims under the Plan.

## 6.2 Insurance Policies

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtor if necessary to continue the insurance policies in full force) all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption (and assignment, if necessary) of each of the insurance policies. For the avoidance of doubt, nothing in this provision shall impair the Debtors' right to the proceeds of the Insurance Rights.

## 6.3 Cure of Defaults and Objections to Cure and Assumption

The Reorganized Debtors shall be solely responsible for paying Cures, if any, on the Effective Date, as soon as practicable thereafter, or such other date that the Debtors or Reorganized Debtors, as applicable, and the counterparty agree. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid to a counterparty must be served on counsel to the Debtors on or before the Cure Objection Deadline. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or

Unexpired Lease under the Plan must be filed with the Bankruptcy Court by the Cure Objection Deadline.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is a dispute regarding Cure, the ability of the Reorganized Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption and assignment, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption and assignment, or as may be agreed upon by the Debtors, or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and the payment of any Cures shall result in the full release and satisfaction of Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed and assigned Executory Contract or Unexpired Lease at any time prior to the Effective Date.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed and assigned in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

### 6.4    Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed and assigned by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

### 6.5    Reservation of Rights

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to determine whether to assume, assign or reject the related contract or lease, if applicable.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1   Distributions on Account of Claims Allowed as of the Effective Date

(a)   **Distributions to Holders of Allowed Claims Other than Members of the Nationwide Consumer Borrower Settlement Class**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Litigation Trustee on or after the Effective Date, as the case may be, and the Holder of the applicable Claim or Equity Interest, on the Initial Distribution Date, the Litigation Trustee shall make Distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the rights of the Litigation Trustee, as applicable, to object to Claims; *provided*, *however*, that (1) the Reorganized Debtors shall be responsible for payment of any Cure in accordance with Article 6.3, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article 2.3.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors or the Litigation Trustee, as applicable, and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or, at the Litigation Trustee's election, through regular installment payments of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code.

(b)   **Distributions to Members of the Nationwide Consumer Borrower Settlement Class**

The Class Administrator, on behalf of the Litigation Trustee, shall make Distributions to members of the Nationwide Consumer Borrower Settlement Class in accordance with the Plan and Litigation Trust Agreement.  The Debtors shall not prosecute, settle, sell, transfer, assign, waive or release any of the Causes of Action, all of which are preserved for and shall be transferred to the Litigation Trust, except those otherwise released, waived or discharged pursuant to this Plan.

To the extent not provided by the Debtors prior to the Effective Date, the Litigation Trustee shall provide on a confidential basis sufficient information to the Class Administrator, and any subsequently appointed class administrator for the Nationwide Consumer Borrower Settlement Class, to make an initial Distribution and any subsequent Distributions to the members of the Nationwide Consumer Borrower Settlement Class in accordance with the Plan and Litigation Trust Agreement.

### 7.2   Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim.

### 7.3    Delivery of Distributions

(a)    **Record Date for Distributions to Holders of Claims**

On the Confirmation Date, the Claims Register shall be closed and the Debtors and the Litigation Trustee on and after the Effective Date shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Confirmation Date.  Notwithstanding the foregoing, if a Claim is transferred and the Claims Agent has been notified in writing of such transfer no later than ten (10) days before the Effective Date, the Litigation Trustee shall make Distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.  The Debtors or the Litigation Trustee on and after the Effective Date may, but shall have no obligation to, recognize transfers occurring after ten (10) days before the Effective Date.

(b)    **Distribution Process**

Except as otherwise provided herein, Distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to beneficial holders of record as of the Confirmation Date: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Claims Agent has been notified in writing, on or before the date that is ten (10) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Claims Agent has not received a written notice of a change of address on or before the date that is ten (10) days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  The Debtors, the Litigation Trustee, the Reorganized Debtors, and the Claims Agent shall not incur any liability whatsoever on account of any Distributions under the Plan.

(c)    **Compliance Matters**

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Litigation Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, to the extent applicable.

(d)      **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition on the Petition Date, for all purposes under the Plan, including voting, allowance and distribution.

(e)      **Fractional, Undeliverable, and Unclaimed Distributions**

(1)      *Fractional Distributions*.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(2)      *Undeliverable Distributions*.

