J. Mark Chevallier, Esquire
State Bar No. 04189170
*McGuire, Craddock & Strother, P.C.*
500 N. Akard St., Suite 2200
Dallas, Texas 75201
Telephone:  214-954-6800
Facsimile: 214-954-6868

Richard L. Scheff (admitted *pro hac vice*)
David F. Herman (admitted *pro hac vice*)
*Armstrong Teasdale LLP*
2005 Market Street
One Commerce Square, Floor 29
Philadelphia, PA 19103
Telephone:  267-780-2000
Facsimile: 215-405-9070

*Co-Counsel to Stephen J. Shaper
and Linda Stinson*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **THINK FINANCE, LLC,** *et al.*[1] | § | Case No. 17-33964-HDH11 |
| | § | |
| *Debtors.* | § | |
| | § | |
| | § | |

## MOTION FOR ENFORCEMENT OF INJUNCTION AND FOR CONTEMPT

Movants, Mr. Stephen J. Shaper and Ms. Linda Stinson, hereby move the Court for an order enforcing the injunction entered by this Court as part of the Second Modified First Amended Chapter 11 Plan of Reorganization of Think Finance, LLC and its Subsidiary Debtors and Debtors in Possession (the "Plan") (ECF No. 1671), as well as for contempt sanctions arising from willful violations of the Plan's release and injunction provisions.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Think Finance, LLC (6762), Think Finance SPV, LLC (4522), Financial U, LLC (1850), TC Loan Service, LLC (3103), Tailwind Marketing, LLC (1602), TC Administrative Services, LLC (4558), and TC Decision Sciences, LLC (8949).

## INTRODUCTION

1.      This dispute centers around the proper scope of the releases granted to Movants Linda Stinson and Stephen J. Shaper (collectively the "Movants") under the terms of the Plan as former officers and directors of the Debtors.

2.      Movants assert that they, like all other former officers and directors, are entitled to the broad releases provided under the Plan which provide full and complete releases for all actions except for actions taken "solely in their capacity as a shareholder/member or former shareholder/member" of the Debtors.

3.      Respondents—three members of the Nationwide Consumer Borrower Settlement Class—Kimetra Brice, Jill Novorot, and Earl Browne (collectively, the "Respondents")—believe that Ms. Stinson and Mr. Shaper are not entitled to the same releases given to all other former directors and officers of the Debtors.  To this end, Respondents have recently argued that the Movants are instead released only for actions taken while directors and officers of the Debtors, and that they are free to litigate claims against Movants arising from actions far beyond those solely in Movant's capacity as a shareholder/member or former shareholder/member of the Debtors.

4.      Respondents are engaged in ongoing litigation in the Northern District of California in *Brice v. Stinson*, No. 3:19-cv-1481-WHO (the "Brice Action") against the Movants and others. A trial is set in the Brice Action for August 30, 2021.

5.      Notwithstanding their status as members of the Nationwide Consumer Borrower Settlement Class,[2] the Respondents have recently taken issue with and ignored the plain language of the Plan's releases given to former officers and directors of the Debtors, including the Movants.

---

[2] Unless otherwise stated, capitalized terms are given the meaning provided under the Plan.

6. Specifically, as part of the Brice Action, Respondents and their Attorneys are actively pursuing and litigating causes of action against the Movants that are within the scope of the Release granted pursuant to Article 9.4 of the Plan. A true and correct copy of the Plan is attached hereto as Exhibit 'A.'

7. The Respondents are fully aware of the terms of the releases provided by the Nationwide Consumer Borrower Settlement Class, of which they are a member. The Respondents were litigants before this Court as part of motions to apply Bankruptcy Rule 7023 to their claims (along with many other filings), and were represented by their attorneys at Consumer Litigation Associates, P.C., Kelly & Guzzo, P.L.C., and Tycko and Zavareei, LLP—all of whom are well known to the Court and who actively negotiated the terms of the Plan, including the terms of the releases by the Nationwide Consumer Borrower Settlement Class.

8. Movants, as Released Debtor Parties and Released Parties, are entitled to the benefits of the Releases provided under the Plan by the Nationwide Consumer Borrower Settlement Class, as well as the injunction issued by this Court that precludes further litigation against Released Parties, such as the Movants, by the Releasing Parties, including the Respondents.

9. The Respondents, as members of the Nationwide Consumer Borrower Settlement Class cannot ignore and flout the clear terms of the Plan, and the releases they provided under the Plan.

10. Given the recent admissions made in the Brice Action, Respondents are knowingly and willfully violating the terms of the injunction issued by this Court which prevents litigation of any claims against Released Parties, such as the Movants. This Motion seeks to end Respondents' violations and remedy the harms they have visited upon the Movants in litigating the Brice Action matter for months under false pretenses.

## JURISDICTION

11.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

12.     Under Article XII of the Plan, the Court also maintains jurisdiction over specific issues arising out of, or relating to, the Plan, including the authority to "hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including […] the releases, injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions," as well as those that, "arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan."

13.     The Court's subject matter jurisdiction extends to post-confirmation matters because the Court has "continuing jurisdiction to enforce and interpret its own prior orders." *In re Hester*, 554 B.R. 143, 147 (N.D. Tex. Bankr. 2016) (Hale, J.) (citing *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

## I.      BACKGROUND

14.     For a period before 2011, Movant Linda Stinson was a director of Debtor, Think Finance.

15.     For a period from approximately 2007 through 2017, Movant Stephen J. Shaper was a director of Debtor, Think Finance.