A.      If any Distribution to a holder of an Allowed Claim other than a member of the Nationwide Consumer Borrower Settlement Class is returned as undeliverable, no further Distributions shall be made to such holder unless and until such holder provides notification to the Litigation Trustee or its designee of the then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such holder on the next Distribution Date.   Undeliverable Distributions shall remain in the possession of the Litigation Trustee or its designee until such time as a Distribution becomes deliverable, or such Distribution reverts to the Litigation Trust or is canceled pursuant to Article 7.3(e)(3), and shall not be supplemented with any interest, dividends, or other accruals of any kind.

B.      The Class Administrator shall attempt to distribute all available funds that are distributable to members of the Nationwide Consumer Borrower Settlement Class pursuant to the Plan and Litigation Trust Agreement to class members that can be located. Any Unclaimed Distributions to such members shall be distributed as follows: (a) the first $5 million of Unclaimed Distributions shall be paid to the Pennsylvania AG for further distribution to Pennsylvania members who cashed their initial distribution checks and (b) the remaining Unclaimed Distributions shall be paid pursuant to the Tier 1 Allocation and Tier 2 Allocation to all other members who cashed their initial distribution checks. At the discretion of the Litigation Trustee and the Litigation Trust Oversight Board, one additional distribution to members (including Pennsylvania members and other members) may be attempted if reasonably practicable to do so.   Thereafter any Unclaimed Distributions remaining unclaimed 120 days after the foregoing

final re-distribution of Unclaimed Distributions shall be paid 50% to the Pennsylvania AG for further distribution to members in Pennsylvania and 50% to the CFPB Civil Penalty Fund. The $5 million paid to the Pennsylvania AG in the first redistribution shall be credited against distributions otherwise to be made by the Litigation Trustee to Pennsylvania Borrowers through the Pennsylvania AG from proceeds of future settlements or judgments obtained against Non-Released/Non-Exculpated Parties.

(3)     *Reversion*.  Solely in respect of Distributions to holders of Allowed Claims other than members of the Nationwide Consumer Borrower Settlement Class, any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.  Subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall contribute all such Unclaimed Distributions to a charity selected by the Litigation Trustee.  The Claim of any holder of a Claim or its successors with respect to such Unclaimed Distributions shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the Distribution that is an Unclaimed Distribution, to the contrary.

(4)     *De Minimis Distributions*.  Except in the case of members of the Nationwide Consumer Borrower Settlement Class, the Litigation Trustee shall not be required to, but may in his sole and absolute discretion, make Distributions of Cash in an amount less than $10 to any holder of an Allowed Claim.  Any Allowed Claims affected by Article 7.3(e)(4) shall be discharged and forever barred from assertion against the Debtors, the Reorganized Debtors, the Litigation Trust and their respective property or Estates.

(f)     **Surrender of Canceled Instruments**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate.  Such Certificate shall be canceled solely with respect to the Debtors and the Reorganized Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

## 7.4     Claims Paid or Payable by Third Parties

(a)     **Maximum Distribution**

An Allowed Claim that receives (i) Distributions in the Allowed amount of such Claim or (ii) Distributions that combined with Distributions or other consideration provided on the Allowed Claim equal the Allowed amount of such Claim shall, in each case be deemed satisfied

in full as to such Allowed Claim, and in no event shall an Allowed Claim receive Distributions in excess of the Allowed amount of such Claim.

(b)     **Claims Paid by Third Parties**

The Debtors or the Litigation Trustee on or after the Effective Date, in their sole discretion, may request that a holder of an Allowed Claim certify in writing and provide evidence reasonably acceptable to the Debtors or the Litigation Trustee, as applicable, to confirm whether: (i) the holder of such Claim has received payment in full on account of such Claim from a party that is not a Debtor; or (ii) such holder has been notified by or on behalf of a third party of any future Distributions or payment anticipated or estimated to be made on account of such Claim from such third party.

If (i) the Debtors or Litigation Trustee on or after the Effective Date determine, based on the foregoing, that an Allowed Claim has been satisfied in full in accordance with Article 7.4(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Claim, or (ii) a holder of an Allowed Claim does not comply with this Article, then unless the Bankruptcy Court orders otherwise, the Litigation Trustee shall not be required to make Distributions on account of such Allowed Claim, *provided* that nothing herein shall preclude a holder of an Allowed Claim from challenging such determination in the Bankruptcy Court.