16.     In March 2019, the Respondents filed a complaint against Movants in the Brice Action alleging various claims arising from loans originated by Plain Green and Great Plains and

serviced by the Debtors. A true and correct copy of Respondents' Complaint in the Brice Action is attached hereto as Exhibit 'B.'

17. The Brice Complaint alleges multiple claims against Ms. Stinson and Mr. Shaper including four claims against Movants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") alleging that Ms. Stinson and Mr. Shaper engaged in improper acts of investing tainted racketeering funds into an enterprise, obtaining or maintaining an interest in an enterprise through the collection of unlawful debt, operating or managing an enterprise through the collection of unlawful debt, and conspiracy to operate or manage an enterprise through the collection of unlawful debt, as well as claims arising under California's usury laws, unjust enrichment, and violations of California's UCL connected to violations of the usury law. *Id.* These claims are practically identical to those that were set to be litigated against the Debtors as part of the First Omnibus Claims Objection in 2018. All of these claims against Ms. Stinson and Mr. Shaper remain live through to the present.

18. On December 5, 2019, the Court entered its Findings of Fact and Conclusions of Law Confirming the Plan ("Confirmation Order") [ECF 1671].

19. Article 1.1.144 of the Plan defined the scope of which individuals and entities constituted Released Debtor Parties under the Plan. In pertinent part, the Plan included within the definition of Released Debtor Parties "former directors and officers of the Debtors, in their capacities as such, other than Ken Rees provided, however, that [] any such former director or officer of the Debtors shall not be released for purposes of imposing any liability on any shareholder/member solely in their capacity as a shareholder/member or former shareholder/member." Plan § 1.1.144(i).

20.     The plain language of Article 1.1.144(i) makes clear that all former officers and directors of the Debtors, other than Ken Rees, are individuals defined to be Released Debtor Parties except for acts taken by those former directors and officers "solely in their capacity as a shareholder/member or former shareholder/member" of the Debtors.

21.     Article 1.1.146 of the Plan defined Released Parties to include, among others, the Released Debtor Parties.  Thus, to the extent that Movants are Released Debtor Parties, they are also Released Parties.

22.     The Plan contains provisions granting broad releases to all Released Parties, which includes the Released Debtor Parties, including former officers and directors, from the Nationwide Consumer Borrower Settlement Class.   Plan § 9.4.

23.     The Plan contains provisions enjoining any ongoing litigation on claims released as part of the Plan, including Claims released by the Nationwide Consumer Borrower Settlement Class.   Plan § 9.7

24.     Article 1.1.113, however, states that Ms. Stinson and Mr. Shaper are Non-Released Parties, but includes an explicit exception to their status as Non-Released Parties "to the extent released in [their] capacity as a former director or officer."

25.     Thus, the plain language of Article 1.1.113 makes clear that Ms. Stinson and Mr. Shaper's status as Non-Released Parties does not apply to the extent they have been released as a former director or officer of the Debtors.

## II.     MOVANTS' PRIOR ATTEMPT TO DISMISS CLAIMS WITHIN THE SCOPE OF THE PLAN'S RELEASES

26.     Given the release provided under Article 9.4 of the Plan, within days of the Plan's confirmation, the Movants filed a Motion to Dismiss the claims against them in the Brice Action for all claims that were not based upon actions taken "solely in their capacity as

shareholders/members," of Think Finance. *See* Mot. to Dismiss, *Brice v. Stinson*, ECF No. 83 (N.D. Cal. Dec. 18, 2019). A true and correct copy of the Motion to Dismiss is attached hereto as Exhibit 'C.'

27. Seeking to avoid dismissal of their claims in full, the Respondents filed an Opposition to the Motion to Dismiss that confirmed to the Northern District of California that Respondents' claims against Ms. Stinson and Mr. Shaper were exclusively based upon actions Ms. Stinson and Mr. Shaper had taken solely in their capacity as shareholders or members of the Debtors. *See, e.g.*, Pls. Opp'n to Defs.' Mot. to Dismiss, *Brice v. Stinson*, ECF No. 98 at 2-3 (N.D. Cal. March 18, 2020) (admitting the basis of their claims against Movants was "[t]he actions taken and benefits received by Stinson and Shaper as owners," and that with limited exceptions which were ultimately withdrawn, the allegations of the Complaint "pertain *solely* to their role as owners.").[3] A true and correct copy of the Respondents' Opposition to the Motion to Dismiss is attached hereto as Exhibit 'D.'

28. Respondents' Opposition to the Motion to Dismiss acknowledged that Article 1.1.144(i) governed this dispute, incorporated the language of Article 1.1.144, and assured the Court and Movants that they were not pursuing claims against the Movants in any other capacity than as a shareholder of Think Finance. *Id.*

---

[3] The delay in filing this opposition was occasioned by reason of this Court's Order Compelling the Movants and the Respondents to Mediation. [ECF 1715]. That Mediation was initially scheduled for February 26, 2020, and the Parties agreed to suspend briefing on Motions to Dismiss to permit mediation to have its greatest chance of success. Judge Jones, unfortunately, needed to reschedule the February 26, 2020 date and soon thereafter the global pandemic hit, and certain parties were not willing to travel for an in person mediation with Judge Jones when available. As such, the Parties have still not been able to mediate in front of Judge Jones as contemplated by this Court's prior order.