(c)     **Claims Payable by Insurance Carriers**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim, such Claim shall be disallowed and expunged to the extent of any agreed upon satisfaction in accordance with this Article after notice to such Holder of an Allowed Claim and an opportunity for a hearing.

(d)     **Applicability of Insurance Policies**

Except as otherwise provided herein, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any rights of any Entity, including insurers, under any policies of insurance.

**7.5     Setoffs**

Except as otherwise expressly provided for herein, the Debtors, the Reorganized Debtors or the Litigation Trustee on or after the Effective Date, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors, the Reorganized Debtors or Litigation Trustee on or after

the Effective Date, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Litigation Trustee of any such Claims, rights, and Causes of Action that they may possess against such holder. In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors, the Reorganized Debtors or the Litigation Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 8.1     Disputed Claims Process

Except as otherwise provided herein, if an Entity files a Proof of Claim and the Litigation Trustee does not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VIII. Except as otherwise provided herein, all Proofs of Claim not filed in accordance with the requirements set forth in the Bar Date Order shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Litigation Trust or their respective property or estates without the need for any objection by the Debtors or the Litigation Trustee, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.2     Prosecution of Objections to Claims

The Committee (before the Effective Date,) and the Litigation Trustee (on and after the Effective Date), shall have the sole authority and power to object to and/or settle General Unsecured Claims on behalf of the Debtors' Estates. Creditors retain their rights under Bankruptcy Code section 502. Neither the Debtors, Reorganized Debtors nor any Released Parties shall object to any Claims in these Chapter 11 Cases or have standing to be a party in the Claims objection. Any objections to Claims shall be served and filed **on or before the 180th day after the Effective Date** or by such later date as ordered by the Bankruptcy Court. All Claims not objected to by the end of such 180-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Litigation Trustee shall have and retain any and all rights and defenses a Debtor or the Committee had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action.

### 8.3     <u>Estimation of Claims</u>

On and after the Effective Date, the Litigation Trustee shall have the sole authority and power on behalf of the Estates to request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether the Debtors, the Litigation Trustee or any other Person has previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim and any appeal thereof. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement in the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### 8.4     <u>Recoupment</u>

In no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtors or the Litigation Trustee, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 8.5     <u>No Interest</u>

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

### 8.6     <u>Disallowance of Claims</u>

All Claims of any Entity from which property is sought by the Litigation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Litigation Trustee alleges is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Litigation Trustee, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

# ARTICLE IX

# EFFECT OF CONFIRMATION OF THE PLAN

### 9.1     <u>Dissolution of the Committee</u>

The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. On the Effective Date, the Committee shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases and this Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Claims and represent the Committee in connection with such Professional Claims.

### 9.2     <u>Discharge of Claims and Termination of Equity Interests</u>

**The Reorganized Debtors shall receive the benefit of any and all discharges under the Plan. On and after the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Reorganized Debtors may operate their business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.**

**As discussed in detail in the Disclosure Statement and otherwise provided herein, pursuant to Section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies related to the contractual, legal and equitable rights that a holder of a Claim or Equity Interest may have in respect of such Claim or Equity Interest. All Distributions made to holders of Allowed Claims in any Class are intended to, and shall be, final.**

**Except as otherwise provided for herein and effective as of the Effective Date pursuant to section 1141(d) of the Bankruptcy Code: (a) the rights afforded in the Plan and the treatment of all Claims, Equity Interests, and Causes of Action that arose before the Effective Date shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Equity Interests, whether known or unknown, notwithstanding whether any such holders has filed a Proof of Claim or Equity Interest or has failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, regardless of whether a Proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the holder**

thereof votes to accept the Plan or is entitled to receive a Distribution hereunder; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, the Litigation Trustee, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

All Equity Interests shall be cancelled, disallowed, released, and extinguished as of the Effective Date, or as of such later date to facilitate execution of the consent order that has been agreed upon between the Debtors and the CFPB, and will be of no further force or effect; *provided, however,* that TF Holdings shall be the direct or indirect parent of the Reorganized Debtors.