29.     Relying upon these representations, the Court in the Brice Action refused to dismiss the claims against Ms. Stinson and Mr. Shaper.  In denying the Motion to Dismiss the Court expressly relied on the Respondents' assurances that the claims against Ms. Stinson and Mr. Shaper were solely based upon their status as shareholders, stating, "Plaintiffs, however, continue to assert claims against Linda Stinson and Shaper in 'their capacity as owners' of Think Finance, as those types of claims were carved out from the Final Order's release."  Order, *Brice v. Stinson*, ECF 110 (N.D. Cal. Aug. 12, 2020).  A true and correct copy of the Court's Order denying the Motion to Dismiss is attached hereto as Exhibit 'E.'

30.     Based upon the representations by Respondents in their Opposition to the Motion to Dismiss, as well as the Court's Order, Movants believed Respondents intended to comply with the clear terms of the Plan, including Article 1.1.144(i).  Given these representations there was no reason to seek relief from this Court on the scope of the Plan's releases granted to Ms. Stinson and Mr. Shaper.  Respondents repeatedly confirmed they were intending on complying with the terms of the Plan, so there was no dispute for this Court to resolve.

## III.     **RESPONDENTS' NEW POSITIONS ON THE PLAN'S RELEASES**

31.     Recently, however, Respondents have retreated from their prior positions. Specifically, at the close of discovery, Ms. Stinson and Mr. Shaper filed a motion for summary judgment that re-raised this release issue on a complete factual record.  *See,* Defs.' Mot. for Summary J., ECF 183 (N.D. Cal. May 20, 2021).  A true and correct copy of the Defendants' Motion for Summary Judgment is attached hereto as Exhibit 'F.'

32.     As part of this motion for summary judgment, Ms. Stinson and Mr. Shaper highlighted that the evidence in the case failed to show that either Ms. Stinson or Mr. Shaper had taken any action causing harm to the Respondents "solely in their capacity as a shareholder/member or former shareholder/member" of the Debtors.

33. Recognizing a fundamental failure of proof on this element, Respondents' Opposition to the Motion for Summary Judgment radically shifted their position as to the basis of liability against Ms. Stinson and Mr. Shaper in an attempt to save their claims against the pair.

34. Specifically, the Respondents argued that the Plan released Ms. Stinson and Mr. Shaper only for actions taken as officers or directors of Think Finance. *See, e.g.*, Pls.' Opp'n to Defs.' Mot. for Summary J., ECF 202 (N.D. Cal. June 3, 2021) (arguing that the release does not apply to Ms. Stinson "because discovery confirms that Ms. Stinson only served as a board member of Think Finance *before* it entered into tribal lending," and therefore "the release could not possibly encompass any of her conduct in this case…" and further arguing, without evidence, that the release does not apply to Mr. Shaper's actions, which were all in his capacity as a director of Think Finance, because, Respondents claim that such actions were taken in capacities other than as a director or an officer, and therefore claiming he is not released). A true and correct copy of the Opposition to Defendant's Motion for Summary Judgment is attached hereto as Exhibit 'G.'[4]

35. Respondents, in other words, completely shifted their positions as to the basis of their claims against Movants at Summary Judgment, in clear violation of the injunction granted under the Plan.

36. Movants filed a Reply to the Opposition noting the shifting arguments advanced by Respondents as compared to their earlier admissions on the proper scope of the Plan. Moreover, Movants highlighted the fact that the Respondents' new suggested construction of the Plan was

---

[4] Contrary to the allegations of their Complaint, Respondents also argued at Summary Judgment that Mr. Shaper could be liable as an investor into GPLS. But all investors into GPLS are Released Non-Debtor Parties under Article 1.1.146 as they are Related Non-Debtor Parties (pursuant to Article 1.1.143) of at least one of the GPLS Secured Parties. This Court should enforce its injunction against Respondents and enjoin them from pursuing Mr. Shaper because Mr. Shaper—like all other investors into GPLS—is also a Released Non-Debtor Party and, therefore, a Released Party.

contrary to Texas law on contract interpretation. A true and correct copy of the Reply in Support of Defendant's Motion for Summary Judgment is attached hereto as Exhibit 'H.'

37.     Specifically, Respondents' new position that Ms. Stinson and Mr. Shaper were released only for actions taken as a director or officer of the Debtors failed to give meaning to all provisions of the Plan, created ambiguity, and caused portions of the Plan to be rendered surplusage.

38.     Given these shifting positions, Movants are now able, and indeed forced, to seek relief from this Court given the Respondents' new arguments in favor of imposing liability against former officers and directors of the Debtors, Ms. Stinson and Mr. Shaper.

## IV.     ARGUMENT AND AUTHORITIES

39.     Pursuant to Article 9.4 of the Plan, the Nationwide Consumer Borrower Settlement Class, of which the Respondents are members, agreed to release all claims against the Released Parties. Specifically, Article 9.4 states, in part:

> each member of the Nationwide Consumer Borrower Settlement Class **is deemed to have released and discharged each Released Party from any and all Claims and Non-Estate Causes of Action, whether known or unknown**, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (a) the Claims, alleged facts and Non-Estate Causes of Action asserted or that could have been asserted against any of the Released Parties in any Non-Estate Cause of Action prior to the Effective Date, including the Pending Litigation, and (b) **any current or newly asserted Claim or Non-Estate Cause of Action against the Released Parties arising from or related to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date**.