**9.3**     <u>**Releases by the Debtors**</u>

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Equity Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses, business practices or operations, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Term Sheet, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; <u>provided</u>, <u>however</u>, nothing herein shall be deemed to release any of the Causes of Action being transferred to the Litigation Trust or any of the obligations or assets included in the Reorganized Debtor Assets.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.3, which includes by reference each of the related provisions and definitions contained in the Plan, *and further*, shall constitute the Bankruptcy Court's finding that this Article 9.3 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the

55

Debtors, the Reorganized Debtors, the Debtors' Estates, and the Litigation Trustee asserting any claim or Cause of Action released pursuant to this Article 9.3.

9.4      **Releases by Members of the Nationwide Consumer Borrower Settlement Class**

As of the Effective Date, each member of the Nationwide Consumer Borrower Settlement Class is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in any Non-Estate Cause of Action prior to the Effective Date, including the Pending Litigation, and (b) any current or newly asserted Claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.4, which includes by reference each of the related provisions and definitions contained in the Plan, *and further*, shall constitute the Bankruptcy Court's finding that this Article 9.4 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released in this Article 9.4; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Persons from asserting any Claim or Cause of Action released pursuant to this Article 9.4.

9.5      **Releases by Releasing Parties.**

Except as otherwise provided in Section 9.11, as of the Effective Date, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' business activities or operations prior to the Effective Date, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet, the Disclosure Statement, or the Plan, the filing of the

56

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in the Pending Litigation or any other Non-Estate Cause of Action prior to the Effective Date, and (b) any current or newly asserted claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Notwithstanding anything to the contrary in the foregoing or stated anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Cortex or Jora except for Claims and Non-Estate Causes of Action arising from or in connection with the Debtors' activities alleged in the amended complaint in the CFPB litigation in which Cortex also participated. Notwithstanding anything to the contrary in the foregoing or state anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Katten Muchin Rosenmann LLP.

9.6    **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim, Cause of Action or Non-Estate Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Term Sheet, the Consumer Litigation Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law,

rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

9.7     Injunction

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to Article 9.4 or Article 9.5, discharged pursuant to Article 9.2, or are subject to exculpation pursuant to Article 9.6 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

9.8     Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Person with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor acquired the Reorganized Debtor Assets from a Debtor that sought relief under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

9.9     Release of Liens

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably

requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the respective Reorganized Debtors and their successors and assigns.

**9.10    Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(c)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**9.11    Releases**

Upon the Effective Date, the Releases shall become fully enforceable and effective, except for (i) the releases from the Pennsylvania AG, which shall become effective upon entry of the order(s) contemplated by the Term Sheet settling the Pennsylvania Litigation (the forms of which order(s) and agreement(s) shall be mutually acceptable by and among the parties thereto and set forth in a Plan Supplement), (ii) the releases from the CFPB, which shall become effective upon entry of the order(s) contemplated by the Term Sheet, including the consent order at Annex D attached to the Term Sheet (and as Exhibit D to the Disclosure Statement), settling the CFPB Litigation, and (iii) except for the effectiveness of the releases from the Pennsylvania AG and the CFPB as set forth in (i) and (ii) above, the releases to the GPLS Secured Parties shall become effective upon the occurrence of the Effective Date and the applicable transfer(s) from the GPLS Holdback Account as set forth in the Term Sheet.

**ARTICLE X**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**10.1    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived by the Debtors with the agreement of the Committee, Nationwide Class Counsel and, except for clauses (e) and (f) below, the agreement of the GPLS Secured Parties:

(a)    the approved Term Sheet shall remain in full force and effect;

(b)    the Preliminary Approval Order, the Disclosure Statement Approval Order, Final Fairness Approval Order, and the Confirmation Order shall have been entered by the Bankruptcy Court and each shall have become a Final Order;

(c)    all authorizations, consents, regulatory approvals, rulings or documents (if any) that are necessary for the Plan's effectiveness shall have been obtained;

(d)    the Nationwide Consumer Borrower Settlement Class shall have been fully and finally certified and all collateral orders necessary to effectuate the class settlement shall have been entered;

(e)    The amount of GPLS Holdback Account shall be at least $7,500,000 (immediately prior to transferring all such amounts to the Escrow Account), which condition may be waived in the sole discretion of the Committee and the Consenting Plaintiffs;

(f)    during the time period beginning January 1, 2019, through the Effective Date, Cortex shall have paid the Debtors service fees in the aggregate amount substantially equal to the total service fees incurred for the time period beginning January 1, 2019, through the Effective Date;

(g)    all payments and transfers of assets from the Debtors' estates, and all other payments, required under the Plan to be made before the Effective Date shall have been made in accordance with the terms of the Plan; and

(h)    with respect to all documents, applications, and agreements necessary to implement the Plan: (1) all conditions precedent to such documents, applications, and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents, applications, and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units, regulators, or commissions in accordance with applicable laws; and (3) such documents, applications, and agreements shall have been effected or executed.