Plan § 9.4 (emphasis added).

40.     Moreover, Article 9.7 of the Plan makes clear that:

"all Entities that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to Article 9.4…are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable […] the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; […] (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan."

Plan § 9.7

41.     The Plan defines Released Parties as "the Released Debtor Parties and the Released Non-Debtor Parties." Plan at § 1.1.146.[5]

42.     Thus, if an individual is included within the definition of Released Debtor Parties, he or she is also included within the definition of Released Parties.

43.     In pertinent part, the Plan defines Released Debtor Parties to include:

(i) former directors and officers of the Debtors, in their capacities as such, other than Ken Rees, provided, however, that (i) any such former director or officer of the Debtors shall not be released for purposes of imposing any liability on any shareholder/member solely in their capacity as a shareholder/member or former shareholder/member; and (ii) the releases for the Released Debtor Parties shall not release the Estates' claims and Causes of Action against TF Holdings, Inc. concerning tax refunds and/or NOLs, or against any non-Debtor transferee of such tax refunds to the extent of such transfer.

Plan § 1.1.144(i).

44.     As such, all former directors and officers of the Debtors, except Ken Rees, are included within the Plan's definition of Released Debtor Parties—and thus are Released Parties

---

[5] As is set forth in footnote 4, above, Mr. Shaper is also a Related Non-Debtor Party, and as such is a Released Non-Debtor Party and a Released Party by virtue of his investment in GPLS.

subject to the broad releases under Article 9.4 of the Plan—except for two narrow exceptions: (1) "for purposes of imposing any liability on any shareholder/member solely in their capacity as a shareholder/member or former shareholder/member," and (2) for purposes of claims regarding a corporate parent's tax refunds. *Id.*

45.    Given this plain language of the Plan, former directors and officers (as Released Debtor Parties) are released from all "Claims and Non-Estate Causes of Action, whether known or unknown…based on or relating to, or in any manner arising from, in whole or in part…any current or newly asserted Claim or Non-Estate Cause of Action against the Released Parties arising from or relating to the Debtors' business activities or operations prior to the Effective Date or the Released Parties' actual or alleged, direct or indirect, involvement in consumer lending directly or indirectly involving the Debtors prior to the Effective Date," except for claims seeking to impose any liability on a former officer or director in their role as a "shareholder/member solely in their capacity as a shareholder/member or former shareholder/member," of the Debtors.

46.    Ms. Stinson is a former director of the Debtors and is therefore included within the definition of Released Debtor Parties subject to the exceptions noted in 1.1.144(i). As one of the Released Debtor Parties, Ms. Stinson is also included within the definition of Released Parties.

47.    Mr. Shaper is a former director of the Debtors and is therefore included within the definition of the Released Debtor Parties subject to the exceptions noted in 1.1.144(i). As one of the Released Debtor Parties, Mr. Shaper is also included within the definition of Released Parties. Furthermore, as described in footnotes 5 and 6, Mr. Shaper is also a Released Party by virtue of his investment in GPLS.

48.    As Respondents' Summary Judgment briefing makes clear, the claims asserted against both Ms. Stinson and Mr. Shaper in the Brice Action are not for actions taken solely within

either Ms. Stinson's or Mr. Shaper's capacity as a shareholder/member of the Debtors or as a former shareholder/member of the Debtors.

49.     For example, as the Opposition to the Motion for Summary Judgment makes clear, the Respondents are pursuing claims against Mr. Shaper based upon "four distinct roles" he purportedly played: "(1) as a board member of Think Finance; (2) as a shareholder of Think Finance; (3) as a consultant to Think Finance; and (4) as an investor in GPLS." Ex. G at 17. Respondents have also pointed to Shaper's status as an employee of the Debtors. Ex. G at 4-5, 17-18.

50.     Respondents have also pointed to an unsigned consulting agreement with Mr. Shaper, state that he was an independent contractor for the Debtors, and argue that acts taken by Mr. Shaper as an independent contractor for the Debtors support their claims and do not violate the releases of the Plan. Ex. G. at 4-5.[6]

51.     The actions highlighted in the Respondents' Opposition to Summary Judgment concerning Mr. Shaper are not, therefore, focused on acts Mr. Shaper took "solely as a shareholder/member or former shareholder/member" of the Debtors.

52.     Indeed, claims against Mr. Shaper based "solely" in his capacity as a shareholder of the Debtors make no logical sense given that Mr. Shaper owned approximately 0.26% of the Debtors' shares outstanding, and therefore had no ability to do **anything** as a shareholder of the Debtors. *See* Cap Table, SEQ-VT0000001, a true and correct version of which is attached hereto as Exhibit 'I.'

---

[6] As set forth in the Movants' summary judgment briefing, all of Mr. Shaper's actions were, in fact, in his capacity as a director of Think Finance. Section 141 of the Delaware General Corporate Law—which applies here given Debtors' status as a Delaware corporation at the time of Mr. Shaper's directorship—provides broad powers to directors to manage "the business and affairs of every corporation organized" in Delaware, as did Think Finance's corporate documents.