**10.2**     **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**10.3**     **Effect of Non-Occurrence of Conditions to Consummation**

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects, including that (a) no claimants shall be deemed to have allowed claims as a result of the Term Sheet or the Plan, (b) none of the Releases contemplated by the Term Sheet or the Plan shall be effective, and (c) the Settling Parties shall have all rights and defenses that they had prior to entry of the Term Sheet; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Equity Interests, or any claims held by the Debtors; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**10.4**     **Vacatur of Confirmation Order**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**11.1**     **Modification of Plan**

Effective as of the date hereof: (a) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein and in the Term Sheet; and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code and consistent with the Term Sheet, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

Case 17-33964-hdh11 Doc 1671 Filed 12/05/19 Entered 12/05/19 09:43:36 Page 107 of
123
Case 17-33964-hdh11 Doc 1523-1 Filed 09/26/19 Entered 09/26/19 14:08:00 Page 68 of
122

**11.2**    **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**11.3**    **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of an Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) any dispute regarding whether a contract or lease is or was executory or expired; and (d) any dispute regarding rejection damages claims.

Case 17-33964-hdh11 Doc 1671 Filed 12/05/19 Entered 12/05/19 09:43:00 Page 108 of
122
Case 17-33964-hdh11 Doc 1523 Filed 09/26/19 Entered 09/26/19 14:08:00 Page 69 of

(d)  ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(e)  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g)  enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h)  grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)  hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) any adversary proceedings related to the Chapter 11 Cases; (b) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the holder of a Claim or an Equity Interest for amounts not timely repaid pursuant to Article 7.4(a); (c) with respect to the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (d) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (e) related to section 1141 of the Bankruptcy Code;

(k)  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)  issue any order in aid of implementation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(n)  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

(p)     enforce all orders previously entered by the Bankruptcy Court; and

(q)     hear any other matter not inconsistent with the Bankruptcy Code.

The Confirmation Order shall provide that the Bankruptcy Court's jurisdiction over the Litigation Trust, the Litigation Trust Assets, and the Litigation Trustee continues until the Litigation Trust Assets have been fully liquidated and distributed pursuant to the Plan and Litigation Trust Agreement, and the Litigation Trust has been resolved, notwithstanding any Final Decree (subject to a motion to reopen one or more of the Chapter 11 Cases) or that none of the Chapter 11 Cases remain open.

# ARTICLE XIII

# MISCELLANEOUS PROVISIONS

## 13.1     Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Reorganized Debtors or the Litigation Trustee, as applicable, and all holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## 13.2     Payment of Statutory Fees

Subject to Article 4.1, all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Litigation Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.  For the avoidance of doubt, the Reorganized Debtors shall not be liable for any such statutory fees.

## 13.3     Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

## 13.4     Reservation of Rights; Binding Effect

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date.

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Litigation Trustee and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### 13.5    <u>No Admission</u>

Notwithstanding anything else herein, nothing in the Term Sheet, the Plan, or the Confirmation Order shall constitute an admission or agreement by the Debtors concerning the solvency or insolvency of the Debtors.

### 13.6    <u>Closing of Chapter 11 Cases</u>

The Litigation Trustee shall, as promptly as practicable after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required to obtain closures of the Chapter 11 Cases under Bankruptcy Rule 3022, any applicable local rules, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### 13.7    <u>Service of Documents</u>

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors or the Litigation Trustee, as applicable, shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **TF Holdings, Inc.**<br>7701 Las Colinas Ridge, Suite 650<br>Irving, TX 75063<br>Attn:   Thomas D. Graber |
| **Counsel to Debtors** | **Hunton Andrews Kurth LLP**<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>Attn.:  Tyler P. Brown<br>         Jason W. Harbour |
| **Litigation Trustee** | The Honorable Russell F. Nelms |
| **United States Trustee** | **Office of the United States Trustee<br>for the Northern District of Texas**<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, TX 25242<br>Attn: Lisa L. Lambert |

**13.8**     <u>Term of Injunctions or Stays</u>

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect during the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan, the Confirmation Order shall remain in full force and effect in accordance with their terms.