53.     Respondents' recent attempt to impose liability upon Mr. Shaper for actions taken in any capacity other than "solely as a shareholder/member or former shareholder/member" of the Debtors violates Articles 9.4 and 9.7 of the Plan.

54.     The same is true for Ms. Stinson, for whom liability is predicated upon little more than blank email forwards from her husband. Ex. G at 2-4, 15-16. Respondents fail to show Ms. Stinson taking any action solely in her capacity as a shareholder/member of the Debtors that caused Respondents' harm. Rather, without any evidence, Respondents claim that Ms. Stinson was using her husband, Mr. Stinson (who did not hold any shares in the Debtors) as her "proxy," that her husband attended board meetings of the Debtors in which he would occasionally provide thoughts and advice, and that Ms. Stinson otherwise had the ability to appoint a board member to the Debtors' board. *Id.*

55.     But Respondents fail to show a single decision that Ms. Stinson actually made or participated in on behalf of the Debtors solely in her capacity as a shareholder/member of the Debtors causing their harm. To the contrary, the only actions Ms. Stinson took as a shareholder/member of the Debtors was to elect a director to the Debtors' board and to vote on matters available to vote upon by all shareholders. But there is no evidence of a single vote or other action concerning the operation of the Debtors' business that Ms. Stinson took in her capacity as a shareholder of the Debtors, let alone one that caused harm to the Respondents.

56.     Moreover, as a matter of black letter law, Movants are: (1) not responsible for the actions of the directors whom he or she elects, and (2) not able to make any decisions for the Debtors in his or her capacity as a shareholder. *Katzir's Floor & Home Design, Inc. v. M-MLS.com,* 394 F.3d 1143, 1149 (9th Cir. 2004) (recognizing that "[t]he mere fact of sole ***ownership and control*** does not eviscerate the separate corporate identity that is the foundation of corporate

law.") (emphasis added); *Schwartz v. Perseon Corp.,* 175 F. Supp. 3d 390, 398 (D. Del. 2016) (noting that a cardinal principle of corporate law is "that directors, rather than shareholders, manage the business and affairs of the corporation."); *Hollinger Inc. v. Hollinger Int'l, Inc.,* 858 A.2d 342, 387 (Del.Ch.2004) (Strine, V.C.) (holding that "controlling stockholders have no inalienable right to usurp the authority of boards of directors they elect," and that even "a controlling stockholder must live with the informed (i.e., sufficiently careful) and good faith (i.e., loyal) business decisions of the directors unless the DGCL requires a vote").

57. Thus, the only thing Movants did as a shareholder of the Debtors—elect a director—cannot possibly support liability against them.

58. The Respondents' strained reading of the Plan's definition of Non-Released Parties changes nothing.

59. Under Article 1.1.113 certain parties are defined as Non-Released Parties. Specifically, Article 1.1.113 defines Non-Released Parties as:

> Elevate Credit, Inc., Kenneth Rees, Stephen Haynes, Haynes Investments, LLC, Sovereign Business Solutions, LLC, Mike Stinson, Linda Stinson (except to the extent released in her capacity as a former director or officer), The Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, LTD, Sequoia Capital Operations, LLC, Sequoia Capital Franchise Partners, LP, Sequoia Capital Growth Fund III, LP, Sequoia Entrepreneurs Annex Fund, LP, Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, LP, Sequoia Capital Growth Partners III, LP, Startup Capital Ventures, LP, Stephen J. Shaper (except to the extent released in his capacity as a former director or officer), John Drew (except to the extent released in his capacity as a former director or officer), TCV, LP, TCV Member Fund, LP, Technology Crossover Ventures, TCV V L.P., Technology Crossover Management V, LLC, Alan H. Ginsberg, and any other Entity that is not defined herein as a Released Party. **Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other Plan**

> **Document, no Non-Released Party shall be a Released Party at any time or for any reason.**

Plan at 1.1.113 (emphasis in original).

60. Respondents have argued that Ms. Stinson and Mr. Shaper's inclusion within Article 1.1.113's definition of Non-Released Parties means that both have been released only for acts taken as an officer or director of the Debtors. Ex. G at 5, 16-18 (arguing that "because Ms. Stinson never served on the board after January 1, 2011, the release could not possibly encompass any of her conduct in this case," and that "the release in the bankruptcy case only applies to actions taken" by Mr. Shaper "as a board member of Think Finance" given what Respondents characterize as the "unequivocal terms that 'Non-Released Parties' include Stephen J. Shaper" under Article 1.1.113).

61. Respondents' reading of Article 1.1.113 is wrong and contrary to Texas law, which applies to all matters concerning the interpretation of the Plan. *See* Plan at § 1.4 (confirming that "the rights and obligations arising [under the Plan] shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles").

62. Under Texas law, Courts must "avoid construing contracts in a way that renders contract language meaningless." *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, No. 19-1054, 2021 WL 1323406, at *3 (Tex. Apr. 9, 2021).

63. A court "must examine the entire instrument and attempt to harmonize all of its parts, even if different parts of the same instrument appear contradictory or inconsistent…. because we must presume that the parties intended every clause to have some effect." *Jones Energy, Inc. v. Pima Oil & Gas, L.L.C.*, 601 S.W.3d 400, 405 (Tex. App. 2020).

64. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005).

65. Respondents' proposed interpretation of the Plan—in which Ms. Stinson and Mr. Shaper are Released Parties only for actions taken as directors or officers of the Debtors—is simply implausible and contrary to Texas law. If the Court were to accept such a reading of the scope of the release, it would render the language of Article 1.1.144(i) surplusage and effectively read it out of the Plan. Moreover, and perhaps primarily, Respondents' proposed reading of Article 1.1.113 is contrary to the plain text of the Plan.

66. Article 1.1.113 of the Plan states that Ms. Stinson and Mr. Shaper are "Non-Released Parties" under the Plan "except *to the extent released* in [their] capacity as a former director or officer." Plan at 1.1.113 (emphasis added).

67. Article 1.1.113 does not state, as Respondents have argued, that Ms. Stinson and Mr. Shaper, are Non-Released Parties except for acts taken as a former director or officer. Had the drafters of the Plan wished to use that language and limit the releases, they could have done so easily and in fewer words.

68. Instead, the plain language of the Plan frames the exception to Ms. Stinson's and Mr. Shaper's status as Non-Released Parties in terms of *the extent they have been otherwise released* in their capacity as former officers or directors of the Debtors.

69. The extent of Ms. Stinson and Mr. Shaper's release "as a former director or officer" in Article 1.1.113 must be reconciled with the identical language used elsewhere in the Plan—specifically the terms of the release given to all former directors and officers of the Debtors (except Ken Rees) under Article 1.1.144(i) of the Plan.

70.     As set forth previously, Article 1.1.144 of the Plan identifies certain companies and entities related to Think Finance that would receive a full and complete release—including all former directors and officers of Think Finance except Ken Rees. For former officers and directors, however, this otherwise complete release was, in pertinent part, limited in that those former officers and directors "shall not be released for purposes of imposing any liability of any shareholder/member solely in their capacity as a shareholder/member or former shareholder/member" of the debtors."

71.     Nowhere in the definition of Article 1.1.144 is the release granted to former officers and directors limited to **actions taken** as an officer or director of the Debtors. Such a limitation would be illogical and render the two exceptions to Article 1.1.144(i) superfluous, as neither of the exceptions contemplates any action taken in the capacity as an officer or director. To the contrary, the first exception specifically contemplates reserving an action against former officers and directors for actions taken as shareholders.

72.     Put differently, if the intent of the Plan was to limit the releases given to all former officers and directors of the Debtors (including Ms. Stinson and Mr. Shaper) to actions taken by those individuals as officers and directors of the Debtors, then there would be no need for the Plan to contain the two exceptions to the release listed in Article 1.1.144(i). Neither of the exceptions under that sub-article—particularly acts taken "solely" in a capacity "as a shareholder/member or former shareholder member" of the Debtors—would involve actions taken as an officer or director. The Plan, therefore, would have no need to preserve claims against former officers or directors solely in their capacity as shareholders/members of the Debtors if the release was limited as Respondents propose.

73.     If officers and directors such as Ms. Stinson and Mr. Shaper were only released for actions taken as a former officer or director (and therefore are not Released Debtor Parties), Article 1.1.144(i) would have no meaning and no purpose—particularly the inclusion of the word "solely," which provides a definitive scope for the release. Respondents' preferred construction of the contract as a whole creates ambiguity because their construction renders it impossible to read all parts of Articles 1.1.113 and 1.1.144 in harmony, rather than in conflict or as extraneous.

74.     The converse, however, is not true, and the Court can readily give meaning and purpose to both Articles 1.1.113 and 1.1.144. Article 1.1.144 defines the ***scope of the release*** for all former officers and directors of Think Finance (except Ken Rees). Article 1.1.113's reference to Ms. Stinson and Mr. Shaper simply incorporates the scope of that release. In other words, all Article 1.1.113 does is confirm that Ms. Stinson and Mr. Shaper are not receiving a release greater than what they would otherwise be entitled to receive under 1.1.144. But that does not mean that either Ms. Stinson or Mr. Shaper are entitled to *less* than other former officers or directors (other than the limited carve-out for acts solely as a shareholder/member or former shareholder/member).

75.     This means Ms. Stinson and Mr. Shaper have, like all other former officers and directors of the Debtors, received complete releases and are Released Parties except to the extent either took some action "**solely** in their capacity as a shareholder/member or former shareholder/member," of the Debtors. Acts taken in multiple capacities do not suffice. Acts taken as an employee or consultant to Think Finance do not suffice. Acts taken as the spouse of a person providing occasional advice to individuals at Think Finance do not suffice. Acts taken as an investor in GPLS do not suffice. Only acts taken **solely** as a shareholder/member or former shareholder/member suffice. Respondents claims against Ms. Stinson and Mr. Shaper, by Respondents' own admission, fall well outside this limitation.

76.     Yet when these issues were again raised at summary judgment, the Respondents responded that not only was the release far less broad than they previously agreed, but also that this Court (and not the court deciding the Motions for Summary Judgment) should decide such issues given its continuing jurisdiction over matters related to the Plan. See Exhibit J, Brice v. Stinson, June 23, 2021 Oral Arg. Tr. at 21:10-23 (statements by Mr. Guzzo that as to the issue of the bankruptcy release "if [Movants] really want to press this issue, they should be filing a declaratory judgment action or motion before the bankruptcy court," because "the bankruptcy court has retained exclusive jurisdiction over its final order…."). The first argument holds no weight given the clear language of the plan and the complete absence of evidence demonstrating wrongdoing by Ms. Stinson and Mr. Shaper solely in their capacities as a shareholder/member of the Debtors.