**13.9**     <u>Entire Agreement</u>

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.10**     <u>Plan Supplement Exhibits</u>

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.americanlegal.com/TF or the Bankruptcy Court's website at www.txnb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**13.11**     <u>Non-Severability</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

*[Remainder of page intentionally left blank.]*

/s/ Gregory G. Hesse
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone:  (214) 979-3000
Email: ghesse@HuntonAK.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Counsel to the Debtors and Debtors in Possession*

010131.0000001 EMF_US 76593407v2

**<u>Exhibit B</u>**
**Confirmation Notice**

Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**THINK FINANCE, LLC**, *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 17-33964 (HDH)**<br><br>**(Jointly Administered)** |

## NOTICE OF ENTRY OF AN ORDER CONFIRMING THE SECOND MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THINK FINANCE, LLC AND ITS SUBSIDIARY DEBTORS AND DEBTORS IN POSSESSION

### PLEASE TAKE NOTICE THAT:

1. ***Confirmation of the Plan***. On November [__], 2019 the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order (the "Confirmation Order") confirming the *Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1523-1] (as modified and amended in accordance with the terms of the Confirmation Order, the "Plan"). Copies of the Confirmation Order and the Plan are available, for free, at American Legal Claim Services LLC's website https://www.americanlegal.com/TF. You may also obtain copies of the Confirmation Order and Plan, for a fee, through the Bankruptcy Court's website via PACER at www.vawb.uscourts.gov. Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Confirmation Order.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

2. ***Effect of Plan***. Pursuant to section 1141 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), except as otherwise provided in the Plan or in the Confirmation Order, and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interests in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has voted to accept the Plan, and whether or not such holder will receive a distribution under the Plan. Accordingly, the Debtor is authorized to implement the Plan on the Effective Date.

3. ***Releases by the Debtors***. Section 9.3 of the Plan provides for the following releases:

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Equity Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses, business practices or operations, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Term Sheet, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, nothing herein shall be deemed to release any of the Causes of Action being transferred to the Litigation Trust or any of the obligations or assets included in the Reorganized Debtor Assets.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.3, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that this Article 9.3 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Debtors' Estates, and the Litigation Trustee asserting any claim or Cause of Action released pursuant to this Article 9.3.**

2

4.     ***Releases by Members of the Nationwide Consumer Borrower Settlement Class***. Section 9.4 of the Plan provides for the following releases:

**As of the Effective Date, each member of the Nationwide Consumer Borrower Settlement Class is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in any Non-Estate Cause of Action prior to the Effective Date, including the Pending Litigation, and (b) any current or newly asserted Claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article 9.4, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that this Article 9.4 is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released in this Article 9.4; (3) in the best interests of the Debtors and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Persons from asserting any Claim or Cause of Action released pursuant to this Article 9.4.**

5.     ***Consensual Third Party Releases***.    Section 9.5 of the Plan provides for the following releases:

**Except as otherwise provided in Section 9.11, as of the Effective Date, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' business activities or operations prior to the Effective Date, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Term Sheet, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Term Sheet, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of**

3

the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including without limitation, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in the Pending Litigation or any other Non-Estate Cause of Action prior to the Effective Date, and (b) any current or newly asserted claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations in connection with the Class Action Injunctive and Other Relief or any rights or obligations in connection with the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Notwithstanding anything to the contrary in the foregoing or stated anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Cortex or Jora except for Claims and Non-Estate Causes of Action arising from or in connection with the Debtors' activities alleged in the amended complaint in the CFPB litigation in which Cortex also participated. Notwithstanding anything to the contrary in the foregoing or state anywhere else herein, the CFPB does not release any Claims or Non-Estate Causes of Action against Katten Muchin Rosenmann LLP.