77.     The Plan is clear and unambiguous: Ms. Stinson and Mr. Shaper are Released Parties and have been fully and completely released by the Nationwide Consumer Borrower Settlement Class for all actions except those taken "solely as a shareholder/member or former shareholder/member" of the Debtors.

## V.     RESPONDENTS' WILFUL VIOLATIONS OF THE PLAN WARRANT SANCTIONS

78.     Respondents' new theories of liability in the Brice Action raised at Summary Judgment against Ms. Stinson and Mr. Shaper do not fall within the relevant exception set forth by Article 1.1.144(i). As such, the Respondents, as members of the Nationwide Consumer Borrower Settlement Class, have already released those claims pursuant to Article 9.4 of the Plan, and they are enjoined from pursuing them further pursuant to Article 9.7 of the Plan.

79.     Respondents' conduct in pursuing these new claims against Ms. Stinson and Mr. Shaper is particularly egregious given their previous response to the Motion to Dismiss filed by Ms. Stinson and Mr. Shaper on this precise point made 18 months ago.

80.     Indeed, the Respondents previously assured the court in the Brice Action that all claims against Ms. Stinson and Mr. Shaper in the Brice Action were squarely within the scope of Article 1.1.144(i) of the Plan, and that all claims in the Brice Action could be proven by reference to evidence Ms. Stinson and Mr. Shaper acted solely in their capacity as a shareholder/member or former shareholder/member of the Debtors. *See* Ex. D.

81.     At the time Respondents made these representations to the court in the Brice Action in early 2020, they had already "fiercely litigated" similar cases, including before this Court. To that end Respondents had previously admitted that they had "fully discovered the facts and defenses at issue in the case," against Think Finance as a result of their "substantial discovery and motions practice, including the production of over a million pages and over forty depositions of critical witnesses." Mem. in Support of Mot. for Preliminary Approval of Class Action Settlement, Gibbs v. Plain Green, LLC, 3:17-cv-495, ECF No. 115 (E.D. Va. June 21, 2019).

82.     Given this significant discovery in their possession since at least 2018, Respondents knew at the time they filed their Opposition to the Motion to Dismiss in the Brice Action that there was no evidence to support claims against Ms. Stinson and Mr. Shaper solely in their capacity as a shareholder/member or former shareholder/member of the Debtors.

83.     However, relying on Respondents' false representations, the court in the Brice Action refused to dismiss the claims against the Movants. *See* Ex. E at 8 (interpreting articles 1.1.113 and 1.1.144 of the Plan and noting that "claims against Linda Stinson and Shaper in 'their capacity as owners' of Think Finance," were "carved out from the Final Order's release.").

84.     Consistent with all the discovery previously in their possession, the Respondents again failed to uncover or otherwise produce any evidence in the Brice Action to support claims against Ms. Stinson and Mr. Shaper for actions taken by the pair **solely** in their capacity as shareholders/members of the Debtors.

85.     Rather than dismiss their claims as this Court's injunction **requires** (and as the California court's ruling on the Motions to Dismiss infers), Respondents continue to litigate against Ms. Stinson and Mr. Shaper—as they have for over a year and a half—forcing the pair to expend hundreds of thousands of dollars in entirely unnecessary attorneys' fees.

86.     The Respondents used their assurances to the court in the Brice Action in avoiding a motion to dismiss their claims as a vehicle to disguise the true nature of their claims against Ms. Stinson and Mr. Shaper.

87.     Specifically, had Respondents admitted back in December 2019 that their claims against Ms. Stinson and Mr. Shaper were for actions that fell outside of the limited scope preserved by Article 1.1.144(i) of the Plan, then either their claims would have been dismissed, or the Movants could have filed the instant Motion with this Court at that time.

88.     Respondents, instead, disguised their claims against the Movants and precluded any attempt by the Movants to obtain the benefit of the Plan's releases and injunctive provisions.

89.     Respondents' willful violations of the Plan's releases and injunctive provisions are contemptuous and support a finding of civil contempt and the imposition of sanctions against the Respondents.  *In re Hester*, 554 B.R. at 147 (suggesting that sanctions for civil contempt are appropriate either "(i) to coerce compliance with a court order or injunction; or (ii) to compensate for damages sustained because of the contemptuous conduct.").

90.     As this Court has recognized elsewhere, a finding of civil contempt requires a clear and convincing showing of three elements, all of which are present here.  Specifically, the Movants must show: (1) that "a court order was in effect"; (2) that "the order required certain conduct" by the Respondents; and (3) that Respondents "failed to comply with the order."  *In re Hester*, 554 B.R. at 148.

91.     Here, the Court order in effect was the Confirmation Order, which incorporated the Plan, including the Nationwide Consumer Borrower Settlement Class Releases under Article 9.4 as well as the Injunctive Relief provided for under Article 9.7.