6. _**Exculpation**_. Section 9.6 of the Plan contains the following exculpation provision:

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim, Cause of Action or Non-Estate Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of related transactions, the Term Sheet, the Consumer Litigation Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. In accordance with 11 U.S.C. § 1125(e), the Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Nothing in the Plan and related documents shall impair the rights, remedies, or defenses held by the holder of an Opt-Out General Unsecured

4

Claim, the Non-Released Parties, Sequoia Capital IC, LP, or Sequoia Capital IX, LP in (i) Pending Litigation, (ii) Consumer Borrower Litigation, or (iii) any other pending or future litigation filed by or on behalf of a Nationwide Consumer Borrower(s) or any other consumer plaintiff alleging damages or other remedies in connection with, relating to, or arising out of the Debtors' prepetition business operations. Any dispute regarding the scope or application of the exculpation in § 9.6 shall be brought before the Bankruptcy Court or such other court as the Bankruptcy Court may direct.

       7.    ***Injunction***.  Section 9.7 of the Plan provides for the following injunction:

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to Article 9.4 or Article 9.5, discharged pursuant to Article 9.2, or are subject to exculpation pursuant to Article 9.6 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, and the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

DATED: _____, 2019

                        */s/ Gregory G. Hesse*_____
                        Gregory G. Hesse (Texas Bar No. 09549419)
                        HUNTON ANDREWS KURTH LLP
                        1445 Ross Avenue
                        Suite 3700
                        Dallas, Texas 75209
                        Telephone:  (214) 979-3000
                        Email: ghesse@HuntonAK.com

                        -and-

                        Tyler P. Brown (admitted *pro hac vice*)
                        Jason W. Harbour (admitted *pro hac vice*)
                        HUNTON ANDREWS KURTH LLP

Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit C</u>**
**Notice of Effective Date**

Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**THINK FINANCE, LLC**, *et al.*,<br><br>Debtors.[5] | **Chapter 11**<br><br>**Case No. 17-33964 (HDH)**<br><br>**(Jointly Administered)** |

## NOTICE OF (I) OCCURRENCE OF EFFECTIVE DATE OF THE SECOND MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THINK FINANCE, LLC AND ITS SUBSIDIARY DEBTORS AND DEBTORS IN POSSESSION AND (II) ADMINISTRATIVE CLAIMS BAR DATE

### PLEASE TAKE NOTICE THAT:

1. ***Confirmation of the Plan***. On November [__], 2019 the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order (the "Confirmation Order") confirming the *Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and Its Subsidiary Debtors and Debtors in Possession* [Doc. No. 1523-1] (as modified and amended in accordance with the terms of the Confirmation Order, the "Plan"). Copies of the Confirmation Order and the Plan are available, for free, at American Legal Claim Services LLC's website https://www.americanlegal.com/TF. You may also obtain copies of the Confirmation Order and Plan, for a fee, through the Bankruptcy Court's website via PACER at www.vawb.uscourts.gov. Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Confirmation Order.

---

[5] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

2. ***Effective Date***. The Effective Date of the Plan occurred on _____.

3. ***Administrative Expense Claims Bar Date***. The Administrative Expense Claims Bar Date for applications or requests for payment of Administrative Expense Claims (as defined in the Plan) shall be **thirty (30) calendar days after the Effective Date**. Any Person or Entity that is required to file and serve a request for payment of an Administrative Expense Claim and fails to timely file with the Bankruptcy Court and serve such a request on counsel for the Litigation Trustee shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim or participating in distributions under the Plan on account thereof. Any such request for payment of an Administrative Expense Claim must be served on counsel for the Litigation Trustee: (i) Cole Schotz PC, 1700 City Center Tower II, 301 Commerce Street, Fort Worth, Texas 76102, Attn: Michael D. Warner; and (ii) Cole Schotz PC, 300 East Lombard Street, Suite 1450, Baltimore, Maryland 21202, Attn: Gary H. Leibowitz.

DATED: _____, 2019

*/s/ Gregory G. Hesse*
Gregory G. Hesse (Texas Bar No. 09549419)
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, Texas 75209
Telephone: (214) 979-3000
Email: ghesse@HuntonAK.com

-and-

Tyler P. Brown (admitted *pro hac vice*)
Jason W. Harbour (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Email: tpbrown@HuntonAK.com
        jharbour@HuntonAK.com

*Counsel to the Debtors and Debtors in Possession*

2