92.     Under Articles 9.4 and 9.7 of the Plan, the Respondents (and indeed all members of the Nationwide Consumer Borrower Class) were required to cease litigating claims within the scope of the releases granted under the Plan, including those against the Movants.  Respondents are members of the Nationwide Consumer Borrower Class, and their counsel helped negotiate the terms of the Plan, including its releases.

93.     As evidenced by the recent briefing in the Brice Action, however, Respondents are willfully and knowingly ignoring the terms they fervently negotiated and violating the releases and injunction contained in the Plan by litigating claims against Ms. Stinson and Mr. Shaper for actions other than those "solely in their capacity as a shareholder/member or former shareholder/member" of the Debtors.

94.     The damages caused by the Respondents' continued litigation are all the attorney's fees and expenses Movants have incurred from the date of entry of the Confirmation Order through to the present.  These damages will continue to expand exponentially as the Movants are forced to prepare for trial--all because Respondents' willfully and purposefully fail to acknowledge the plain language of the Confirmation Order.

95.     Movants request a hearing to establish the specific amount of damages that can be attributed to the Respondents' conduct.

96.     A finding of willfulness needed to support sanctions can be supported if a party "knows the injunction has been entered" and intends to take some action to "violate it." *In re McClure*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009) (citing 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] (15th ed. Rev. 2009) (collecting cases)). The party need not specifically intend to violate the injunction—simply intending to take an action that ultimately violates the injunction is enough. *Id.* ("That the actions are intentional—as opposed to the actual violation of the injunction being intentional—is sufficient.").

97.     In cases of willful violations of an injunction, such as here, the Court may award attorney's fees to the party against whom an action continues in violation of an injunction. *Id.*

98.     Moreover, this Court can rely upon its inherent authority to impose punitive damages on Respondents for contemptuous violations of its injunctions for egregious and intentional misconduct. *Cf. In re Fauser*, 545 B.R. 907, 914-15 (S.D. Tex. Bankr. 2016) (Isgur, J.) (imposing punitive sanctions on party that persisted in attempting to collect debts from Debtor notwithstanding creditor's knowledge of the imposition of the court's discharge injunction).

99.     In opposing the initial Motion to Dismiss in the Brice Action, the Respondents intentionally concealed the true nature of their claims against the Movants in an effort to avoid dismissal and leave Movants with a Hobson's choice: undertake costly discovery and litigation based upon Respondent's disingenuous arguments from the Respondents, or settle claims that had already been released.

100.     By continuing their litigation against the Movants notwithstanding their specific knowledge as to the terms of the Plan's releases and injunction, as well as given their knowledge

that there was no evidence to support any claims against either Ms. Stinson or Mr. Shaper "solely in their capacity as a shareholder/member or former shareholder/member" of the Debtors, Respondents' conduct was egregious and intentional conduct designed to avoid the Court's earlier Order confirming the Plan.

101.    Respondents' violation of the Court's prior injunction requires the imposition of punitive damages in an amount the Court determines will discourage such egregious and intentional conduct by the Respondents in the future.

## VI.    RELIEF REQUESTED

WHEREFORE, Movants Ms. Linda Stinson and Mr. Stephen J. Shaper request entry of an order granting the relief requested herein, including but not limited to:

a.  enjoining the Respondents from continuing to litigate their claims against the Movants;

b.  issuing sanctions—both compensatory and punitive—against Respondents for the knowing, willful, and egregious violation of the Court's prior orders;

c.  setting a hearing to establish the proper amount of compensatory damages attributable to Respondents' willful, intentional, and egregious violations of the Court's prior orders;

d.  and for all such other and further relief as is just and proper.

Dated:  July 13, 2021                              Respectfully submitted,


                                                   /s/ J. Mark Chevallier  [2021-07-13]
                                                   J. Mark Chevallier, Esquire
                                                   State Bar No. 04189170
                                                   **McGuire, Craddock & Strother, P.C.**
                                                   500 N. Akard St., Suite 2200
                                                   Dallas, Texas 75201
                                                   Tel:  214.954.6800
                                                   Fax: 214.954.6868
                                                   mchevallier@mcslaw.com

                                                   -and-

                                                   Richard L. Scheff (admitted *pro hac vice*)
                                                   David F. Herman (admitted *pro hac vice*)
                                                   **ARMSTRONG TEASDALE LLP**
                                                   2005 Market Street
                                                   One Commerce Square, Floor 29
                                                   Philadelphia, PA 19103
                                                   Telephone:  267-780-2000
                                                   Facsimile: 215-405-9070


                                                   *Co-Counsel to Stephen J. Shaper*
                                                   *and Linda Stinson*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 13, 2021, true and correct copies of the

foregoing have been served via ECF upon all parties who receive notice in these proceedings via

the Court's ECF filing system and to the following parties via email:

Anna C. Haac (pro hac vice)
Mark A. Clifford (pro hac vice)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Phone: 202-973-0900
Fax: 202-973-0950
Email: ahaac@tzlegal.com
Email: mclifford@tzlegal.com

Sabita Soneji (SBN 224262)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone (510) 254-6808
Facsimile (510) 210-0571
Email: ssoneji@tzlegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703)424-7572
(703)591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Craig C. Marchiando, Esq., (SBN 283829)
Leonard A. Bennett, Esq., (pro hac vice)
Amy Leigh Austin (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com

   */s/* J. Mark Chevallier [2021-07-13]
             **J. Mark Chevallier**